DEPARTMENT OF THE PROSECUTING ATTORNEY  207

DAVELYNN M. TENGAN  3263
Prosecuting Attorney
PETER A. HANANO  6839
Deputy Prosecuting Attorney
County of Maui
Wailuku, Maui, Hawaii  96793
Tel. No. 243-7630
Fax. No. 270-7927

Attorneys for Respondents

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TARYN CHRISTIAN, | ) | CIV. NO. 04-00743 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | RESPONDENTS' |
| vs. | ) | MEMORANDUM IN |
| | ) | OPPOSITION TO PETITIONER |
| RICHARD BISSEN, Acting | ) | TARYN CHRISTIAN'S FIRST |
| Director, STATE OF HAWAI'I, | ) | MOTION FOR LEAVE TO |
| DEPARTMENT OF PUBLIC SAFETY, | ) | CONDUCT DISCOVERY; |
| | ) | AFFIDAVIT OF PETER A. |
| Respondents. | ) | HANANO REGARDING |
| | ) | APPENDICES "A" AND "B"; |
| | ) | CERTIFICATE OF SERVICE |

**RESPONDENT'S MEMORANDUM
IN OPPOSITION TO PETITIONER TARYN CHRISTIAN'S
<u>FIRST MOTION FOR LEAVE TO CONDUCT DISCOVERY</u>**

**AFFIDAVIT OF PETER A. HANANO
<u>REGARDING APPENDICES "A" AND "B"</u>**

**<u>APPENDICES "A" AND "B"</u>**

**<u>CERTIFICATE OF SERVICE</u>**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................... i

TABLE OF AUTHORITIES.............................................................. ii

I. STATEMENT OF RELEVANT FACTS............................................. 2

II. ARGUMENT............................................................................. 5

   A. PETITIONER'S MOTION FOR LEAVE TO
      CONDUCT DISCOVERY VIOLATES LR 7.5(a),
      LR 7.5(f), AND LR 7.6................................................. 5

   B. PETITIONER HAS FAILED TO DEMONSTRATE
      GOOD CAUSE FOR GRANTING HIS OVERLY
      BROAD DISCOVERY REQUEST.............................................. 7

      1. Good Cause Does Not Exist Where Full Discovery
        Has Already Been Provided To Petitioner................................ 9

      2. Good Cause Does Not Exist Where Petitioner Is
        Embarking on a Fishing Expedition in Order To
        Develop His Actual Innocence Claim..................................... 11

      3. Good Cause Does Not Exist Where Petitioner Is
        Embarking On A Fishing Expedition In Order To
        Develop His Ineffective Assistance Of Counsel Claims.......... 14

      4. Good Cause Does Not Exist Where Petitioner Is
        Embarking On A Fishing Expedition In Order To
        Develop His Claims Of False Or Misleading DNA
        Testimony...................................................................... 16

III. CONCLUSION......................................................................... 18

## TABLE OF AUTHORITIES CITED

### CASES

Page

Bracy v. Gramley, 520 U.S. 899, 904 (1997)...................................................  7, 8

Brown v. Bradshaw, 2006 WL 533405 (N.D. Ohio March 3, 2006)............  9

Calderon v. U.S.D.C. (Nicolaus), 98 F.3d 1102, 1104 (9th Cir. 1996)......................................................................................................  7, 8, 9

Campbell v. Blodgett, 982 F.2d 1356, 1358 (9th Cir.1993).........................  7-8

Harris v. Nelson, 394 U.S. 286, 300 (1969)..................................................  8

Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005)....................................  11

Rector v. Johnson, 120 F.3d 551, 562 (5th Cir. 1997)..................................  9

Rich v. Calderon, 187 F3d 1064, 1067 (9th Cir. 1999).................................  7

Stouffer v. Reynolds, 168 F.3d 1155 (10th Cir. 1999)...................................  17

Strickland v. Washington, 466 U.S. 668, 690 (1984)....................................  14, 15, 16

Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004)................................  9

### HAWAII REVISED STATUTES

Section 134-51(b)............................................................................................  2

Section 705-500...............................................................................................  2

Section 707-701.5............................................................................................  2

Section 708-832(1)(a).......................................................................................  2

## TABLE OF AUTHORITIES CITED

Page

### LOCAL RULES OF PRACTICE

LR 7.5................................................................................................  5

LR 7.5(a)............................................................................................  6, 7

LR 7.5(f)............................................................................................  6, 7

LR 7.6................................................................................................  6, 7

LR 11.1..............................................................................................  7

### RULES GOVERNING SECTION 2254
### CASES IN UNITED STATES DISTRICT COURT

Rule 6(a), 28 U.S.C. § 2254............................................................  11, 17

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TARYN CHRISTIAN, | ) | CIV. NO. 04-00743 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | RESPONDENTS' ANSWER |
| vs. | ) | TO PETITION UNDER 28 |
| | ) | U.S.C. § 2254 FOR WRIT OF |
| RICHARD BISSEN, Acting | ) | HABEAS CORPUS BY A |
| Director, STATE OF HAWAI'I, | ) | PERSON IN STATE |
| DEPARTMENT OF PUBLIC SAFETY, | ) | CUSTODY, FILED ON |
| | ) | DECEMBER 22, 2004 |
| Respondents. | ) | |
| | ) | |

## RESPONDENT'S MEMORANDUM
## IN OPPOSITION TO PETITIONER TARYN CHRISTIAN'S
## FIRST MOTION FOR LEAVE TO CONDUCT DISCOVERY

COME NOW, JAMES PROPOTNICK, Acting Director, Department

of Public Safety, State of Hawaii, (hereinafter "State"), by and through their

attorney, PETER A. HANANO, Deputy Prosecuting Attorney for the County of

Maui, and present this Memorandum in Opposition to Petitioner Taryn Christian's

First Motion for Leave to Conduct Discovery, filed on April 19, 2006, by

Petitioner Taryn Christian ("Petitioner") by and through his attorneys, Keith

Shigetomi, Esq. and Mark Barrett, Esq.

I. __STATEMENT OF RELEVANT FACTS.__

On September 6, 1995, Petitioner was formally charged with Murder

in the Second Degree, in violation of Hawai`i Revised Statutes ("HRS") §

707-701.5 (Count One), Use of Deadly or Dangerous Weapon in the Commission

of a Crime, HRS § 134-51(b) (Count Two), and Attempted Theft in the Third

Degree, HRS §§ 705-500 and 708-832(1)(a) (Count Three).  After being charged,

Petitioner was initially represented by several attorneys.  In early April of 1996,

Petitioner had retained Dennis W. Jung ("Mr. Jung") , Esq.  On April 9, 1996, the

State provided a twenty-three page discovery letter consisting of the names,

addresses and phone numbers of fifty-five potential trial witnesses, and over one-

hundred "Relevant Written or Recorded Statements" which included police reports,

evidence records, videotapes, and photographs. Following the initial discovery

disclosure, the State continually provided Petitioner with on-going discovery

materials during the pendency of the proceedings.  (Appendix "A", at 1-23).

On July 29, 1996, Mr. Jung sent a letter to the State requesting to view

the evidence located at the HPD crime lab.  (Appendix "A", at 37).   In that same

letter, Mr. Jung also requested a "digital quality audiotape of the 911 calls".  In a

letter dated November 3, 1996, Mr. Jung again requested a letter from the State

permitting him to view the physical evidence being held by the Honolulu Police

Department.  (Id., at 48).  On November 6, 1996, the State contacted Ms. Furuya

regarding Mr. Jung's request to view the physical evidence in the case.  (<u>Id</u>., at 50).

On November 7, 1996, the State advised Mr. Jung to make arrangements with HPD

Crime Lab supervisor, Joanne Furuya, in order to view the evidence.  (<u>Id</u>., at 50).

On November 15, 1996, the State received a letter from Mr. Jung indicating that he

had scheduled a meeting with Ms. Furuya at the Honolulu Police Department on

November 21, 1996 . (<u>Id</u>., at 51-52).

  During the pretrial proceedings, at the request of Petitioner, Mr. Jung

provided copies of all of the discovery materials to Petitioner's mother, Lori Smith

("Ms. Smith").  (See Respondents' Answer, Vol. 1, Exh. "A", at 209).  On

November 12, 1996, Mr. Jung filed a Motion For An Order To Direct Lori Smith

To Return Discovery Materials To Counsel.  (<u>Id</u>., at 207-212).  The motion was

heard and granted on November 20, 1996.  (<u>Id</u>., at 224-225).  Later, on

November 21, 1996, Mr. Jung sent a letter to the State advising that, Ms. Smith,

failed and refused to return to Mr. Jung, the following discovery materials:

  1) all photos taken of Taryn Christian in the Michigan Cap and the
    plaid jacket;

  2) approximately 350 pages of copies of discovery;

  3) five video tapes – crime scene, autopsy, James Burkhart
    interview, Gas Express, and Vilmar's wake;

4)    two audio tapes – 911 and recording of Lisa Kimmey and Taryn Christian.

(Appendix "A", at 57).  That same day, Mr. Jung also advised officials at the Maui Community Correctional Center that he was concerned that Smith may attempt to disobey the court's order to return the discovery materials by giving them to the Petitioner.  (Id., at 58).  Also on November 21, 1996, Mr. Jung expressed his gratitude to Deputy Prosecuting Attorney Davelynn Tengan ("DPA Tengan") for the opportunity to view the knife evidence held by HPD.  (Id., at 59).  On November 25, 1996, Mr. Jung again advised Ms. Tengan that he had not yet received any discovery materials back from Smith. (Id., at 60).

On December 3, 1996, the trial court filed an Order Appointing Counsel for Defendant, wherein the trial court appointed Anthony Ranken ("Mr. Ranken"), Esq. to represent Petitioner.  Two days later, on December 5, 1996, the State provided Mr. Ranken with a discovery letter consisting of the names, addresses and phone numbers of fifty-six potential trial witnesses, and over two-hundred "Relevant Written or Recorded Statements" which included police reports, evidence records, videotapes, tape recordings, letters, and photographs.  (Appendix "B", at 1-31).  On December 11, 1996, a representative from Mr. Ranken's office acknowledged that he was afforded an opportunity to review and copy all of the discovery materials as indicated in the State's discovery letter dated

December 5, 1996.  (Id., at 32-51).  Following the initial discovery disclosure to

Mr. Ranken, the State continually provided Petitioner with on-going discovery

materials prior to trial.  (Id., at 52-63).

II.  **ARGUMENT**.

    A.    PETITIONER'S MOTION FOR LEAVE TO CONDUCT
        DISCOVERY VIOLATES LR 7.5(a), LR 7.5(f), AND LR 7.6.

    Petitioner's instant Motion violates several Local Rules of Practice For

the United States District Court For The District of Hawaii ("LR").  Specifically,

LR 7.5 provides in pertinent part that:

LR7.5 MOTIONS; LENGTH OF BRIEFS AND MEMORANDA

    (a) A brief or memorandum in support of or in opposition to any
motion shall not exceed thirty (30) pages in length, unless it complies with
LR 7.5(b) and (e).

    (b) A brief or memorandum in support of or in opposition to a motion
may exceed the page limitation in LR 7.5(a) if it either (i) contains no more
than 9,000 words or (ii) uses a monospaced face and contains no more than
750 lines of text.

    * * *

    (e) A brief or memorandum submitted under LR 7.5(b), a reply brief
or memorandum submitted under the word or line limitation in LR 7.5(c), or
a concise statement submitted under the word limitation permitted in LR
56.1(d) must include a certificate by the attorney or a pro se party that the
document complies with the applicable word or line limitation. The person
preparing the certificate may rely on the word or line count of the
word-processing system used to produce the document. In the case of a brief
or memorandum, the certificate must state either the number of words in the
document or the number of lines of monospaced type in the document. In the

case of a concise statement, the certificate must state the number of words in the document.

(f) Briefs and memoranda exceeding fifteen (15) pages shall have a table of contents and a table of authorities cited.

\* \* \*

LR 7.5.  Additionally, LR 7.6 provides in pertinent part that:

LR7.6 MOTIONS; AFFIDAVITS AND DECLARATIONS

Factual contentions made in support of or in opposition to any motion shall be supported by affidavits or declarations. Affidavits and declarations shall contain only facts, shall conform to the requirements of Fed. R. Civ. P. 56(e) and 28 U.S.C. § 1746, and shall avoid conclusions and argument. Any statement made upon information or belief shall specify the basis therefor. Affidavits and declarations not in compliance with this rule may be disregarded by the court.

LR 7.6.

In this case, Petitioner's instant Motion violates LR 7.5(a), LR 7.5(f), and LR 7.6.  First, Petitioner's Memorandum in Support of Motion consists of thirty-five (35) pages.  This is obviously over the thirty page limit mandated by LR 7.5(a).  Second, Petitioner's Memorandum in Support of Motion does not contain a table of contents and table of authorities as required by LR 7.5(f).  Third, the Declaration of Local Counsel attached to the motion fails to support the extensive factual contentions alleged in the Petitioner's Memorandum in Support of Motion.

Finally, failure to comply with the applicable rules of the court may result in fine, *dismissal*, or other appropriate sanction.  LR11.1.  (Emphasis added).

Accordingly, the State respectfully requests that the instant motion be dismissed for failure to comply with LR7.5(a), LR7.5(f), and LR7.6.

      B.     PETITIONER HAS FAILED TO DEMONSTRATE GOOD CAUSE FOR GRANTING HIS OVERLY BROAD DISCOVERY REQUEST.

Habeas is an important safeguard whose goal is to correct real and obvious wrongs.  Rich v. Calderon, 187 F3d 1064, 1067 (9th Cir. 1999).  It was never meant to be a fishing expedition for habeas petitioners to "explore their case in search of its existence."  Id.  (Citations omitted).  A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.  Bracy v. Gramley, 520 U.S. 899, 904 (1997).  Instead, discovery in a habeas case is governed by Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts.  Calderon v. U.S.D.C. (Nicolaus), 98 F.3d 1102, 1104 (9th Cir.1996).  The Rule provides that a "party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  Calderon v. U.S.D.C., at 1104 (citing Campbell v. Blodgett, 982 F.2d 1356, 1358 (9th

Cir.1993) (there simply is no federal right, constitutional or otherwise, to discovery in habeas proceedings as a general matter)).

The Supreme Court has construed Rule 6, and has held that if through "specific allegations before the court," the petitioner can "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

In Calderon v. U.S.D.C., a state death row inmate filed a "pre-petition" discovery motion on the state district attorney's office seeking access to all documents pertaining to the inmate's case. Id., at 1104.  Without holding a hearing, and without presenting any explanation of "good cause", the district court granted the inmate's motion.  Id.  In response, the state filed a timely writ of mandamus and an emergency motion for a stay of the discovery order.  Id.  On appeal, the Ninth Circuit Court of Appeals held that the district court erred in granting the inmate's discovery order, and in doing so, stated the following in pertinent part:

> "[c]ourts should not allow prisoners to use federal discovery for fishing
> expeditions to investigate mere speculation. See Ward v. Whitley, 21 F.3d
> 1355, 1367 (5th Cir.1994) (footnotes omitted) ("federal habeas court must
> allow discovery and an evidentiary hearing only where a factual dispute, if
> resolved in the petitioner's favor, would entitle him to relief ... conclusory

allegations are not enough to warrant discovery under Rule 6 ... , the petitioner must set forth specific allegations of fact. Rule 6 ... does not authorize fishing expeditions."), cert. denied, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); United States ex rel. Nunes v. Nelson, 467

F.2d 1380, 1380 (9th Cir.1972) (state prisoner "is not entitled to a discovery order to aid in the preparation of some future habeas corpus petition"); Aubut v. State of Maine, 431 F.2d 688, 689 (1st Cir.1970) ("Habeas corpus is not a general form of relief for those who seek to explore their case in search of its existence.").  Nicolaus' eligibility for discovery is especially questionable because the prisoners in Ward, Nunes, and Aubut at least filed a federal habeas petition. If the ambiguous allegations of these prisoners were insufficient to justify discovery, then certainly the utter absence of any specific allegations should preclude discovery."

Calderon v. U.S.D.C., at 1106.  Likewise, vague and conclusory allegations are not

sufficient to allow discovery under Rule 6 and a petitioner may not embark on a

fishing expedition in order to develop claims for which there is no factual basis.

Brown v. Bradshaw, 2006 WL 533405 (N.D. Ohio March 3, 2006); Rector v.

Johnson, 120 F.3d 551, 562 (5th Cir. 1997) (Rule 6 does not sanction fishing

expeditions based on a petitioner's conclusory allegations); Williams v. Bagley,

380 F.3d 932, 974 (6th Cir. 2004) (conclusory allegations are not enough to warrant

discovery under Rule 6 and petitioner must set forth specific allegations of fact).

    1.    Good Cause Does Not Exist Where Full Discovery Has Already Been Provided To Petitioner.

    Good cause for Petitioner's discovery requests does not exist where

full access to all of the State's evidence, as well as full disclosure of all

discoverable items have already been provided to Petitioner prior to the

commencement of his jury trial on February 24, 1997. In fact, as evidenced by the extensive discovery-related correspondence between the State, Mr. Jung, and Mr. Ranken, it is clear that Petitioner was previously provided access to, and copies of, most if not all of the Petitioner's thirty-three discovery items listed in his Memorandum in Support of Motion. In addition, there is no doubt that Petitioner personally possessed copies of these extensive discovery materials. This is evident in both Mr. Jung's letter to DPA Tengan dated November 21, 1996 (Appendix "A", at 57), and Petitioner's voluminous attachments to not only Petitioner's *pro se* petition for post-conviction relief, but also the addendums thereof. (See Respondents' Answer, Vols. 6-4, Exh. "Z"). Furthermore, in addition to the above, the State complied with Mr. Jung's discovery requests to actually view the evidence that was submitted to the Honolulu Police Department's crime lab. In the end, the State provided Mr. Ranken with the names of fifty-six witnesses, and over six-hundred and fifty pages of "written or recorded statements" including, but not limited to police reports, evidence records, audio and video tapes, photographs, lab reports, charts, copies of search warrants and accompanying affidavits, and letters and memoranda. Indeed, granting the Petitioner's instant overly broad and ambiguous discovery request in light of all of the previously provided discovery would not constitute good cause in this case.

2.    Good Cause Does Not Exist Where Petitioner Is Embarking On A Fishing Expedition In Order To Develop His Actual Innocence Claim.

In the instant Motion, Petitioner embarks on a highly speculative fishing expedition in the very unlikely chance that additional DNA testing of the State's evidence will somehow demonstrate that someone else committed the murder. In determining "good cause" under a Rule 6(a) discovery request, this Court should consider whether there was a significant amount of other evidence tending to inculpate someone else, *i.e.* James Burkhart. See <u>Pham v. Terhune</u>, 400 F.3d 740, 743 (9th Cir. 2005) (good cause found to grant petitioner's discovery request of laboratory notes of gunshot residue test analyzed by state criminalist where there was a significant amount of other evidence tending to incriminate an uncharged suspect).

Here, Petitioner's entire actual innocence claim is premised upon James Burkhart being the killer. Indeed, Petitioner essentially concedes that he was at the crime scene, but that someone else killed Cabbacang. However, Petitioner offers no *credible* evidence that Burkhart was the killer. Likewise, Petitioner cannot point to any objective physical evidence remotely establishing that Burkhart was present at the crime scene on the morning of the murder. Instead, Petitioner relies on factual allegations filled with hearsay, double hearsay, innuendo, and speculation. For instance, the following are just some of the many

examples of Petitioner's vague and cryptic like references to "evidence" of his

actual innocence:

1)    A police officer (unnamed) allegedly saying "that sounds like James Burhkart";

2)    A police report (unspecified) allegedly placing Burkhart in seidel's apartment prior to Cabaccang's arrival that early morning;

3)    Keleen Norton overheard details regarding Burkhart and Seidel's alleged relationship;

4)    Another person (unnamed) told police that a friend volunteered that "Hina Boy" admitted to her that he killed Cabaccang";

5)    After the homicide, according to this report (unspecified), Mr. Burkhart was taken "somewhere upcountry" to stay for a while;

6)    Still another report (unspecified) of Mr. Burkhart's involvement appeared to have surfaced during a party at Seidel's residence;

7)    One of the person's (unnamed) who attended the party allegedly said Mr. Cabaccang had discovered "Hina" near his vehicle;

8)    Various Crimestoppers reports relating to Burkhart;

(See Petitioner's Memo. In Supp., at 5-12).  In addition to the above, Petitioner also

proffers his own self-serving offer of proof to establish that someone else killed

Cabaccang.  Specifically, Petitioner states the following:

1)    Petitioner would have testified that he did not stab Cabaccang, but instead became scared and ran away;

2)    Another person, who Petitioner believes to be James Burkhart, stabbed Cabaccang;

    3)    Petitioner would have testified that he felt some guilt about running away when Cabaccang was injured, but that he did not stab or kill anyone;

(See Petitioner's Memo. In Supp., at 15-16).  Moreover, Petitioner interestingly argues that Burkhart's exercise of his fundamental constitutional right to remain silent during the trial somehow implied Burkhart's guilt because "Burkhart did not deny his admissions."  (See Petitioner's Memo. In Supp., at 7-8).  On the other hand, Petitioner simply ignores the overwhelming physical, testimonial, and forensic evidence that clearly implicated Petitioner in Cabaccang's murder.  As argued in the State's Answer, evidence of the Michigan baseball cap, the flannel shirt and plastic gloves, the unusual double bladed murder weapon, Petitioner's injuries, and most importantly, Petitioner's own statements to his former girlfriend, refutes any claim of actual innocence.  Therefore, even if Burkhart's DNA is discovered at the crime scene, such evidence, in light of the overwhelming evidence against Petitioner compared to the obvious lack of *credible* evidence against Burkhart, would not conclusively prove Petitioner's alleged actual innocence. Thus, Petitioner has failed to demonstrate good cause for his discovery requests with respect to his actual innocence claim.

3.    Good Cause Does Not Exist Where Petitioner Is Embarking On A Fishing Expedition In Order To Develop His Ineffective Assistance Of Counsel Claims.

In his Motion, Petitioner claims that DNA testing is important to establish his ineffective assistance claims because:  1) Petitioner has asserted trial counsel was ineffective in relation to forensic testing; 2) Obtaining scientific evidence pointing toward a third party would constitute a persuasive additional basis for establishing that trial counsel's shortcomings were prejudicial to Petitioner.  Petitioner's assertions do not constitute good cause.

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  Strickland v. Washington, 466 U.S. 668, 690 (1984).  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id., at 690.  At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id. The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Id.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.  Id., at 691.

Here, trial counsel's strategic decision not to pursue independent DNA testing does not constitute ineffective assistance of trial counsel *per se*.  In fact, the *lack of* strong DNA evidence conclusively placing Petitioner at the crime scene, not only worked to Petitioner's favor, but also allowed Petitioner to strategically "argue any and all theories of the case that are reasonably likely to lead to an acquittal or to a verdict on a lesser charge", and not concede the "identification issue".  As indicated in the Respondents' Answer, this trial strategy was knowingly adopted by the Petitioner against his trial counsel's reasonable and professional advice.  (See Respondents' Answer, at 95-96).  Indeed, engaging in an independent DNA analysis of the prosecution's evidence would be have undoubtedly subjected Petitioner to the dangerous risk that Petitioner's DNA would be conclusively discovered at the crime scene.  Obviously, this type of damaging forensic evidence would have not only contradicted Petitioner's ill-advised strategy not to concede the identification issue, but also would have undoubtedly strengthened the prosecution's case.  Thus, trial counsel's decision not to subject the prosecution's evidence to DNA testing was based on an *informed* strategic decision, and therefore, was within the wide range of reasonable professionally competent assistance.  Because Petitioner cannot prove the first prong of the <u>Strickland</u> analysis, attempting to prove the second "prejudice" prong would be irrelevant.  Thus, any results from additional DNA testing would be inconsequential to

Petitioner's ineffective assistance of trial counsel claims.  Accordingly, Petitioner has failed to demonstrate good cause for his discovery requests with respect to his ineffective assistance of counsel claims.

        4.      Good Cause Does Not Exist Where Petitioner Is Embarking On A Fishing Expedition In Order To Develop His Claims Of <u>False Or Misleading DNA Testimony.</u>

Lastly, Petitioner's argues that additional discovery is relevant to prove "claims of false or misleading evidence".  Petitioner's allegations are unfounded.  In the instant Motion, Petitioner alleges that the State's expert, Joanne Furuya ("Ms. Furuya"), *possibly* provided false or misleading testimony at trial. However, as argued in the State's Answer, the DNA trial testimony was neither false nor misleading.  (See Respondents' Answer, at 87-89).  At trial, Furuya was asked specific questions about her *actual* analysis of specific items of evidence that were submitted as trial exhibits.  On the other hand, at an evidentiary hearing on May 30, 2002, Mr. Barrett asked Ms. Furuya *hypothetical* questions about DNA testing.  Nevertheless, at the May 30, 2002 evidentiary hearing, the state court allowed Mr. Barrett, an opportunity to thoroughly question Ms. Furuya regarding her analysis of the evidence.  (See Respondents' Answer, Vol. 10, Exh. "AA"). Clearly, Mr. Barrett should have questioned Ms. Furuya, who was under oath at the time, about Petitioner's present issues of whether the laboratory:  1)  attempted less than the lab director claimed; 2) failed to disclose all the results;  3)  simply

-16-

botched the testing process. (See Motion, at 33). To allow Petitioner additional opportunities at discovery of these allegations essentially amounts to a fishing expedition, and thus, would not constitute good cause. See Stouffer v. Reynolds, 168 F.3d 1155 (10th Cir. 1999) (where initial DNA tests were inconclusive, petitioner's request to retest the DNA with more sophisticated and advanced DNA techniques does not necessarily constitute good cause under Rule 6(a)). Contrary to Petitioner's allegations, the State has never denied the defense an opportunity to independently test the evidence prior to the commencement of Petitioner's jury trial.

Finally, Petitioner's "Requested Order" in the instant Motion that "the State produce trial evidence for defense DNA testing", is essentially the same relief Petitioner requests in his habeas petition. Therefore, granting Petitioner's instant Motion would be tantamount to granting Petitioner's 28 U.S.C. § 2254 Petition. However, because the State argued that Petitioner's actual innocence claim was procedurally defaulted, granting Petitioner's instant discovery request to conduct further DNA testing would be inappropriate.

## III. **CONCLUSION.**

Based upon the foregoing reasons, as well as the arguments advanced in the *Respondents' Answer to Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, Filed on December 22, 2004,* Respondents' respectfully requests that this Honorable Court deny Petitioner Taryn Christian's First Motion For Leave To Conduct Discovery.

DATED:  Wailuku, Hawaii, <u>May 4, 2006</u>.

Respectfully submitted,

DEPARTMENT OF THE PROSECUTING ATTORNEY
DAVELYNN M. TENGAN,
PROSECUTING ATTORNEY


By<u>  /s/ Peter A. Hanano          </u>
   PETER A. HANANO
   Deputy Prosecuting Attorney
   County of Maui
   Attorney for Respondents