ORIGINAL

KEITH SHIGETOMI, # 3380
Pacific Park Plaza, Suite 1440
711 Kapiolani Boulevard
Honolulu, Hawaii 96813
Telephone: 808-596-0880

MARK BARRETT, OK Bar # 557
P.O. Box 896
Norman, Oklahoma 73070
Telephone: 405-364-8367

ATTORNEYS FOR PETITIONER

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 11 2006

at 8 o'clock and 49 min, P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TARYN CHRISTIAN, | ) | CIV NO. 04-00743 DAE-LEK |
| | ) | |
| Petitioner, | ) | PETITIONER'S REPLY |
| | ) | REGARDING MOTION FOR LEAVE |
| | ) | TO CONDUCT DISCOVERY |
| vs. | ) | |
| | ) | |
| RICHARD BISSEN, Acting | ) | |
| Director, State of Hawaii | ) | |
| Department of Public Safety, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Respondent. | ) | |

## I. Nature of Requested Discovery – Reply to Respondent's Statement of Relevant Facts

Respondent emphasizes that much discovery was provided pretrial.

However, important discovery has not been conducted.

This includes the long-requested but never-completed DNA testing.

Notes and other data connected with previous DNA testing are critical to analysis of the

DNA issue. An audio expert's tape enhancement has already cast both a tape of a 911 call and a

tape of a conversation with Mr. Christian in new light. Since clarification already has occurred,

analysis of digital copies made from originals is essential to assuring the tape analysis is as

1

complete as reasonably possible.

Respondent's comments about Lori Smith's pretrial handling of discovery are not relevant to the current issue. From the Petitioner's perspective, the discovery story is one of never being able to obtain some of the most important items, such as the physical evidence needed for DNA testing. Petitioner's current attorneys – not having been present at the time of the events described by Respondent – cannot concur with Respondent's version of the facts in respect to Ms. Smith.

Regardless, Petitioner's request is that the DNA evidence and tapes go to recognized experts. There is no intention that Ms. Smith be in the chain of custody of those items. As to papers which may be turned over, Petitioner's counsel intends to make enough copies that no one person would be capable of losing the discovery.

### A. DNA Testing

Biological evidence was gathered at the crime scene.

The relevance of that evidence cannot be seriously disputed.

On December 18, 1995, the Maui County prosecutor's office filed a motion to obtain blood, hair, and saliva samples from Taryn Christian. (Exhibit A to Respondent's Answer to Petition, p. 46-47) In an affidavit accompanying the motion, the prosecutor mentioned the need to compare Mr. Christian's samples with samples from the crime scene. She stated that "various blood, hair, and fiber samples have been recovered by officers of the Maui Police Department from the crime scene where the stabbing occurred and from the interior of Vilmar Cabaccang's vehicle ..." (Exhibit A to Respondent's Answer, pp. 48-49)

DNA testing was attempted on only three items: a cap, a knife and a jacket. (Testimony

2

of Joanne Furuya, forensic director of Honolulu Police Department Laboratory. Exhibit AA of Respondent's Answer, p. 8).

Ms. Furuya testified that DNA testing might be successful from other items, such as swabs from the sidewalk:

> My description of the report says reddish blood-like stains are visible, so it would indicate to me that possibly DNA testing would be successful.

(Exhibit AA, pp. 10-11) She noted that in 2002, when she was testifying, the technology had advanced to the extent that DNA results can be obtained from very small samples. (Exhibit AA, pp. 9-10)

Three items which Maui police took into evidence (Items 12, 12A, and 12B) are each described as a "cotton tip swab containing a blood-like sample obtained from blood-like spatters on the sidewalk at the crime scene." (Exhibit Z to Respondent's Answer to Petition, p. 1237) Witnesses described Vilmar Cabaccang as being stabbed on the ground and remaining on the ground after he was stabbed. Thus, the blood could only be Vilmar Cabaccang's if it was first transferred to someone else and then dripped from that second person.

Significantly, employees of a Kihei convenience store described a man coming into the store on the night of the homicide with an injured hand. (Exhibit Z to Respondent's Answer to Petition, pp. 1251-54 ; Exhibits 28-C and 28-D to state post-conviction application)

No evidence connected Taryn Christian with this hand injury.

Callers to Crimestoppers identified a man in a composite police sketch of Cabaccang's assailant as James Burkhart. (Exhibit Z to Respondent's Answer to Petition, pp. 1256-58; Exhibit 28-F to state post-conviction application) Even Helen Beatty, with whom Mr. Burkhart

3

was residing not long after the homicide, thought the sketch looked like James Burkhart. (Exhibit Z to Respondent's Answer to Petition, p. 1278; Exhibit 36 (4) -C to state post-conviction application) Various other reports of Burkhart's involvement in the homicide were received by police. (Exhibit Z to Respondent's Answer, pp. 1262-65; Exhibits 28-I, 28-J, and 28-K to state post-conviction application)

In addition, at least two persons were prepared to testify at Mr. Christian's trial that James Burkhart had confessed to them. (Trial transcript, Vol. 9, pp. 4 and 6)

An audio expert determined that Burkhart's name was spoken by someone just after the homicide. (Exhibit Z to Respondent's Answer, p. 1510 – March 2002 affidavit of John J. Mitchell)

On the evening of the homicide, Mr. Burkhart was scheduled to visit at a residence a few houses down from the site of the homicide. **State v. Christian,** 88 Haw. 407, 967 P.2d 239 (1998). Witnesses and police were discussing Mr. Burkhart as a suspect immediately after the homicide. (Trial Transcript, Vol. I, p. 60)

The need thus is strong to conduct DNA testing on the physical evidence to determine if Mr. Burkhart's genetic profile was at the crime scene.

Mr. Christian has been requesting the DNA testing since well prior to trial. At a November 20, 1996 pretrial proceeding, the prosecutor acknowledged her awareness that Mr. Christian personally was advocating DNA testing:

> ... I have to continue trial to complete DNA testing and I know that's one of the things that the Defendant wanted Mr. Jung to do, which not may private parties engage in themselves, the payment of DNA testing, but the government is prepared to go forward with that at this time ....

4

(Transcript of November 20, 1996 hearing, p. 19, lines 14-19)

There is a reasonable chance that DNA testing will elucidate important issues in the habeas case, including innocence and ineffective assistance of counsel issues.

The motion thus should be granted to permit DNA testing.

### B. Other Requested Items

Two persons were prepared to testify at Mr. Christian's trial that James Burkhart had admitted to killing Vilmar Cabaccang. (Trial transcript, Vol. 9, pp. 4 and 6) Police received second-hand reports of other Burkhart confessions. (Exhibits 28-I and 28-J to Mr. Christian's Rule 40 Petition)

Considering the known record of information implicating Burkhart, it is reasonable to question whether authorities have received additional information regarding Burkhart that would tend to incriminate him in the Cabaccang homicide.

All this information would be relevant to Mr. Christian's actual innocence claim. It also could be useful in determining the extent to which various constitutional violations were prejudicial to Mr. Christian.

Thus, the Court should issue an order requiring respondent to (1) determine whether and to what extent authorities have received, up to the current time, information inculpating Mr. Burkhart, (2) provide this information to Petitioner's counsel within a reasonable period of time, (3) remain under a continuing duty to provide Petitioner's counsel with information inculpating James Burkhart.

Other items requested in discovery are also of considerable importance to the determination of the habeas claims. For example, words which otherwise might go unheard,

5

may be known through original tape recordings being provided to Petitioner's audio expert.

Although trial counsel undoubtedly had access to some physical evidence prior to trial, a review of the evidence will assure that (1) current counsel is abreast of physical evidence issues and (2) the photographic record of the evidence is adequate.

## II. Response to Argument

### A. Rules

Respondent has emphasized the word "dismissal," page 7 of Respondent's Memorandum in Opposition to Petitioner Taryn Christian's First Motion for Leave to Conduct Discovery.

It would be inappropriate if – after Mr. Christian having spent literally a decade trying to obtain DNA testing – the testing were denied due to unintentional, though inexcusable, departures from the rules.

Those associated with Mr. Christian regret the rule violations and hereby apologize for them both to the Court and to opposing counsel.

However, violations such as failure to use appropriate citations to the record should not be a basis for disregarding a party's position. **Quan v. Gonzales, 428 F.3d 883, 886 (9th Cir. 2005).**

Assuring that no miscarriage of justice occurred is important enough that the Petitioner's motion should be considered on its merits.

It is hoped that the inclusion of record citations in Part I of this Response will at least partially cure the omissions in the original motion and memorandum.

The Petitioner's representatives regret the failure to assure appropriate brevity and to provide an appropriate index to the original motion and memorandum.

### B. The Motion for Discovery Is Appropriately Specific

Petitioner's memorandum, from its outset, contains a specific list of items which should be the subject of DNA testing and contains a specific list of documents associated with the DNA history of this case which should be provided.

Other items are listed with as much specificity as reasonably possible. Petitioner, in his briefing has linked the discovery requests to matters which are at issue in the habeas corpus action.

Contrary to Respondent's assertion, pp. 9-10 of Respondent's memorandum in opposition to discovery, full discovery has not been provided. Most notably, the DNA testing which Mr. Christian has wanted for a decade has never been provided to any meaningful degree.

The assertion that there is overwhelming evidence against Mr. Christian ignores the numerous exonerations that have occurred despite eyewitnesses who were "certain," purported confessions which were believed by factfinders, and various types of evidence that can be misinterpreted due to human mistake and/or guile. Compare, for example, the appellate court's 5-0 affirmance based, in part, on the "strong evidence of guilt" in **Williamson v. State,** 812 P.2d 390, 400 (Okla. Crim. 1991) with Mr. Williamson's eventual exoneration. "DNA Tests Clear Men in Prison," **Daily Oklahoman** (April 16, 1999).

Seeking forensic testing is not a fishing expedition when done to attempt to establish innocence in conjunction with a federal habeas petition, **Toney v. Gammon,** 79 F.3d 693, 700 (8th Cir. 1996), or in support of a claim of ineffective assistance of counsel. See **United States v. Glover,** 97 F.3d 1345 (10th Cir. 1996).

It is unavailing to the Respondent if trial counsel made a conscious decision not to seek

7

DNA testing. Without conducting an investigation to know what facts may be available, trial counsel cannot have a valid strategic plan to omit evidence. **Wiggins v. Smith,** 539 U.S. 510 (2003); **Williams v. Taylor,** 529 U.S. 362 (2000).

Respondent's further contention that the actual innocence claim is procedurally defaulted is inconsistent with Supreme Court authority, especially where, as in Mr. Christian's case, the innocence issue converges with federal constitutional violations. **Schlup v. Delo,** 513 U.S. 298 (1995). See also **Herrera v. Collins,** 506 U.S. 290 (1993)(approaches of various judges differed, but majority indicated that a persuasive claim of innocence would by itself present a due process violation warranting relief).

## III. Conclusion

Petitioner's request for discovery should be granted to address serious issues in a case where many available facts were not presented to the jury, where actual innocence is at issue, where there is significant evidence pointing to the police's original suspect, and where the jury verdict is tainted by the unique circumstance that Mr. Christian was allowed neither to present his own testimony nor to present testimony of the real killer's confessions.

The DNA testing is a decade overdue. That testing and the other discovery requests should be granted.

Dated: Honolulu, Hawaii, 5/11  2006.

Respectfully submitted,

KEITH SHIGETOMI
MARK BARRETT
Attorneys

8

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TARYN CHRISTIAN, ) | CIV NO. 04-00743 DAE-LEK |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| RICHARD BISSEN, Acting ) | |
| Director, State of Hawaii ) | |
| Department of Public Safety, ) | CERTIFICATE OF SERVICE |
| ) | |
| Respondent. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Petitioner's Reply Regarding Motion for Leave to Conduct Discovery was served on Peter Hanano, attorney for Respondent Richard Bissen, by mailing the reply to Mr. Hanano at the Prosecuting Attorney's Office, County of Maui, Wailuku, Maui, Hawaii 96793, on May 11, 2006.

KEITH SHIGETOMI
Attorney for Petitioner

1