# APPENDIX "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| TARYN CHRISTIAN,<br><br>          Plaintiff,<br><br>     vs.<br><br>RICHARD BISSEN, ET AL.,<br><br>          Defendants. | CIVIL NO. 04-00743 DAE-LEK |

### ORDER GRANTING MOTION FOR LEAVE TO CONDUCT DISCOVERY

Before the Court is Petitioner Taryn Christian's ("Petitioner") First Motion for Leave to Conduct Discovery, filed April 19, 2006 ("Motion"). Respondents Richard Bissen, Acting Director, and the State of Hawai`i Department of Public Safety (collectively "Respondents") filed their memorandum in opposition on May 4, 2006. Petitioner filed his reply on May 11, 2006. This matter came on for hearing on May 22, 2006. Appearing for Petitioner were Mark Barrett, Esq., and Keith Shigetomi, Esq., and appearing for Respondents was Peter Hanano, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Petitioner's Motion is HEREBY GRANTED for the reasons set forth below.

### BACKGROUND

Christian filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") on December 22, 2004. In 1997, Petitioner was convicted of one count of murder in the

first degree and one count of theft in the third degree in connection with the stabbing death of Vilmar Cabaccang. Christian was sentenced to life in prison.

On July 14, 1995, Cabaccang and his girlfriend, Serena Seidel, awoke in the middle of the night when they heard a noise outside. Seidel saw someone sitting in Cabaccang's car and the two of them ran outside. The man in the car fled and they gave chase. Seidel stopped to try to get help and, when she caught up to Cabaccang, he and the man were struggling. Cabaccang said the man had a knife and wanted to kill him. Seidel attempted to assist and the man bit her on the wrist. Eventually, the attacker dropped his knife and walked away. Phillip Schmidt, who lived nearby, heard shouting and screaming around 3:00 a.m. When he came out to investigate, he saw a young man walking away. Schmidt found Cabaccang nearby and asked him if the man walking away was the person who injured him. Cabaccang said it was. Cabaccang later died from stab wounds. See State v. Christian, 88 Hawai`i 407, 411, 967 P.2d 239, 243 (1998).

The police initially regarded James "Hina" Burkhart as a suspect but later ruled him out because both Seidel and Schmidt failed to identify him and two witnesses placed him elsewhere at the time of the stabbing. Approximately three days after the incident, Petitioner allegedly confessed to his former

2

girlfriend, Lisa Kimmey. Both Seidel and Schmidt identified Petitioner's photograph as the man at the crime scene. See id. at 411-12, 967 P.2d at 243-44.

The Hawai`i Supreme Court affirmed Petitioner's conviction in a published opinion on November 10, 1998.[1] On January 31, 2000, Petitioner filed a petition for post-conviction relief under Rule 40 of the Hawai`i Rules of Penal Procedure ("Rule 40 Petition"). Petitioner also filed a Motion to Produce Evidence for Inspection and Testing on April 23, 2002. On May 2, 2002, the circuit court denied his Rule 40 Petition without a hearing. Petitioner filed a motion for reconsideration on May 13, 2002. The court held a hearing on the motion to produce evidence and the motion for reconsideration, but denied both motions. The Hawai`i Supreme Court affirmed the decision.

Petitioner raises the following grounds for federal habeas relief: 1) deprivation of his right to testify on his own behalf ("Ground One"); 2) improper exclusion of Burkhart's confessions ("Ground Two"); 3) ineffective assistance of trial counsel for failure to present available exculpatory evidence, adequately investigate the facts, and conduct necessary forensic testing ("Ground Three"); 4) actual innocence ("Ground Four"); 5) admission of improper identification evidence ("Ground Five"); 6)

---

[1] The supreme court reversed Petitioner's conviction of use of deadly or dangerous weapon in the commission of a crime.

3

admission of false and/or misleading evidence ("Ground Six"); 7) ineffective assistance of appellate counsel ("Ground Seven"); and 8) ineffective assistance of trial counsel for improper advice regarding his right to testify and defective closing argument ("Ground Eight"). [Mem. in Supp. of Petition at i-ii.]

Petitioner filed the instant Motion seeking to conduct discovery to support his claims. Petitioner seeks a court order requiring Respondents to produce various items, which he will submit for DNA testing at his own expense. He also seeks tape recordings, video tapes, photographs, transcripts, other physical evidence, documents relating to the case, and information about the prosecution's witnesses and any informants. Petitioner asks the Court to construe the Motion as a "continuing request" until the Petition's resolution. [Mem. in Supp. of Motion at 1-5.]

Petitioner argues that there is compelling evidence that it was Burkhart who stabbed and killed Cabaccang. When Seidel gave a physical description of the suspect at the crime scene, one of the police officers responded: "That sounds like James Burkhart." [Id. at 5.] Burkhart was the first suspect in the case and, on the night of the stabbing, he was apparently in Seidel's apartment before Cabaccang arrived. There were also reports of multiple Burkhart confessions. [Id. at 6.] Two Gas Express employees reported that, on the night in question, a man entered the store around 3:00 a.m. or later. His right hand was

injured and soiled with blood.  They provided the police with a description of the man and Burkhart allegedly matched the composite sketch drawn from their descriptions.  [Id. at 6-7.] According to Jeff Makekau, his brother David traded a double blade knife like the one believed to have killed Cabaccang to Burkhart for drugs.  [Id. at 7.]  At Petitioner's trial, Burkhart took the Fifth Amendment and did not deny making statements that he killed Cabaccang.  [Id. at 7-8, 13.]  The enhanced version of a 911 call from the crime scene reveals that, as he lay dying, Cabaccang spoke Burkhart's name.  Various police reports include accounts of Burkhart's confessions.  Petitioner claims that a police detective attempted to cover up one of these reports, even though the detective acknowledged that the police had evidence they arrested the wrong man.  [Id. at 8-10.]  Another detective visited Burkhart at the Maui Community Correctional Center because of reports that Burkhart was bragging about being responsible for Cabaccang's death.  [Id. at 10.]  At Petitioner's trial, defense counsel made an offer of proof regarding the testimony of two witnesses who would testify that Burkhart confessed to killing Cabaccang, but the trial court excluded all testimony that Burkhart confessed.  [Id. at 10-11.]

Petitioner also argues that the prosecution's case was largely based upon his recorded conversation with Kimmey, during which he allegedly confessed.  He states that the jury was given

5

a redacted version of the recording that was difficult to hear. He claims that an enhanced version of the recording makes it clear that, although Petitioner was present near the time of the stabbing, he denied being responsible for Cabaccang's death. Petitioner argues that, had he been allowed to testify, he would have been able to clarify the contents of the tape. He would have testified that he did not stab Cabaccang, but felt guilty about running away when Cabaccang was injured. Petitioner would have testified that he believed Burkhart stabbed Cabaccang. [Id. at 14-16.] Petitioner argues that testing the biological evidence is essential to his efforts to prove that he was not the one who stabbed and killed Cabaccang.

Petitioner states that the Maui Police Department ("MPD") made a formal request to Joanne Furuya, director of the Honolulu Police Department ("HPD") Crime Lab, to conduct blood typing and DNA comparisons on evidence in this case, but this was never done. He also requested DNA testing prior to his trial and the court granted the prosecution a trial continuance to conduct the testing. Davelynn Tengan, the deputy prosecutor, informed the court that the prosecution intended to send the evidence to the FBI in Washington D.C. for testing. Petitioner states that the defense never received FBI test results. At trial, Furuya testified that there were insufficient samples to test some areas of blood found at the scene. Petitioner now argues that DNA

testing should have been possible on any blood found. Further, current DNA testing is even more advanced than testing available at the time of his trial. [Id. at 17-18.]

Petitioner acknowledges that habeas petitioners are not entitled to conduct discovery as a matter of right, but argues that discovery would help the courts make a reasonable determination of his claims. [Id. at 20.] Petitioner also contends that he has a constitutional right to discovery of evidence establishing his actual innocence. [Id. at 24.] Further, Petitioner argues that DNA testing is relevant to his claim that counsel's ineffective assistance prejudiced him and his claim that Furuya gave misleading testimony about the government's ability to conduct DNA testing. Petitioner therefore argues that there is good cause for full discovery to develop his claims. [Id. at 32-35.]

Respondents filed their memorandum in opposition to the Motion on May 4, 2006. According to Respondents, the prosecution continually provided Petitioner with discovery materials during the pendency of the criminal proceedings. Dennis Jung, Esq., Petitioner's counsel at the time, requested and had access to both physical evidence found at the scene and audiotapes of the 911 calls. The trial court later appointed Anthony Ranken, Esq., to represent Petitioner and the prosecution promptly provided him with discovery materials, as well as on-going discovery prior to

trial. [Mem. in Opp. at 2-5.] According to Respondents, Petitioner had access to, and copies of, most, if not all, of the items he requests in the instant Motion. Respondents therefore argue that Petitioner has not established good cause to conduct discovery.[2] [Id. at 9-10.]

Respondents further argue that good cause does not exist because Petitioner merely seeks discovery as a fishing expedition to develop his actual innocence claim. They argue that Petitioner has not pointed to any credible evidence that Burkhart was the actual killer. Respondents contend that the evidence against Petitioner was overwhelming. Thus, even if DNA evidence places Burkhart at the scene, it does not conclusively establish Petitioner's actual innocence. [Id. at 11-13.]

Respondents also characterize the Motion as a fishing expedition to develop Petitioner's ineffective assistance of counsel claim. Respondents argue that trial counsel made an informed decision not to pursue independent DNA testing and this decision was within the range of competent assistance. Any results from DNA testing that Petitioner may now obtain are

---

[2] Respondents argue that the Court should deny the Motion because it does not comply with the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). The Court cautions Petitioner that failure to follow the Local Rules in the future may result in sanctions, but the Court declines to deny the Motion for non-compliance with the Local Rules. Petitioner's non-compliance did not prejudice Respondents and the Motion raises important discovery issues that should be addressed on the merits.

8

therefore irrelevant. [Id. at 14-16.]

Respondents further argue that Petitioner's claim that Furuya provided false or misleading testimony at trial is unfounded. At trial, she testified regarding her actual analysis of the evidence submitted as trial exhibits. In contrast, at the hearing for the evidentiary motion in the Rule 40 proceeding, Petitioner's counsel asked Furuya hypothetical questions about DNA testing. At that time, counsel could have asked her about the issues Petitioner raises in the instant Petition, *i.e.* whether the lab actually conducted the tests she claimed they did, whether the lab disclosed all the results, and whether the lab performed the tests properly. Respondents argue that to allow Petitioner another opportunity to question Furuya would be an improper fishing expedition. [Id. at 16-17.]

Finally, Respondents point out that the relief Petitioner seeks in the instant Motion, production of trial evidence for DNA testing, is the same relief requested in his Petition. They argue that granting the Motion would be tantamount to granting the Petition, which would be improper because Petitioner's actual innocence claim was procedurally defaulted. [Id. at 17.]

Petitioner filed his reply on May 11, 2006. He argues that Respondents' emphasis on the pretrial discovery that the prosecution provided is misplaced. The important discovery

9

requested in the Motion, in particular the DNA testing, was never provided. [Reply at 1-2.]

Prior to trial, the prosecution filed a motion to obtain blood, hair, and saliva samples from Petitioner to compare them with samples from the crime scene and inside Cabaccang's vehicle. [Id. at 2.] At the hearing during Petitioner's Rule 40 proceeding, Furuya testified that the HPD lab only attempted DNA testing on a cap, a knife, and a jacket. Petitioner argues that DNA testing may be successful on items that were not tested at the time of his trial, including swabs MPD took from blood-like stains on the sidewalk. Petitioner reiterates that DNA testing could support his claim that Burkhart was at the scene of the crime, which will bolster his actual innocence and ineffective assistance of counsel claims. [Id. at 2-5.]

Petitioner also argues that, in light of the many second-hand reports that MPD had of Burkhart confessions, it is reasonable to believe that MPD has additional information that would incriminate Burkhart. That information would bolster Petitioner's actual innocence claim and his other claims that his constitutional rights were violated. [Id. at 5.] Petitioner acknowledges that his trial counsel had access to some of the evidence prior to trial, but argues that his current counsel needs to review the evidence to familiarize himself with the physical evidence issues and to confirm that the record of the

10

evidence is accurate. [Id. at 6.]

Petitioner argues that he has identified the requested discovery with sufficient specificity and has established that the discovery is necessary to his claims. Petitioner argues that the evidence against him cannot be considered overwhelming in light of the evidence implicating Burkhart and that forensic testing to support actual innocence or a claim for ineffective assistance of counsel is not a fishing expedition. Petitioner further argues that it is irrelevant that his trial counsel made a conscious decision not to seek DNA testing because he did not conduct a sufficient investigation to form a valid strategy. Finally, he argues that his actual innocence claim is not procedurally defaulted under United States Supreme Court case law. [Id. at 7-8.]

## DISCUSSION

Unlike civil litigants, a habeas petitioner is not presumptively entitled to discovery. See Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999). "Habeas is an important safeguard whose goal is to correct real and obvious wrongs. It was never meant to be a fishing expedition for habeas petitioners to explore their case in search of its existence." Id. at 1067 (citations and quotation marks omitted).

Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part: "A

judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a) is meant to be consistent with the Supreme Court's decision in Harris v. Nelson, 394 U.S. 286 (1969). See Rule 6(a), 28 U.S.C. foll. § 2254, advisory committee's note (1976 Adoption). In Harris, the Supreme Court stated that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. at 300. The Ninth Circuit has held that a court must order discovery where it is "essential for the habeas petitioner to develop fully his underlying claim." Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005) (citation and internal quotation marks omitted). The Ninth Circuit has affirmed a district court's order of discovery where the petitioner's claims did "not appear purely speculative or without any basis in the record." McDaniel v. United States Dist. Court for the Dist. of Nevada, 127 F.3d 886, 888 (9th Cir. 1997).

A petitioner need not prove that he will ultimately prevail on his underlying claims in order to obtain discovery. See Pham, 400 F.3d at 743 (citing Bracy v. Gramley, 520 U.S. 899, 909 (1997) ("It may well be, as the Court of Appeals predicted,

that petitioner will be unable to obtain evidence sufficient to support a finding of actual judicial bias in the trial of his case, but we hold that he has made a sufficient showing . . . to establish 'good cause' for discovery." (alteration in original)). Further, whether a petitioner may conduct discovery is not contingent upon whether there is to be an evidentiary hearing. See Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997). A court, however, should not grant a discovery request where it does not have a valid habeas petition before it, nor should it grant discovery where the petition has exhausted and unexhausted claims. See Calderon v. United States Dist. Court for the N. Dist. of Cal., 144 F.3d 618, 621 (9th Cir. 1998).

The Court has reviewed the current record and it appears that the following claims are exhausted: Ground One, Ground Two,[3] Ground Three, Ground Seven, and Ground Eight, with the exception of Petitioner's claim that trial counsel rendered ineffective assistance in advising him about his right to testify. The Court, however, notes that the remainder of Petitioner's claims may be procedurally defaulted.[4] These claims

---

[3] In the Petition, Christian alleged Fifth Amendment, Sixth Amendment, and Fourteenth Amendment violations in Ground Two. In his reply in support of the Petition, Christian conceded that he did not exhaust the Fifth Amendment claim and expressly abandoned that portion of Ground Two.

[4] This Court emphasizes that this is merely the Court's inclination and, at this point, the Court does not make any
(continued...)

13

would not be subject to habeas review unless Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A petitioner can establish a fundamental miscarriage of justice if he can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"[5] Murray v. Carrier, 477 U.S. 478, 496 (1986); see also Schlup v. Delo, 513 U.S. 298, 326-27 (1995). In order to meet this probability standard, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327.

To the extent that there are claims that may have been procedurally defaulted, Petitioner appears to primarily rely on the fundamental miscarriage of justice exception to excuse any

---

[4](...continued)
findings or recommendations regarding the procedural or substantive merits of Petitioner's claims.

[5] A claim that the petitioner's actual innocence excuses his procedural default is distinguishable from a substantive actual innocence claim, such in Herrera v. Collins, 506 U.S. 390 (1993), where the petitioner argued that, even assuming that there were no errors in his trial and sentencing, the execution of an innocent person would violate the Eighth Amendment. See Schlup, 513 U.S. at 313-14 (distinguishing Herrera). Petitioner alleges a substantive actual innocence claim in Ground Four. The Court expresses no opinion regarding the merits of that claim.

procedural default. He argues that the constitutional violations he alleges were likely to have resulted in the conviction of an innocent person. [Mem. in Supp. of Petition at 28.] In the instant Motion, Petitioner argues that discovery is necessary to support his argument that his actual innocence establishes the fundamental miscarriage of justice exception to the procedural default doctrine. [Mem. in Supp. of Motion at 5.]

Petitioner raises plausible arguments that discovery could support his actual innocence argument. For example, DNA testing of the physical evidence at the crime scene could prove that a third person was present, which would bolster Petitioner's argument that someone else stabbed Cabaccang. Comparison of Petitioner's bite pattern to the bite mark Seidel obtained while struggling with Cabaccang's attacker could also support that argument. Petitioner's actual innocence argument does not appear to be purely speculative, nor can this Court say that his argument is without any basis in the record. See McDaniel, 127 F.3d at 888. The Court finds that discovery is essential for Petitioner to fully develop his actual innocence argument, which could allow the federal court to consider the merits of claims that may have been procedurally defaulted. See Pham, 400 F.3d at 743. Petitioner has therefore established good cause to conduct limited discovery to support his actual innocence argument. See Rule 6(a), 28 U.S.C. foll. § 2254.

15

## CONCLUSION

On the basis of the foregoing, Petitioner's First Motion for Leave to Conduct Discovery, filed April 19, 2006, is hereby GRANTED. The parties shall meet and confer by June 26, 2006 to develop a discovery plan and shall submit their written proposal (or proposals, if there has not been an agreement) to the Court by June 28, 2006. A discovery conference shall be held in Court on June 30, 2006 at 9:00 a.m. to discuss reasonable limitations on Petitioner's discovery and to determine the procedures for the parties to submit evidence obtained in discovery to the Court. Mainland counsel may participate via telephone conference, if he wishes to do so. Petitioner may commence discovery after the discovery conference.

After the parties have had the opportunity to conduct discovery and to submit new evidence to the Court, the Court will issue its findings and recommendations regarding the procedural and substantive merits of the Petition. The Court reiterates that it makes no findings and recommendations regarding the Petition at this time.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, June 14, 2006.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**TARYN CHRISTIAN V. RICHARD BISSEN, ET AL.; CIVIL NO. 04-00743
DAE-LEK; ORDER GRANTING MOTION FOR LEAVE TO CONDUCT DISCOVERY**

17