# APPENDIX "C"

NO. 20804

## IN THE SUPREME COURT OF THE STATE OF HAWAII

| | |
|---|---|
| STATE OF HAWAII, | CR. NO. 95-0389 |
| Plaintiff-Appellee. | |
| vs. | APPEAL FROM JUDGMENT FILED MAY 29, 1997 |
| TARYN CHRISTIAN, | SECOND CIRCUIT COURT |
| Defendant-Appellant. | HONORABLE E. JOHN MCCONNEL Judge |

## DEFENDANT-APPELLANT'S OPENING BRIEF

and

## CERTIFICATE OF SERVICE



PAMELA O'LEARY TOWER 6152
Suite 2760, Pacific Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Tel.: 537-4541

Attorney for Defendant-Appellant

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Points of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Standards of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Statements of Points on Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    I.    The trial court erred in denying Defendant his constitutional and statutory right to testify . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    II.    The trial court erred in denying Defendant's motion for new trial wherein he argued that the curt should have allowed him to testify. . . . . . . . . . . . . . 21

    III.    The trial court erred in denying Defendant's request to admit evidence another person confessed to committing the crime with which Defendant was charged, therefore denying him his constitutional right to a fair trial . . . . . . . . . 22

        A.    The trial court applied the wrong standard for reviewing Defendant's proffered evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        B.    Even if the trial court applied the correct standard for reviewing Defendant's proffered evidence, the court erred in finding that the evidence was not sufficiently trustworthy . . . . . . . . . . . . . . . 24

    IV.    Defense counsel provided Defendant with ineffective assistance by advising him it was too late for him to testify . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Relevant portions of Constitutional Provisions, Statutes, Ordinances, Regulations, or Rules Involved. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Statement of Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

i

## TABLE OF AUTHORITIES

Cases

*Boyd v. United States*, 586 A.2d 670 (D.C. App. 1991) . . . . . . . . . . . . . . . . . . . 15

*Burks v. State*, 876 S.W.2d 877 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1114, 115

    S. Ct. 909, 130 L. Ed. 2d 791 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Briones v. State*, 74 Haw. 442, 848 P.2d 966 (1993) . . . . . . . . . . . . . . . . . . . . . 31

*Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038 (1973) . . . . . . . . . . . 24, 26,28

*Culberson v. State*, 412 So. 2d 1184 (Miss. 1982) . . . . . . . . . . . . . . . . . . . . . . 16

*Dan v. State*, 76 Haw. 423, 879 P.2d 528 (1994) . . . . . . . . . . . . . . . . . . . . . . . 12

*Domingo v. State*, 76 Haw. 237, 873 P.2d 775 (1994) . . . . . . . . . . . . . . . . . . . . 13

*Ephraim v. State*, 627 So. 2d 1102 (Ala. Crim. App. 1993) . . . . . . . . . . . . . . . . 17

*Filipino Fed'n of Amer., Inc. v. Cubico*, 46 Haw. 353, 380 P.2d 488 (1963) . . . . . . . 11

*Holifield v. State*, 599 S.W.2d 836 (Tex. Crim. App. 1980) . . . . . . . . . . . . . . . . 17

*Jones v. State*, 79 Haw. 330, 902 P.2d 965 (1995) . . . . . . . . . . . . . . . . . . .13,17,29,30

*Kealoha v. County of Hawaii*, 74 Haw. 308, 844 P.2d 670, *recon. denied*, 74 Haw. 650, 847

    P.2d 263 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*LaVigne v. State*, 788 P.2d 52 (Alas. Ct. App. 1990), *rev'd on other grounds*, 812 P.2d 217

    (Alas. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mayfield v. State*, 56 Md. App. 541, 468 A.2d 400 (Md. Ct. Spec. App. 1983) . . . . . 17

*People v. Burke*, 179 A.D.2d 994, 574 N.Y.S.2d 859 (N.Y. App. Div. 1991) . . . . . . . 18

*People v. Harami*, 93 A.D.2d 867, 461 N.Y.S.2d 376 (N.Y. App. Div. 1983) . . . . . . 17

*People v. Solomon*, 220 Mich. App. 527, 560 N.W.2d 651 (Mich. Ct. App. 1996) . . . 17

*Perry v. Ruchen*, 713 F.2d 1447 (9th Cir. 1983), *cert. denied*, 496 U.S. 838, 105 S. Ct.

    137, 83 L. Ed. 2d 77 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct 2704 (1987) . . . . . . . . . . . . . . . . . . . 14,20

*Sanchez v. State*, 841 P.2d 85 (Wyo. 1992), *aff'd*, 48 F.3d 1232 (10th Cir.), *cert. denied*,

    116 S. Ct. 109, 133 L. Ed. 2d 62 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 25

*Shea v. City and County of Honolulu*, 67 Haw. 499, 692 P.2d 1158 (1985), *overruled on*

    *other grounds, State v. Moore*, 82 Haw. 202, 921 P.2d 122 (1996) . . . . . . . . . . . 28

ii

*State v. Bates*, 70 Haw. 343, 771 P.2d 509 (1989) . . . . . . . . . . . . . . . . . . 27

*State v. Bunn*, 50 Haw. 351, 440 P.2d 528, *reh'g denied*, 50 Haw. 467, 442 P.2d 460
(1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*State v. Denny*, 120 Wisc. 2d 614, 357 N.W.2d 12 (Wisc. Ct. App. 1984), *aff'd*, 163 Wis
2d 352, 471 N.W.2d 606, *rev. denied*, 474 N.W.2d 107 (Wis. 1991) . . . . . . . . 23

*State v. Higa*, 79 Haw. 1, 897 P.2d 928. *recon. denied*, 79 Haw. 341, 902 P.2d 976 (1995)12

*State v. Krause*, 64 Haw. 522, 644 P.2d 964 (1982) . . . . . . . . . . . . . . . . . . 12

*State v. Lee*, 83 Haw. 267, 925 P.2d 1091 (1996) . . . . . . . . . . . . . . . . . . . 11

*State v. Mabuti*, 72 Haw. 106, 807 P.2d 1264 (1991) . . . . . . . . . . . . . . . . . 26

*State v. Martin*, 62 Haw. 364, 616 P.2d 193 (1980) . . . . . . . . . . . . . . . . . . 12

*State v. Marvas*, 10 Haw. App. 31, 859 P.2d 1380. *cert. denied*, 75 Haw. 581, 863 P.2d 989
(1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*State v. Merino*, 81 Haw. 198, 915 P.2d 672 (1996) . . . . . . . . . . . . . . . . . . 11

*State v. Moore*, 82 Haw. 202, 921 P.2d 122 (1996) . . . . . . . . . . . . . . . . . . 12

*State v. Pudiquet*., 82 Haw. 419, 922 P.2d 1032 (Haw. Ct. App.), *cert. denied*, 82 Haw.
360, 922 P.2d 731 Haw. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*State v. Rabellizsa*, 79 Haw. 347, 903 P.2d 43 (1995) . . . . . . . . . . . . . . . . . 23

*State v. Silva*, 78 Haw. 115, 890 P.2d 702 (Haw. Ct. App. 1995) . . . . . . . . . 12, 15

*State v. Soto*, 84 Haw. 229, 933 P.2d 66 (1997) . . . . . . . . . . . . . . . . . . . . 11

*State v. Toyomura*, 80 Haw. 8, 904 P.2d 893 (1995) . . . . . . . . . . . . . . . . . . 11

*State v. Trainor*, 83 Haw. 250, 925 P.2d 818 (1996) . . . . . . . . . . . . . . . . . . 11

*State v. Tuipuapua*, 83 Haw. 141, 925 P.2d 311 (1996) . . . . . . . . . . . . . . . . . 11

*State v. Valmoja*, 56 Haw. 452, 540 P.2d 63 (1975) . . . . . . . . . . . . . . . . . . 18

*State v. Yoshino*, 50 Haw. 287, 439 P.2d 666 (1968) . . . . . . . . . . . . . . . . . . 12

*Tachibana v. State*, 79 Haw. 226, 900 P.2d 1293 (1995) . . . . . . . . . . . . . . 12, 14
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,18,19,29,30

*Territory v. Kimbrel*, 31 Haw. 81 (1929) . . . . . . . . . . . . . . . . . . . . . . . 11

*Traeger v. State*, 521 P.2d 399 (Okla. Ct. App. 1974) . . . . . . . . . . . . . . . . . 17

*United States v. Oropeza*, 564 F.2d 316 (9th Cir. 1977), *cert. denied*, 434 U.S. 1080, 98
S.Ct. 1276, 55 L. Ed.2d 788 (1978) . . . . . . . . . . . . . . . . . . . . . . . . 28

iii

*United States v. Poland*, 659 F.2d 884 (9th Cir.), *cert. denied*, 454 U.S. 1059, 102 S. Ct. 611, 70 L. Ed. 2d 598 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Slaughter*, 891 F.2d 691 (9th Cir. 1989) . . . . . . . . . . . . . . . 28

*United States v. Walker*, 772 F.2d 1172 (5th Cir. 1985) . . . . . . . . . . . . . . . 17

*Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920 (1967) . . . . . . . . . . . . . . . 25

Statutes

Cal. Evid. Code § 1230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Haw. Rev. Stat. § 801-2 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Other Authorities

Haw. Const. Art. I, §§ 5, 10, 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 31

U.S. Const. amends. V, VI, XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 31

Rules

Haw. R. Evid. 804(b) (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Haw. R. Evid. 804(b)(3) (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Treatises

3 C. Wright, *Federal Practice & Procedure: Criminal 2d* § 551 (1982) . . . . . . . . . . 21

*McCormick on Evidence* § 253 (E. Cleary ed. 3d ed. 1984) . . . . . . . . . . . . . . . 28

876

## STATEMENT OF THE CASE

Defendant-appellant Taryn Christian was convicted of second degree murder, use of a deadly weapon, and attempted theft. (R. Vol. 3 at 592-92.)

The evidence shows that Serena Seidel and her boyfriend, Vilmar Cabaccang, were lying in bed in the early morning hours of July 14, 1995, when they heard something outside. (2/26/97 TR 59:19-21.) Serena looked out the bedroom window and saw someone sitting in Cabaccang's car. (2/26/97 TR 59:23-25; 6:15.) Both Cabaccang and Seidel ran outside. (2/26/97 TR 61:4-5, 21-22.) The man in the car began running away and Cabaccang and Seidel chased him. (2/26/97 TR 62:12-19; 63: 6-9.) At some point, Cabaccang and the man became involved in a struggle on the ground. Seidel joined in that struggle. (2/26/97 TR 66-70.) Eventually, the man broke free and left the scene. (2/26/97 TR 71-72.) Cabaccang lay bleeding on the ground with multiple stab wounds. (2/26/97 TR 71:19-21; 3/3/97 TR 17:4-10.) He later died. (3/4/97 TR 62:19-21.)

Defendant was charged with murdering Cabaccang, as well as using a deadly weapon and attempted theft. (R. Vol. 1 at 11.) One of Defendant's principal theories of defense was that he was not the man who killed Cabaccang. Rather, that person was one James "Hina" Burkhart, who had been a suspect in this murder. (3/5/97(a.m.) TR 26:4-5.) Defendant sought to introduce two witnesses who would testify that Burkhart had told them that he, not Defendant, killed Cabaccang. (3/5/97(p.m.) TR 3:8; 4:6-7.) Outside the presence of the jury, Burkhart informed the court that he would plead the Fifth Amendment and refuse to testify. (3/5/97(a.m.) TR 27:6-8; 28:9-13.) [1] The trial court found Burkhart "unavailable" under HRE 804(b)(3) but denied defendant's request to have his witnesses testify to Burkhart's inculpatory statements, on the ground that Defendant failed to demonstrate the trustworthiness of Burkhart's confessions. (3/5/97(p.m.) TR 19:2-6.)

On February 24, 1997, the parties convened to select a jury. Defendant underwent his first "Tachibana" colloquy. (2/24/97 TR (a.m.) 5:3-25; 6:1-15). Defendant was advised at that time that ". . . although you should consult with your lawyer regarding the decision to testify, it is your decision and no one can prevent you from testifying if you wanted

---

[1] Although Burkhart did not take the witness stand, he was "presented to the jury for the purpose that they may gauge his stature and appearance." (3/5/97(a.m.) TR 32:22-23.)

1

to. Do you understand?" (2/24/97 TR (a.m.) 5:21-24).    The jury was selected and trial proceeded. On Thursday, March 6, 1997, the defense informed the court that it intended to present one final witness, Lori Smith, defendant's mother (3/6/97 TR 3:11-19). Defendant then underwent his second "Tachibana" colloquy wherein he was told again that the decision to testify was his alone and that no one could prevent him from testifying if he chose to do so and further told defendant that the jury would be instructed not to hold his silence against him if he did not testify. (3/6/97 TR (a.m.)4:13-17; 5:2-5). Defendant informed the court that he understood and that he would not be testifying. (3/6/97 TR 4:9-25; 5:1-12). When Mrs. Smith failed to show up to testify for her son, the defense rested. (3/6/97 TR 8:21-22). The State presented a brief rebuttal. (3/6/97 TR 8:21-22, 25.) The court dismissed the jurors until the following Monday morning to settle jury instructions. (3/6/97 TR 21:6-9; 22:8-9.)

The following Monday morning the court reconvened to proceed with closing arguments. (3/10/97 TR 3:17-21.) Just prior to the prosecutor starting her argument, Defendant announced in open court and in full view of the jury that he "wish[ed] to exercise [his] right to testify." (3/10/97 TR 4:2-3.) The court called a recess, dismissed the jury, and reconvened in chambers for a hearing on Defendant's request. (3/10/97 TR 4:18-19.) During that hearing, Defendant's counsel informed the court that he had informed Defendant that "we're beyond that stage of the trial and [I] advised him not to engage in any further outburst in front of the jury because I've [sic] believe it will only hurt his cause and not help him." (3/10/97 TR 5:3-6.) The court asked Defendant if there was anything he wished to say. (3/10/97 TR 5:10-11.) Defendant responded that he had a tape that showed that one of the State's witnesses committed perjury. (3/10/97 TR 4:12-15.) Defense counsel then informed the court that basically, the identity of the person on the tape could not be confirmed and that he had "not even heard the tape." (3/10/97 TR 5:16-25; 6:1-2.) The State argued that Defendant had knowingly waived his right to testify, that the tape was not reliable evidence, and that Defendant failed to inform the State about the tape's existence. (3/10/97 TR 6:14-25; 7:1-12.) The court ruled that it would not reopen the case. (3/10/97 TR 8:13-14.) The court then reconvened and instructed the jury "to disregard any statements made this morning." (3/10/97 TR 8:4-6.)

The jury returned guilty verdicts on all three counts. (R. Vol. 3 at 592-92) Defendant filed a motion for a new trial, with a supporting memorandum and a supplemental supporting memorandum. (R. Vol. 3 at 614, 644.) He argued therein that the trial court erred

in denying his request to introduce evidence of Burkhart's confessions and in denying his request to testify on his own behalf. (R. Vol. 3 at 618, 648-50.) Defendant's counsel also filed a supplemental affidavit in support of Defendant's motion for new trial wherein he avers that he was ineffective in his advice to Defendant regarding Defendant testifying. (R. Vol. 3 at 662-63.) The trial court denied the motion for new trial. (5/29/97 TR 19:12-13.)

Defendant now appeals, arguing that the trial court erred in denying his request to testify, erred in denying his motion for new trial, erred in excluding the evidence that Burkhart had told others that he had murdered Cabaccang, and that his trial counsel was ineffective.

## POINTS ON APPEAL

1.    **The trial court erred when it denied Defendant's request to testify.**

Just prior to the defense resting its case, the court asked Defendant on the record if he wished to testify:

THE COURT: As I discussed with you before the start of the trial, you do have the constitutional right to testify in your own defense. You understand?
THE DEFENDANT: Yes.
THE COURT: And although you should consult with Mr. Rankin, your lawyer, regarding your decision to testify, it is your decision and no one can prevent you from testifying if you choose to do so that. Do you understand?
THE DEFENDANT: Yes.
THE COURT: And if you decide to testify, the prosecutor will be allowed to cross-examine you. You understand that?
THE DEFENDANT: Yes.
THE COURT: You also have the constitutional right not to testify and to remain silent. You understand?
THE DEFENDANT: I understand.
THE COURT: And you understand that if you choose not to testify, that the jury will be instructed that it can not hold your silence against you in deciding your case.
THE DEFENDANT: I understand
THE COURT: It's the understanding of the Court that you do not intend to testify in this case; is that correct?
THE DEFENDANT: That's correct.
THE COURT: And that's your decision?
THE DEFENDANT: Yes.

(3/6/97 TR 4:9-25; 5:1-12.)

When the court reconvened the following Monday morning, and just prior to the

3

879

State beginningits closing argument, the following exchange occurred on the record and in front of the jury:

>THE COURT: . . . We're at the phase of the trial where each side gets its opportunity for what is called their closing argument to you.
>
>Ms. Tengan.
>
>MS. TENGAN: Thank you, your Honor.
>
>THE DEFENDANT: You Honor. I wish to exercise my right to testify --
>
>THE COURT: Wait a minute. Wait a minute.
>
>THE DEFENDANT: -- in front of the jury.
>
>THE COURT: Wait a minute. Excuse the jury, please.
>
>MR. RANKIN: I guess we'd like to meet with your Honor without the jury.
>
>THE DEFENDANT: We're in possession of a tape that shows Serena Seidel lied on the stand. That witnesses have been in the presence --
>
>THE CLERK: All rise. Court will stand in recess.

(3/10/97 TR 3:17-25: 4:1-15.)

The court then convened in chambers outside the presence of the jury to discuss Defendant's request, where the following occurred:

>MR. RANKIN: I have nothing to add. Apparently my client wants a chance to address the Court or the jury.
>
>I've informed him that we're beyond that stage of the trial and advised him not to engage in any further outburst in front of the jury because I've [sic] believe it will only hurt is cause and not help him.
>
>I have nothing further to say. I don't know if my client wishes to bring anything up directly to the Court, if the Court permits it.
>
>THE COURT: Mr. Christian, is there anything you wish to say?
>
>THE DEFENDANT: Yes, there's a tape of a witness that was in the presence of Hina and Serena on more than one occasion and shows that Serena's committed perjury in this court.
>
>MR. RANKIN: Let me just state on this record there's a tape which was delivered to me this morning. It's existence -- alleged existence was made known to me Wednesday or Thursday of the first week of trial. I said I can't do anything without a witness. I need more than a tape. I need the name of a witness. It has never been provided to me.
>
>I believe that I was told that it was impossible for Lori Smith as well as Patricia Mullins to track down this witness, and they were trying -- and as of the end of the trial, I still had only a first name, no way to reach the person, and the tape had not been presented to me.
>
>I've told Mr. Christian if he feels that counsel has been ineffective, he has remedy after trial. I'll also tell him now that there's a possibility-- if the Court finds there's newly discovered evidence which couldn't have been found before

4

trial. a new trial is possible on that grounds [sic]. But I'm not -- obviously I have not even heard the tape. I don't know what we've got if anything.

THE COURT: Anything else?

THE DEFENDANT: No. that is all.

THE COURT: Yes. the Court will not reopen the case. We will proceed with final arguments.

I will caution the defendant that if he makes any further outbursts in front of the jury -- first. not only is his counsel correct it only hurts his case. Secondly, if he continues that, the Court will have no choice but to exclude him from the courtroom. Something that I would be very reluctant to do. but I will ask that there be no further outbursts of that nature.

(3/10/97 TR 4:25; 5:13-21.) The court then reconvened and instructed the jury as follows: "The jury is instructed to disregard any statements made this morning." (3/10/97 TR 8:4-5.)

## 2.    The trial court further erred in denying Defendant's motion for new trial wherein he argued that the court should have allowed him to testify.

Defendant raised the issue of the court's denial of his request to testify in his supplemental memorandum in support of his motion for new trial wherein he argued that when he made the request. it was not too late for the court to allow him to testify on his own behalf. (R. Vol. 3 at 644. 648-50.) The State argued that the court should deny Defendant's motion because during the trial. Defendant's only proffer in support of his request to testify was the existence of an inadmissible tape. (5/29/97 TR 8:19-25; 9:1-12.) The court ruled:

With regard to the belated statement by the defendant, really an outburst in front of the jury as final arguments were about to commence, as Ms. Tengan has pointed out, a recess was taken. The defendant was given an opportunity to make a statement and he again raised this problem of a tape which we don't know exists and which we had no admissible evidence of. So the Court essentially agrees with the State with regard to the motion.

(5/29/97 TR 13:6-14.) The following colloquy then occurred:

MR. RANKIN: Your Honor, on the last point, first of all, I must disagree with Miss Tengan's argument that Taryn's comment about the tape was an offer of proof as to everything he would have testified about. He --

THE COURT:  Well, do you want to make any further evidentiary showing at this time?

MR. RANKIN: Yeah. . . .

. . . .

. . . I want to offer -- make an offer of proof that the defendant would

5

have testified as to the events that occurred. He would have stated his version of what happened, which would have been substantially different from the prosecution's witnesses and would have supported a finding of not guilty on the charges of murder, anyway, and manslaughter.

Also, I want to point out that once he takes the stand he's wide open for cross-examination on any subject, so even if the Court felt his offer of the tape was an offer of proof for his testimony and it was inadmissible, Miss Tengan could have cross-examined him as to anything.

So I think that that's improper.

THE COURT: Well, the more fundamental point, though, you know, is the whole colloquy on Tachibana that was conducted, and he indicated he did not want to testify and waited until literally in the beginning of final argument and makes this statement.

MR. RANKIN: That's why --

THE COURT: I don't think the Court should permit that.

MR. RANKIN: Okay. That's why I cited the Jones case, your Honor, because although Miss Tengan is correct in her description of that case, the Court also did say -- and it may be considered dictum, but the court said that the defendant was free to change his mind about that decision at any time before the end of the trial, and that's I think the importance of that, that that right is protected to that degree.

THE COURT: All right. The motion for new trial will be denied.

(5/29/97 TR 13:16-22; 16: 3-25; 17:1-9; 19:12-13.)

### 3.    The trial court erred when it excluded Defendant's evidence that a third party may have committed the murder.

Defendant sought to introduce evidence that Hina Burkhart had told defense witnesses that he, not defendant, killed the victim here. The first such request occurred prior to the start of the trial:

MR. RANKIN:  . . .  On that one we are offering to prove that James Hina Burkhart made certain confessions to three different people regarding his involvement in the stabbing of Vilmar Cabaccang or in breaking into Cabaccang's car.

THE COURT: Okay.

MR. RANKIN:  And we would ask these be admitted as admissions against penal interest under 804(b)(3) of the rules of evidence.

THE COURT:  That will require a showing of unavailability of Mr. Burkhart, obviously.

MR. RANKIN: I understand, your Honor.

THE COURT: Okay. So --

MR. RANKIN: I'm not prepared to make that showing at this time. I

6

would ask the Court that if we are able to show his unavailability, that that not be excluded at this time.

THE COURT: Fine. If you're able to make a showing of unavailability of Mr. Burkhart, then the Court will conduct a hearing pursuant to Rule 103 to determine the admissibility of these statements.

Okay. So the State's motion is granted in part in that, number one, the unavailability of Mr. Burkhart will have to be established. Further, there will have to be a further hearing pursuant to 103 before any such statements come in.

The court is particularly -- would note for the record that statements tending to expose the declarant to criminal liability and offered to exculpate the accused are not admissible unless there are corroborating circumstances, and I would want to hear some before admitting such testimony.

(2/19/97 TR 3:11-25; 4:1-20.) During the trial, the court again stated its intention to hold a hearing on Defendant's request:

THE COURT: All right. Couple of matters. First, with regard to the exculpatory statements by Mr. Burkhart -- is that his name?

MR. RANKIN: Yes.

MS. TENGAN: That's correct.

THE COURT: Which the defense intends to offer under Rule 804(b)(3). It is incumbent upon the court to make a preliminary finding that sufficient corroboratory evidence has been offered before those statements can be offered or can be admitted.

For the record, we've discussed this in chambers before going on the record, and essentially as I understand it, Mr. Rankin, you would offer these statements toward the end of your case, and the evidence in support of the preliminary finding that you would urge upon the court. It would be a matter of the trial record, anyway; is that it?

MR. RANKIN: Yes, your Honor.

THE COURT: Okay. So we can hold off on that. I just wanted to make it clear for the record that I am prepared to hold a hearing pursuant to Rule 103 of the Rules of Evidence on admission of any such statements.

(3/3/97 TR 3:12-25; 4:1-7.)

During the defense's case, Defendant attempted to call Burkhart to testify. He informed the court in chambers that he would take the Fifth Amendment and refuse to testify:

THE COURT: State your name, please.

MR. BURKHART: James Burkhart.

THE COURT: And you are going to exercise your right not to answer any questions?

MR. BURKHART: Yes.

THE COURT: The Court agrees that he's entitled to take the fifth.

7

It is apparent now that Mr. Burkhart is unavailable within the meaning of Rule 804 of the Hawaii Rules of Evidence.

MR. RANKIN: Can I make an offer of proof of other witnesses at this point?

THE COURT: All right. Well, I want to do this only one time, Mr. Rankin. And I'd prefer to do it later today if you have other witnesses that you can call.

(3/5/97 (a.m.) TR 27:4-8; 28:14-5; 29:1-8.) The court later that day conducted the hearing to determine whether there was corroborating evidence:

THE COURT: . . . We're met [sic] in chambers for the purposes of determining whether there is sufficient corroboratory [sic] evidence to support the statements of three witnesses.

MR. RANKIN: Two witnesses.

THE COURT: Two witnesses. I'm sorry, which Mr. Rankin wants to offer. These are statements by witnesses which are offered pursuant to Rule 804(b)(3) as statements against the penal interest by Mr. Burkhart, namely that he was responsible for the crime which is the subject of this case.

Before such statements can come in under the rule, the Court is required to make a preliminary finding that there has been sufficient corroboration. In the words of the rule, "a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

THE COURT: First, Mr. Rankin, you need to make clear what your offer of proof is, who the witnesses are, what the offer of proof is, and point out or offer evidence as to what corroborating circumstances clearly indicate the trustworthiness of those statements.

MR. RANKIN: . . . Our two witnesses are Mr. William Auld and Patricia Mullins[.]

These are the two witnesses that heard incriminating statement by the witnesses [sic].

Mr. Auld will testify that he shared a jail cell in November or December of 1995 with James Hina Burkhart. That Mr. Burkhart told him that he was the one who stabbed Vilmar Cabaccang and it felt good to feel the blood running down his hands and arms. Further, that Mr. Auld believed Mr. Burkhart was telling the truth.

Ms. Patricia Mullins, who is also standing by ready to testify, would say that she knows James Burkhart. She used to hang around with him quite a bit.

THE COURT: What was the relationship between them?

MR. RANKIN: They were friends. And she also has known the decedent in this case, Vilmar Cabaccang, for a long time and she did hang out, associate

8

with Darryl and Danny Macadangdang, friend of Vilmar's.

She will testify that she had seen --

-- that in the past, considerably before this offense occurred, she had seen Hina, that's James Burkhart, arguing with someone, and that he pulled out a butterfly knife. She will say --

She will say that Hina, a couple of days after Vilmar was killed --

THE COURT: Is there any time frame when Hina supposedly pulled this butterfly knife?

MR. RANKIN: No. She just remembers that was years ago.

She will say she saw Hina a couple days after Vilmar was killed in Kihei, and also about four days after Vilmar was killed and on that second occasion --

THE COURT: Give me the two days. Couple of days after --

MR. RANKIN: Vilmar was killed. Driving in Kihei -- riding, riding in a truck.

THE COURT: That's not when she had a conversation with him.

MR. RANKIN: No. Shortly after that, a couple of days later, she will say she had a conversation with him. She had heard that he was a suspect or that the picture, composite matched him, and she therefore talked to him abut it when she saw him in Kihei about four days after the stabbing, and she told him what he did was fucked up.

He responded, "well, Trish, you know me, I do to do what I got to do." She said, "you didn't have to kill him." He said, "that fucker is stupid for coming after me." She said, "you're stupid. You'll get busted. The girlfriend" -- meaning Vilmar's girlfriend as she intended -- she said, "Vilmar's girlfriend was there, will talk." Hina responded --

Hina responded, "no, I got that bitch wrapped around my finger so good, I'm going to get away with it." Hina further stated that he got what he wanted and used -- said he got happy, which from prior conversations she interpreted as meaning that in some way he got drugs out of what he did.

Finally, that she believed he was telling the truth and later she ran across Hina in jail at a meeting whet they were both serving -- when they were both in jail at Maui Community Correctional Center.

He caught --

THE COURT: She was in jail, too?

MR. RANKIN: She was in jail. In December she went to jail, December of 1995.

He told her, "you better keep your mouth shut." She asked him what he meant. He said, "you better not rat on me."

That's my complete offer of proof. Let me now list the corroborating circumstances under 804(b)(3).

THE COURT: Okay, go ahead.

9

MR. RANKIN.    Corroborating circumstances.    Tesha Santana, the neighbor, did know Hina Burkhart well.    Was friend with him, and told Serena Seidel that Hina was to come to Tesha's house that the night or evening of the stabbing.

There were -- Vilmar's keys were found at the scene and there is no logical explanation for the presence of those keys at the scene, other than the involvement of someone besides Taryn Christian, who would not have access to them and did not know Vilmar and Serena.

The car was apparently unlocked, which means it may have been accessed using keys.    The officer testified already that there was no forced entry.    No evidence of forced entry.

Boisey Pimentel.    Robert Boisey Pimentel, will testify that Hina had a knife that could have been the same one used that was found at the scene, the double bladed knife.

. . .

[S]ounds similar in description to the one used.    Although he remembers it was an unusual knife, he does not remember specifically that it had a split blade.    The size is approximately the same.

And Serena, it was testified by several witnesses that she behaved strangely at the scene.    That she avoided contact with police.    Although Serena said in her testimony that she yelled for someone to call 911 or yelled, help, several witnesses and the 911 tape show that she only yelled the word, Tesha, repeatedly.    Never called for help or 911, and we'll present still another witness as to that this afternoon, that's Judith Laury, indicating that perhaps Serena did not so much want the police there, but wanted someone there who was a friend with James Burkhart, indicating that James Burkhart may have been at the scene.

And Jennifer Santana will testify -- she is also -- she is Tesha's mother, lives there.    She will testify that at the time Burkhart had longish hair on back and that she got two calls within a couple of weeks after the stabbing that Tesha had better keep her mouth shut.    Tesha, of course, had made comments indicating perhaps Hina was involved.

Finally, the last item of corroboration is, I would submit that the statements of Patricia Mullins and William Auld corroborate each other.

(3/5/97(p.m.) 3:5-25; 4-9:1-18.)


The court ruled:    "I'm concluding that the requirements for the rule of the admission of these statements have not been met.    I don't think the trustworthiness of the statements are [sic] clearly demonstrated.    On the contrary, I think they remain quite suspect and under the Rules of Evidence are inadmissible."    (3/5/95(p.m.) 19:2-8.)

## 4.    Defendant was denied his constitutional right to effective assistance of counsel.

Defendant's counsel provided Defendant ineffective assistance of counsel when

10

he told Defendant that it was too late for him to testify and advised him against making further outbursts in front of the jury. (3/10/97 TR 4:45: 5:1-9.) Counsel's statements made during the in-chambers conference are quoted in Point 1 above.

Moreover, defense counsel filed a supplemental affidavit to Defendant's motion for new trial detailing his ineffectiveness assistance with regard to Defendant testifying in his own behalf. In that affidavit, counsel avers that:

> 3. At all times before and during the trial I discouraged Defendant from testifying. It was clear to me that Mr. Christian's decision not to testify, in the original colloquy with the judge near the close of the defense case, was based on my advice to him.
>
> 4. During the few days after the close of the defense case, and before final arguments commenced, Mr. Christian informed me that he had changed his mind and wanted to take the stand. I told him that it was to late, since we had already rested our case. However, he was adamant at that point in his desire to testify and he raised the matter himself in court[.]

(R. Vol. 3 at 662-63 ¶¶ 3, 4.)

## STANDARDS OF REVIEW

**Point 1** of Defendant's Points on Appeal is generally reviewed for whether the trial court abused its discretion. *See Filipino Fed'n of Amer., Inc. v. Cubico*, 46 Haw. 353, 372, 380 P.2d 488, 499 (1963) (holding matter of reopening case within trial court's discretion); *Territory v. Kimbrel*, 31 Haw. 81, 89, (1929)(holding trial court has discretion to reopen case fter its close before submission to jury). Appellate courts, however:

> [A]nswer questions of constitutional law "'by exercising our [] independent constitutional judgment based on the facts of the case.'" *State v. Trainor*, 83 Haw. 250, 255, 925 P.2d 818, 823 (1996) (quoting *State v. Lee*, 83 Haw. 267, 273, 925 P.2d 1091, 1097 (1996)). Thus, we review questions of constitutional law under the "right/wrong" standard. *State v. Toyomura*, 80 Haw. 8, 15, 904 P.2d 893, 900 (1995); *State v. Higa*, 79 Haw. 1, 3, 897 P.2d 928, 930, *recon. denied*, 79 Haw. 341, 902 P.2d 976 (1995). Pursuant to the right/wrong standard, a conclusion of law is not binding upon the appellate court and is freely reviewable for its correctness. (citing *State v. Tuipuapua*, 83 Haw. 141, 145, 925 P.2d 311, 315 (1996); *State v. Merino*, 81 Haw. 198, 219, 915 P.2d 672, 693 (1996)

*State v. Soto*, 84 Haw. 229, 236, 933 P.2d 66, 73 (1997).

11

Although Defendant arguably did not raise a constitutional argument on this point to the trial court, he may raise it on appeal. "Where fundamental constitutional rights are involved, this court will take cognizance of the issue though it is raised in this court for the first time." *State v. Krause*, 64 Haw. 522, 523, 644 P.2d 964, 966 (1982) (citing *State v. Martin*, 62 Haw. 364, 373, 616 P.2d 193, 199 (1980); *State v. Bunn*, 50 Haw. 351, 355, 440 P.2d 528, 532, *reh'g denied*, 50 Haw. 467, 442 P.2d 460 (1968); *State v. Yoshino*, 50 Haw. 287, 290, 439 P.2d 666, 668 (1968)). Defendant's right to testify is a fundamental constitutional right. *See Tachibana v. State*, 79 Haw. 226, 231, 900 P.2d 1293, 1298 (1995); *State v. Silva*, 78 Haw. 115, 122-23, 890 P.2d 702, 709-10 (Haw. Ct. App. 1995).

**Point 2** of Defendant's Points on Appeal is governed by the abuse of discretion standard of review. "The denial of a motion for new trial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion. The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards the rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Pudiquet*, 82 Haw. 419, 426, 922 P.2d 1032, 1039 (Haw. Ct. App.), *cert. denied*, 82 Haw. 360, 922 P.2d 731 Haw. 1996).

**Point 3** of Defendant's Points on Appeal is governed by the right/wrong standard of review. *Kealoha v. County of Hawaii*, 74 Haw. 308, 319, 844 P.2d 670, 676 *reconsideration denied*, 74 Haw. 650, 847 P.2d 263 (1993)(When the admissibility of evidence is determined by application of the hearsay rule, there can be only one correct result, and "the appropriate standard for appellate review is the right/wrong standard.")

*State v. Moore*, 82 Haw. 202, 217, 921 P.2d 122, 137 (1996).

**Point 4** of Defendant's Points on Appeal is governed by the following standard:

Generally, "[i]n assessing claims of ineffective assistance of counsel, the applicable standard is whether, viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases." [*Dan v. State*, 76 Haw. 423, 427, 879 P.2d 528, 532 (1994). In order to establish that the assistance provided was not within that range, "a petitioner must show, 1) that there were specific errors or omissions reflecting counsel's lack of skill,

12

judgment, or diligence: and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *Domingo v. State*, 76 Hawai'i 237, 241, 873 P.2d 775, 779 (1994) (citation and quotation marks omitted).

In the event that defense counsel's lack of skill, judgment, or diligence is established, the petitioner must further demonstrate the withdrawal or substantial impairment of a potentially meritorious defense resulting therefrom. *Domingo*, 76 Hawai'i at 241, 873 P.2d at 779. In the context of faulty advice that allegedly influenced the decision not to testify, a two-prong test must be satisfied. The petitioner must show (1) that, absent defense counsel's failings, the petitioner would have decided to testify, and (2) that there is a reasonable possibility, *see Dan*, 76 Hawai'i at 427, 879 P.2d at 532 ("whether a defense is 'potentially meritorious' requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker"), that his or her testimony could have established or supported an available defense.

*Jones v. State*, 79 Haw. 330, 334-35, 902 P.2d 965, 969-70 (1995).

## STATEMENTS OF POINTS ON APPEAL

I.      The trial court erred in denying Defendant his constitutional and statutory right to testify.

II.     The trial court erred in denying Defendant's motion for new trial wherein he argued that the court should have allowed him to testify.

III.    The trial court erred in denying Defendant's request to admit evidence that another person confessed to committing the crime with which Defendant was charged, therefore denying him his constitutional right to a fair trial.

A.      The trial court applied the wrong standard for reviewing Defendant's proffered evidence.

B.      Even if the trial court applied the correct standard for reviewing Defendant's proffered evidence, the court erred in finding that the evidence was not sufficiently trustworthy.

IV.     Defense counsel provided Defendant with ineffective assistance by advising him it was too late to testify.

13

## ARGUMENTS

I.    The trial court erred in denying Defendant his constitutional and statutory right to testify.

Defendant first argues that the trial court erred in denying him his constitutional and statutory right to testify. The United States Constitution and the Hawaii Constitution both guarantee a defendant's right to testify in his or her own defense. U.S. Const. amends. V, VI, XIV; Haw. Const. Art. I, §§ 5, 10, 14; *Rock v. Arkansas*, 483 U.S. 44; 107 S.Ct. 2704 *(1987)(right to testify which is also found in Compulsory Process Clause of the Sixth Amendment and logically includes a defendant's right to call himself as a witness like other witnesses whose testimony is material and favorable to his defense )* see *Tachibana v. State*, 79 Haw. 226, 231, 900 P.2d 1293, 1298 (1995) (citing *State v. Silva*, 78 Haw. 115, 122-23, 890 P.2d 702, 709-10 (Haw. Ct. App. 1995)). Hawaii has also enacted a statute protecting a defendant's right to testify. Haw. Rev. Stat. § 801-2 (1994).

In *Tachibana*, the Hawaii Supreme Court held that "in order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." 79 Haw. at 236. The court further held that "the ideal time to conduct the colloquy is immediately prior to the close of the defendant's case." *Id.* at 237.

Here, the trial court conducted a colloquy prior to the start of the trial. (2/24/97 TR not in record; colloquy noted on 2/24/97 court minutes sheet.) Just prior to the defense resting its case, the court again asked Defendant if he wanted to testify. Defendant indicated that he did not. (3/6/97 TR 4:5-25; 5:1-12.) The trial court therefore complied with the requirements set forth in *Tachibana*. The court erred, however, in denying Defendant's later request to exercise his right to testify and in threatening Defendant with expulsion from the courtroom if he made any further outbursts of that nature. (3/10/97 TR 7:15-21.)

The trial court did not indicate on the record why it denied Defendant's request to testify. During the in-chambers conference on Defendant's request the State basically argued that Defendant had received the required colloquy and had waived his right to testify. The State further argued that Defendant had put his case forward, that the case was closed, and that the State elected to proceed forward. (3/10/97 TR at 6:15-25; 7:10-12.) The court responded:

14

"Yes, the Court will not reopen the case. We will proceed with final arguments." (3/10/97 TR at 7:13-14.)

The implication in the court's ruling is either that Defendant could not change his mind about testifying once he waived that right, that Defendant waited too long to assert the right to testify, or a combination of both. The *Tachibana* court did not hold that once waived, a defendant may not assert his or her right to testify. Indeed, such a rule would be contrary to the underlying purpose of the *Tachibana* colloquy, which is to preserve a complete record for post-conviction proceedings.

The *Tachibana* court repeatedly noted that an on-the-record colloquy wherein a defendant knowingly and voluntarily waives his or her right to testify facilitates appellate and post-conviction review of the matter:

"[A]dvisement by the court on the record 'preclude[s] postconviction disputes between defendant and counsel over the issue, and facilitate[s] appellate review'" *Tachibana*, 79 Haw. at 233 (quoting *Boyd v. United States*, 586 A.2d 670 (D.C. App. 1991)).

"We agree with the Alaska Court of Appeals' observation 'if the [trial] court does not establish on the record that the defendant has waived his [or her] right to testify, it is extremely difficult to determine at a post-conviction relief hearing whether such a waiver occurred.'" *Id.* at 234 (quoting *LaVigne v. State*, 788 P.2d 52, 55 (Alas. Ct. App. 1990), *rev'd on other grounds*, 812 P.2d 217 (Alas. 1991)).

"The instant case is testament to the proposition that determining whether a particular defendant actually waived his or her right to testify based on evidence presented in a post-conviction proceeding can be an almost impossible task." *Id.*

"'If the trial court does not establish on the record that the defendant understands and knowingly waives his [or her] right to testify, it is difficult to establish at the post-conviction relief hearing whether such a waiver occurred.'" *Id.* at 235 (quoting *Boyd*, 586 A.2d at 679-80)).

Thus, in adopting the on-the-record colloquy rule, the *Tachibana* court was clearly concerned with preserving an adequate record of whether a defendant knowingly waived his or her right to testify. Here, the trial court's first implied ruling -that Defendant could not assert a right he had already waived - flies in the face of the purpose of the rule.

The trial court's second implied ruling made during the in-chambers conference on Defendant's request to testify is that Defendant made the request too late. This ruling too was in error. Although the *Tachibana* court held that the "ideal time" for the colloquy to occur

15

"is immediately prior to the close of the defendant's case," it did not hold that this was the only time that the colloquy could occur. Indeed, the court noted that several other courts that have adopted the colloquy rule have suggested that the colloquy should occur after the close of the defendant's case. *See, e.g., LaVigne v. State,* 812 P.2d 217, 222 (Alas. 1991); *Culberson v. State,* 412 So. 2d 1184, 1186 (Miss. 1982); *Sanchez v. State,* 841 P.2d 85, 89 (Wyo. 1992), *aff'd,* 48 F.3d 1232 (10thCir.), *cert. denied,* 116 S. Ct. 109, 133 L. Ed. 2d 62 (1995).

  The Hawaii Supreme Court rejected that timing in order to avoid prejudice to the defendant that may result from waiting until the after the defense rests. "[I]f the defendant asserts his or her right to testify at that point, the jury might view the defendant's testimony with suspicion because of the fact that it is given after the defense had already rested in and in apparent contravention of the defendant's attorney's wishes." *Id.* at 237. [emphasis added]

  Second, the court specifically noted that a court may not be able to conduct the colloquy until after the defense has rested its case. The court also specifically noted that if "the trial is reopened to allow the defendant to testify," the defendant may not complain about the timing of his or her testimony "unless the defendant can demonstrate that he or she was actually prejudiced[.]" *Id.* at 237. [emphasis added].

  These statements clearly indicate that the Hawaii Supreme Court was concerned about prejudice to a defendant should he or she wait to testify until after the close of his or case. Here, however, Defendant himself decided to assert his right to testify after he had rested his case. He should have been allowed to bear the risk of any prejudice that may have resulted from that decision. Nothing in *Tachibana* points to a different result.

  Two other Hawaii cases also strongly indicate that a defendant may assert his or her right to testify after the close of evidence. In *Silva, supra,* the defendant did not request to testify until "the prosecutor was two sentences into her final argument." 78 Haw. at 121. The court noted:

> The timing of Defendant's request was not an issue raised below or challenged on appeal. In any event, the right involved is essential to due process, and any disruption which may have been caused by allowing Defendant to testify at that point in the jury-waived trial would have been minimal.

*Id.* at n.5 (emphasis added). Allowing defendant here to testify in front of the jury as he demanded would have been just as minimally disruptive as taking the stand in a jury-waived

16

trial.[2]  Moreover. here. the trial court gave no real reason for denying defendant the right to take the stand and if that

In *Jones v. State*. 79 Haw. 330. 902 P.2d 965 (1995). the Hawaii Supreme Court held:

> In the instant case. Jones alleged that his trial counsel had failed to advise him that the decision whether or not to testify was his decision to make and that. despite having signed the written waiver, he was free to change his mind at any time before the end of trial. The circuit court found that Jones's attorney had not failed to so advise Jones and. as we held in section II.A. *supra*. that finding was not clearly erroneous.

79 Haw. at 335 (footnote omitted) (emphasis added).  This passage strongly implies that a defendant is free to change his or her mind "at any time before the end of the trial." and withdraw his or her prior waiver the constitutional right to testify.

Courts in several other jurisdictions have found error in a trial court's denial of a defendant's request to testify made after the close of the evidence. *See People v. Solomon*. 220 Mich. App. 527. 532-35. 560 N.W.2d 651 (Mich. Ct. App. 1996); *People v. Harami*, 93 A.D.2d 867. 461 N.Y.S.2d 376 (N.Y. App. Div. 1983); *Traeger v. State*. 521 P.2d 399 (Okla. Ct. App. 1974); *Holifield v. State*. 599 S.W.2d 836 (Tex. Crim. App. 1980).

In none of these cases. however. did the defendant waive the right to testify on the record during the evidentiary phase of the trial; the defendant simply did not testify.

More importantly, other jurisdictions have held that a trial court erred in refusing a defendant's request to testify on his or her own behalf. made after both sides had closed evidence and after the defendant had previously waived the right to testify.  *See United States v. Walker*. 772 F.2d 1172 (5th Cir. 1985) (defendant informed court that he was emotionally unable to take stand. rested. then requested to testify); *Ephraim v. State*. 627 So. 2d 1102 (Ala. Crim. App. 1993) (defendant expressly waived right to testify during evidentiary phase then changed mind after defense closed); *Mayfield v. State*. 56 Md. App. 541. 558, 468 A.2d 400. 408-09 (Md. Ct. Spec. App. 1983) (defendant rescinded waiver even though request not made

---

[2]  Although Silva involved a bench trial, there is no reason to believe defendant's testimony here, had he been allowed to take the stand, would have been any longer or shorter than if he was being tried by a judge rather than a jury. The distinction of bench v. jury trial under circumstances involving a fundamental right is essentially a non-distinction.

17

until after close of evidence); *People v. Burke*, 179 A.D.2d 994, 574 N.Y.S.2d 859 (N.Y. App. Div. 1991) (defendant indicated during in-chambers conference he did not wish to testify, rested, then sought to testify).

Hawaii considers a defendant's right to testify a constitutional right under both the federal and state constitutions, and a statutory right under Hawaii law. *Tachibana*, 79 Haw. at 231-32; *Silva*, 78 Haw. at 123. Moreover, that right "may not be denied without good cause." *State v. Valmoja*, 56 Haw. 452, 454, 540 P.2d 63, 65 (1975) (emphasis added); *see also Burke*, 179 A.D.2d at 1001 (holding right to testify is constitutional and trial court abused discretion "as a matter of law" in denying defendant that right); *Ephraim*, 627 So.2d at 1105 (holding right to testify is "most basic of constitutional rights" and when court's exercise of discretion "results in the denial of a basic constitutional right, we must find that that discretion has been abused.").

It matters not that Defendant had previously waived his right to testify and that he had rested his case before seeking to invoke the right; "the right involved is essential to due process." *Silva*, 78 Haw. at 121 n.5. The trial court erred in refusing to allow Defendant to exercise his constitutional and statutory right to testify when he so requested, even though he had previously waived that right and changed his mind after the close of evidence. Moreover, the court denied Defendant this right without good cause. The State did not argue, nor did the court find, that reopening Defendant's case would cause anything other than minimal disruption to the trial, as indicated in *Silva*. 78 Haw. at 121 n.5.

Last, the trial court not only denied Defendant his constitutional and statutory right to testify by denying Defendant's request to do so, the court also improperly imposed its own will on Defendant regarding his right to testify. In *Silva*, the defendant requested to testify on his own behalf "[w]hen the prosecutor was two sentences into her final argument." 78 Haw. at 121. The court dissuaded the defendant from testify by impressing upon him that he should listen to his lawyer, that his lawyer was "very, very competent," and that he should no "go counter to her advice." *Id.* at 122.

The Intermediate Court of Appeals held that "[t]he predictable consequence of the court's statements was the imposition of its own will on Defendant and the chilling of Defendant's desire to testify as part of his defense. Defendant was precluded from exercising

18

his right to testify just as surely as if it were denied to him altogether " *Id.* at 123.

> Once a defendant decides to testify. the court may not inquire into the defendant's reasons for that decision. except in the rare situation where the circumstances would clearly justify an inquiry. <u>Comments by the court which are intended to discourage a defendant from testifying constitute a significant breach of a defendant's right to present a defense</u>. as we have indicated. as well as a defendant's right to counsel, discussed *infra*, and the court's obligation to remain impartial. *State v. Alfonso*, 65 Haw. 95, 98, 648 P.2d 696, 699 (1982). Accordingly. we further hold that <u>after a defendant notifies the court of his or her intent to testify, the court should not comment upon the advisability of such a decision</u>. The decision to testify is ultimately committed to a defendant's own discretion. preferably in consultation with defense counsel. but neither the existence nor the nature of such consultation should ordinarily be the subject of any judicial scrutiny. The "basic decision[]" of whether the to "testify in one's own behalf [is] ultimately for the accused to make." *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 97 S. Ct. 2497, 2510 n.1.. 53 L. Ed. 2d 594 (1977) (Burger, C.J.. concurring (citing ABA Projects on Standards for Criminal Justice. The Prosecution Function and Defense Function § 5.2, at 237-38 (App. Draft 19971)).

*Id.* at 123-24 (emphasis added).

Here. like *Silva*. Defendant requested to exercise his right to testify after the close of evidence; however. unlike *Silva*. Defendant here made his request <u>prior</u> to the start of closing arguments. Also like *Silva*. the trial court imposed its will on Defendant by admonishing him that "his counsel [is] correct it will only hurt his case" and <u>threatening</u> him with expulsion if there are "further outbursts of that nature." (3/10/97 TR at 7: 15-21.)

This ruling was particularly acrimonious in light of the fact that Defendant had no choice but to speak out as he did. Defense counsel had advised him that it was too late to testify, refused to make the request on Defendant's behalf and in fact, argued to the court that it was too late for Defendant to testify. (3/10/97 TR at 5:3-4: R. Vol. 3 at 662-63 ¶ 4.) This left Defendant with no choice but to raise the matter himself. Defense counsel's affidavit unequivocally supports this.

The *Tachibana* court recognized this dilemma when it adopted the colloquy rule rather than the demand rule for determining whether a defendant has waived his or her right to testify. The demand rule is that "a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right." *Tachibana*, 79 Haw. at 233.

The Hawaii Supreme Court rejected the demand rule because it "'requires the

19

defendant to ignore the admonishments of counsel, interrupt the trial proceedings, and interject herself, uninvited, into the fray. Such a rule ignores the courtroom reality that defendants who speak out of turn at their own trials are quickly reprimanded and sometimes banned from the courtroom by the court[.]'" *Id.* at 234 (quoting *Boyd*, 586 A.2d at 677).

Here, because of his counsel's erroneous advice, Defendant had no choice but to "interrupt the trial proceedings, and interject [him]self, uninvited, into the fray." The trial court's threat to expel him should he make any further outbursts of this nature is the exact result that the Supreme Court predicted in *Tachibana* should a defendant be forced to make his own request to testify against his counsel's advice. The trial court should not have threatened to expel Defendant merely because he wanted to exercise his right to testify.

The fact that Defendant had previously waived his right to testify during the *Tachibana* hearing is of no consequence. Defendant's right to testify is a fundamental constitutional right that cannot be denied without good cause. *Valmoja*, 56 Haw. at 454. Although "the right to present relevant testimony is not without limitation . . . it "may, in appropriate cases. bow to accomodate other legitimate interests in the criminal trial process. . . . restrictions of a defendant's right to testify may not be arbitrary or disporportionate to the purposes they are designed to serve". *Rock v. Arkansas*, supra, 107 S. Ct. at 2711-12. [emphasis added] In the instant matter, it appears from the record that the trial court ruled here as it did <u>solely</u> because defendant's demand to testify came too late. [3] As a motion to re-open evidence, defendant's request to testify was not unduly untimely and any disruption in the proceedings would have been minimal. In fact, defendant here made his desire known as soon as he possibly could, considering that at the time he did so he was essentially acting without counsel. In short, the demand to testify here was not "too late" and the trial court's denial of defendant's right to testify was clearly arbitrary and disproportionate". *Rock*, supra.[4] The trial court then compounded its error when it imposed its will on Defendant to not testify, thereby

---

[3] The trial court gave its reason at the hearing on the motion for new trial when it ruled: "[T]he whole colloquy on Tachibana that was conducted, and he indicated he did not want to testify and <u>waited until literally in the beginning of final argument and makes this statement. . . . I don't think the Court should permit that."</u> (5/29/97 TR 16:25; 17:1)[emphasis added].

[4] The trial court here was apparently concerned that the trial proceed in an expeditious fashion. Indeed, "timing was critical" to the trial court and it wanted to "move [the trial] along." (2/25/97 p.m. TR 23:24-25)

20

discouraging Defendant not to testify, in threatening Defendant with expulsion should he again assert his right to testify, and in giving a "curative" instruction to the jury that they are to ignore Defendant's request to testify.[5]

## II.    The trial court further erred in denying Defendant's motion for new trial wherein Defendant argued that the court should have allowed him to testify.

Defendant next argues that the trial court compounded its error of denying his request to testify at the trial by further denying his motion for new trial, filed pursuant to Rule 33 of the Hawaii Rules of Penal Procedure. Defendant raised the issue of his right to testify in his supplemental memorandum in support of his motion for a new trial. (R. Vol. 3 at 648-50.)

At the hearing on Defendant's motion, the trial court made two findings: (1) "The defendant was given an opportunity to make a statement and he again raised this problem of a tape which we don't know exists and which we had no admissible evidence of." (5/29/97 TR 13:9-12); and (2) "[T]he whole colloquy on Tachibana that was conducted, and he indicated he did not want to testify and waited until literally in the beginning of final argument and makes this statement. . . . I don't think the Court should permit that." (5/29/97 TR 16:25; 17:1).

The standard for granting a new trial is whether a new trial is "in the interest of justice." *State v. Matyas*, 10 Haw. App. 31, 37, 859 P.2d 1380, *cert. denied*, 75 Haw. 581, 863 P.2d 989 (1993). "Rule 33 'recognizes the traditional principle that the trial court has broad powers to grant a new trial if for any reason it concluded that the trial has resulted in a miscarriage of justice.'" *Id.* (quoting 3 C. Wright, *Federal Practice & Procedure: Criminal 2d* § 551 at 236-37 (1982)).

Here, the trial court's refusal to allow, Defendant to testify resulted is a miscarriage of justice. As previously discussed, the court erred in not reopening Defendant's case and allowing Defendant to testify. Defendant asserted his right to testify and the trial court

---

[5]  The jury in this case must have been dumbfounded by the events surrounding defendant's demand to testify. First, they witness his demand to take the stand, then they are dismissed, then they re-convene and are told to disregard everything they heard and saw before the recess and, finally, the court instructs them that the defendant has no duty or obligation to testify, and that they must not draw any inference unfavorable to him because he did not testify or to consider his failure to take the stand in any way. ( 3/6/97 TR at 25:21). How could this jury not draw an unfavorable inference when defendant did not take the stand?

21

not only denied that right, but discouraged and threatened him, and then instructed the jury to ignore his request. This alone was a miscarriage of justice warranting the grant of Defendant's motion for new trial.

In denying Defendant's motion for new trial, the trial court also found that Defendant had proffered only inadmissible evidence to support his request to testify. Assuming that Defendant was required to proffer his own testimony, Defendant's failure to do so must be considered under the circumstances. Defendant was essentially acting without counsel at the in-chambers hearing on his request to testify. His counsel had informed both him and the court that it was too late for Defendant to assert his right to testify and indicated that he had "nothing to add" and "nothing further to say." (3/10/97 TR 4:25; 5:1-7.)[6] Under these circumstances, Defendant could not be expected to proffer any other evidence in support of his request to testify. Further, at the hearing on Defendant's motion, he proffered his own testimony. (5/29/97 TR 16:5-11.) Thus, to the extent that Defendant may have been required to proffer testimony to support his request to testify, he satisfied that requirement. The trial court therefore erred in denying Defendant's motion for new trial on that ground.

Defendant's right to testify is a fundamental constitutional right that may not be denied without good cause. *Valmoja*, 56 Haw. at 454. The trial court abused its discretion in denying Defendant's motion for new trial. In the interests of justice, Defendant was and is entitled to a new trial.

**III.    The trial court erred in denying Defendant's request to admit evidence that another person confessed to committing the crime with which Defendant was charged, therefore denying him his constitutional right to a fair trial.**

Defendant next argues that the trial court erred in denying his request to admit evidence that another person committed the murder with which Defendant was charged.

---

[6] At the hearing on defendant's motion for new trial, defense counsel asked the court to grant an evidentiary hearing on his ineffectiveness and to appoint new counsel to argue the hearing due to an obvious conflict of interest. (5/29/97 TR 14-15). The trial court denied both aspects of that motion, despite what was apparent to all to be a clear conflict of interest. Indeed, Earle A. Partington, Esq. , who was doing defendant's sentencing, and who was present during this colloquy, also told the trial court ". . . I would indicate to the Court that I'm somewhat concerned that there may be a conflict of interest in [defense counsel] arguing this motion." (5/29/97) TR 19:1-7). The trial court obliquely responded that Mr. Partington could address that when he was retained. Id.

Defendant sought to admit evidence that Hina Burkhart had confessed to other people the he, rather than Defendant, killed Cabaccang.

## A.    The trial court applied the wrong standard of reviewing Defendant's proffered evidence.

The trial court excluded Defendant's proffered evidence that Burkhart had confessed to the murder pursuant to Rule 804(b)(3) of the Hawaii Rules of Evidence. The court applied the wrong standard for determining the admissibility of this evidence.

In *State v. Rabellizsa*, 79 Haw. 347, 903 P.2d 43 (1995), the Hawaii Supreme Court held that in determining whether to allow evidence of a third party's culpability for the crime the charged, the trial court is to apply the "legitimate tendency" test. *Id.* at 351. Under that test, "'as long as motive and opportunity have been shown and as long as there is also some evidence to directly connect a third person to the crime charged which is not remote in time, place or circumstances, the evidence should be admissible.'" *Id.* at 350 (quoting *State v. Denny*, 120 Wisc. 2d 614, 623, 357 N.W.2d 12, 17 (Wisc. Ct. App. 1984), *aff'd*, 163 Wis. 2d 352, 471 N.W.2d 606, *rev. denied*, 474 N.W.2d 107 (Wis. 1991)). "It is clear that there must be some evidence linking the third person to the crime in order to admit evidence of the third person's motive." *Id.* at 351.

Here, Defendant proffered evidence directly linking Burkhart to the murder. That evidence was not remote in time, place, or circumstance. Defendant proffered that Ms. Mullins would have testified that Burkhart confessed to her <u>four</u> days after the murder that he killed Cabaccang. Mullins would have also testified that Burkhart again confessed about five months after the murder, at approximately the same time he confessed to Mr. Auld. `

Additionally, there was other evidence linking Burkhart to the crime. Three witnesses testified that Burkhart knew one of the victim's neighbors and therefore frequently visited and was familiar with the neighborhood. (3/4/97(a.m.) TR 62:2-18; 3/5/97(p.m.) TR 59:15-25; 60:1-8; 67:25; 68:1, 9-16.) Seidel further testified that Burkhart was supposed to visit that neighbor on the very evening of the murder. (2/26/97 TR 104:1-23.) Another witness described a man at the scene who had hair matching other witnesses' descriptions of Burkhart's hair. (3/5/97(p.m.) TR 35:22-25; 36:1-4; 59:15-21; 67:24-25; 68:1-8.) Last, based on witness descriptions and leads, the police initially suspected Burkhart of the crime. (3/4/97(a.m.) TR 54:25; 55:1-13; 57:2-25; 61:1-12; 70:5-13; 3/5/97(p.m.) TR 60:9-16; 63:1-13.)

23

The trial court erred in not admitting Defendant's proffered evidence under the legitimate tendency test. That evidence linked Burkhart to the murder and showed a legitimate tendency that Burkhart could have committed that crime.

**B.    Even if the trial court applied the correct standard for determining the admissibility of Defendant's proffered evidence, the court erred in finding that the evidence was not sufficiently trustworthy.**

Should this Court find that the trial court applied the correct standard in assessing Defendant's proffered evidence that Burkhart confessed to the crime, Defendant argues alternatively that the trial court misapplied Rule 804(b)(3). That rule provides that a statement against interest is not excluded as hearsay "if the declarant is unavailable as a witness." Haw. R. Evid. 804(b) (1997). A statement against interest is:

> A statement which was at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement[.]

Haw. R. Evid. 804(b)(3).

The trial court heard Defendant's proffered evidence regarding Burkhart's confessions and heard Defendant's recitation of the evidence that corroborates those confessions. The court then ruled: "I don't think the trustworthiness of these statements are [sic] clearly demonstrated. On the contrary, I think they remain quite suspect and under the Rules of evidence are inadmissible." (3/5/96(p.m.) TR 19:4-8.)

Hawaii has never directly addressed the issue of the admissibility of a third party confession that exculpates the defendant. The leading case on this issue is *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038 (1973), where the United States Supreme Court held that the state court's exclusion of evidence that a third party confessed to the crime at issue pursuant to state evidentiary rules violated the defendant's right to due process, which resulted in an unfair trial. *Id.* at 302-03.

> Few rights are more fundamental than that of an accused to present witnesses in his own defense. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and

24

> evidence designed to assure both fairness and reliability in the ascertainment of
> guilt and innocence. . . .   The testimony rejected by the trial court here bore
> persuasive assurances of trustworthiness and thus was well within the basic
> rationale of the exception for declarations against interest. That testimony also
> was critical to Chambers' defense. In these circumstances, where constitutional
> rights directly affecting the ascertainment of guilt are implicated, the hearsay rule
> may not be applied mechanistically to defeat the ends of justice.

*Id. at 302.*

In *Perry v. Ruchen*, 713 F.2d 1447 (9th Cir. 1983), *cert. denied*, 496 U.S. 838, 105 S. Ct. 137, 83 L. Ed. 2d 77 (1984), the defendant sought to admit into evidence that a third party might have committed the crime in question. *Id.* at 1449. The Ninth Circuit reviewed *Chambers* and another United States Supreme Court case, *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920 (1967), and concluded: "In each of these cases, the evidence was highly exculpatory: third party confessions, if believed, would necessarily exonerate the defendant of the primary offense." *Id.* at 1452. The court concluded: "Due process draws a boundary beyond which state rules cannot stray; it does not displace the law of evidence with a constitutional balancing test. . . . . [O]nly the most urgent considerations, such as those in *Chambers*, can outweigh them." *Id.* at 1453.

The concept that third party confessions are of "the most urgent considerations" was reiterated in *Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir. 1994), a federal habeas review of a California state court conviction. There, the Ninth Circuit analyzed the issue of whether a third party's confession might be admissible under the provisions of the California statute governing statements against penal interest. *See* Cal. Evid. Code § 1230. The court noted that this exception to the hearsay rule "is applied in light of constitutional concerns regarding the exclusion of exculpatory evidence." *Id.* at 1458. After a thorough discussion of the application of the hearsay exception, the court appended the following footnote:

> The state suggests that we may be bound a state court finding that Xavier's
> confession is not admissible as a declaration against interest. This argument is
> mistaken. . . . [A]ny state court ruling that such a confession was inadmissible
> would probably violate *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038,
> 35 L. Ed. 2d 297 (1973). Confessions are admissible, regardless of state law,
> if their exclusion would violate the Due Process Clause of the United States
> Constitution.

25

901

*Id.* at 1459 n.14 (emphasis added).

Other courts have also analyzed the admissibility of absent third party confessions under the applicable rules or statutes governing statements against penal interest. *See, e.g. United States v. Poland,* 659 F.2d 884, 894-95 (9th Cir.), *cert. denied,* 454 U.S. 1059, 102 S. Ct. 611, 70 L. Ed. 2d 598 (1981) (applying federal rule); *State v. Mabuti,* 72 Haw. 106, 115, 807 P.2d 1264 (1991) (applying Hawaii rule); *Burks v. State,* 876 S.W.2d 877, 904 (Tex. Crim. App. 1994), *cert. denied,* 513 U.S. 1114, 115 S. Ct. 909, 130 L. Ed. 2d 791 (1995) (applying Texas statute). The lesson of *Chambers,* however, is that these rules of procedure and evidence must be "designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers,* 410 U.S. at 302. Here, the trial court's exclusion of Defendant's proffered evidence of Burkhart's confessions pursuant to Rule 804(b)(3) was error because the court's application of that rule deprived Defendant of his due process right to a fair trial.

Although the Hawaii Supreme Court has not directly addressed the issue of excluding evidence of an absent third party confession, it has come quite close. In *State v. Mabuti,* 72 Haw. 106, 807 P.2d 1264 (1991), several persons were charged with beating another individual to death with a baseball bat. Two of the defendants, Mabuti and Acosta, were tried together. Prior to their trials, a third individual, one Pintoy, confessed to being involved in the beating. In that confession Pintoy stated that "Mabuti had participated in the beating, and the two of them had discussed the incident sometime in the next couple of days, at which time Mabuti talked about having hit the victim. . . . [Pintoy] could not say whether Acosta was at the beating." *Id.* at 110.

At Mabuti and Acosta's trials, Acosta sought to introduce Pintoy's confessions while Mabuti sought to exclude it. The court redacted all references to Mabuti from the confession, leaving little of consequence. Acosta therefore did not use it. *Id.* at 110-111. Both defendants were convicted and both appealed, each arguing that the trial court erred in not severing their trials. The Hawaii Supreme Court held:

> It is clear that the Pintoy confession was not excluded because of admissibility problems. The judge apparently believed, as do we, that the Pintoy confession was admissible as a statement against interest. Hawaii Rules of Evidence 804(b)(3).
>
> . . . . The right to adduce evidence in his behalf [is one] of the fundamentals

26

<u>inherent in the due process guarantee of a fair trial</u>. In this case, Acosta was denied the right to bring into evidence the full impact of the Pintoy confession. The State did not object to its introduction, only the co-defendant Mabuti prevented the presentation of this evidence. <u>Based on this piece of evidence alone, we feel that Acosta was denied a fair trial</u>. In light of this conclusion, the denial of the motion to sever Acosta's trial from that of co-defendant Mabuti was an abuse of discretion.

*Id.* at 115 (emphasis added).

Under *Mabuti*, the trial court's exclusion of Defendant's evidence that Burkart repeatedly confessed to the crime, exclusive of any other error the court made, denied Defendant a fair trial; however, even if this Honorable Court weighs the reliability and trustworthiness of the evidence, as the trial court did, it will find that the trial court erred in ruling that there was not sufficient corroborating evidence to support admitting the evidence.

In *State v. Bates*, 70 Haw. 343, 771 P.2d 509 (1989), the defendant sought to introduce evidence of statements her co-defendant made that would exculpate her: That he had committed the crime, but that she had nothing to do with it. The Hawaii Supreme Court analyzed the issue under Rule 804(b)(3).

The court found that the declarant was unavailable and that his statement that he committed the crime was against his penal interest; however, the court held that there was no corroborating circumstances clearly indicating the trustworthiness of the statement that the defendant was not involved in the crime; therefore, that statement was inadmissible. *Id.* at 348. The court noted that in determining whether there is sufficient corroborating circumstances indicating the trustworthiness of a statement against penal interest, "[c]ourts have looked to both the reliability of the declarant when the statement was mâde, as well as corroboration of the truth of the declarant's statement, focusing on whether the evidence in the record supported or contradicted the statement, or both." *Id.* at 349.

The court determined that there was insufficient corroborating circumstances in *Bates* because the evidence indicated that the declarant may have had a motive to lie for the defendant, that the statement was in direct opposition to other evidence that the defendant did participate in the crime, and there was no independent evidence to corroborate the statement. *Id.*

Unlike *Bates*, here, the proffered evidence was that Burkhart confessed to

27

murdering Cabaccang, not that he merely made a statement that Defendant did not participate in the crime with him. There was no evidence that would lead to the inference that Burkhart would have a motive to lie for Defendant, or that he would have a motive to lie for any reason about having murdered Cabaccang. Last, there was independent evidence corroborating Burkhart's confessions:

> First, and foremost, Burkhart confessed to not one person one time, but two different people on three separate occasions, one confession occurring just four days after the murder. (3/5/97(p.m.) TR 4:10-25; 5-7:1-13);

> Second, a witness saw a man leaving the scene who resembled Burkhart. (3/5/97(p.m.) TR 35:22-25; 36:1-4; 59:15-21 67:24-25; 68:1-8.);

> Third, based on witness descriptions and a tip from the public, the police initially investigated Burkhart, not Defendant, for this crime. (3/4/97(a.m.) TR 54:25; 55:1-13; 57:2-25; 61:1-12; 70:5-13; 3/5/97(p.m.) TR 60:9-16; 63:1-13);

> Fourth, Burkhart frequented the victim's neighborhood and was familiar with it. (3/4/97(a.m.) TR 62:2-18; 3/5/97(p.m.) TR 59:15-25; 60:1-8; 67:25; 68:1, 9-16.) Indeed, there was evidence that he was expected to visit the victim's neighbor the night of the murder. (2/26/97 TR 104:1-23.)

Notwithstanding this corroborating evidence, the fact that the statements that Defendant sought to introduce were confessions weighs heavily in a determination of their trustworthiness. In *Chambers*, the United States Supreme Court stated that several factors made the confessions there at issue reliable. One of those factors was that "each confession here was in a very real sense self-incriminatory and unquestionably against interest." *Chambers*, 410 U.S. at 300-01; *see also United States v. Slaughter*, 891 F.2d 691, 698 (9th Cir. 1989) (citing *United States v. Oropeza*, 564 F.2d 316, 325 (9th Cir. 1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L. Ed.2d 788 (1978)) (holding factor used to determine trustworthiness of statement is "the extent to which the declaration is really against the declarant's penal interest").

Hawaii apparently also looks to the extent to which the statement is against the declarant's penal interest in determining its trustworthiness. *See Shea v. City and County of Honolulu*, 67 Haw. 499, 509, 692 P.2d 1158, 1158 (1985), *overruled on other grounds*, *State v. Moore*, 82 Haw. 202, 921 P.2d 122 (1996) ("Under these circumstances we can hardly conclude the assertion was so palpably against the declarant's interest that there was a '"circumstantial [guarantee] of trustworthiness" justi[fying a] departure from the general rule excluding hearsay.'") (quoting *McCormick on Evidence* § 253 (E. Cleary ed. 3d ed. 1984)); *see also Mabuti*, 72 Haw. at 115 (third party confession is statement against

28

interest under Hawaii Rules of Evidence).

The trial court's ruling here was particularly egregious and unfair to defendant because Burkhart had been a suspect in this murder and the prosecutor, over defense objection and in direct contravention of the trial court's ruling, kept trying to get before the jury evidence that the police had ruled out Burkhart <u>because he had an alibi which had been verified</u>. (3/4/97 TR at 70:5-20; 71:2-7; 72:4-21; 73:5-20; 74:1-16. [emphasis added]

Because the hearsay statements at issue here are confessions of the crime in question, they are statements so palpably against Burkhart's interest that there is a circumstantial guarantee of their trustworthiness, regardless of whether there is corroborating evidence. Moreover, corroborating circumstances clearly indicate the trustworthiness of Burkharts' confessions. Finally, it was for the jury, as the fact finder, to assess the credibility of the defense witnesses. The trial court therefore erred in excluding this evidence.

**IV.    Defense counsel provided Defendant with ineffective assistance by advising him it was too late to testify.**

Defendant next argues that his counsel was ineffective in erroneously advising him that it was too late for him to testify after the close of evidence and by advising him against making further outbursts on the matter in front of the jury. (3/10/97 TR 5:3-6.)

"[I]n the context of the decision to call the defendant as a witness, a claim of ineffective assistance of counsel can be maintained that is conceptually distinct from a claim that a defendant's right to testify was violated." *Jones*, 79 Haw. at 334 (citing *Tachibana*, 79 Haw at 231).

> Although the decision whether or not to testify is ultimately committed personally to the defendant, we recognize that the defendant's decision will ordinarily be made "in consultation with counsel." Defense counsel will be called upon to explain the pros and cons of testifying to assist the defendant in reaching his or her decision. Consequently, a claim can be made that a defendant's attorney provided ineffective assistance in advising the defendant whether or not to testify.

*Id.* (quoting *Silva*, 78 Haw. at 125) (footnote omitted).

---

[*] Perhaps Defendant should have been permitted to offer his witnesses under HRE 613 to "impeach" Burkhart's "alibi" which was, for all intents and purposes, established by Detective Funes, notwithstanding defendant's objections and the trial court's rulings prohibiting this line of questioning. Moreover, if Burkhart had an alibi for the night in question, why did he assert the Fifth and refuse to testify?

29

Here, defense counsel's advice to Defendant and express argument to the trial court that it was too late for Defendant to testify in his own defense was a specific error reflecting his lack of skill. *See Jones*, 79 Haw. at 334-35 ("the provision of erroneous legal advice to a defendant by trial counsel . . . could constitute a 'lack of skill.'") Moreover, this error substantially impaired Defendant's potentially meritorious defense.

> In the context of faulty advice that allegedly influenced the decision not to testify, a two prong test must be satisfied. The petitioner must show (1) that, absent defense counsel's failings, the petitioner would have decided to testify, and (2) that there is a reasonable possibility that his or her testimony could have established or supported an available defense.

*Id.* at 335 (citation omitted).

Here, the record unequivocally shows that Defendant wanted to testify. Defense counsel's affidavit, attached to Defendant's supplemental memorandum in support of his motion for new trial, also unequivocally indicates that counsel not only discouraged Defendant from testifying throughout the evidentiary phase of the trial, but that he also advised Defendant that it was too late for him to testify after the evidentiary phase, even though closing arguments had not yet begun. Counsel gave this advice even though Defendant was "adamant" that he wanted to testify. (R. Vol. 3 at 662, 662-63 ¶¶ 3, 4.)

Moreover, counsel added insult to injury when he advised Defendant against making any further outbursts in front of the jury regarding his desire to testify. This further exacerbated Defendant's dilemma, as discussed above. Defendant was forced to "demand" to testify, and just as the Supreme Court predicted in *Tachibana*, by doing so, he was "quickly reprimanded" and threatened with being "banned from the courtroom." 79 Haw. at 234. The trial court, however, was not the only one to "quickly reprimand" Defendant for requesting to exercise his right to testify; his own counsel also did so.

Thus, Defendant clearly satisfies the first prong of the test: that absent his counsel's failings he would have decided to testify. Defendant also satisfies the second prong: that there is a reasonable possibility that his testimony could have established or supported his defense that he did not kill Cabaccang. Defendant proffered his testimony at the hearing on his motion for new trial, indicating that given the opportunity, he would testify that his version of what happened that night would be substantially different from the prosecution's version.

906

(5/29/97 TR 16:7-11.)

"Violation of an accused's constitutional right to effective assistance of counsel warrants the irrebuttable presumption of prejudice. A conviction will be reversed, therefore, if the defendant was denied effective assistance of counsel at trial, or on appeal." *Briones v. State*, 74 Haw. 442, 467, 848 P.2d 966, 978 (1993) (citations omitted). Defense counsel did not provide Defendant with effective assistance of counsel, therefore, his conviction should be reversed.

## CONCLUSION

Based on the foregoing arguments and authorities cited, Defendant was denied his Federal Constitutional rights to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution as well as his Hawaii Constitutional rights under Article I Sections 5, 10, 14. Accordingly, Defendant's conviction must be reversed.

DATED:     Honolulu, Hawaii, November 24, 1997.


PAMELA O'LEARY TOWER
Attorney for Defendant-Appellant

31

907

## RELEVANT PORTIONS OF CONSTITUTIONAL PROVISIONS. STATUTES.
## ORDINANCES. REGULATIONS. OR RULES INVOLVED

United States Constitutional Provisions

"No person shall be. . . compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.

"In all criminal prosecutions. the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor. and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

"No State shall . . . deprive any person of life. liberty. or property. without due process of law[.]" U.S. Const. amend. XIV.

Hawaii Constitutional Provisions

"No person shall be deprived of life. liberty or property without due process of law[.]" Haw. Const. Art. I. § 5.

"No person shall be. . . compelled in any criminal case to be a witness against oneself[.]" Haw. Const. Art. I. § 10.

"In all criminal prosecutions. the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in the accused's favor; and to have the assistance of counsel for the accused's defense." Haw. Const. Art. I. § 14.

Statutes

"In the trial of any person on the charge of any offense. he shall have a right to . . . be heard in his defense." Haw. Rev. Stat. § 801-2 (1994).

Rules

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) *Statement Against Interest.* A statement which was at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement[.]

32

## STATEMENT OF RELATED CASES

There are no related cases on appeal.

33

NO. 20804

IN THE SUPREME COURT OF THE STATE OF HAWAII

| | | |
|---|---|---|
| STATE OF HAWAII, | ) | CR. NO. 95-0389 |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| vs. | ) | APPEAL FROM JUDGMENT FILED |
| | ) | MAY 29, 1997 |
| | ) | |
| | ) | |
| TARYN CHRISTIAN, | ) | SECOND CIRCUIT COURT |
| | ) | |
| Defendant-Appellant. | ) | HONORABLE E. JOHN MCCONNEL |
| | ) | Judge |
| | ) | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document was duly served on the following by way of U. S. Mail on November 24, 1997.

DAVELYNN M. TENGAN
Deputy Prosecuting Attorney
Dept. of the Prosecuting Attorney
150 S. High Street
Wailuku, Maui HI 96793

DATED:    Honolulu, Hawaii, November 24, 1997.

PAMELA O'LEARY TOWER
Attorney for Defendant-Appellant

910