KEITH SHIGETOMI, # 3380
Pacific Park Plaza, Suite 1440
711 Kapiolani Boulevard
Honolulu, Hawaii 96813
Telephone: 808-596-0880

MARK BARRETT, OK Bar # 557
P.O. Box 896
Norman, Oklahoma 73070
Telephone: 405-364-8367
Fax: 405-366-8329
Email: barrettlaw@sbcglobal.net

ATTORNEYS FOR PETITIONER

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | | |
|---|---|---|
| **TARYN CHRISTIAN,** | ) | CIV NO. 04-00743 DAE-LEK |
| | ) | |
| Petitioner, | ) | **PETITIONER S OPENING BRIEF** |
| | ) | **REGARDING EVIDENTIARY** |
| | ) | **HEARING** |
| | ) | |
| vs. | ) | |
| | ) | **DECLARATION OF COUNSEL** |
| **RICHARD BISSEN, Acting** | ) | |
| **Director, State of Hawaii** | ) | |
| **Department of Public Safety,** | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| Respondent. | ) | |

## OVERVIEW

One witness, Philip Schmidt, who identified Taryn Christian as Vilmar

Cabaccang s killer was certain that the perpetrator had long hair in back. Taryn

1

Christian had short hair at the time of the homicide. The other person, Serena Seidel, who identified Mr. Christian was, according to some reports contained in police files, the girlfriend of James Burkhart, the other suspect.

Since the time of trial, tape recordings have been enhanced resulting in expert reports that:

James Burkhart's name, apparently uttered by Cabaccang, can be heard on the recording of the 911 call to police (R. 1509-10);

the tape recording of the Taryn Christian-Lisa Kimmey conversation contains, in addition to some inculpatory statements, Christian's explicit denials that he killed Cabaccang..

None of this evidence was known to Taryn Christian's jury.

Also unknown to the jury were witnesses who would have testified that Burkhart confessed to the fatal stabbing of Cabaccang.

Although Burkhart confessions had been reported prior to trial, his statements were ruled inadmissible.

At an evidentiary hearing, the Court can assess the combined potential impact of the (1) the evidence known at the time of trial, (2) the new evidence already uncovered, (3) additional material evidence which may become known through the discovery process.

Findings at the evidentiary hearing will impact:

1. The ineffective assistance of counsel issues.

2. The issue of presentation of false or misleading evidence.

3. The actual innocence issue.

The extent of exculpatory evidence, which will include testimony and exhibits presented and assessed at the evidentiary hearing, will be material in assessing the prejudice caused by improper admission of identification evidence and/or the improper exclusion of the Burkhart confessions.

The denial of the constitutional right to testify is inherently prejudicial.

It appears the evidentiary hearing will have an important role in assessing almost all issues.

Significantly, the hearing will assist in determining the impact of trial counsel's failure to obtain DNA testing, his failure to have tape recordings enhanced, and his failure to discover and present evidence which would have undermined the eyewitness identifications.

Also significantly, the evidentiary hearing will enable the Court to assess the strength of Christian's actual innocence claim. The actual innocence claim can be a ground for relief in and of itself. **Herrera v. Collins,** 506 U.S. 390 (1993). When there is sufficient evidence of innocence to conclude that a constitutional

violation probably has resulted in the conviction of an actually innocent person, the existence of the actual innocence evidence can be a basis for consideration of other constitutional claims, even if the claims otherwise would be defaulted. **Schlup v. Delo,** 513 U.S. 298, 321 (1995).

## CENTRAL LEGAL PRINCIPLES

### A. Central Purpose

In a federal habeas corpus proceeding, an evidentiary hearing should be ordered when fact-finding is necessary and none has been conducted in state court. **Townsend v. Sain,** 372 U.S. 293, 313 (1963) **overruled in part on other grounds, Keeney v. Tamayo-Reyes,** 504 U.S. 1, 5 (1992).

The **Townsend** court stated:

> We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of a factual dispute were not resolved in the state hearing; (2) the state factual determination is not supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at a state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

372 U.S. at 313.

In conducting the fact-finding, and making the accompanying conclusions, the goal is to make certain that a man is not unjustly imprisoned. **Id.** at 317. See

also 28 U.S. C. § 2254 (a)(determination is whether petitioner is in custody in violation of the Constitution or laws or treaties of the United States ).

### B. Procedure

#### 1. Receipt of Evidence

In receiving evidence bearing upon the applicant s constitutional claim, 372 U.S. at 318, the Court may consider various forms of evidence. When credibility is at issue, the Court should hear witnesses at an evidentiary hearing, rather than rely exclusively on affidavits. **Earp v. Stokes,** 423 F.3d 1024, 1034-35 (9th Cir. 2005).

In the particular context of claims of innocence, the Supreme Court has noted that the habeas court must consider all the evidence, old and new, incriminating and exculpatory , without regard to whether it would necessarily be admitted under the rules of admissibility that would govern at trial. **House v. Bell,** 126 S.Ct. 2064, 2077 (2006) quoting **Schlup v. Delo,** 513 U.S. 298, 327-28 (1995).

#### 2. Findings and Conclusions

After receiving the various types of evidence, the Court makes findings of fact and conclusions of law based on the materials presented. See **Townsend** at 318-22.

### C. Standard of Review

#### 1. State Court Decision on the Merits

When the state court has decided the constitutional claim on the merits, the writ should be granted if the state court's action either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, or
> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

#### 2. No State Court Decision on Merits

If the state court disposes of petitioner's claim on procedural grounds, rather than addressing the merits, the federal court owes no deference to the state determination. **Nickerson v. Roe,** 260 F. Supp.2d 875, 909 (N.D. Cal. 2003).

A federal court thus conducts independent, de novo review of all questions of law or mixed questions of law and fact that reach federal court without a prior merits determination. **Id.**

## ADDITIONAL LEGAL CONSIDERATIONS

### A. Innocence Gateway

If any claims are defaulted, they may nevertheless be considered if the petitioner establishes it is more likely than not that no reasonable juror would have

found petitioner guilty beyond a reasonable doubt.  **House v. Bell,** 126 S.Ct. 2064 (2006).

In making this more likely than not, determination, the court is to assess how reasonable jurors would react to the totality of the newly discovered evidence, **Id.**

### B.  De Novo Consideration of Prejudice

Where there has been no meaningful state-court determination of the prejudice prong of an ineffective-assistance-of-counsel claim, the federal court determines de novo whether petitioner was harmed by his counsel s errors. **Rompilla v. Beard,** 543 U.S. 374, 390 (2005).

## EVIDENCE FOR PRESENTATION AT HEARING

### A.  Previously Reported Evidence

    1. Connection between Burkhart and eyewitness Serena Seidel;

    2.  Evidence that man Philip Schmidt saw was not Christian;

    3.  Tape enhancement reflecting James Burkhart s name being uttered in background of 911 recording;

    4.  Tape enhancement showing Christian made exculpatory statements in conversation with Lisa Kimmey;

    5.  Photo lineup with shadow behind Christian s head creating

incorrect impression he had long hair in back;

  6. Burkhart confessions.

### B. Potential Evidence

  1. DNA evidence establishing connection between Burkhart and crime scene.

  2. Additional Burkhart statements;

  3. Video tape from Gas Express, where man with bleeding hand and apparently matching description of Burkhart, came on evening of homicide;

  4. Additional insights regarding physical evidence after examination by defense.

These lists are provided to assist the Court as to what Petitioner proposes he might present at evidentiary hearing. The lists are not intended to be all-inclusive, particularly in light of the uncertainty of what may be disclosed by the discovery preceding the evidentiary hearing.

### CONCLUSION

In **House v. Bell,** 126 S.Ct. 2064 (2006), the Supreme Court found that the habeas applicant had proved it was more likely than not he was innocent and thus he was entitled to constitutional relief by entering the so-called innocence gateway.

Petitioner made this showing through demonstrating that (1) the prosecution's forensic evidence was not what originally was advertised, and (2) there was substantial evidence, including reported confessions, pointing toward another suspect.

Taryn Christian, like Petitioner Bell, already has strong evidence, including confessions, pointing toward another suspect. Through the discovery process, new forensic evidence may come to light. New forensic evidence relating to two significant audio recordings already is in existence.

Thus, Christian, at evidentiary hearing may establish entitlement to the actual innocence gateway, as did Bell.

However, if — as Petitioner contends — his claims are not defaulted, he need not rely — although it appears he might — on the innocence gateway.

For example, if failure to enhance a tape recording was likely to have adversely impacted Mr. Christian, that failing of counsel alone could result in relief, regardless of any innocence gateway.

In spite of the importance of the evidentiary hearing, there are some issues that would warrant relief on the existing record. These include the denial of Christian's right to testify and the exclusion of the Burkhart confessions.

Regardless, forensic evidence with substantial exculpatory potential should be

tested and examined and the new evidence, combined with already known exculpatory evidence, should be examined by the Court at an evidentiary hearing.

                Respectfully submitted,

                /s/ Mark Barrett
                KEITH SHIGETOMI
                MARK BARRETT
                Attorneys for Petitioner

## DECLARATION OF COUNSEL

      I, Mark Barrett, declare that the factual statements made in this document, to the best of my knowledge and belief, are derived from the exhibits to the state post-conviction application, the testimony from trial, and/or other documents on file in this case. The assertions are correct to the best of my knowledge and belief.

                /s/ Mark Barrett
                MARK BARRETT

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document is being served on Peter Hanano, attorney for Respondent, by mailing a true and correct copy to him first class on February 1, 2007.

                /s/ Mark Barrett
                MARK BARRETT