IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| TARYN CHRISTIAN, | ) | CIVIL NO. 04-00743 DAE-LEK |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD BISSEN, etc., et al., | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

**ORDER GRANTING PETITIONER'S MOTION FOR
LEAVE TO CONDUCT DISCOVERY AND
FINDINGS AND RECOMMENDATION REGARDING
<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**

Petitioner Taryn Christian ("Petitioner") Christian filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") on December 22, 2004.  Petitioner filed his First Motion for Leave to Conduct Discovery on April 19, 2006 ("Discovery Motion").  This Court granted the Discovery Motion in an order filed on June 14, 2006 ("Discovery Order").  Respondents Richard Bissen, Acting Director,[1] and the State of Hawai`i Department of Public Safety (collectively "Respondents") filed a motion to reconsider the Discovery Order on June 23, 2006.  This Court denied the motion to reconsider in a September 11, 2006 order ("Discovery Reconsideration Order").  Respondents appealed the Discovery Order and the Discovery Reconsideration

_____

[1] Respondent Richard Bissen, Acting Director, has since been replaced with Respondent Iwalani D. White, Interim Director, pursuant to Fed. R. Civ. P. 25(a)(1).

Order to the district judge.  In an order filed February 6, 2007 ("Discovery Appeal Order"), the district judge vacated the Discovery Order and the Discovery Reconsideration Order and remanded the matter to this Court "to make conclusive determinations concerning the exhaustion of all claims." [Discovery Appeal Order at 12.]  On remand, after careful consideration of the filings in this case and the relevant legal authority, this Court hereby FINDS, for the reasons set forth below, that: Ground One, Ground Two, and Ground Seven of the Petition are exhausted; Ground Four, Ground Five, Ground Six, Ground Eight, and Ground Nine are technically exhausted, but are procedurally defaulted; and Ground Three is partially exhausted, but the claim in Ground Three that is technically exhausted is also procedurally defaulted.

Petitioner has argued that the district court should consider his procedurally defaulted claims under the fundamental miscarriage of justice exception because the constitutional violations in his trial probably resulted in his conviction and he is actually innocent.  In the Discovery Motion, Petitioner seeks leave to conduct various discovery, which he contends is necessary to prove his actual innocence claim.  For the reasons set forth below, this Court hereby GRANTS the Discovery Motion.

Finally, this Court RECOMMENDS that, after Petitioner completes discovery, the district judge hold an evidentiary

hearing regarding Petitioner's claims.

## BACKGROUND

In 1997, Petitioner was convicted of one count of murder in the first degree, one count of use of a deadly or dangerous weapon in the commission of the crime, and one count of theft in the third degree in connection with the stabbing death of Vilmar Cabaccang. Petitioner was sentenced to life in prison.

On July 14, 1995, Cabaccang and his girlfriend, Serena Seidel, awoke in the middle of the night when they heard a noise outside. Seidel saw someone sitting in Cabaccang's car and the two of them ran outside. The man in the car fled and they gave chase. Seidel stopped to try to get help and, when she caught up to Cabaccang, he and the man were struggling. Cabaccang said the man had a knife and wanted to kill him. Seidel attempted to assist and the man bit her on the wrist. Eventually, the attacker dropped his knife and walked away. Phillip Schmidt, who lived in the area, heard shouting and screaming around 3:00 a.m. When he came out to investigate, he saw a young man walking away. Schmidt found Cabaccang nearby and asked him if the man walking away was the person who injured him. Cabaccang said it was. Cabaccang later died from stab wounds. See State v. Christian, 88 Hawai`i 407, 411, 967 P.2d 239, 243 (1998).

The police initially regarded James "Hina" Burkhart as a suspect but later ruled him out because both Seidel and Schmidt failed to identify him and two witnesses placed him elsewhere at the time of the stabbing.  Approximately three days after the incident, Petitioner allegedly confessed to his former girlfriend, Lisa Kimmey.  In a photographic lineup, both Seidel and Schmidt identified Petitioner as the man at the crime scene. See id. at 411–12, 967 P.2d at 243–44.

In a published opinion dated November 10, 1998, the Hawai`i Supreme Court affirmed Petitioner's conviction on two counts.[2]  Petitioner did not seek a writ of certiorari from the United States Supreme Court.  On January 31, 2000, Petitioner filed a petition for post-conviction relief under Rule 40 of the Hawai`i Rules of Penal Procedure ("Rule 40 Petition").  Within that proceeding, Petitioner filed a Motion to Produce Evidence for Inspection and Testing on April 23, 2002.  On May 2, 2002, the circuit court denied his Rule 40 Petition without a hearing. Petitioner filed a motion for reconsideration on May 13, 2002. The court held a hearing on the motion to produce evidence and the motion for reconsideration, but denied both motions.  The Hawai`i Supreme Court affirmed the decision.  The instant Petition followed.

_____

[2] The supreme court reversed Petitioner's conviction of use of a deadly or dangerous weapon in the commission of a crime. See Christian, 88 Hawai`i at 411, 967 P.2d at 243.

I.    **The Petition**

        The Petition raises the following grounds for habeas relief: 1) deprivation of Petitioner's right to testify on his own behalf ("Ground One"); 2) improper exclusion of Burkhart's confessions ("Ground Two"); 3) ineffective assistance of trial counsel based on various actions and omissions by counsel ("Ground Three");[3] 4) actual innocence ("Ground Four"); 5) admission of improper identification evidence ("Ground Five"); 6) admission of false and/or misleading evidence ("Ground Six"); 7) ineffective assistance of appellate counsel ("Ground Seven"); 8) ineffective assistance of trial counsel regarding counsel's advice about his right to testify ("Ground Eight"); and 9) whether the prosecution suppressed or destroyed exculpatory evidence by returning Cabaccang's vehicle to his family before the defense had the opportunity to examine it ("Ground Nine").[4] [Mem. in Supp. of Petition at i-ii.]

_____

        [3] Although Petition includes the ineffective assistance of counsel claim regarding trial counsel's allegedly defective closing argument in Ground Eight, the Court will discuss this claim in Ground Three.

        [4] Petitioner raised the two arguments which this Court has deemed "Ground Nine" within a list of eleven arguments in Ground Three, but, insofar as these two arguments do not allege the ineffective assistance of counsel, the Court will consider them as a separate ground for habeas relief. [Mem. in Supp. of Petition at 24.] The Court arguably could construe the two arguments as additional allegations of ineffective assistance, but the Court declines to do so. Each of the other nine arguments clearly poses the question whether trial counsel was ineffective while these two arguments do not.

5

Respondents filed their Answer to the Petition on September 30, 2005. Petitioner filed a Reply on December 15, 2005.

## II. **The Discovery Motion**

Petitioner filed the Discovery Motion seeking to conduct discovery to support his claims. Petitioner seeks a court order requiring Respondents to produce various items, which he will submit for DNA testing at his own expense. He also seeks tape recordings, video tapes, photographs, transcripts, other physical evidence, documents relating to the case, and information about the prosecution's witnesses and informants. Petitioner asks the Court to construe the Discovery Motion as a "continuing request" until the Petition's resolution. [Mem. in Supp. of Discovery Motion at 1-5.]

Petitioner argues that there is compelling evidence that Burkhart stabbed and killed Cabaccang. When Seidel gave a physical description of the suspect at the crime scene, one of the police officers responded: "That sounds like James Burkhart." [Id. at 5.] Burkhart was the first suspect in the case and, on the night of the stabbing, he was apparently in Seidel's apartment before Cabaccang arrived. There were also reports of multiple Burkhart confessions. Two Gas Express employees reported that, on the night in question, a man entered the store around 3:00 a.m. or later. His right hand was injured and soiled

6

with blood.  They provided the police with a description of the man and Burkhart allegedly matched the composite sketch drawn from their descriptions.  According to Jeff Makekau, his brother traded a double blade knife, like the one believed to have killed Cabaccang, to Burkhart for drugs.  [Id. at 6-7.]  At Petitioner's trial, Burkhart took the Fifth Amendment and neither admitted nor denied making statements that he killed Cabaccang.  [Id. at 7-8, 13.]  According to Petitioner, the enhanced version of a 911 call from the crime scene reveals that, as he lay dying, Cabaccang spoke Burkhart's name.  Various police reports include accounts of Burkhart's confessions.  Petitioner claims that a police detective attempted to cover up one of these reports, even though the detective acknowledged that the police had evidence they arrested the wrong man.  Another detective visited Burkhart at the Maui Community Correctional Center because of reports that Burkhart was bragging about being responsible for Cabaccang's death.  [Id. at 8-10.]  At Petitioner's trial, defense counsel made an offer of proof regarding the testimony of two witnesses who would testify that Burkhart confessed to killing Cabaccang, but the trial court excluded all testimony of Burkhart's confessions.  [Id. at 10-11.]

Petitioner also argues that the prosecution's case was largely based upon his recorded conversation with Kimmey, during which he allegedly confessed.  He claims that the jury was given

7

a redacted version of the recording which was difficult to hear. According to Petitioner, an enhanced version of the recording makes it clear that, although Petitioner was at the scene near the time of the stabbing, he denied being responsible for Cabaccang's death. Petitioner argues that, had he been allowed to testify, he would have clarified the contents of the tape. He would have testified that he did not stab Cabaccang, but felt guilty about running away when Cabaccang was injured. Petitioner would have testified that he believed Burkhart stabbed Cabaccang. [Id. at 14-16.] Petitioner also argues that testing the biological evidence is essential to his efforts to prove that he was not the one who stabbed and killed Cabaccang.

Petitioner states that the Maui Police Department ("MPD") made a formal request to Joanne Furuya, director of the Honolulu Police Department ("HPD") Crime Laboratory, to conduct blood typing and DNA comparisons on evidence in this case, but this was never done. He also requested DNA testing prior to his trial and the trial court granted the prosecution a continuance to conduct the testing. Davelynn Tengan, the deputy prosecutor, informed the court that the prosecution intended to send the evidence to the Federal Bureau of Investigation ("FBI") in Washington D.C. for testing. Petitioner states that the defense never received FBI test results. At trial, Furuya testified that there were insufficient samples to test some areas of blood found

at the scene.  Petitioner now argues that DNA testing should have
been possible on any blood found.  Further, current DNA testing
is more advanced than the testing available at the time of his
trial.  [Id. at 17-18.]

Petitioner acknowledges that habeas petitioners are not
entitled to conduct discovery as a matter of right, but he argues
that discovery would help the courts make a reasonable
determination of his claims.  [Id. at 20.]  Petitioner also
contends that he has a constitutional right to the discovery of
evidence establishing his actual innocence.  [Id. at 24.]
Further, Petitioner argues that DNA testing is relevant to his
claim that counsel's ineffective assistance prejudiced him and
his claim that Furuya gave misleading testimony about the
government's ability to conduct DNA testing.  Petitioner
therefore argues that there is good cause for full discovery to
develop his claims.  [Id. at 32-35.]

Respondents filed their memorandum in opposition to the
Discovery Motion on May 4, 2006.  According to Respondents, the
prosecution continually provided Petitioner with discovery
materials during the pendency of the criminal proceedings.
Dennis Jung, Esq., Petitioner's counsel at the time, requested,
and had access to, physical evidence found at the scene and
audiotapes of the 911 calls.  The trial court later appointed
Anthony Ranken, Esq., to represent Petitioner and the prosecution

promptly provided him with discovery materials, as well as on-going discovery prior to trial. [Mem. in Opp. to Discovery Motion at 2-5.] According to Respondents, Petitioner had access to, and copies of, most, if not all, of the items he requests in the Discovery Motion. Respondents therefore argue that Petitioner has not established good cause to conduct discovery.[5] [Id. at 9-10.]

Respondents also claim that good cause does not exist because Petitioner merely seeks discovery as a fishing expedition to develop his actual innocence claim and his ineffective assistance of counsel claims. They argue that Petitioner has not pointed to any credible evidence that Burkhart was the actual killer. Respondents contend that, because the evidence against Petitioner was overwhelming, even if DNA evidence places Burkhart at the scene, it does not conclusively establish Petitioner's actual innocence. [Id. at 11-13.] Respondents argue that trial counsel made an informed decision not to pursue independent DNA testing and this decision was within the range of competent

---

[5] Respondents argue that the Court should deny the Discovery Motion because it does not comply with the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). [Mem. in Opp. to Discovery Motion at 5-7.] The Court cautions Petitioner that failure to follow the Local Rules in the future may result in sanctions, but the Court declines to deny the Discovery Motion for non-compliance with the Local Rules. Petitioner's non-compliance did not prejudice Respondents and the motion raises important discovery issues that should be addressed on the merits.

assistance.  Any results from DNA testing that Petitioner may now obtain are irrelevant.  [Id. at 14-16.]

Respondents further argue that Petitioner's claim that Furuya provided false or misleading testimony at trial is unfounded.  At trial, she testified regarding her actual analysis of the evidence submitted as trial exhibits.  In contrast, at the hearing for the evidentiary motion in the Rule 40 proceeding, Petitioner's counsel asked Furuya hypothetical questions about DNA testing.  At that time, counsel could have asked her about the issues Petitioner raises in the instant Petition, *i.e.* whether the HPD laboratory actually conducted the tests she claimed they did, whether it disclosed all the results, and whether it performed the tests properly.  Respondents argue that to allow Petitioner another opportunity to question Furuya would be an improper fishing expedition.  [Id. at 16-17.]

Finally, Respondents point out that the relief Petitioner seeks in the Discovery Motion, production of trial evidence for DNA testing, is the same relief requested in his Petition.  They argue that granting the Discovery Motion would be tantamount to granting the Petition, which would be improper because Petitioner's actual innocence claim was procedurally defaulted.  [Id. at 17.]

Petitioner filed his reply on May 11, 2006.  He argues that Respondents' emphasis on the pretrial discovery that the

prosecution provided is misplaced.  The important discovery requested in the Discovery Motion, in particular the DNA testing, was never provided.  [Discovery Motion Reply at 1-2.]

Prior to trial, the prosecution filed a motion to obtain blood, hair, and saliva samples from Petitioner to compare with samples from the crime scene and from inside Cabaccang's vehicle.  [Id. at 2.]  At the hearing during Petitioner's Rule 40 proceeding, Furuya testified that the HPD laboratory only attempted DNA testing on a cap, a knife, and a jacket. Petitioner argues that DNA testing may be successful on items that were not tested at the time of his trial, including swabs from blood-like stains on the sidewalk.  Petitioner reiterates that DNA testing could support his claim that Burkhart was at the scene of the crime, which will bolster his actual innocence and ineffective assistance of counsel claims.  [Id. at 2-5.]

Petitioner also argues that, in light of the many second-hand reports of Burkhart confessions, it is reasonable to believe that MPD has additional information that would incriminate Burkhart.  That information would bolster Petitioner's actual innocence claim and his other claims.  [Id. at 5.]  Petitioner acknowledges that his trial counsel had access to some of the evidence prior to trial, but argues that his current counsel needs to review the evidence to familiarize himself with the issues and to confirm the accuracy of the

12

record.  [Id. at 6.]

Petitioner argues that he has identified the requested
discovery with sufficient specificity and has established that
the discovery is necessary to his claims.  Petitioner asserts
that the evidence against him cannot be considered overwhelming
in light of the evidence implicating Burkhart and that forensic
testing to establish actual innocence or a claim for ineffective
assistance of counsel is not a fishing expedition.  Petitioner
further argues that it is irrelevant that his trial counsel made
a conscious decision not to seek DNA testing because counsel did
not conduct a sufficient investigation to form a valid strategy.
Finally, he argues that his actual innocence claim is not
procedurally defaulted under United States Supreme Court case
law.  [Id. at 7-8.]

### DISCUSSION

Unlike civil litigants, a habeas petitioner is not
presumptively entitled to discovery.  See Rich v. Calderon, 187
F.3d 1064, 1068 (9th Cir. 1999).  "Habeas is an important
safeguard whose goal is to correct real and obvious wrongs.  It
was never meant to be a fishing expedition for habeas petitioners
to explore their case in search of its existence."  Id. at 1067
(citations and quotation marks omitted).

Rule 6(a) of the Rules Governing Section 2254 Cases in
the United States District Courts provides, in pertinent part: "A

judge may, for good cause, authorize a party to conduct discovery
under the Federal Rules of Civil Procedure and may limit the
extent of discovery."  Rule 6(a) is meant to be consistent with
the Supreme Court's decision in Harris v. Nelson, 394 U.S. 286
(1969).  See Rule 6(a), 28 U.S.C. foll. § 2254, advisory
committee's note (1976 Adoption).  In Harris, the Supreme Court
stated that "where specific allegations before the court show
reason to believe that the petitioner may, if the facts are fully
developed, be able to demonstrate that he is . . . entitled to
relief, it is the duty of the court to provide the necessary
facilities and procedures for an adequate inquiry."  394 U.S. at
300.  The Ninth Circuit has held that a court must order
discovery where it is "essential for the habeas petitioner to
develop fully his underlying claim."  Pham v. Terhune, 400 F.3d
740, 743 (9th Cir. 2005) (citation and internal quotation marks
omitted).  The Ninth Circuit has affirmed a district court's
order of discovery where the petitioner's claims did "not appear
purely speculative or without any basis in the record."  McDaniel
v. United States Dist. Court for the Dist. of Nevada, 127 F.3d
886, 888 (9th Cir. 1997).

        A petitioner need not prove that he will ultimately
prevail on his underlying claims in order to obtain discovery.
See Pham, 400 F.3d at 743 (citing Bracy v. Gramley, 520 U.S. 899,
909 (1997) ("It may well be, as the Court of Appeals predicted,

14

that petitioner will be unable to obtain evidence sufficient to support a finding of actual judicial bias in the trial of his case, but we hold that he has made a sufficient showing . . . to establish 'good cause' for discovery." (alteration in original))).  Further, whether a petitioner may conduct discovery is not contingent upon whether there is to be an evidentiary hearing.  See Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997).  A court, however, should not grant a discovery request where it does not have a valid habeas petition before it, nor should it grant discovery where the petition has exhausted and unexhausted claims.  See Calderon v. United States Dist. Court for the N. Dist. of Cal., 144 F.3d 618, 621 (9th Cir. 1998).

This Court therefore turns to the question whether Petitioner's claims are exhausted and whether the Petition is valid.

## I.  **Exhaustion**

The exhaustion of available state remedies is ordinarily a prerequisite to obtaining federal habeas corpus relief.  See 28 U.S.C. § 2254(b)(1)(A), (c); Baldwin v. Reese, 541 U.S. 27, 29 (2004).  The State must have the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin, 541 U.S. at 29 (citations and quotation marks omitted).  In order for the State to have the necessary opportunity, the petitioner must "fairly present" his

federal claim "in each appropriate state court (including a state supreme court with powers of discretionary review)[.]"  Id.  In order to fairly present a claim to the state courts, the petitioner must present the factual basis and the federal legal theory supporting his claim for relief.  See Cockett v. Ray, 333 F.3d 938, 942 (9th Cir. 2003).  A petitioner must also present his claim in a procedural context in which the state court will consider the claim's merits.  See Castille v. Peoples, 489 U.S. 346, 351 (1989).

A court may also deem a petitioner's claims exhausted if he demonstrates that there are no remaining state remedies available to adequately address the violation of his rights.  See § 2254(b)(1)(B), (c); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  This includes the situation where, although the petitioner raised a federal claim, the state supreme court declined to address it on the merits because of a violation of a state procedural rule.  In that case, the exhaustion requirement is technically satisfied because the petitioner cannot return to state court to bring the claim, but the petitioner's procedural default may bar the district court from considering it.

## II. **Procedural Default**

The Ninth Circuit has stated that:

The procedural default doctrine bars federal
habeas when a state court declined to address a
prisoner's federal claims because the prisoner had
failed to meet a state procedural requirement.

16

Not all state procedural bars are adequate to foreclose federal review. For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.

Hanson v. Mahoney, 433 F.3d 1107, 1113 (9th Cir. 2006) (citations omitted). Generally, there is no procedural default unless "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Coleman v. Thompson, 501 U.S. 722, 735-36 (1991) (citation and quotation marks omitted). An implied procedural default occurs when a petitioner fails to raise a claim at the state level and would be procedurally barred from presenting it if he returned to state court. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).

If a petitioner has procedurally defaulted on a claim, the federal court reviewing his habeas petition must determine whether the default should be excused. See Hanson, 433 F.3d at 1114. A procedural default will be excused where the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. If the petitioner can establish one of these exceptions, the federal court may consider the procedurally defaulted claim. See id.

## A.    <u>Cause & Actual Prejudice</u>

In order to establish cause for a procedural default, the petition must "'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  <u>Id.</u> at 753 (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  The United States Supreme Court has not adopted a precise definition of what constitutes "cause".  <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000).  The Supreme Court, however, has identified at least three instances that may constitute cause: 1) the factual or legal basis of the claim was not available to the petitioner; 2) some interference by state officials made the petitioner's compliance impracticable; and 3) the default was the result of the ineffective assistance of counsel.  <u>See</u> <u>Carrier</u>, 477 U.S. at 488.

In order to establish prejudice, the petitioner "must show not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  <u>Id.</u> at 494 (citation and quotation marks omitted) (alteration and emphases in original).  Although the Supreme Court has "refrained from giving precise content to the term prejudice,"  <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982) (citation and quotation marks omitted), it has stated that the standard is "significantly greater" than the

18

showing necessary to establish plain error on direct appeal.  <u>See</u>
<u>Carrier</u>, 477 U.S. at 493-94.

      **B.**    <u>**Fundamental Miscarriage of Justice**</u>

      A court on habeas review may also excuse a petitioner's
procedural default if there was a fundamental miscarriage of
justice.  <u>See</u> <u>id.</u> at 496.  A petitioner can establish a
fundamental miscarriage of justice if he can show that "a
constitutional violation has probably resulted in the conviction
of one who is actually innocent[.]"[6]  <u>Id.</u>  In order to meet the
probability standard, "the petitioner must show that it is more
likely than not that no reasonable juror would have convicted him
in the light of the new evidence."  <u>Schlup v. Delo</u>, 513 U.S. 298,
327 (1995).  In other words, the issue is whether reasonable
jurors, who were properly instructed by the trial court and who
are assumed to fairly consider all the evidence and to follow the
court's instructions, would have been able to find the petitioner
guilty beyond a reasonable doubt in light of the new evidence.
<u>See</u> <u>id.</u> at 329.  This is a higher standard than the prejudice

---

    [6] A claim that the petitioner's actual innocence claim
excuses his procedural default is distinguishable from a
substantive actual innocence claim, such in <u>Herrera v. Collins</u>,
506 U.S. 390 (1993).  <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 313-14
(1995) (distinguishing <u>Herrera</u>).  In a substantive actual
innocence claim, the petitioner argues that, even assuming that
there were no errors in his trial and sentencing, the execution
of an innocent person violates the Eighth Amendment.  <u>See</u> <u>id.</u> at
314.  The Court will address the standard for establishing a
substantive actual innocence claim in its discussion of
Petitioner's Ground Four.

standard discussed *supra*.  See <u>id.</u> at 327.  When reviewing the
petitioner's showing, the habeas court is not bound the
admissibility rules which govern trials.  The court must consider
"all the evidence, including that alleged to have been illegally
admitted (but with due regard to any unreliability of it) and
evidence tenably claimed to have been wrongly excluded or to have
become available only after the trial."  <u>Id.</u> at 328 (quotation
marks omitted).  Thus, the habeas court cannot rule that a
petitioner's showing is inadequate merely because there was
sufficient evidence in the trial record to support the verdict.
See <u>id.</u> at 331.

III. <u>**Petitioner's Claims**</u>

Respondents concede that Grounds One, Four, Five, and
Six are exhausted, but they argue the Grounds Two, Three, Seven,
and Eight are either partially or completely unexhausted.
[Answer at 33.]  Further, they argue that all of Petitioner's
claims, with the exception of Ground One and the Fourteenth
Amendment claim in Ground Two, are procedurally defaulted.  [<u>Id.</u>
at 38.]  The Court addresses each Ground in turn.

A.    <u>**Ground One – Denial of Right to Testify**</u>

After the State's rebuttal evidence, but before the
parties presented closing arguments, Petitioner informed the
trial judge in open court that he wanted to testify.  In a
conference in the judge's chambers, defense counsel stated that

20

he had informed Petitioner that it was beyond the point in the trial in which he could testify.  Neither the prosecutor nor the judge contradicted defense counsel's statement, but the judge asked Petitioner if there was anything he wanted to say. Petitioner responded that there was a tape recording which demonstrated that Seidel, who testified for the prosecution, had committed perjury.  In his Petition, Petitioner states that this was not what he would have testified about at trial had he been permitted to take the stand.  He emphasizes that no one asked him during the chambers conference what his testimony would be.  The trial judge refused to allow the defense to reopen its case to allow Petitioner to testify.  [Mem. in Supp. of Petition at 7-8.]

During argument on the defense's motion for a new trial, defense counsel clarified that Petitioner's statement about the tape recording was not an offer of proof regarding his intended testimony.  Defense counsel stated that Petitioner would have testified about his version of the events in question and his testimony would have substantially differed from the testimony of the prosecution's witnesses.  Defense counsel argued that Petitioner's testimony would have supported an acquittal on the murder charge, or at least a verdict of manslaughter.  The trial judge reaffirmed his denial of Petitioner's request to testify on the ground that Petitioner had previously declined to testify and waited until just before closing arguments to try to

change his mind.  [Id. at 8-9.]

        In the instant Petition, Petitioner claims that the
trial court's denial of his request to testify because of the
timing of his request violated his rights under the Fifth, Sixth,
and Fourteenth Amendments to the United States Constitution.  He
argues that, at the time of his trial, there was no state
procedural rule prohibiting a defendant from withdrawing or
revoking his waiver of his right to testify before the end of
trial.  In fact, Hawai`i case law at the time implied that a
defendant could do so.  Similarly, the Ninth Circuit has not
addressed the issue whether there is a point during a trial after
which it is too late for a defendant to withdraw or revoke his
waiver of his right to testify.  Petitioner therefore argues that
the trial court's denial of his request to testify was an
arbitrary limitation on his constitutional right to testify and
the limitation was disproportionate to the purpose such a rule
would serve.  [Id. at 9-11.]  Petitioner states that, if the
trial court had permitted him to testify, he would have denied
stabbing Cabaccang and would have said that a third man was at
the scene of the stabbing.  He contends that his testimony would
have helped to explain what happened at the time of the offense
and that the exclusion of this testimony was a prejudicial
constitutional violation which was an objectively unreasonable
application of clearly established federal law.  [Id. at 13.]

Petitioner presented both the factual basis and federal legal theory behind this claim in the opening brief in his direct appeal. [Appx. A to Petition ("Opening Brief") at 1-3, 14-22.] The Hawai`i Supreme Court addressed this claim on its merits. See State v. Christian, 88 Hawai`i 407, 419-27, 967 P.2d 239, 251-59 (1998). Ground One is therefore exhausted.

B.    **Ground Two – Exclusion of the Burkhart Confessions**

Petitioner's trial witness list included the names of four persons who would testify that Burkhart confessed to killing Cabaccang. Defense counsel made an offer of proof regarding two of the witnesses: William Auld, Burkhart's former cell mate, and Patricia Mullins, a friend of Burkhart's. Burkhart allegedly told Mullins that he had a relationship with Seidel, who he claimed would never implicate him in the stabbing. The trial court ruled that the confessions were inadmissible. On appeal, the Hawai`i Supreme Court affirmed the trial court's ruling, holding that there was insufficient evidence to corroborate the confessions. The corroborating evidence merely established a tenuous link between Burkhart and the neighborhood where the stabbing took place; it did not link him to the stabbing. Further, the supreme court noted that there were two witnesses who placed Burkhart somewhere else at the time of the stabbing. [Mem. in Supp. of Petition at 14-16.]

The instant Petition argues that there was additional

evidence at trial which corroborated the confessions.  Burkhart's name came up during the initial investigation at the scene of the stabbing and he eventually became the first suspect.  The attacker apparently unlocked Cabaccang's car with Cabaccang's keys, which were found nearby.  Petitioner argues that this supports Mullins' proposed testimony because Seidel could have given Burkhart the keys.  In contrast, Petitioner did not know either Seidel or Cabaccang and would not have been able to obtain Cabaccang's keys.  Petitioner also argues that the fact that Burkhart invoked his Fifth Amendment right not testify at Petitioner's trial corroborates the confessions.  Petitioner further contends that the confessions are reliable because there were at least two of them and because they are admissions against interest.  Petitioner argues that the exclusion of Burkhart's confessions was prejudicial because he could not rebut the prosecution's evidence that Burkhart was somewhere else at the time of the stabbing.  He therefore claims that the exclusion of the confessions violated the Due Process Clause of the Fourteenth Amendment, his Sixth Amendment right to present evidence, and his Fifth Amendment right to a fair trial.  [Id. at 15-16.]

        Petitioner argues that, under Ninth Circuit case law, a habeas petitioner is entitled to relief where the exclusion of hearsay evidence at trial prevented him from presenting material evidence of his innocence.  [Id. at 17 (citing Chia v. Cambra,

360 F.3d 997, 1004 (9th Cir. 2004)).]  Petitioner alleges that he
is entitled to relief because Burkhart's confessions were
critical to his defense and the trial court's exclusion of that
evidence was an objectively unreasonable application of clearly
established federal law.  [Id. at 17-18.]

          Respondents contend that Ground Two is partially
unexhausted because, when Petitioner presented this issue on
direct appeal, the only federal argument he raised was a
violation of the Due Process Clause.  Respondents thus concede
that Petitioner's Fourteenth Amendment argument is exhausted, but
they argue that Petitioner did not raise the Fifth Amendment and
Sixth Amendment arguments in either his direct appeal or his Rule
40 Petition.  [Answer at 33-34.]  Respondents also concede that
Petitioner's Fourteenth Amendment argument is not procedurally
defaulted, but they argue that his Fifth Amendment and Sixth
Amendment arguments are procedurally defaulted.  [Id. at 38.]  In
his reply in support of the Petition, Petitioner conceded that he
did not exhaust the Fifth Amendment claim and, therefore, he
expressly abandoned that claim.  [Reply at 2.]

          Petitioner's opening brief in his direct appeal clearly
argued that the trial court's exclusion of the confessions under
state evidentiary rules violated his right to due process and he
cited several federal cases to support this claim.  The supreme
court noted that Petitioner correctly pointed out that Chambers

25

v. Mississippi, 410 U.S. 284 (1973), was the leading case on the issue of the admissibility of third party confessions.  See Christian, 88 Hawai`i at 428, 967 P.2d at 260.  The supreme court held that the corroborating circumstances described in Chambers were not present in this case and therefore the trial court did not abuse its discretion in excluding the confessions.  See id. at 430-31, 967 P.2d at 262-63.  Petitioner's Fourteenth Amendment claim in Ground Two is therefore exhausted.

    Petitioner, however, did not expressly argue that the exclusion of the confessions violated his Sixth Amendment right to present witnesses in his defense.  [Opening Brief at 22-29.] Further, Petitioner's Rule 40 Petition did not address the trial court's exclusion of the Burkhart confessions.[7]  In the Opening Brief's argument regarding the due process violation, Petitioner cited Perry v. Ruchen, 713 F.2d 1447 (9th Cir. 1983).  He quoted the Court's conclusion in Perry that: "'Due process draws a boundary beyond which state rules cannot stray; it does not displace the law of evidence with a constitutional balancing test. . . . [O]nly the most urgent considerations, such as those in Chambers, can outweigh them.'"  [Id. at 25 (quoting Perry, 713

_____

    [7] The Court notes that Petitioner did argue that his Sixth Amendment and Fourteenth Amendment rights to compulsory process and to confront the witnesses against him were violated when the trial court allowed Burkhart to take the Fifth Amendment when trial counsel called him as a defense witness.  [Appx. D to Petition ("Addendum to Rule 40 Petition") at 130-31.]

F.2d at 1453 (alterations in original)).]

In Perry, the Ninth Circuit analyzed the exclusion of

evidence of third-party culpability and stated that:

> The sixth amendment guarantees the accused
> compulsory process for obtaining witnesses in his
> favor.  This right is a part of the due process
> that the fourteenth amendment requires of the
> state.  Compulsory process implicitly prevents the
> state from arbitrarily excluding such testimony.
> The Framers of the Constitution did not intend to
> commit the futile act of giving to a defendant the
> right to secure the attendance of witnesses whose
> testimony he had no right to use.  The defendant's
> general fourteenth amendment right to due process
> also restrains the operation of state rules of
> evidence.  Due process "is, in essence, the right
> to a fair opportunity to defend against the
> State's accusations."  Chambers v. Mississippi,
> 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d
> 297 (1973).  State evidentiary rules "may not be
> applied mechanistically to defeat the ends of
> justice."  Id. at 302, 93 S.Ct. at 1049.  These
> twin strands intertwine to restrain state law.
> See id.

Perry, 713 F.2d at 1450 (some internal citations and quotation

marks omitted) (emphases added).  The Ninth Circuit's analysis

reveals that a consideration of the issue's Fourteenth Amendment

due process implications is closely connected with its Sixth

Amendment compulsory process implications.  Petitioner's reliance

on Perry and Chambers therefore should have put the Hawai`i

Supreme Court on notice of his Sixth Amendment claim that the

exclusion the Burkhart confessions violated his right to present

witnesses in his defense.  This Court therefore finds that

Petitioner fairly presented his Sixth Amendment claim to the

27

Hawai`i Supreme Court.  The claim is therefore exhausted, even though the supreme court did not address it.  <u>See</u> <u>Dye v. Hofbauer</u>, 126 S. Ct. 5, 6-7 (2005) (stating that whether a claim is exhausted does not turn upon whether the state appellate court chose to ignore it).

Ground Two is exhausted as to both Petitioner's Fourteenth Amendment and Sixth Amendment claims.

**C.    <u>Grounds Three – Ineffective Assistance of Trial Counsel</u>**

In Ground Three,[8] Petitioner argues that trial counsel's representation fell below the standard for the effective assistance of counsel established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  [Mem. in Supp. of Petition at 18, 50.]  He argues that trial counsel rendered ineffective assistance by: failing to obtain and introduce an enhanced copy of the tape-recorded conversation between Petitioner and Lisa Kimmey; failing to introduce an enhanced recording of a 911 call made from the scene of the stabbing; failing to conduct sufficient forensic testing on the physical evidence; and changing defense theories in the middle of trial and adopting a self-defense theory against Petitioner's wishes.  Petitioner also references several other allegations of ineffective assistance

---

[8] Petitioner's argument that trial counsel rendered ineffective assistance by giving a defective closing argument comes from Ground Eight.  The Court, however, finds that this argument is more appropriately addressed within the context of Ground Three.

which he raised in his Rule 40 Petition.  [Id. at 18–26, 33–50.]
Petitioner asserts that an evidentiary hearing is necessary for
his ineffective assistance of trial counsel claims.  [Id. at 18.]

    1.  **Background**

    a.  **Christian–Kimmey recording**

At trial, the prosecution played a tape recording of a
telephone conversation between Petitioner and Lisa Kimmey.
According to the prosecution, during the conversation, Petitioner
said "I wasn't the one who started it".  Petitioner claims that
what he actually said was "I wasn't the one who stabbed him" and
that he also said "I'm not the one who did it."  [Id. at 19.]  He
argues that, if the recording had been enhanced or the volume of
the prosecution's recording had been adjusted properly, the jury
would have heard the correct statements.  Petitioner argues that
trial counsel was apparently unaware of the recording's actual
contents, as counsel never refuted the prosecution's
representation of the recording's contents.  He claims that
counsel's failure to investigate the accuracy of the recording
constituted ineffective assistance.  He further claims that
counsel's failure prejudiced him because it prevented the jury
from hearing his denials of guilt and the accurate recording
would have provided corroboration of Burkhart's confessions.
[Id. at 19–21.]

### b.  Perry 911 call

Petitioner also argues that trial counsel rendered ineffective assistance by failing to present a recording of a 911 telephone call to the jury.  Robert Perry, Jr., came to the scene of the stabbing because he heard a commotion.  As he approached, he called 911.  Petitioner asserts that, by the end of the recording, Perry was at the scene and was standing next to Cabaccang.  Petitioner states that the recording reveals that a male, who is assumed to be Cabaccang, spoke the word "Burkhart". This recording was produced to the defense in discovery, but counsel did not introduce it at trial.  [Id. at 21.]

### c.  Forensic testing

Petitioner also argues that trial counsel rendered ineffective assistance because he failed to conduct forensic testing that would have supported Petitioner's innocence.  In particular, Petitioner argues that DNA testing could have placed Burkhart at the scene of the stabbing and that an analysis of the bite mark on Seidel could have shown that Petitioner was not the attacker.  [Id. at 22.]

### d.  Change in defense theory/defective closing argument

In his opening statement, trial counsel argued that Petitioner did not kill Cabaccang.  In his closing argument, counsel asked the jury to decide whether there was a reasonable doubt that Petitioner inflicted Cabaccang's wounds, but counsel

30

also argued that, if the jury determined that Petitioner did
inflict the wounds, it had to decide whether Petitioner acted in
self-defense and whether he acted under extreme emotional
disturbance. [Id. at 33, 37-38.]  Trial counsel also stated that
the defense did not contest the fact that Cabaccang tackled
Petitioner and that Petitioner was on the ground under him. [Id.
at 38.]  Counsel stated that both Petitioner and Cabaccang had
knives in the struggle and that Petitioner had cuts on his
stomach and hand after the struggle.  Petitioner argues that
counsel's argument ignored evidence at trial which established
that Petitioner did not have cuts on his hand or body after the
incident. [Id. at 39-40.]  Counsel also argued that the presence
of Cabaccang's blood on the back of Petitioner's shirt showed
that Cabaccang, who was already bleeding, attacked Petitioner,
who was face down on the ground.  Counsel argued that Petitioner
fought back to defend himself. [Id. at 42-43.]  Counsel,
however, acknowledged that, had Petitioner testified, he would
have denied committing the offense. [Id. at 33.]

       Petitioner argues that counsel's strategy during
closing argument was against Petitioner's wishes and gave the
jury the impression that the defense "was being less than
candid." [Id. at 33-34.]  Trial counsel also stated during
closing argument that he did not know what happened on the night
in question, a statement Petitioner argues was against his best

interests.  [Id. at 34.]  Further, despite making such a
statement, defense counsel's closing argument presented a theory
of the case that was similar to the prosecution's.  [Id. at 41.]

        Defense counsel also told the jury that Petitioner
asked him if the jury would think he was hiding something if he
did not testify.  Counsel stated that he believed there was no
point in putting Petitioner on the stand because the jurors
likely would not believe Petitioner.  They might think that,
because of the serious charges against him, Petitioner would say
whatever he thought was necessary to be acquitted.  Petitioner
argues that counsel's closing argument exacerbated counsel's
refusal to allow Petitioner to testify.  [Id. at 44-45.]

        The Petition argues that counsel's closing argument was
"profoundly prejudicial" and that counsel's errors were not
harmless.  [Id. at 46.]  Petitioner maintains that counsel's
argument lessened the prosecution's burden of proof by conceding
critical factual issues.  Counsel conceded that Petitioner had
illegally entered Cabaccang's car and that Petitioner stabbed
Cabaccang.  Petitioner argues that defense counsel failed to
subject the prosecution's case to meaningful adversarial
challenge, in violation of his Sixth Amendment rights.  [Id. at
46-47.]  In connection with the defense's motion for a new trial,
defense counsel submitted an affidavit stating that, if the court
had allowed Petitioner to testify, he would have denied stabbing

32

Cabaccang and would have described a third man at the scene. Petitioner argues that this is contrary to counsel's strategy during closing argument and illustrates that counsel's closing argument seriously prejudiced him. [Id. at 49.] He contends that there is a reasonable probability that the outcome of the trial would have been different were it not for counsel's errors during closing argument. [Id. at 50.]

### e.  Other allegations

In addition, Petitioner asks the court to consider seven other instances of trial counsel's alleged ineffective assistance[9] that Petitioner raised in his Rule 40 Petition. Petitioner alleges that trial counsel was ineffective in failing to: 1) present a forensic pathologist to disprove the prosecution's theory of how the incident occurred; 2) discredit a lay witness's identification of Petitioner's handwriting; 3) introduce available evidence that Petitioner did not have stolen stereo equipment in his possession; 4) make offers of proof regarding additional witnesses who would have given testimony about Burkhart confessions; 5) call witnesses to contradict Burkhart's alibi; 6) present evidence that Seidel and Burkhart knew each other; and 7) object to the prosecutor's improper

---

[9] Petitioner lists eleven other arguments, but two are evidentiary issues which the Court will address in Ground Nine, and two of the ineffective assistance arguments are specifically addressed elsewhere in Ground Three or in Ground Eight.

remarks during closing arguments.  [Id. at 23-24.]

    2.  **Analysis**

        Petitioner argues that trial counsel's ineffective
assistance prejudiced him because the result would have been
different were it not for counsel's errors.  He asserts that he
is entitled to habeas relief because counsel's actions violated
principles of federal law that were well established at the time
of his trial.  [Id. at 25-26.]

        Respondents argue that Petitioner's claim that trial
counsel rendered ineffective assistance during closing argument
is entirely unexhausted because he failed to present it as a
federal issue in his direct appeal or in his Rule 40 Petition.
[Answer at 36-37.]  They also argue that this claim is
procedurally defaulted because it can no longer be fairly
presented to a state court.  [Id. at 39-40.]  As to Petitioner's
other claims of ineffective assistance, Respondents argue that
they are unexhausted because he did not raise them in his appeal
from the denial of his Rule 40 Petition.  [Id. at 35.]  Further,
to the extent that some of those claims are exhausted, they are
procedurally defaulted.  [Id. at 40.]

        With the exception of one claim, Petitioner raised the
claims he now alleges in Ground Three for the first time in his
Rule 40 Petition.  [Addendum to Rule 40 Petition.]  In the other

34

claim, Petitioner argues that trial counsel was ineffective in failing to object to the prosecutor's improper comments during closing argument. [Mem. in Supp. of Petition at 24.] Petitioner did not raise this argument in his Rule 40 Petition. [Addendum to Rule 40 Petition at 147-56.] He merely argued that the prosecutor's improper comments violated his state and federal constitutional rights. Petitioner therefore waived the claim that trial counsel was ineffective for failing to object to the prosecutor's comments during closing argument. See Haw. R. Pen. P. 40(a)(3). The remainder of this section addresses Petitioner's other claims of ineffective assistance.

        In the appeal from the denial of his Rule 40 Petition, Petitioner argued that trial counsel rendered ineffective assistance because, inter alia, had counsel conducted a more thorough investigation, he would have uncovered evidence supporting a meritorious defense. Petitioner argued that he was entitled to relief under Hawai`i law and the Sixth Amendment. [Appx. N to Petition ("Rule 40 Opening Brief") at 28-29.] He specifically presented the factual basis for his claim that trial counsel rendered ineffective assistance with regard to the tape recording of the Kimmey conversation, and the Perry 911 call. [Id. at 13-15, 17-18.] Petitioner argued that counsel's conduct prejudiced him under the federal ineffective assistance standard. [Id. at 16 & 18 (citing Kimmelman v. Morrison, 477 U.S. 365

(1986)).]  Petitioner also described the forensic testing that was necessary to establish his ineffective assistance claims and cited federal case law to support his entitlement to forensic testing.  [Id. at 18-19 (citing United States v. Glover, 97 F.3d 1345 (10th Cir. 1996)).]  Petitioner's Rule 40 Opening Brief included a list with a brief description of the other allegations of trial counsel's ineffective assistance, including the allegedly defective closing argument.  [Id. at 19-21.]  In his standard of review section, Petitioner argued that his trial counsel's and appellate counsel's ineffective assistance violated his rights under the Sixth Amendment to the United States Constitution.  Petitioner also recited the standard for determining whether a violation of the Sixth Amendment.  [Id. at 12 (citing Strickland v. Washington, 466 U.S. 668 (1984)).]  Thus, Petitioner presented the ineffective assistance of counsel claims which he alleges in Ground Three to the Hawai`i Supreme Court as federal claims.

The Hawai`i Supreme Court ruled that Petitioner's ineffective assistance of trial counsel claims were waived because he did not raise them in his direct appeal.  [Appx. P to Petition ("Rule 40 Appellate Decision") at 2 (citing Haw. R. Pen. P. 40(a)(3) (2000)).]  Rule 40(a)(3) provided:

> Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  An issue is waived if

36

> the petitioner knowingly and understandingly
> failed to raise it and it could have been raised
> before the trial, at the trial, on appeal, in a
> habeas corpus proceeding or any other proceeding
> actually conducted, or in a prior proceeding
> actually initiated under this rule, and the
> petitioner is unable to prove the existence of
> extraordinary circumstances to justify the
> petitioner's failure to raise the issue.  There is
> a rebuttable presumption that a failure to appeal
> a ruling or to raise an issue is a knowing and
> understanding failure.

Haw. R. Pen. P. 40(a)(3) (2000).  The supreme court held that

Petitioner waived his ineffective assistance of trial counsel

claims when he failed to raise them in his direct appeal, which

he briefed in 1997.[10]  Rule 40(a)(3) was consistently applied and

firmly established at that time.  See, e.g., Tachibana v. State,

79 Hawai`i 226, 232, 900 P.2d 1293, 1299 (1995); Stanley v.

State, 76 Hawai`i 446, 450, 879 P.2d 551, 555 (1994).  The

applicability of Rule 40(a)(3) to ineffective assistance of

counsel claims which were not raised on direct appeal, however,

was not clearly established at the time of the purported default.

In Garringer v. State, the Hawai`i Supreme Court noted

that "[b]ecause appellate courts do not ordinarily consider

evidence outside the record, a post-conviction proceeding is the

most appropriate forum in which to resolve ineffective assistance

claims."  80 Hawai`i 327, 336, 909 P.2d 1142, 1151 (1996)

---

[10] The version of Rule 40(a)(3) in effect in 1997 was
identical to the 2000 version.  See Haw. R. Pen. P. 40(a)(3)
(1997).

(citations and quotation marks omitted).  Garringer argued in his Rule 40 petition that his trial counsel rendered ineffective assistance with respect to his temporary insanity defense.  See id. at 335, 909 P.2d at 1150.  In response to the prosecution's argument that he waived this argument by failing to raise it in his direct appeal, Garringer argued that his appellate counsel ignored his request to appeal certain issues and did not conduct sufficient research before filing the appeal.  The supreme court also noted that the failure to raise the issue on appeal did not per se preclude Garringer from obtaining relief; Garringer could only be deemed to have waived the issue if a waiver could be inferred from the entire record.  See id. at 335 n.14, 909 P.2d at 1150 n.14.  The supreme court remanded the case to the circuit court to conduct a Rule 40 hearing to determine the merits of Garringer's ineffective assistance claim.  See id. at 336, 909 P.2d at 1151.  Similarly, in Raines v. State, the supreme court noted that:

> The resolution of ineffective assistance claims sometimes requires the consideration of evidence outside the trial record--for example, testimony of trial counsel regarding the reasons for the acts or omissions that occurred at trial.  Because appellate courts do not ordinarily consider evidence outside the record, a post-conviction proceeding is the most appropriate forum in which to resolve ineffective assistance claims.

79 Hawai`i 219, 223, 900 P.2d 1286, 1290 (1995) (citation omitted).

Ground Three's allegations of ineffective assistance of trial counsel arguably involved the consideration of evidence outside of the trial record: a different version of the Kimmey conversation; the Perry 911 call and other evidence that was available to defense counsel but that he did not introduce at trial; and trial counsel's testimony about his actions and omissions at trial. Under the case law existing at the time of Petitioner's purported default in 1997, it was not clearly established that his failure to raise these allegations in his direct appeal would constitute a waiver under Rule 40(a)(3).

The Hawai`i Supreme Court's holding that Petitioner's ineffective assistance of trial counsel claims were barred by Rule 40(a)(3) was not based on a rule that was consistently applied and well established at the time of the purported default. The procedural default doctrine therefore does not apply. See Hanson v. Mahoney, 433 F.3d 1107, 1113 (9th Cir. 2006). Insofar as Petitioner fairly presented the factual basis and federal legal theory in support of his claims regarding the ineffective assistance of trial counsel, with the exception of the claim regarding counsel's failure to object to the prosecutor's allegedly improper comments during closing argument, Ground Three is exhausted.

As to Petitioner's ineffective assistance claim regarding the prosecutor's comments, Petitioner was clearly aware

of the prosecutor's improper remarks and could have raised an
ineffective assistance based on counsel's failure to object in
his Rule 40 Petition.  There is a rebuttable presumption that he
knowingly waived the claim.  See Haw. R. Pen. P. 40(a)(3).
Petitioner has not presented any argument that would rebut this
presumption.  If Petitioner returned to state court, Rule
40(a)(3) would bar him from bringing this claim.  Thus, although
the claim is technically exhausted because Petitioner cannot
return to state court to bring the claim, the procedural default
doctrine prohibits the district court from considering it on
habeas review unless one of the exceptions apply.  See O'Sullivan
v. Boerckel, 526 U.S. 838, 848 (1999); Coleman v. Thompson, 501
U.S. 722, 750 (1991).

      D.    **Ground Four – Actual Innocence**

      Petitioner alleges that he is entitled to habeas relief
pursuant to the Fifth, Sixth, and Fourteenth Amendments because
of his actual innocence.  He further argues that he is entitled
to forensic testing and an evidentiary hearing to support this
claim.  [Mem. in Supp. of Petition at 26.]

      Petitioner argues that there were many reasons to
suspect Burkhart in the stabbing.  For example, two Gas Express
employees stated that a man with a bleeding hand came in at
around 3:00 a.m. on the night in question and the composite
sketch based on their descriptions allegedly looked like

Burkhart.  Petitioner also emphasizes that there both first-hand and second-hand reports that Burkhart confessed to the stabbing. [Id.]

Petitioner argues that there is a constitutional right to DNA testing when it would be relevant to an actual innocence claim and this right is a corollary to the constitutional right not to be convicted when innocent.  He argues that he is entitled to relief regardless of the procedural posture of this case because, even when a claim is procedurally defaulted, a habeas petitioner is entitled to redress where he is actually innocent and constitutional violations resulted in his conviction.  He further argues that he has a right to forensic testing because the Petition establishes a reasonable basis for testing. Petitioner seeks leave conduct DNA testing and bite mark testing so that the district court can consider his actual innocence claim.  [Id. at 27-29.]

Respondents concede that Ground Four is exhausted, [Answer at 33,] but they argue that it is procedurally defaulted. [Answer at 40.]

In his Rule 40 Opening Brief, Petitioner argued that the circuit court erred in failing to rule directly upon his actual innocence claim and in refusing to allow him to test the physical evidence and present testimony in support of his actual innocence claim.  Petitioner cited various federal cases in

41

support of his claim.  [Rule 40 Opening Brief at 24-28.]

        As noted *supra*, a substantive actual innocence claim is
distinct from the argument that a petitioner's procedural default
should be excused because his actual innocence establishes a
fundamental miscarriage of justice.  Petitioner's Rule 40 Opening
Brief, as well as the Petition itself, fails to recognize this
distinction.  For example, he argues "regardless of the
procedural posture of his case, Petitioner should have been given
a hearing to attempt to establish that the constitutional
violations were likely to have resulted in the conviction of an
innocent person."  [Rule 40 Opening Brief at 27.]  This argument
raises actual innocence as an exception to the procedural default
doctrine.  Petitioner, however, cited Herrera v. Collins, 506
U.S. 390 (1993), for the proposition that his right to conduct
DNA testing which would be relevant to his actual innocence claim
"is a corollary to . . . a constitutional right not be convicted
when innocent."  [Id. at 26 (citing Herrera).]  Despite
Petitioner's apparent confusion about the different actual
innocence arguments, his reliance on Herrera, the leading case
addressing a substantive actual innocence claim, gave the Hawai`i
Supreme Court notice of his substantive actual innocence claim.
See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (stating that a
litigant can indicate the federal basis for his claim "by citing

in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Thus, Petitioner presented his substantive actual innocence claim to the Hawai`i Supreme Court and this claim is technically exhausted.

The supreme court noted that, because Petitioner could have raised his substantive actual innocence claim in his direct appeal, the viability of this claim turned upon whether he had the effective assistance of appellate counsel.[11] The supreme court held that he failed to establish a colorable claim for the ineffective assistance of appellate counsel and therefore he failed to rebut the presumption that he waived this claim. [Rule 40 Appellate Decision at 4 (citing Haw. R. Pen. P. 40(a)(3) (2000)).] As with the purported default of Petitioner's claims in Ground Three, Petitioner allegedly waived his substantive actual innocence claim in 1997 when he failed to raise the claim in his direct appeal. At that time, Rule 40(a)(3) was a consistently applied and well established state procedural rule. There is no Hawai`i case law establishing that a defendant does not waive a substantive actual innocence claim by failing to raise it on direct appeal. The procedural default doctrine

---

[11] The supreme court apparently held that Petitioner waived his <u>federal</u> substantive actual innocence claim. The supreme court quoted <u>Herrera</u>, 506 U.S. at 404, and noted that Hawai`i law did not recognize an actual innocence claim. [Rule 40 Appellate Decision at 3-4 n.3.]

therefore applies and the district court cannot consider Ground Four unless one of the exceptions apply.

   **E.**   **Ground Five – Improper Identification Evidence**

        Petitioner contends that the prosecution's only independent witness, who initially identified Petitioner, admitted that he did not get a good look at the perpetrator.  He only knew that the perpetrator had long hair.  Petitioner had short hair at the time of the incident.  He argues that the police showed witnesses a misleading photograph of him in which he appeared to have long hair because of the shading in the photograph and that this violated the Due Process Clause of the United States Constitution.  He contends that he is entitled to habeas relief because this unreliable identification evidence played a significant role in his conviction, in violation of clearly established federal law.  [Mem. in Supp. of Petition at 29-30.]

        Respondents concede that Ground Five is exhausted, [Answer at 33,] but they argue that it is procedurally defaulted. [Answer at 40.]

        Petitioner presented the factual basis for this argument in his Rule 40 Opening Brief and he argued that the use of the improper identification evidence violated his rights under the Due Process Clause of the United States Constitution.  [Rule 40 Opening Brief at 30.]  This claim is therefore technically

exhausted.

As with the substantive actual innocence claim, the Hawai`i Supreme Court held that Petitioner waived this claim pursuant to Rule 40(a)(3) because he could have raised it on direct appeal and he failed to raise a colorable claim that appellate counsel's failure to raise the argument constituted ineffective assistance.  [Rule 40 Appellate Decision at 4.]  At the time of Petitioner's purported default, Rule 40(a)(3) was a consistently applied, and well established, state procedural rule.  Further, there is no Hawai`i case law suggesting that this type of argument is more appropriately raised in a Rule 40 petition instead of on direct appeal.  The procedural default doctrine therefore applies and the district court cannot consider Petitioner's claims in Ground Five unless one of the exceptions apply.

F.   **Ground Six – Admission of False or Misleading Evidence**

Petitioner also alleges that he was deprived of his right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment, because of the presentation of the inaccurate tape recording, the deceptive photographic lineup, and inaccurate DNA results.  He states that further DNA testing is necessary to determine the exact nature and extent of the inaccuracies at trial, but he argues that inconsistencies are

45

apparent from the existing information.  Petitioner states that, at trial, Furuya testified that blood was detected on certain items at the scene, but that there were insufficient amounts to conduct DNA tests.  In contrast, at the evidentiary hearing for his Rule 40 Petition, she testified that, if there is enough blood to be detected, DNA testing should be attempted. Petitioner also claims that there were other items which were susceptible to DNA testing but were not tested.  He therefore argues that the DNA evidence presented to the jury was misleading and gave the jury the false impression that the DNA evidence implicated him in the crime.  He argues that the misleading nature of the DNA evidence is sufficient grounds for relief under clearly established federal law.  [Mem. in Supp. of Petition at 30-32.]

Respondents concede that Ground Six is exhausted, [Answer at 33,] but they argue that it has been procedurally defaulted.  [Answer at 40.]

In his Rule 40 Opening Brief, Petitioner argued that the use of inaccurate versions of tape recordings, deceptive photographic lineup, and inaccurate DNA evidence deprived him of his right to a fair trial, as guaranteed by state law and the Due Process Clause of the United States Constitution.  [Rule 40 Opening Brief at 30-31.]  He therefore presented the arguments raised in Ground Six as federal claims to the Hawai`i Supreme

Court.  Ground Six is technically exhausted.

The supreme court, however, held that Petitioner waived these claims because he could have presented them in his direct appeal and he did not raise a colorable claim that appellate counsel's failure to do so constituted ineffective assistance. [Rule 40 Appellate Decision at 4 (citing Haw. R. Pen. P. 40(a)(3) (2000)).]  At the time of Petitioner's purported default, Rule 40(a)(3) was a consistently applied, and well established, state procedural rule.  Further, there is no Hawai`i case law suggesting that these types of arguments are more appropriately raised in a Rule 40 petition instead of on direct appeal.  The procedural default doctrine therefore applies and the district court cannot consider Petitioner's claims in Ground Six unless one of the exceptions apply.

G.    **<u>Ground Seven — Ineffective Assistance of Appellate Counsel</u>**

Petitioner argues that counsel who represented him in his direct appeal rendered in effective assistance.  He argues that appellate counsel was ineffective for failing to present all of the ineffective assistance of trial counsel claims that he raised in his Rule 40 Petition and in the instant Petition. Petitioner specifically claims that, if appellate counsel had conducted an adequate review of the record, she would have realized that Furuya's testimony at trial was inaccurate and that

47

the eyewitness identification was problematic.  This failure to adequately pursue his direct appeal allegedly violated his Sixth Amendment rights.  [Mem. in Supp. of Petition at 32-33.]

Respondents argue that Ground Seven is entirely unexhausted.  They point out that, when Petitioner raised the ineffective assistance of appellate counsel in his Rule 40 Petition, he relied upon the less stringent state standard regarding the ineffective assistance of counsel articulated in Briones v. State, 74 Haw. 442, 848 P.2d 966 (1993).  Petitioner therefore failed to fairly present the federal issue of ineffective assistance that he now raises in the Petition. [Answer at 35-36.]

His Rule 40 Petition argued that Petitioner's rights under the state and federal constitutions were violated because of appellate counsel's ineffective assistance.  He argued that counsel was ineffective for failing to raise all meritorious claims that could have been raised in his direct appeal. Petitioner cited to United States Supreme Court cases in support of this argument.  [Addendum to Rule 40 Petition at 161-62.]  In particular, he argues that appellate counsel was ineffective for failing to raise trial counsel's various incidences of ineffective assistance.  [Id. at 179.]  In his Rule 40 Opening Brief, Petitioner argues that appellate counsel was inadequate for failing to: conduct a sufficient study of the DNA issues and

Furuya's testimony; uncover the problems with the suggestive eyewitness identification; and raise all the claims for ineffective assistance of trial counsel that Petitioner raised in the Rule 40 Petition.  The only authority he cited in the section of the brief addressing the merits of his ineffective assistance of appellate counsel claim was <u>Briones v. State</u>, 74 Haw. 442, 848 P.2d 966 (1993).  The heading the section, however, alleged that appellate counsel's ineffective assistance deprived him of his rights under state law and under the federal constitution. [Rule 40 Opening Brief at 32-33.]  Petitioner also cited the federal standard when he set out the standard of review for his ineffective assistance of appellate counsel claim.  [<u>Id.</u> at 13 (citing <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).]  The Hawai`i Supreme Court ruled on the merits of this claim, holding that Petitioner failed to raise a colorable claim of ineffective assistance of appellate counsel under state law, but it did not address Petitioner's claim under federal law.  [Rule 40 Appellate Decision at 3.]

        As noted previously, a defendant can indicate the federal basis of his claim by citing the applicable federal law, citing a case deciding a similar claim on federal grounds, or by merely calling the claim a "federal" claim.  <u>See</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004).  Further, the Ninth Circuit has stated that, once the habeas petitioner's state court brief makes

49

an explicit reference to the federal source of his claim, the exhaustion requirement is satisfied even if the argument relied predominately on state law.  See Jones v. Smith, 231 F.3d 1227, 1231 (9th Cir. 2000).

Petitioner labeled his ineffective assistance of appellate counsel as a claim under the federal constitution and he cited federal case law establishing the standard for an ineffective assistance of counsel claim.  This satisfied the exhaustion requirements as described in Baldwin.  It is irrelevant that Petitioner's subsequent argument focused predominately on Hawai`i state case law.  This Court finds that Petitioner fairly presented his ineffective assistance of appellate counsel argument as a federal claim to the Hawai`i Supreme Court.  Ground Seven is therefore exhausted.

### H.    Ground Eight – Ineffective Assistance of Trial Counsel Regarding Petitioner's Right to Testify

During the conference after Petitioner informed the trial court that he wished to testify, defense counsel said he informed Petitioner that it was beyond the point in the trial in which he could testify.  [Mem. in Supp. of Petition at 7–8.]  As discussed in section III.A., Petitioner maintains that, under state and federal law at the time, he had the right to withdraw his waiver of his right testify at any time before the end of the trial.  Petitioner argues that trial counsel's improper advice regarding his right to testify violated his Sixth Amendment right

to the effective assistance of counsel.  [Id. at 33.]  Petitioner argues that trial counsel's representation fell below the standard for the effective assistance of counsel established in Strickland v. Washington, 466 U.S. 668 (1984).  [Id. at 50.]

Respondents argue that this claim is entirely unexhausted because he failed to present it as a federal issue in his direct appeal or in his Rule 40 Petition.  [Answer at 36-37.] They also argue that this claim is procedurally defaulted because it can no longer be fairly presented to a state court.  [Id. at 39-40.]

In the opening brief for his direct appeal, Petitioner argued that trial counsel "was ineffective in erroneously advising him that it was too late for him to testify after the close of evidence . . . ."  [Opening Brief at 29 (citation omitted).]  Petitioner relied on the following standard from Hawai`i case law:

> In the context of faulty advice that allegedly influenced the decision not to testify, a two prong test must be satisfied.  The petitioner must show (1) that, absent defense counsel's failings, the petitioner would have decided to testify, and (2) that there is a reasonable possibility, that his or her testimony could have established or supported an available defense.

[Id. at 30 (quoting Jones v. State, 79 Hawai`i 330, 335, 902 P.2d 965, 970 (1995)).]  In arguing that trial counsel's ineffective assistance warranted reversal of his conviction, Petitioner relied upon Briones v. State, 74 Haw. 442, 467, 848 P.2d 966, 978

51

(1993).  [Id. at 31.]  Petitioner also quoted Jones in his

standard of review section.  [Id. at 12-13.]  Nowhere in the

Opening Brief does Petitioner expressly identify a federal basis

for this claim.

      The ineffective assistance of counsel standard

articulated in Jones is the same standard set out in Briones.

Compare Jones, 79 Hawai`i at 334, 902 P.2d at 969, with Briones,

74 Haw. at 462-63, 848 P.2d at 976.  Jones states:

> Generally, [i]n assessing claims of ineffective
> assistance of counsel, the applicable standard is
> whether, viewed as a whole, the assistance
> provided was within the range of competence
> demanded of attorneys in criminal cases.  In order
> to establish that the assistance provided was not
> within that range, a petitioner must show: 1) that
> there were specific errors or omissions reflecting
> counsel's lack of skill, judgment, or diligence;
> and 2) that such errors or omissions resulted in
> either the withdrawal or substantial impairment of
> a potentially meritorious defense.

79 Hawai`i at 334, 902 P.2d at 969 (citations and quotation marks

omitted) (alteration in original).  In contrast, under federal

law, a habeas petitioner alleging an ineffective assistance of

counsel claim must establish: "(1) that counsel's performance was

so deficient that it fell below an 'objective standard of

reasonableness' *and* (2) that the deficient performance rendered

the results of his trial unreliable or fundamentally unfair."

Raley v. Ylst, 470 F.3d 792, 799 (9th Cir. 2006) (quoting

Strickland v. Washington, 466 U.S. 668, 688 (1984)) (emphasis in

original).  The Hawai`i Supreme Court has expressly rejected the

52

standard enunciated in <u>Strickland</u> and its progeny as being unduly burdensome.  <u>See</u> <u>Briones</u>, 74 Haw. at 461 n.11, 848 P.2d at 976 n.11 (citing <u>State v. Smith</u>, 68 Haw. 304, 310 n.7, 712 P.2d 496, 500 n.7 (1986)).

Petitioner's reliance on the more lenient standard in <u>Jones</u> and <u>Briones</u> therefore cannot be said to have put the Hawai`i Supreme Court on notice of the federal nature of his claim.  This Court finds that Petitioner failed to fairly present trial counsel's alleged ineffective assistance regarding Petitioner's right to testify as a federal claim to the Hawai`i Supreme Court.  Petitioner was clearly aware of the alleged ineffective assistance when he filed his direct appeal and could have raised a federal claim in addition to his state claim. Ground Eight is therefore technically exhausted, but it is procedurally defaulted.  The district court can only consider Ground Eight if one of the exceptions apply.

Petitioner may contend that appellate counsel's failure to raise the federal claim on direct appeal constituted ineffective assistance.  Appellate counsel, however, apparently made a tactical decision to argue ineffective assistance based on the more lenient state standard, as opposed to the federal standard.  Even assuming, *arguendo*, that counsel's tactical decision was erroneous, it cannot establish cause for a procedural default.  <u>See</u> <u>Amadeo v. Zant</u>, 486 U.S. 214, 221-22

(1988).  Further, even if counsel's failure to raise the federal
claim constituted ineffective assistance, Petitioner did not
exhaust his state remedies as to that allegation of ineffective
assistance.  See Murray v. Carrier, 477 U.S. 478, 488-89 (1986).
Petitioner cannot establish cause for the procedural default of
his claim that trial counsel rendered ineffective assistance
under federal law by giving him improper advice concerning his
right to testify.  The district court therefore can only address
Ground Eight if Petitioner establishes that there was a
fundamental miscarriage of justice, i.e. that this alleged
constitutional violation probably resulted his conviction and he
is actually innocent.

I.    **Ground Nine - Evidentiary Arguments Raised in the Rule
      40 Petition**

        Ground Nine consists of the following claims:
"[w]hether exculpatory evidence was suppressed by the prosecution
when it turned over the [Cabaccang] vehicle to the family without
an opportunity for the defense to examine it[;]" and "[w]hether
the release of the car and any attendant loss of evidence was
improper destruction of evidence under federal constitutional
law."  [Mem. in Supp. of Petition at 24.]  Petitioner raised
these arguments for the first time in his Rule 40 Petition.  He
argued that the State's failure to preserve the evidence violated
his right to due process under the Hawai`i State Constitution and
the United States Constitution.  [Addendum to Rule 40 Petition at

54

39-47.]  Petitioner also raised these claims in his Rule 40 Opening Brief and cited federal case law in support.  [Rule 40 Opening Brief at 21 (citing <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988)).]  Petitioner therefore presented these arguments as federal claims to the highest state court.

The Hawai`i Supreme Court did not expressly address these arguments.  This Court, however, believes that these claims fall within the supreme court's holding that Petitioner's "remaining contentions regarding 'actual innocence,' the testing of physical evidence, alleged improper identification evidence used by police, and the prosecution's alleged use of false and/or misleading evidence pertain to matters that occurred during trial and, therefore, should have been raised in the direct appeal." [Rule 40 Appellate Decision at 3-4.]  The supreme court further held that, because Petitioner failed to establish a colorable claim for the ineffective assistance of appellate counsel, he failed to rebut the presumption that he waived these arguments by failing to raise them in his direct appeal.  [<u>Id.</u> at 4 (citing Haw. R. Pen. P. 40(a)(3) (2000)).]

Thus, Petitioner allegedly waived these claims in 1997 when he failed to raise them in his direct appeal.  At that time, Rule 40(a)(3) was a consistently applied and well established state procedural rule.  There is no Hawai`i case law establishing that a defendant does not waive similar evidentiary claims by

failing to raise them on direct appeal.  The procedural default doctrine therefore applies and the district court cannot consider Ground Nine unless one of the exceptions apply.

IV.  **Whether the District Court Should Grant Discovery to Allow Petitioner to Support His Substantive and Procedural Actual Innocense Claims**

This Court finds that all of Petitioner's claims are either exhausted or technically exhausted and that the claims which are technically exhausted are procedurally defaulted. Petitioner appears to rely primarily on the fundamental miscarriage of justice exception to the procedural default doctrine.[12]  He argues that the district court should excuse his default because the constitutional violations he alleges likely resulted in the conviction of an innocent person.  [Mem. in Supp. of Petition at 28.]  In his Discovery Motion, Petitioner argued that discovery is necessary to support both his substantive actual innocence claim and his procedural actual innocence argument to excuse his procedural defaults.

In opposing the Discovery Motion, Respondents argued, *inter alia*, that Petitioner has a right to seek the DNA testing he requested in the Discovery Motion through the newly enacted state law regarding post-conviction DNA testing.  See Haw. Rev.

---

[12] The Court notes that Petitioner also raises a cause argument insofar as he claims that counsel in his direct appeal rendered ineffective assistance by failing to raise all meritorious arguments regarding the ineffective assistance of trial counsel that he raises in the instant Petition.

Stat. §§ 844D-121 to 844D-133.  Respondents argue that Petitioner

must exhaust this newly available state corrective process before

seeking federal habeas relief.

> Under the new state process:
>
> If the results of the post-conviction DNA testing
> are favorable to the defendant, the court shall
> conduct a hearing pursuant to applicable law or
> court rule governing post-conviction proceedings,
> notwithstanding any law or court rule that would
> otherwise bar such a hearing as untimely or
> procedurally defective, and thereafter make such
> orders as are necessary for disposition of those
> proceedings. . . .

Haw. Rev. Stat. § 844D-132(a) (Supp. 2005).  Thus, if the results

of the post-conviction DNA testing are favorable to the

defendant, the proceedings are essentially converted into Rule 40

proceedings.

The Hawai`i legislature enacted the post-conviction DNA

testing law in 2005, after Petitioner filed the instant Petition.

Petitioner sought DNA testing in the context of his Rule 40

Petition, filed January 31, 2000.  The state court denied his

request for DNA testing.  When Petitioner appealed the denial of

his Rule 40 Petition, he argued that forensic testing was

necessary to establish his ineffective assistance claims and

cited federal case law to support his entitlement to forensic

testing.  Thus, Petitioner presented his argument in support of

DNA testing to the highest state court.  Respondents argue that

Petitioner must return to state court to utilize the new post-

conviction DNA testing procedure, even though he previously presented his request for DNA testing to the highest state court.

In Roberts v. LaVallee, the petitioner sought federal habeas relief on the ground that the trial court violated his federal constitutional rights when it denied him a free transcript of his preliminary hearing.  See 389 U.S. 40, 41 (1967).  After the federal district court denied Roberts' petition, the New York Court of Appeals decided People v. Montgomery, 224 N.E.2d 730 (N.Y. 1966), which held that the statutory requirement of payment for a preliminary hearing transcript, as applied to an indigent defendant, violated the defendant's right to equal protection under the New York Constitution and the United States Constitution.  The Second Circuit Court of Appeals dismissed Roberts' habeas petition without prejudice, holding that he should apply to the state courts for relief pursuant to Montgomery, even though Roberts previously exhausted his state remedies.  See Roberts, 389 U.S. at 41–42.  The United States Supreme Court reversed, noting that "Congress had not intended to require repetitious applications to state courts."  Id. at 42 (citations and internal quotation marks omitted).  The Supreme Court also pointed out that it had previously "declined to rule that the mere possibility of a successful application to the state courts was sufficient to bar federal relief."  Id. at 42–43.  In Francisco v. Gathright, the

58

Supreme Court held that the <u>Roberts</u> rule also applied where there was a change in state law after the petitioner exhausted his state remedies but before he filed his habeas petition.  <u>See</u> 419 U.S. 59 (1974) (per curiam).  The Supreme Court noted that in both cases, "the state courts had a full opportunity to determine the federal constitutional issues before resort was made to a federal forum, and the policies served by the exhaustion requirement would not be furthered by requiring resubmission of the claims to the state courts."  <u>Id.</u> at 63 (citations and footnote omitted).  The Ninth Circuit has stated that:

> When a petitioner does present his claim to the highest court in the state, he will not be forced to resubmit it merely because the state courts have subsequently changed their interpretation of the law, be it federal, <u>Francisco v. Gathright</u>, 419 U.S. 59, 62–63, 95 S.Ct. 257, 259–260, 42 L.Ed.2d 226 (1974); <u>Roberts v. LaVallee</u>, 389 U.S. 40, 42–43, 88 S.Ct. 194, 196–197 (1967), or state, <u>see</u> <u>Briggs v. Raines</u>, 652 F.2d 862, 864–65 (9th Cir. 1981) (change in interpretation of state rule of criminal procedure).

<u>Allbee v. Cupp</u>, 716 F.2d 635, 637 n.5 (9th Cir. 1983).

In the present case, insofar as the method to challenge a defendant's conviction under the post-conviction DNA testing law is still essentially Rule 40, this Court views the state corrective process in the post-conviction DNA testing law as a legislative change in the use and interpretation of Rule 40.[13]

---

[13] This Court has found no Hawai`i appellate court decisions interpreting or applying the post-conviction DNA testing law.

The Court acknowledges that the foregoing precedents are not directly on point because they deal with changes in judicial interpretation of the law, but the Court finds the principles discussed therein to be instructive.  This Court finds that Petitioner is not required to make a request under the new post-conviction DNA testing law before seeking federal habeas relief.

       Petitioner raises plausible arguments that discovery could support his actual innocence argument.  For example, DNA testing of the physical evidence at the crime scene could prove that a third person was present, which would bolster Petitioner's argument that someone else stabbed Cabaccang.  Comparison of Petitioner's bite pattern to the bite mark Seidel obtained while struggling with Cabaccang's attacker could also support that argument.  Petitioner's actual innocence argument does not appear to be purely speculative, nor can this Court say that his argument is without any basis in the record.  See McDaniel v. United States Dist. Court for the Dist. of Nevada, 127 F.3d 886, 888 (9th Cir. 1997).  The Court finds that discovery is essential for Petitioner to fully develop his actual innocence argument, which could allow the district court to consider the merits of claims that have been procedurally defaulted.  See Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005).  Petitioner has established good cause to conduct limited discovery to support his actual innocence argument.  See Rule 6(a), 28 U.S.C. foll. §

60

2254.  This Court therefore GRANTS the Discovery Motion.

Further, this Court FINDS that, based on the fact-intensive nature of Petition and the fact that new evidence may be available after discovery, an evidentiary hearing on the Petition is warranted.  <u>See</u> Rule 8(a), 28 U.S.C. foll. § 2254. This Court therefore RECOMMENDS that the district judge conduct the evidentiary hearing after Petitioner has been given sufficient time to conduct discovery.

## ORDER

On the basis of the foregoing, this Court GRANTS Petitioner's First Motion for Leave to Conduct Discovery, filed on April 19, 2006.  This Court will issue an Initial Discovery Order based on the parties' previously submitted proposed discovery orders.  If one or more of the parties appeals or files objections to the instant Order Granting Motion for Leave to Conduct Discovery and Findings and Recommendation Regarding Petition for Writ of Habeas Corpus to the district judge, the Initial Discovery Order shall not take effect unless and until the district judge affirms and/or adopts this Court's decision. If no party takes an appeal to the district judge, the Initial Discovery Order shall take effect when filed or when the time to appeal or file objections expires.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

61

On the basis of the foregoing, this Court FINDS and RECOMMENDS that the district judge conduct an evidentiary hearing on the Petition after Petitioner has had sufficient time to conduct discovery.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAI`I, May 1, 2007.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**TARYN CHRISTIAN V. RICHARD BISSEN, ETC., ET AL; CIVIL NO. 04-00743 DAE-LEK; ORDER GRANTING PETITIONER'S MOTION FOR LEAVE TO CONDUCT DISCOVERY AND FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**