# APPENDIX "F"

NO. SC-25196

IN THE SUPREME COURT OF THE STATE OF HAWAII

| | | |
|---|---|---|
| TARYN CHRISTIAN, | ) | Circuit Court No. S.P.P. 00-1-0002(2) |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| vs. | ) | Appeal from May 2, 2002 order |
| | ) | denying Rule 40 petition and |
| THE STATE OF HAWAII, | ) | subsequent denial of Motion for |
| | ) | Reconsideration |
| Respondent-Appellee. | ) | |
| | ) | SECOND CIRCUIT COURT |
| | ) | |
| | ) | HONORABLE REINETTE W. COOPER |
| | ) | Judge |

## PETITIONER-APPELLANT'S AMENDED OPENING BRIEF,

## APPENDICES A AND B,

## and

## CERTIFICATE OF SERVICE

MARK BARRETT, OK # 557
P.O. Box 896
Norman, Oklahoma 73070
405-364-8367

KEITH S. SHIGETOMI 3380
Pacific Park Plaza, Suite 1440
711 Kapiolani Boulevard
Honolulu, Hawaii 96813
596-0880

ATTORNEYS FOR PETITIONER-APPELLANT

RECEIVED
'03 MAR -4 P1:47
COUNTY ... ...
WAILUKU, HI 96753

# TABLE OF CONTENTS

Table of Authorities ........................................... ii

Statement of the Case ...................................... 1

Points on Appeal ............................................. 4

Standards of Review ........................................ 11

Argument .................................................... 13

    I. The Circuit Court Erred in Denying the Rule 40 Petition Without a Hearing, Despite Claims That Forensic Testing and Other Developed and Developing Factual Material Could Establish, Among Other Grounds for Relief, Ineffective Assistance of Counsel and Actual Innocence. ....................... 13

    II. The Circuit Court Erred in Failing to Rule Directly on Actual Innocence Contentions and in Failing to Allow Testing of Physical Evidence and Presentation of Testimonial Evidence in Support of the Actual Innocence Claim. ............................. 24

    III. Ineffective Assistance of Counsel Claims Merited Either Relief or Plenary Consideration at an Evidentiary Hearing: Failure to Pursue Forensic Evidence Which Could Produce Dramatic Results Was By Itself a Basis for Relief. ............... 28

    IV. The Use of Improper Identification Evidence Contravened Christian's State and Federal Constitutional Rights and Warrants the Grant of Post-Conviction Relief. ............... 30

    V. The Use of False and/or Misleading Evidence Warrants Rule 40 Relief. ............................................. 30

    VI. Appellate Counsel's Failure to Raise Meritorious Issues Deprived Christian of His Rights Under Hawaii Law and the Federal Constitution. ................................................ 32

Conclusion  ....................................................... 33

Relevant Portions of Constitutional Provisions and Rules ....... 35

Findings of Fact, Conclusions of Law, and Order Denying
Petition for Post-Conviction Relief ............................. Appendix A

Statement of Related Cases  .................................... Appendix B

## TABLE OF AUTHORITIES

**Cases**

Alcorta v. Texas, 355 U.S. 28 (1957) ........................... 16-17, 32

Arizona v. Youngblood, 488 U.S. 51 (1988)........................ 21

Barnett v. State, 91 Haw. 20, 979 P.2d 1046 (1999) ............ 11

Brady v. Maryland, 373 U.S. 83 (1963) ............................. 26

Briones v. State, 74 Haw. 442, 848 .2d 966 (1993) ............ 13, 33

Cacatian v. State, 70 Haw. 402, 772 P.2d 691 (1989) .......... 5

Carvalho v. State, 81 Haw. 185, 914 P.2d 1378 (1996) ......... 12

Commonwealth v. Brison, 618 A.2d 420 (Pa. Super Ct. 1992). 26

Dabbs v. Vergari, 570 N.Y.S.2d 765 (Sup.Ct. 1990) .............. 26

Dan v. State, 76 Haw. 423, 879 P.2d 528 (1994) ............. 7,8,11

Evitts v. Lucey, 469 U.S. 387 (1985) .................................... 13

Foster v. California, 394 U.S. 440 (1969) ............................. 30

Foster v. Lockhart, 811 F.Supp, 1363 (W.D. Ark. 1992) ......... 32

Herrera v. Collins, 506 U.S. 390 (1993) ............................... 26

Kimmelman v. Morrison, 477 U.S. 365 (1986)..................... 16,18

Lincoln v. State, 66 Haw. 566, 670 P.2d 1263 (1983)............ 16

Little v. Streater, 452 U.S. 1 (1981) ................................... 26

Manson v. Brathwaite, 432 U.S. 98 (1977) ........................ 12, 30

Matsuo v. State, 70 Haw. 573, 778 P.2d 332 (1989).............. 23

Miller v. Pate, 386 U.S. 1 (1967) ........................................ 16

Schlup v. Delo, 513 U.S. 298 (1995) ................................... 27

State v. Aplaca, 74 Haw.54, 837 P.2d 1298 (1992) ............ 16, 29

State v. Antone, 62 Haw. 346, 615 P.2d 101 (1980) ....... 7,8,16,18

State v. Christian, 88 Haw. 407, 967 P.2d 239 (1998) ........... 1

State v. Kutzen, 67 Haw. 542, 696 P.2d 351 (1985) ............. 25

State v. Matafeo, 71 Haw. 183, 787 P.2d 671 (1990) ............ 21

State v. Sewell, 592 N.E.2d 707 (Ind. App. 1992) ................. 26

State v. Silva, 75 Haw. 419, 864 P.2ds 583 (1993) .............. 7, 23

State v. Smith, 68 Haw. 304, 712 P.2d 496 (1986) ............... 7

Strickland v. Washington, 466 U.S. 668 (1984) ................... 12

Toney v. Gammon, 79 F.3d 693 (8th Cir. 1996) ...................... 26

United States v. Agurs, 427 U.S. 97 (1976) ........................... 13

United States v. Burnside, 824 F.Supp. 1215 (N.D.Ill. 1993) .... 32

United States v. Glover, 97 F.3d 1345 (10th Cir. 1996)............. 18

United States v. Wade, 388 U.S. 218 (1967) ......................... 30

Williams v. Taylor, 529 U.S. 362 (2000) ............................... 29

**Rules**

Hawaii Rules of Penal Procedure 40  .............................    passim

**Other Authorities**

Convicted by Juries, Exonerated by Science (U.S. Dept. of Justice, June 1996) ...................................................................    28

## STATEMENT OF THE CASE

Taryn Christian was convicted of second-degree murder, use of a deadly weapon,[1] and attempted theft (Trial R. 592), after the Circuit Court ruled inadmissible the testimony of Patricia Mullins, a friend of James Burkhart's, and William Auld, one of Burkhart's cellmates. Both would have testified that James "Hina" Burkhart admitted being the killer. (3/5/97 (p.m.), Vol. 9, TR 3:8; 4: 6-7)

Christian maintained innocence, and after his second-degree murder and attempted theft convictions were affirmed on direct appeal, he asked, under Rule 40, for post-conviction relief, supporting his request with new facts pointing toward Burkhart and new facts exculpatory to Christian. (R. 1-37, 301-38, 354-788, 1086-1499, 1503-33, 1553-67, 1628-32)

In connection with his request for post-conviction relief, he filed a motion to permit defense DNA testing. (R. 1503-33) The motion stated that the testing would be relevant in proving innocence, ineffective assistance of counsel, and use of false or misleading forensic evidence.   (R.1503-33)

---

[1] The weapons conviction was reversed: it was an included offense of second-degree murder. State v. Christian, 88 Haw. 407, 432-33, 967 P.2d 239,264-65 (1998).

1

## Burkhart Was Mentioned While Cabaccang Was Dying;
## Christian's Purported Confession Contained Denials
## He Committed the Stabbing;
## An Eyewitness Conceded He May Have Been Mistaken

Among the new facts contained in the Rule 40 pleadings:

– James Burkhart's name was mentioned, and preserved in a tape-recorded call to 911, as Vilmar Cabaccang lay dying on the grass in front of an apartment complex in Kihei. (R.  1509-10)

–  What was presented to the jury as Christian's tape-recorded confession in fact contained direct denials that Christian committed the stabbing.   Nowhere in the tape did Christian describe any scenario in which he is committing a homicide. (R. 749-74)[2]   He stated on the tape: "I wasn't the one who stabbed him."   Also on the tape, he comments: "I'm not the one who did it." (R.  1509)

– An eyewitness who identified Christian as the perpetrator now questions whether that identification was accurate. (R.  588, p. 2 of Exhibit 5-C to Rule 40 Petition)(".. there  is a <u>possibility </u>that I recognized his photo because of a previous encounter at the golf

---

[2]  However, at times, Christian appears to assent to Lisa Kimmey's accusations:  For example, the tape reflects:
    Taryn, isn't it in your conscience that you killed someone?
    TARYN: Of course.  Every day.
(R. 768, Exhibit 65-B to Rule 40 Petition,  p. 20)

2

course.")(emphasis in original) This witness, Phil Schmidt, observed that the perpetrator had long hair on the sides. (R. 587, Exhibit 5-C, p. 1 to Rule 40 Petition)("Dirty blond or light brown hair, short in front, shoulder length in back and stringy")   Taryn Christian had short hair at the time of the homicide. (3/5/97 (p.m.), Vol. 9, TR 80: 15-22)

The other eyewitness who identified Christian as committing the stabbing was a woman who, according to a police informant, was connected to Burkhart. (R. 1261, Exhibit 28-I to Rule 40 Petition)

### Additional Evidence Pointing Toward James Burkhart

Three second-hand reports of Burkhart confessions surfaced. (R. 1261, Exhibit 28-I to Rule 40 Petition; R. 1262, Exhibit 28-J; R. 1263, Exhibit 28-K)

Callers to police stated the published composite sketch of the perpetrator matched Burkhart. (R. 1255-57, Exhibit 28-F)

One informant heard that Burkhart and Serena Seidel (the second eyewitness identifying Christian) "were in fact boyfriend and girlfriend at one time and that they were still seeing one another, despite the fact that Seidel was dating Cabaccang." (R. 1261,  Exhibit 28-I)

This report also mentioned that "it was Seidel who furnished 'Hina' with the keys to Cabaccang's vehicle." (R. 1261)   Tesha Santana had

3

testified at trial on the same subject:

> Q.  Did you hear Vilmar say anything once you arrived where he was?
> A.  Something about the keys.  Why did Serena give 'em the keys.

(3/5/97 (p.m.), Vol. 9, TR 59: 4-7)

## POINTS ON APPEAL

**I.   The Circuit Court Erred in Denying the Rule 40 Petition Without a Hearing, Despite Claims That Forensic Testing and Other Developed and Developing Factual Material Could Establish, Among Other Grounds for Relief, Ineffective Assistance of Counsel and Actual Innocence.**

**A.  Where in the record the error occurred:**  The error occurred in the circuit court's findings of facts and conclusions of law when the Court, without hearing evidence,  determined "the petition to be patently frivolous, the issues to have been previously raised and ruled upon, or the issues to be waived, and all arguments and allegations to have no merit."  (R. 1545-46)

**B.  Where in the record the error was objected to:** Christian filed a Motion for Reconsideration on May 13, 2002 (R. 1553-67) and an additional memorandum in support of reconsideration on July 17, 2002. (R. 1628-32)

**C.  Findings and conclusions alleged as error:** Christian

4

challenges the Court's May 2, 2002 ruling as a whole and, in particular,

the final conclusion of law, which focuses on circumstances under which

a Rule 40 petition may be denied without a hearing:

> 6. Examination of the record having indicated that the allegations of the Petitioner show no colorable claim for all the foregoing reasons, the petition will be denied without a hearing. A Rule 40 petitioner may be denied without evidentiary hearing if the stated claim is patently frivolous and without a trace of support in the record. **Cacatian v. State**, 70 Haw. 402, 772 P.2d 691 (1989). In assessing whether a colorable claim has been presented, the court is not bound to accept allegations in the petition, and may compare them to the existing record. **Id.**. at 403. If there is no support for the petitioner's allegations in the record or other evidence submitted by the petitioner, it is appropriate for the court to deny relief without affording a hearing. **Id.** Here, petitioner's claims are patently frivolous and without trace of support either in the record or from other evidence submitted by petitioner. **Id.**
> Upon review of the Petition, the response to the petition and all the records and exhibits, the Court finds the petition to be patently frivolous, the issues to have been previously raised and ruled upon, or the issues to be waived all arguments and allegations to have no merit.

(R. 1545-46)

## II. The Circuit Court Erred in Failing to Rule Directly on Actual Innocence Contentions and in Failing to Allow Testing of Physical Evidence and Presentation of Testimonial Evidence in Support of the Actual Innocence Claim.

**A. Where in the record the error occurred:** The error

occurred when the Circuit Court made its findings of fact and

conclusions of law (R. 1535-46) without first permitting adequate

5

forensic testing or an opportunity for Christian to present evidence of innocence.

## B.  Where in the record the evidence was objected to:

Christian filed a Motion for Reconsideration on May 13, 2002 (R. 1553-67) and an additional memorandum in support of reconsideration on July 17, 2002.  (R. 1628-32)   The actual innocence claim was addressed toward the beginning of the May 13 reconsideration motion:

> An actual innocence claim (contained in Motion for Production of Evidence for Inspection and Testing, filed April 23, 2002) has been made.  This claim cannot be disposed of without permitting DNA testing and access to physical evidence. Substantial proof of innocence, including results of testing and extensive evidence implicating James Burkhart in the homicide could be presented at an evidentiary hearing on the Rule 40 Petition.

(R. 1553)

> A later portion of the motion noted:

> Petitioner has plea[d]ed an actual innocence claim which has not been disposed of by the Findings of Fact, Conclusions of Law and Order Denying Petition for Post-Conviction Relief and which cannot be properly addressed without permitting forensic testing and presentation of evidence regarding the testing and extensive evidence that the homicide was committed by James Burkhart.

(R. 1557)

## C.  Findings and conclusions alleged as error: The Circuit

Court made findings of fact and conclusions of law in denying the Rule

6

40 petition, but did not mention the actual innocence claim directly or rule on the defense motions to test evidence. Thus, Christian alleges as error the denial of the Rule 40 petition as a whole. (R. 1535-46)

## III. Ineffective Assistance of Counsel Claims Merited Either Relief or Plenary Consideration at an Evidentiary Hearing: Failure to Pursue Forensic Evidence Which Could Produce Dramatic Results Was By Itself a Basis for Relief. Other Ineffective Assistance Claims Are Likewise Compelling.

**A. Where in the record the error occurred:** The error occurred when the Circuit Court denied the Rule 40 Petition without a hearing. (R. 1535-46) Included in the Court's findings:

> 25. The Hawaii Supreme Court made a finding that Christian's claim of ineffective assistance of counsel was without merit.

(R. 1541)

The Circuit Court's conclusions of law included:

> 4. When an ineffective assistance of counsel claim is raised, the question is "when viewed as a whole, was the assistance provided to the defendant within the range of competence demanded of attorneys in criminal cases." **State v. Silva**, 75 Haw. 419, 864 P.2d 583 (1993), **State v. Smith,** 68 Haw. 304, 712 P.2d 496 (1986). The burden of establishing ineffective assistance of counsel rests with petitioner and can only be met by demonstrating specific errors or omissions resulting in the withdrawal or substantial impairment of a potentially meritorious defense. **Id. See also, Dan v. State**, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994); **State v. Antone**, 62 Haw. 346, 348-49, 615 P.2d 101. 104 (1980). However, "specific actions or omissions alleged to be error but which have an obvious tactical

7

basis for benefitting the defendant's case will not be subject to further scrutiny." **Dan v. State, supra,** at 427, 879 P.2d at 532, quoting **Antone, supra**, at 348.

    5.  The record before the Court, viewed in light of the foregoing authorities, fails to support Petitioner's claim of ineffective assistance of counsel.  Moreover, the Hawaii State Supreme Court has already rejected Christian's claim of ineffective assistance of counsel.

(R. 1543-44)

**B.  Where in the record the ruling was objected to:** Denial of the ineffective assistance of counsel claims was objected to in the Motion for Reconsideration (R. 1553-67) and Christian's position regarding ineffectiveness claims was amplified in a supplemental memorandum.  (R. 1628-32)

    Objection to the Court's disposition of the ineffective assistance claims was not confined to one portion of the pleadings.  However, the Motion for Reconsideration contains this material:

**Ineffective Assistance of Trial Counsel Issues Not Waived**
    Ineffective assistance of trial counsel claims cannot be resolved entirely from the trial transcript.  Because facts regarding some ineffectiveness issues were not in the trial transcript, there are ineffectiveness contentions which could not have been raised on direct appeal.   A Rule 40 Petition is the appropriate vehicle to raise ineffectiveness issues which are not apparent from the trial record.

**Ineffective Assistance of Appellate Counsel Issues Warrant Consideration**
    The Findings of Fact, Conclusions of Law, and Order Denying Petition for Post-Conviction Relief does not address the issue of

8

ineffective assistance of appellate counsel raised in the Petition. It is impossible to raise the ineffective assistance of appellate counsel at any point prior to the Rule 40 Petition.

(R. 1554-55)

**C. Findings and Conclusions alleged as error:** The findings and conclusions which most directly related to the ineffective assistance claims are quoted in part A.

## IV.  The Use of Improper Identification Evidence Contravened Christian's State and Federal Constitutional Rights and Warrant the Grant of Post-Conviction Relief.

**A.  Where in the record the error occurred:** The error occurred when the Rule 40 Petition was denied (R. 1535-46) without the Court thoroughly  addressing the issue of suggestive identification. The Court did make a conclusion of law that suggestive confrontation and tampered mug shot issues were waived by not being raised earlier and that the claims were not supported by the record.  (R. 1543)

**B.  Where in the record the error was objected to:** Petitioner filed a Motion for Reconsideration (R. 1553-67) objecting, among other things, to the denial of the Rule 40 Petition as a whole.

**C.  Findings and Conclusions alleged as error:**  Toward the end of the Court's first Conclusion of law there is a determination that claims based on "suggestive confrontation" and "tampered mug shots"

9

are waived and "not supported by the records of this case."  (R. 1043).

## V.    The Use of False and/or Misleading Evidence Warrants Rule 40 Relief.

**A.  Where in the record the error occurred:** The error occurred when the Court denied post-conviction relief in general, and in particular where the Court made a conclusion of law reflecting that claims of false evidence and prosecutorial misconduct were waived and not supported by the record. (R. 1043)

**B.  Where in the record the error was objected to:** Petitioner filed a Motion for Reconsideration of the trial court's findings of fact and conclusions of law.  (R. 1553-67)

**C.  Findings and conclusions alleged as error:** Toward the end of the Court's first Conclusion of Law there is a determination that Petitioner has "waived" and has "not supported by the records" his claims involving "suppression of fingerprints, police filing false reports, use of tainted evidence, prosecutorial misconduct, and prejudice by the trial court."  (R. 1043)

## VI.  Appellate Counsel's Failure to Raise Meritorious Issues Deprived Christian of His Rights Under Hawaii Law and the Federal Constitution.

**A.  Where in the record the error occurred:** The error

10

occurred in the denial of the post-conviction petition. (R. 1535-46)

**B. Where in the record the error was objected to:** Petitioner filed a Motion for Reconsideration of the Denial of the Rule 40 Petition as a whole. (R. 1553-67)

**C. Findings and conclusions alleged as error:** There was no finding or conclusion directly addressing the issue of ineffective assistance of appellate counsel.

## STANDARDS OF REVIEW

**Point One**

The appellate court conducts a de novo review in determining whether the Circuit Court appropriately denied Rule 40 relief without a hearing. **Dan v. State,** 76 Haw. 423, 427, 879 P.2d 528, 532 (1994); **Barnett v. State,** 91 Haw. 20, 26, 979 P.2d 1046, 1052 (1999).

**Point Two**

Petitioner's counsel has been unable to locate any Hawaii authority stating the standard of review when actual innocence is set forth as a post-conviction claim, nor when a request for post-conviction DNA testing is made.

**Point Three**

Claims of ineffective assistance of counsel are reviewed, under

11

Hawaii law, to determine whether alleged errors or omissions "could have had a direct bearing on the ultimate outcome of the case. No showing of actual prejudice to a petitioner's defense is required in order to state a colorable claim of ineffective assistance of counsel."
**Carvalho v. State,** 81 Haw. 185, 191, 914 P.2d 1378, 1384 (1996).

Christian has alleged that his trial and appellate attorneys' deficiencies also were in violation of the federal constitution's Sixth Amendment right to effective assistance of counsel. To determine whether the Sixth Amendment violation occurred, the Court assesses (1) whether counsel's assistance was reasonably effective, and (2) whether there is a reasonable probability the outcome of the trial would have been different if it were not for counsel's unprofessional errors.
**Strickland v. Washington,** 466 U.S. 668 (1984).

**Point Four**

Relief based on improper identification procedures is due if the identification is unreliable considering the totality of the circumstances.
**Manson v. Brathwaite,** 432 U.S. 98 (1977).

**Point Five**

Use of false or misleading evidence warrants relief if there is any reasonable likelihood the false information could have contributed to

12

the judgment.  **United States v. Agurs,** 427 U.S. 97 (1976).

**Point Six**

A Hawaii Rule 40 Petitioner is denied effective assistance when appellate counsel omits an appealable issue that would have provided a potentially meritorious defense.  **Briones v. State,** 74 Haw. 442, 466-67, 848 P.2d 966, 978-79 (1993).  Under federal constitutional standards, relief is due when counsel's conduct is below professional standards and there is a reasonable probability the unprofessional errors affected the outcome. **Evitts v. Lucey,**  469 U.S. 387 (1985).

## ARGUMENT

### POINT ONE

**THE CIRCUIT COURT ERRED IN DENYING THE RULE 40 PETITION WITHOUT A HEARING, DESPITE CLAIMS THAT FORENSIC TESTING AND OTHER DEVELOPED AND DEVELOPING FACTUAL MATERIAL COULD ESTABLISH, AMONG OTHER GROUNDS FOR RELIEF, INEFFECTIVE ASSISTANCE OF COUNSEL AND ACTUAL INNOCENCE.**

### A.  Tape Recordings

An evidentiary hearing was necessary because Christian pleaded facts which, if proved,  would entitle him to relief.

He has demonstrated:

**(1)  If the tape recording of the Taryn Christian-Lisa**

13

**Kimmey telephone call had been enhanced, or if the volume had
been adjusted appropriately, the prosecution's contention that
the recording represented an unequivocal confession could not
have been made credibly.**

In the prosecutor's final closing argument she attempted to

transform a Christian denial into an admission:

> Listen very carefully to that section and see if what, in fact,
> is on that tape is, "I wasn't the one who started it and you know
> that for a fact."

(3/10/97 (a.m.) Vol. 11, TR 102: 5-7)

An enhancement of the tape reveals the correct version to be "I

wasn't the one who stabbed him."  In fact, as the audio expert noted,

there was not even the correct number of syllables for the statement to

be "I wasn't the one who started it."  (R. 1509, p. 2 of Affidavit of John

Mitchell)

 If the true words had been heard clearly by the jury, the

prosecutor would not have been able to present a claim that the words

of denial were actually words of admission.

The exculpatory value of the tape would have increased

dramatically if the jury had known, as the enhanced version of the tape

reveals, that Christian also said: "I'm not the one who did it." (R. 1508-

10 – Affidavit of John Mitchell; R. 748-75 --  transcript of enhanced

tape recording by Advanced Court Reporting, Exhibit 65-B)

Since defense counsel did not mention the "I'm not the one who did it" statement, it is likely that neither counsel nor the jury were aware of that denial.  The audio expert's affidavit states: "Thus, assuming the entire tape was played at approximately the same volume, it is likely that Mr. Christian's jury did not hear his denials or did not hear them clearly."  (R. 1510 – Affidavit of John Mitchell)

Even assuming the prosecutor's version of the tape is – so far as the current record shows – plausible, this plausibility would not be a basis for disposing of a Rule 40 Petition without a hearing.  Instead, the Circuit Court should hear evidence and determine, First, whether the exculpatory statements are unclear when using the same tapes and machinery as those available at trial; and, Second, whether, adequate audio enhancement techniques would have made exculpatory statements clear to the jury.

An evidentiary hearing is necessary when the accused presents exhibits contradicting evidence central to the prosecution's case:

> Appellant's petition below was based upon a contention that the principal witness at appellant's murder trial had recanted his testimony involving appellant in the murder.  He produced some evidence in support thereof by way of exhibits attached to his petition.  His petition, therefore was not patently frivolous or

without a trace of support either in the record or from other
evidence submitted by him. He was therefore entitled to a full and
fair hearing before the court ruled upon his petition.

**Lincoln v. State,** 66 Haw. 566, 567, 670 P.2d 1263, 1264 (1983).

In another case, trial counsel was ruled to be ineffective when he

failed to use taped interviews which would have undermined a key state

witness.  **State v. Aplaca,** 74 Haw. 54, 837 P.2d 1298, 1306-08

(1992). Trial counsel conceded: "There are some tapes of Viernes made

by Gillespie which are materially different from her testimony in Court."

**Id.** at 1306.

The failure of the tape to be enhanced and/or analyzed

substantially impaired a meritorious defense, thus entitling Christian to

ineffective assistance relief under Hawaii law.  **State v. Antone,** 62

Haw. 346, 348-49, 615 P.2d 101, 104 (1980).

Because Christian also has demonstrated prejudice from counsel's

failure to determine the contents of the tape, he is entitled to

ineffective assistance of counsel relief under Sixth Amendment  federal

constitutional standards. **Kimmelman v. Morrison,** 477 U.S. 365

(1986)(responsibility of counsel to seek out facts).

The Fourteenth Amendment's Due Process Clause also is offended

when false, **Miller v. Pate,** 386 U.S. 1 (1967), or misleading, **Alcorta**

**v. Texas,** 355 U.S. 28 (1957), evidence plays a role in conviction. Without proper analysis, the presentation of Christian's "confession" tape to the jury was, at best, misleading.

> **(2)   If the 911 tape recording had been enhanced, it would have enabled Christian to present the Burkhart confessions, because there would have been reliable evidence corroborating Burkhart's involvement.  Moreover, playing the tape would have provided evidence exculpatory to Christian.**

After he heard a commotion in the neighborhood, Robert Perry, Jr., walked toward the noise carrying a portable telephone.   He called 911 and conversed as he approached and eventually reached the scene of the stabbing.  (3/5/97 (a.m.). Vol. 8,  TR pp. 34-37)

An audio expert has determined that, toward the end of the tape, as Perry is standing beside Cabaccang, a male voice says the word "Burkhart." (R. 1509-10)  See also (R. 785 – p. 9 of transcript of the 911 tape provided by Advanced Court Reporting, Exhibit 66-B)

This 911 tape recording was provided to the defense during discovery, but it was never played for the jury.  No witness or exhibit was presented to show that Burkhart's name was mentioned as Cabaccang lay dying on the grass.

Again, a hearing is necessary, in connection with claims that Christian was deprived of meritorious defense material under Hawaii

17

ineffective assistance law, see **State v. Antone,** 62 Haw. 346, 348-49,

615 P.2d 101, 104 (1980), and that he was prejudiced by counsel's

substandard performance under the United States Constitution's Sixth

Amendment.  **Kimmelman v. Morrison,** 477 U.S. 365 (1986).

### B.    Additional Forensic Testing

Forensic testing could have an impact on a proper assessment of

Christian's ineffective assistance claims.

Consequently, the testing should be ordered.

In a Tenth Circuit case, defense counsel was alleged to be

ineffective for not having cocaine tested to determine what type it was.

The solution: test to see if the omission caused the defendant any

harm.  **United States v. Glover,** 97 F.3d 1345 (10th Cir. 1996).

The lesson of **Glover:** if you do the testing, then you'll know.

For Christian, an essential component of a Rule 40 hearing is to

present testing results in support of the claims.

Scientific analysis should include:

— DNA testing on the items listed (R.  1517) in Petitioner's

memorandum in support of the Motion to Produce Evidence for

Inspection and Testing;

– Examination, through use of the photographic negative, of the

18

bite mark on Seidel's body so that bite mark can be compared with Christian's bite pattern.

Both types of examination are capable of providing persuasive exonerating evidence. If Burkhart's DNA is found to have been at the scene of the stabbing, there would be indisputably credible corroboration for the position that Burkhart was the perpetrator.

Seidel said it was Cabaccang's killer that bit her. (2/26/97, Vol. 3, TR 69:21-70:6) Bite mark analysis could establish that the mark did not come from Christian's teeth.

The Circuit Court erred in failing to permit testing integrally connected to both innocence and ineffective assistance.

## C. Other Issues Warranting Full Consideration

Other issues raised in the Rule 40 petition deserve development at an evidentiary hearing: the full impact of these issues cannot be assessed properly without evidence being taken and/or further argument heard.

Among these issues: (1) Whether trial counsel was ineffective in failing to present evidence from a forensic pathologist who could have disproved the State's theory on how the homicide occurred. See Argument Fifteen in the Rule 40 Petition. (R. 430-32); (2) Whether trial

19

counsel was ineffective in failing to discredit a lay witness's identification of Christian's alleged handwriting through showing that a handwriting expert, hired by the State, had been unable to associate the questioned handwriting with Taryn Christian.    See Argument Seventeen in Rule 40 Petition. (R. 433-38); (3) Whether trial counsel was ineffective in failing to utilize available evidence that the only stereo equipment in Christian's possession was equipment he had purchased.  See Argument Twenty-One in the Rule 40 Petition. (R. 448-50); (4) Whether trial counsel was ineffective in failing to make offers of proof regarding additional witnesses who would have testified that Burkhart confessed.  See Argument 38 in Rule 40 Petition. (R. 500-02); (5) Whether trial counsel was ineffective in failing to call witnesses who could have contradicted the assertion that Burkhart had a valid alibi. See Argument Forty-Two in Rule 40 Petition. (R. 506-07); (6) Whether trial counsel was ineffective in failing to present evidence that Serena Seidel and James Burkhart were acquainted with each other.  See Argument Forty-Three in Rule 40 Petition. (R. 507-11); (7) Whether trial counsel was ineffective in failing to object to improper comments in the prosecutor's closing arguments.  See Argument Forty-Five in Rule 40 Petition. (R. 512); (8) Whether trial counsel was ineffective in

changing defense theories in the middle of trial and adopting a self-defense theory which his client did not want and which his client told him was incorrect.  See Argument Forty-Seven in Rule 40 Petition. (R. 521-23); (9) Whether exculpatory evidence was suppressed by the prosecution when it turned over the Cabaccang vehicle to the family without an opportunity for the defense to examine it   See Arguments Eight and  Fifty-One in Rule 40 Petition. (R. 405-13, 524-25); (10) Whether the release of the car and any attendant loss of evidence was improper destruction of evidence under either Hawaii law or federal constitutional law.  See **State v. Matafeo,** 71 Haw. 183, 787 P.2d 671 (1990); **Arizona v. Youngblood,** 488 U.S. 51 (1988).

### D.  No Waiver

No waivers exist which  prevent consideration in the Rule 40 petition of the issues which are the focus of Christian's case.

A failure to raise an issue earlier only raises a presumption that the issue was knowingly waived.  A Petitioner is entitled to an opportunity to rebut that presumption. Hawaii Rule of Penal Procedure 40(a)(3).  Here, Christian did not wish counsel to waive his issues; he specifically requested the forensic analysis.

He has rebutted any presumption of waiver.

In fact, the prosecution concedes that Christian was asking for DNA testing, but claims it was his counsel's right to ignore those requests.    Christian has stated that he also asked for the other necessary forensic tests:

> During this meeting with counsel, Mr. Ranken was asked to listen to all the exculpatory statements on the tape that had been omitted from the state's transcript.  Counsel acknowledged to Christian that he would have the tape sent to an Audio Forensic lab for enhancement and analysis, and submit an 'authenticated certified' transcript, as the state's transcript evidence was a misrepresentation of the record.  Counsel lied and failed to provide this critical evidence to the jury.
> Prior to trial, as supported by the record, Christian had requested counsel to file a motion for independent DNA examination of the evidence, along with the opportunity to have the photographs of a bite mark examined and compared to his bite.  Christian also made a request for counsel to provide a DAT copy of the 911 tape for further enhancement and analysis, as instructed by the Forensic expert.  All of Christian's requests were denied by counsel.

(Petitioner's Reply to State's Response to Rule 40 Petition, R. 1087)

The prosecutor stated DNA testing was "one of the things that the Defendant had wanted Mr. Jung to do, which not many private parties engage in themselves. the payment of DNA testing ..."  (R. 1088)

If there is a contention that any of the Rule 40 issues were knowingly waived by Christian, a hearing should be conducted to afford Christian an opportunity to further rebut any suggestion of waiver.

22

A Rule 40 petition is a proper forum for ineffective assistance of counsel issues. Waiver should not be applied to issues which are not apparent from the trial record and require investigation or testing or development through an evidentiary hearing. If there was no realistic opportunity to raise the claim earlier, an ineffective assistance claim should be heard. **Matsuo v. State,** 70 Haw. 573, 778 P.2d 332 (1989).

In fact, the Court has determined that ineffective assistance claims are premature on direct appeal if new facts have not been subjected to adequate scrutiny. Consideration of some ineffective assistance contentions should wait until the post-conviction stage. **State v. Silva,** 75 Haw. 419, 444-45, 864 P.2d 583, 595 (1993).

### E. Conclusion

Hawaii Rule of Penal Procedure 40(f) provides that a post-conviction Petitioner is entitled to a hearing if he pleads facts, which if proven, would entitle him to relief.

Taryn Christian has asserted prejudicial violation of his right of access to evidence, his right to present evidence, and other fundamental constitutional protections.

Even more, he has set forth strong claims of innocence which have taken on added force as the evidence against a third party, James

23

Burkhart, is considered fully.

From confessions to tape recordings to a scheduled meeting with an acquaintance, the evidence places Burkhart at the scene and identifies him as the perpetrator.

Burkhart, the man who was identified from the police sketch, the man who pleaded the Fifth Amendment when asked to testify about the Cabaccang homicide (3/5/97 (a.m.) TR 19: 2-6), deserves further scrutiny, just as Christian, through presenting evidence against Burkhart and otherwise, deserves a chance to establish that he is innocent and that his counsel deprived him of a meritorious defense.

## POINT TWO

**THE CIRCUIT COURT ERRED IN FAILING TO RULE DIRECTLY ON ACTUAL INNOCENCE CONTENTIONS AND IN FAILING TO ALLOW TESTING OF PHYSICAL EVIDENCE AND PRESENTATION OF TESTIMONIAL EVIDENCE IN SUPPORT OF THE ACTUAL INNOCENCE CLAIM.**

Shortly after the homicide, a man walked into a Kihei Gas Express store with an injured hand which apparently had been bleeding.  (R. 1253, p. 2 of Exhibit 28-D to Rule 40 Petition)  After police sketches of the homicide suspect were published, police received calls informing them that the man in the sketch looked like James Burkhart.  (R. 1255-57, Exhibit 28-F to Rule 40 Petition)

24

If this man at the Gas Express was James Burkhart and if his hand was in fact bleeding,  some of this blood likely would  have been left at the scene of the stabbing. If testing should establish that Burkhart's DNA and the stabbing scene were intertwined, Christian would either have proof of his innocence or a substantial component of a case for innocence.

Testing showing that the bite mark on Seidel did not belong to Christian also would be persuasive evidence of innocence.

This question is squarely presented: is a post-conviction petitioner entitled to DNA testing and other scientific analysis when the forensic procedures have the potential of providing substantial exculpatory information?

A companion question also is presented: should DNA testing, and other scientific testing, be ordered when the results will help establish an ineffective assistance of counsel claim?  See Point One.

Although Hawaii case law appears to answer neither of these questions directly, the law provides that there is a defense right of access to evidence, including access to physical materials which could be part of the defense case.  **State v. Kutzen,** 67 Haw. 542, 696 P.2d 351 (1985).

The Fourteenth Amendment to the federal constitution, mandates access to exculpatory evidence. **Brady v. Maryland,** 373 U.S. 83 (1963). Even in a civil case, due process demands access to scientific evidence which could assure accurate determination of the facts. **Little v. Streater,** 452 U.S. 1 (1981). The **Little** case involved the right to genetic testing to adjudicate the facts fairly in a paternity case.

If there is a constitutional right to genetic testing in a civil case, there certainly is such a right when proving actual innocence or assuring fair evaluation of the facts is at stake in a criminal case.

Thus, various courts have determined there is a constitutional right to DNA testing which would be relevant to a claim of innocence. **Commonwealth v. Brison,** 618 A.2d 420, 423 (Pa. Super. Ct. 1992); **State v. Sewell,** 592 N.E.2d 707-08 (Ind.App. 1992); **Dabbs v. Vergari,** 570 N.Y.S.2d 765 (Sup.Ct. 1990). See **Toney v. Gammon,** 79 F.3d 693, 700 (8th Cir. 1996).

The right to such testing is a corollary to the position of a majority of the Supreme Court that there is a constitutional right not to be convicted when innocent. **Herrera v. Collins,** 506 U.S. 390 (1993)(Justices diverged in descriptions of this constitutional right).

At the very least, where compelling claims of actual innocence are

coupled with constitutional violations, relief should be granted.   Thus,

even when a claim is clearly defaulted, a person is entitled to redress

"where a constitutional violation has probably resulted in the conviction

of one who is actually innocent."  **Schlup v. Delo,** 513 U.S. 298, 321

(1995).

In the present case, constitutional violations, such as violation of

the right of access to exculpatory evidence and violation of the right to

effective assistance of counsel, are among the causes of Christian's

improper conviction.

Consequently, regardless of the procedural posture of his case,

Christian should have been given a hearing to attempt to establish that

the constitutional violations were likely to have resulted in the

conviction of an innocent person.  The **Schlup** case permits the

presentation of new evidence in support of the actual innocence claim,

as well as permitting the consideration of claims which have been

waived or defaulted.

Exonerations have occurred in a number of cases which

prosecutors or judges or jurors or the public once thought were

exceptionally strong.   Confessions, physical evidence, even guilty

pleas, have preceded eventual proof of innocence, through DNA or a

combination of DNA and other evidence.  See **Convicted By Juries,**

**Exonerated By Science** (U.S. Department of Justice, June 1996).

Accordingly, where as in Christian's case, there is, at a minimum,

room for doubt,  Christian should have access to evidence for DNA

testing, access to evidence for bite mark testing, and subsequent full

consideration of his claim of actual innocence.

The Circuit Court erred in denying the Rule 40 Petition without

addressing the requests for forensic testing and the claim of actual

innocence.

## POINT THREE

**INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS MERITED EITHER RELIEF OR PLENARY CONSIDERATION AT AN EVIDENTIARY HEARING: FAILURE TO PURSUE FORENSIC EVIDENCE WHICH COULD PRODUCE DRAMATIC RESULTS WAS BY ITSELF A BASIS FOR RELIEF.**

While a hearing is necessary to determine some ineffectiveness

claims, it is already apparent that Christian was deprived of a

meritorious defense by his counsel's failure to investigate.

New evidence gleaned from tape recordings is itself substantial

enough that it would have given Christian a meritorious defense.  There

was no justification for counsel to be unable to demonstrate that there

were clear statements of denial on the alleged confession tape.

28

The Hawaii Supreme Court has stated:

We reiterate our belief that "the decision whether to call witnesses in a criminal trial is normally a matter within the judgment of counsel and, accordingly, will rarely be second-guessed by judicial hindsight." Nonetheless, absent here is a foundational factual predicate upon which an informed decision whether to call a witness to testify must be based. We agree with the Supreme Court of Utah, which stated:

**If counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the "wide range of reasonable professional assistance."**

**State v. Aplaca,** 74 Haw. 54, 70-71, 837 P.2d 1298, 1307 (1992)(citations omitted)(emphasis added).

Similarly, the United States Supreme Court has determined that no "strategic calculation" could have been involved when the defense lawyer failed to conduct an investigation which would have uncovered probative mitigation evidence. **Williams v. Taylor,** 529 U.S. 362, 395 (2000).

Because, as in **Aplaca** and **Williams,** adequate investigation was not conducted and because it is already apparent that meritorious evidence would have been produced by a more thorough investigation, relief should be granted under Hawaii law and the Sixth Amendment.

29

## POINT IV

## THE USE OF IMPROPER IDENTIFICATION EVIDENCE CONTRAVENED CHRISTIAN'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS AND WARRANTS THE GRANT OF POST-CONVICTION RELIEF.

Police presented witnesses with a photograph of Christian in which it was unclear whether he had long hair in the back  – in fact, the shading made it appear that Christian had long hair.  (R. 1200, 1207-10, Exhibits 4-G, 5-D, 5-F, 5-G, and 5-H to Rule 40 Petition)

The presentation of the misleading photograph, when the perpetrator had been described by witnesses as having long hair, violated Hawaii law and the Due Process Clause of the United States Constitution.

Unreliable identification evidence cannot be permitted to play any significant role in a criminal conviction.  See **Foster v. California,** 394 U.S. 440 (1969)(unfair lineup prohibited); **United States v. Wade,** 388 U.S. 218 (1967); **Manson v. Brathwaite,** 432 U.S. 98 (1977).

## POINT V

## THE USE OF FALSE AND/OR MISLEADING EVIDENCE WARRANTS RULE 40 RELIEF.

The use of inaccurate versions of critical tape recordings, the use of a lineup photograph with a tendency to deceive, and the presentation

30

of apparently inaccurate DNA evidence resulted in Christian receiving an unfair trial.   Relief is warranted under Hawaii law and under the Due Process Clause of the federal constitution's Fourteenth Amendment.

The inaccuracy of the tape recordings and the lineup have been mentioned in connection with other Points.  The DNA evidence, viewed from any angle, was also misleading.

Although testing is necessary to determine the exact nature and extent of the DNA evidence inaccuracy, it is apparent that the State's assertions in regard to DNA do not add up.

At trial, the DNA analyst stated blood was detected on certain items but there was an insufficient amount for DNA testing. ( 3/4/97 TR, p. 24, line 18 – p. 25, line 5)   When questioned in May of 2002, however, the analyst appeared to reverse course.  She testified that if there is enough blood to detect, DNA testing should be attempted. (5/30/02 TR, p. 10)

This inconsistent testimony, coupled with failures to get meaningful DNA results on other items which, by all appearances, were susceptible to testing, suggests that Christian's jury was given false impressions about DNA evidence and that these false impressions likely included the impression that all the DNA evidence was consistent with

31

Christian's guilt.

Although further testing and testimony is necessary to clear up the inconsistencies and inaccuracies regarding the state of DNA testing, see, **e.g., United States v. Burnside,** 824 F.Supp. 1215, 1260 (N.D. Ill. 1993), the confusing and misleading nature of the evidence presented to the jury, in any instance, is a ground for relief. See **Alcorta v. Texas,** 355 U.S. 28 (1957).

The Fourteenth Amendment will not tolerate the jury being misled regarding the significance of scientific evidence. **Foster v. Lockhart,** 811 F.Supp. 1363, 1371 (W.D. Ark. 1992).

## POINT VI

## APPELLATE COUNSEL'S FAILURE TO RAISE MERITORIOUS ISSUES DEPRIVED CHRISTIAN OF HIS RIGHTS UNDER HAWAII LAW AND THE FEDERAL CONSTITUTION.

Adequate study of the DNA issues would have informed appellate counsel that the DNA analyst's testimony was almost certain to be inaccurate.

Examining the records also would have revealed the problems with the suggestive eyewitness identification issue.

Although current counsel believes it was proper to omit some ineffectiveness assistance issues on direct appeal, counsel also does not

wish to waive any of Christian's rights. Therefore it is asserted: if the Court deems all the ineffectiveness issues should have been raised on direct appeal, appellate counsel was ineffective for failing to present all the ineffectiveness contentions that are raised on this current Rule 40 appeal.

If Christian's ineffectiveness claims should have been presented on direct appeal, appellate counsel deprived Christian of a meritorious defense. **Briones v. State,** 74 Haw. 442, 848 P.2d 968 (1993).

## CONCLUSION

Taryn Christian is a young man serving a life sentence and struggling to prove his innocence. He has been seeking DNA testing, bite mark testing, enhancement of tape recordings, and other methods of subjecting the case to scientific scrutiny since long before his trial.

He has compiled evidence, substantial in both amount and impact, implicating James Burkhart in the homicide.

He desired to testify that he was at the homicide scene, but ran off. Burkhart, the man who, unlike Christian, had long hair in the back, was the one who did the stabbing.

Subjecting the trial evidence to closer scrutiny has already led to revelations that tape recordings contained evidence that Christian's

33

confession was more denial than confession.  Analysis also revealed

Burkhart's name was spoken at the scene of the stabbing.

In light of the above, the reliability of Christian's conviction

is in serious question.  He deserves the opportunity to conduct

testing and present evidence so that a Court can properly

evaluate the issues presented in the Rule 40 petition and can

properly assess the reasons to doubt Christian's guilt.


DATED: March 1, 2003.


MARK BARRETT


KEITH SHIGETOMI
Attorneys for Petitioner-Appellant


34

# RELEVANT PORTIONS OF CONSTITUTIONAL PROVISIONS AND RULES

## United States Constitutional Provisions

"In all criminal prosecutions the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."   U.S. Const., amend. VI.

"No State shall ... deprive any person of life, liberty, or property without due process of law ..." U.S. Const.,amend. XIV.

## Hawaii Constitutional Provisions

"No person shall be deprived of life, liberty or property without due process of law ... "
Haw. Const.., Art. I, § 5.

"In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for the accused's defense."   Haw. Const., Art. I, § 14.

## Rules

Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  An issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.  There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.   Hawaii Rules of Penal Procedure 40(a)(3).

If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer.  However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner.  ...  Hawaii Rules of Penal Procedure 40(f).

**APPENDIX A**

FILED

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT
STATE OF HAWAII

2002 MAY -2 PM 1:49

N. YOTSUYA. CLERK
SECOND CIRCUIT COURT
STATE OF HAWAII

| | | |
|---|---|---|
| TARYN CHRITIAN | ) | S.P.P. NO. 00-1-0002(2) |
| | ) | |
| Petitioner, | ) | FINDINGS OF FACT, CONCLUSIONS |
| | ) | OF LAW, AND ORDER DENYING |
| vs. | ) | PETITION FOR POST-CONVICTION |
| | ) | RELIEF; CERTIFICATE OF SERVICE |
| STATE OF HAWAII, | ) | |
| | ) | |
| Respondent. | ) | |

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER DENYING PETITION FOR POST-CONVICTION RELIEF

I.    BACKGROUND

Petitioner TARYN CHRISTIAN was charged with Murder in the
Second Degree in violation of Hawaii Revised Statutes ("HRS") §
707-701.5 ("Count One"), Use of a Deadly or Dangerous Weapon in
the Commission of a Crime in violation of HRS § 134-51(b) ("Count
Two"), and Attempted Theft in the Third Degree in violation of
HRS §§ 705-500 and 708-708-832(1)(a) ("Count 3").

Mr. Christian was represented at his preliminary hearing and
arraignment and plea by attorney Richard Icenogle, at trial by
attorney Anthony Ranken, at sentencing by attorneys Anthony
Ranken and Earl Partington, and on appeal by attorney Pamela
Towers.

After a jury trial, Petitioner was found guilty as to all
counts charged.  Petitioner did not testify at trial.

On March 20, 1997, Anthony Ranken filed a Motion for New Trial or in the Alternative For Entry of Judgment of Lesser Conviction on Count One.  This Motion was denied.

Pamela Tower, Petitioner's appellate counsel, filed Petitioner's Opening Brief in the Supreme Court on November 24, 1997.  (S.Ct. No. 20804).  On February 18, 1998 the State of Hawaii filed it's Answering Brief.

On November 10, 1998 the Hawaii Supreme Court filed it's opinion affirming Petitioner's conviction in Count One and Count Three.  The Supreme Court reversed Count Two based on <u>State v. Jumilia</u>, 87 Hawai`i 1, 950 P.2d 1201 (1998).


II.  <u>PETITION</u>

Taryn Christian has filed his initial Petition, an Addendum to Rule 40 Petition for Post-Conviction Relief, and Addendum to Rule 40 Petition, Exhibits, Petitioner's Reply to States Response to Rule 40 Petition, a Supplement to Addendum to Rule 40 Petition, and Supplemental Exhibits to Addendum to Rule 40 Petition.  The documents listed above allege a total of sixty-seven grounds for post-conviction relief.


<u>FINDINGS OF FACT</u>


1.  During the early morning hours of July 14, 1995, Vilmar Cabaccang and his girlfriend, Serna Seidel, were aroused from bed

by noise from outside.  Cabaccang and Seidel ran outside where
Seidel saw someone sitting in Cabaccang's car.  Cabaccang and
Seidel gave hot pursuit of the male occupant of Cabaccang's car.
Seidel observed the man as wearing jeans, a baseball cap, a
flannel shirt and covered shoes.

2.    During the pursuit, Seidel stopped and banged on a
residence door for help.  When she received no answer, she
continued her pursuit of Cabaccang and the unknown male.

3.    By the time Seidel caught up with Cabaccang and the
male, they were in a struggle.  Cabaccang warned Seidel "Babe,
the guy has a knife.  He wants to kill me."  Seidel punched the
assailant in the head, whereupon he bit her wrist.  As she
struggled with the man, Seidel observed that he was wearing "the
kind of gloves that you use when you dye people's hair."

4.    At some point in the struggle, the assailant dropped
his knife and Seidel noticed blood all over and that Cabaccang
had been stabbed.  The assailant walked away stating he "was
going to call 911."

5.    Phillip Schmidt was aroused from his bed at about 3:00
a.m. by the sounds of shouting and screaming.  Coming outside to
investigate, he observed a young man walking towards Kehei Road.
Schmidt describes the area as well light by street lights and a
full moon and reported that he had gotten a good lock at the
man's face.

6.    Schmidt then tended to Cabaccang, who was a short

distance away, and observed his stab wounds.  Cabaccang responded

in the affirmative when Schmidt asked him if the male walking

away was the man who had stabbed him.

7.   Cabaccang died from his wounds.

8.   A double bladed knife, a Phillips head screwdriver,

Cabaccang's car keys, and a blood soaked baseball cap were

recovered at the scene.

9.   The police initially regarded Hina Burkhart as a

suspect in the case.  When Seidel and Schmidt failed to identify

Burkhart's photograph, and two other witnesses placed him at

another location at the time of the stabbing, he was ruled out as

a suspect.

10.   Three days after the stabbing of Cabaccang, Christian

told his former girlfriend, Lisa Kimmey, that he had killed

Cabaccang.  Kimmey reported this admission to the police a few

days later.  Kimmey's mother provided police with photographs of

Christian wearing a baseball cap identical to the blood-soaked

cap found at the scene of the stabbing.  Kimmey also testified

that, before the stabbing, she had observed Christian in

possession of a double-bladed knife like the one used to kill

Cabaccang.

11.   A search of Christian's home yielded a box of the same

type of plastic gloves as Seidel observed on the attacker's

hands.

12.   Seidel and Schmidt both identified Christian's

photograph as being the man whom they observed at the crime scene.

13.  At trial, Christian's defense theory was that he had been mistakenly identified.  He attempted to introduce testimony that Hina Burkhart had confessed to the murder on two separate occasions.  When called as a witness, Burkhart invoked his Fifth Amendment privilege against self incrimination.

14.  The trial court declared Burkhart to be "unavailable" under Hawaii Rules of Evidence ("HRE") Rule 804, and conducted a hearing under HRE Rule 103 to determine whether there was sufficient corroboration of Burkhart's out of court declarations to permit Christian to introduce them into evidence.

15.  After considering Christian's lengthy offer of proof, the trial court ruled that the trustworthiness of the statements of his two witnesses had not been clearly demonstrated, and therefore, denied the admissibility of the statements.

16.  The trial court rendered <u>Tachibana</u> colloquies to Christian prior to jury selection and in conjunction with the defense resting it's case in chief.

17.  On the morning of closing arguments, in the presence of the jury, Christian declared his wish to testify.  The jury was excused and it was brought to the Court's attention that Christian held evidence that witness Seidel had lied on the stand.  Attorney Ranken represented that he had not been given any tape to review and did not know how to locate any witness

mentioned in the tape.

18.   The trial court did not reopen the case for the purpose of introduction of a tape that Ranken did not possess or for a witness who was not identified.

19.   The jury, after deliberation, found Christian guilty as charged.

20.   Christian's Motion for New Trial or in the Alternative for Entry of Judgement of Lesser Conviction as to the Murder Count, filed on March 20, 1997, was denied.  In his post-conviction motion, Christian alleged newly discovered evidence which exonerated him, insufficient evidence to support the conviction for Murder in the Second Degree, the trial court's erroneous exclusion of Hina Burkhart's confessions to the crime, the denial of his request for new counsel during trial, and the refusal of the court to allow him to testify.

21.   Christian filed his timely appeal citing reversible error in (1) the trial court's refusal to reopen evidence in order to allow Christian to testify in his own behalf; (2) the denial of Christian's Motion for New Trial; (3) the admission of evidence that was hearsay under HRE Rule 804(b)(3); and (4) the ineffective assistance of counsel.

22.   In affirming the convictions for Murder in the Second Degree and Attempted Theft in the Third Degree, the Supreme Court of the State of Hawaii found that the trial court was assiduous in following the procedures mandated in <u>Tachibana</u>, and that

Christian's waiver of his constitutional right to testify in his
own defense was both knowing and voluntary.  The Hawaii Supreme
Court found no abuse of discretion by the trial court in not
allowing Christian to withdraw his prior waiver of his right to
testify.  The Hawaii State Supreme Court cited a failure to
present even a colorably sufficient showing of the "tape's"
relevancy, or any fair and just reasons for his request to set
aside his waiver and reopen the case or his testimony.

23.  The Hawaii Supreme Court found no abuse of discretion
by the trial judge in denying the Motion for New Trial based on
Christian's request to withdraw his waiver of the right to
testify.

24.  In affirming the convictions, the Hawaii Supreme Court
found that Christian's offer of Hina Burkhart's confession was
too weak to indicate trustworthiness and the trial court did not
abuse its discretion in excluding this "confession" evidence at
trial.

25.  The Hawaii Supreme Court made a fining that Christian's
claim of ineffective assistance of counsel was without merit.

26.  Petitioner claims and presents approximately sixty-
seven grounds for post-conviction relief in his petition.


                        CONCLUSIONS OF LAW


1.  Rule 40(a)(3) of the Hawaii Rules of Penal Procedure

("HRPP") states:

> (3) Inapplicability.  Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  An issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.  There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

HRPP Rule 40 (a)(3) has been interpreted to mean that an issue is deemed waived if it is was not raised at any time prior to the petition.  Bryant v. State, 6 Haw.App. 331, 726 P.2d 1015 (1986), overruled on other grounds, Briones v. State, 74 Haw. 442, 461, 848 P.2d 966, 981 (1993).  Pursuant to Rule 40(a)(3), Petitioner waived his claims of denial of due process based on suggestive confrontation via publication of photographs to the media and witnesses, tampered mug shots, suppression of evidence of three witnesses statements, suppression of fingerprints, police filing false reports, use of tainted evidence, prosecutorial misconduct, and prejudice by the trial court.  These claims are not supported by the records of this case.

    2.  Even if Petitioner's claims involving violation of his Miranda rights and illegal search and seizure are not deemed waived, the records of the case support a finding that these

Antone, supra, at 348.

5.   The record before the Court, viewed in the light of the foregoing authorities, fails to support Petitioner's claim of ineffective assistance of counsel.   Moreover, the Hawaii State Supreme Court has already rejected Christian's claim of ineffective assistance of counsel.

6.   Examination of the record having indicated that the allegations of the Petitioner show no colorable claim for all the forgoing reasons, the petition will be denied without a hearing. A Rule 40 petitioner may be denied without evidentiary hearing if the stated claim is patently frivolous and without a trace of support on the record.   Cacatian v. State, 70 Haw. 402, 772 P.2d 691 (1989).   In assessing whether a colorable claim has been presented, the court is not bound to accept allegations in the petition, and may compare them to the existing record.   Id. at 403.   If there is no support for the petitioner's allegations in the record or other evidence submitted by the petitioner, it is appropriate for the court to deny relief without affording an evidentiary hearing.   Id.   Here, petitioner's claims are patently frivolous and without trace of support either in the record or from other evidence submitted by petitioner.   Id.

Upon review of the Petition, the response to the petition and all the records and exhibits, the Court finds the petition to be patently frivolous, the issues to have been previously raised and ruled upon, or the issues to be waived, and

all arguments and allegations to have no merit.

ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby ordered that Petitioner's Petition for Post-Conviction Relief is hereby denied without a hearing.


DATED: Wailuku, Maui, Hawai`i, May 2, 2002


/S/ REINETTE W. COOPER (SEAL)
Judge of the above-entitled Court

**APPENDIX B**

## STATEMENT OF RELATED CASES

Counsel is not aware of any related cases on appeal.

NO. SC-25196

IN THE SUPREME COURT OF THE STATE OF HAWAII

| | | |
|---|---|---|
| TARYN CHRISTIAN, | ) | Circuit Court No. S.P.P. 00-1-0002(2) |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal from May 2, 2002 order |
| | ) | denying Rule 40 Petition |
| | ) | and subsequent denial |
| | ) | of Motion for Reconsideration |
| | ) | |
| vs. | ) | |
| | ) | |
| THE STATE OF HAWAII, | ) | |
| | ) | SECOND CIRCUIT COURT |
| | ) | |
| Respondent-Appellee. | ) | HONORABLE REINETTE W. COOPER |
| | ) | Judge |

CERTIFICATE OF SERVICE

I hereby certify that a copy of the Petitioner-Appellant's Amended Opening Brief, Appendices A and B, and Certificate of Service were served on Richard K. Minatoya, Deputy Prosecuting Attorney, County of Maui, 150 South High Street, Wailuku, Hawaii 96793, by mailing a copy of each of these named documents to Mr. Minatoya on March 1, 2003.

1

MARK BARRETT, OK # 557
P.O. Box 896
Norman, Oklahoma 73070
405-364-8367


KEITH S. SHIGETOMI  3380
Pacific Park Plaza, Suite 1440
711 Kapiolani Boulevard
Honolulu, Hawaii 96813
596-0880

2