DEPARTMENT OF THE PROSECUTING ATTORNEY 207

BENJAMIN M. ACOB 4471
Prosecuting Attorney
PETER A. HANANO 6839
First Deputy Prosecuting Attorney
RICHARD K. MINATOYA 5840
Deputy Prosecuting Attorney
County of Maui
Wailuku, Maui, Hawaii 96793
Tel. No. 243-7630
Fax. No. 270-7927

Attorneys for Respondents

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TARYN CHRISTIAN, ) | CIV. NO. 04-00743 DAE-LEK |
| ) | |
| Plaintiff, ) | DECLARATION OF DAVID |
| ) | A. SMITH; EXHIBITS "A" - |
| vs. ) | "G"; CERTIFICATE OF |
| ) | SERVICE |
| CLAYTON FRANK, Director, ) | |
| STATE OF HAWAI'I, DEPARTMENT ) | |
| OF PUBLIC SAFETY, et al., ) | |
| ) | |
| Respondents. ) | |

**DECLARATION OF DAVID A. SMITH**

**EXHIBITS "A" - "G"**

**CERTIFICATE OF SERVICE**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TARYN CHRISTIAN, | CIV. NO. 04-00743 DAE-LEK |
| Plaintiff, | DECLARATION OF DAVID A. SMITH |
| vs. | |
| CLAYTON FRANK, Director, STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY, et al., | |
| Respondents. | |

## DECLARATION OF DAVID A. SMITH

I, DAVID A. SMITH, do declare as follows::

1. Declarant is an audio engineer who resides and works in Johnstown, Pennsylvania, and does business as Sound Testimony®;

2. As part of Declarant's business, Declarant performs services as a forensic audio examiner for investigative and litigation purposes;

3. Attached hereto and made a part hereof as Exhibit "A" is a true and correct copy of Declarant's curriculum vitae;

4. Declarant's clients include private attorneys and the National Security Agency (through CTC);

5. Declarant is a member of the Audio Engineering Society (AES), the American College of Forensic Examiners (ACFEI), and the Institute of Electrical and Electronics Engineers, Inc. (IEEE);

6. The forensic audio examinations done by Declarant in the above-referenced case were done according to the methodology recommended by the AES;

7. The audio enhancement process used by Declarant in the above-referenced case did not change the examined evidence in any way;

8. On the enhanced copies prepared by Declarant of the audio evidence examined, the audio enhancement process used by Declarant did not in any way change what the speakers said or how they said it;

9. Attached hereto and made a part hereof as Exhibit "B" is a true and correct copy of a report written by Declarant dated March 7, 2008 ("March 7th Report");

10. Said March 7th Report concerns the examinations/enhancements conducted by Declarant of a recording of a 911 call between Rob Perry and a 911 operator at the Maui County Police Department ("911 call"), and a recording of a pretext call between Petitioner TARYN CHRISTIAN ("Petitioner") and Lisa Kimmey ("pretext call");

11. After Declarant's examination/enhancement of the 911 call, it

is Declarant's opinion and determination that two items identified by Petitioner's audio expert could not be verified;

12. The first of the two items that could not be verified were Petitioner's audio expert's opinion that an unidentified male stated "James Burkhardt just walked off;"

13. It is Declarant's opinion that the statement is unintelligible;

14. Further, the first word could not be the name "James," because it consists of two syllables, with the second syllable having a rising pitch;

15. The second item that could not be verified was Petitioner's audio expert's opinion that an unidentified male stated, "tell her we were robbed by Chris Diaz;"

16. It is Declarant's opinion that the statement is unintelligible;

17. Attached hereto and made a part hereof as Exhibit "C" is a true and correct copy of a transcript of the 911 call prepared by Declarant after examination and enhancement of the tape of the 911 call;

18. Regarding the recording of the pretext call, Declarant verified two items raised by Petitioner's audio expert;

19. The two items involved denials of the murder of Vilmar Cabaccang made by Petitioner to Lisa Kimmey, namely:

   a. Regarding Petitioner's audio expert's finding that Petitioner said, "Do you think that I took him? How do you think I feel? I'm not the one who did it," Declarant found the statement to actually be, "Do you think I feel good? How do you think I feel? I'm not the one who did it;" and

   b. Declarant verified Petitioner's audio expert's finding that Petitioner said, "I wasn't the one who stabbed him and, Lisa, I know that for a fact;"

  20. Attached hereto and made a part hereof as Exhibit "D" is a true and correct copy of a transcript of the pretext call prepared by Declarant after examination and enhancement;

  21. In addition to verifying the two statements of denial, Declarant found eighteen (18) portions of the conversation in which Petitioner either admitted or insinuated responsibility for the murder of Vilmar Cabaccang;

  22. Attached hereto and made a part hereof as Exhibit "E" is a true and correct copy of a transcript of the aforementioned 18 portions of the conversation prepared by Declarant;

  23. In addition to transcripts, Declarant prepared separate recordings on compact discs of the enhanced recordings of the 911 call, the pretext call, and of the aforementioned 18 portions of conversation from the pretext call;

24. Attached hereto and made a part hereof as Exhibit "F" is a true and correct copy of a report prepared by Declarant dated June 23, 2008 on additional reports and a DVD-ROM prepared by Petitioner's audio expert;

25. After Declarant's analysis of the DVD-ROM, Declarant found no significant changes to Declarant's earlier findings regarding the recordings of the 911 call and the pretext call;

26. Attached hereto and made a part hereof as Exhibit "G" is a true and correct copy of a report prepared by Declarant dated July 3, 2008 regarding Petitioner's audio expert's report on Declarant's March 7th Report;

27. The key element of the July 3, 2008 report is that it explains that Petitioner's audio expert admitted to working with only one track during his analysis of the copy of the 911 call tape, which contained two channels of differing material;

28. Although the original 911 call recording was on a single audio channel, the original recording could not be found, so the next best alternative was a first generation copy of the original recording;

29. The first generation copy of the original recording of the 911 call was done on a stereo cassette tape, and the two audio channels had different signals;

30. Declarant copied and analyzed both channels on separate tracks, whereas Petitioner's audio expert only analyzed one track, and did not explain how, if he only recorded one channel, he determined which channel to copy and analyze;

31. Declarant prepared a video describing the differences between the analyses done by Declarant and Petitioner's audio expert;

32. After additional analysis, Declarant found that the item raised by Petitioner's audio expert in the 911 call regarding "James Burkhardt just walked off" is actually, "The other person just walked . . .," and the remainder of the statement is drowned out by the 911 operator and other noise; and

I DECLARE UNDER PENALTY OF LAW THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED: Johnstown, Pennsylvania, 7/14/08

Jeanne M. Mack 7/14/08

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JEANNE M. MACK, NOTARY PUBLIC
RICHLAND TWP., CAMBRIA COUNTY
MY COMMISSION EXPIRES MARCH 23, 2011

DAVID A. SMITH