# EXHIBIT "G"

# Sound Testimony®

July 3, 2008

**Report of CAE's review of Sound Testimony's® Findings**

**Assignment:**

I was asked by Richard Minatoya, Esq., Deputy Prosecuting Attorney, Department of the Prosecuting Attorney, County of Maui, to comment on CAE's observations of Sound Testimony®-prepared reports and accompanying CDs including Q1—Transcript of telephone call between 911 Operator and Mr. Robert Perry, Q2—telephone call between Taryn Christian and Lisa Kimmey, and a CD consisting of audio segments from Q2 with an associated track sheet. I was faxed the report and E-mailed the associated .jpg files on July 3, 2008.

Mr. Mitchell of CAE writes in his report,

> "An analysis of Mr. Smith's audio indicates that his work is technically flawed. Both audio recordings are of telephone conversations. The telephone employs a monaural signal (*i.e.*, a telephone signal contains a single audio channel, or is monophonic). Mr. Smith transferred the original telephone recordings onto his audio system for analysis and enhancement. He then burned audio CDs of his enhanced final work product. The files on all audio CDs are two channel recordings (this is the specifications of an audio CD). When a monaural file is converted to a two-channel file it should have an identical signal on both channels. The audio provided by Mr. Smith is binaural (two channel), but the information on the two channels is significantly different.
>
> Although Mr. Smith's two-channel audio is from a single source, the signal on the left and right channels differ with regard to audio event alignment and amplitude (volume). There are even some audio events present on one channel but not on the other. This makes listening to the content of the audio files very difficult. The mismatched channels create an auditory illusion that the audio signal actually pumps from side to side. Moreover, the sound on each channel interferes with the perception of the sound on the other, obscuring the dialogue either partially or totally at points."

---

814.410.4787  
david@soundtestimony.com  
www.soundtestimony.com

1185 Agnes Avenue  
Johnstown, PA 15905

EXHIBIT " G "

The following are my observations on Mr. Mitchell's comments.

Although according to the www.caeaudio.com website, "CAE specializes in intelligibility enhancement, using proprietary methodologies developed in-house." No details concerning these methodologies have been revealed. However, Mr. Mitchell's comments on Sound Testimony® findings provide some disclosure.

CAE's Q1—911 call opinion—Observations

While Mr. Mitchell is correct that the analyzed Q1—911 recording was initially of a monaural telephone conversation and that the telephone signal is monaural, he is incorrect when he writes that the original telephone recording was transferred into a forensic audio system for analysis and enhancement.

In the Q1 report that Mr. Mitchell reviewed I wrote, "I was informed that the original 911 tape could not be located and that Q1 was a first generation recording of the original 911 tape." The cassette that I received containing the 911 call information was a copy of that 911 call tape. Despite the fact that this appears in the report reviewed by Mr. Mitchell, he writes, "Mr. Smith transferred the original telephone recordings…" This is incorrect. Also, I was unable to obtain any information regarding the type of cassette recorder on which the duplicate recording was made.

At the beginning of the Q1—911 tape's critical listening analysis, I used a monaural cassette recorder/reproducer. I heard the typical 'smearing' of what few high frequencies were on the tape and adjusted the tape machine head's azimuth (a physical adjustment made to the tape machine's head to make its perpendicularity to the tape path as close as possible to that of the recording head's perpendicularity on the machine on which the tape was recorded) to correct it. After subsequent listening on three different stereo cassette recorder/reproducers, I concluded that although the original 911 call was monaural, there was different information on both cassette channels. I knew that I must capture BOTH channels of information. I adjusted the azimuth of the tape recorder playback head to be in alignment with the tape before transferring the material. The extent to which I worked to ensure an accurate transfer is detailed in my Q1—911 report.

Mr. Mitchell writes, "The audio provided by Mr. Smith is binaural (two channel), but the information on the two channels is significantly different." That is correct. That was also my finding when listening to the cassette BEFORE transfer.

This situation of having non-identical information on both cassette channels could have come about in any number of ways. For example, the cassette recorder on which the Q1—911 Call COPY was created may have been a stereo machine of not very high quality. Regardless of what circumstance(s) created the situation, the end result was a tape with differing degrees of information on both channels.

Mr. Mitchell's contention that the left and right waveforms of the audio files that I captured and enhanced look different in both the waveform and spectral views proves the

point that they contain different information. That is why I captured BOTH channels. The differences between the channels were not introduced by my system. It was evident during the critical listening portion of the examination before the transfer.

Mr. Mitchell states that he recorded monaurally and then copied the recorded channel to a second channel to create a two-channel recording.

To have recorded a monaural signal as Mr. Mitchell has done would have required one or more of the following decisions and/or steps:
1. He would have had to select a channel, left or right, to record and ignore the information on the other channel. This is the equivalent of taking one fingerprint, photocopying it four times, and then saying that you now have fingerprints of the entire hand.
2. He may have summed (combined) both channels while recording.
3. He may have played the tape on a monaural tape machine.
4. Either (2) or (3) would have a result similar to what I heard when listening to the tape on a monaural recorder/reproducer. In the analysis of audio, capturing all of the recorded information is important. Both channels of information should have been recorded on their own separate tracks. Mr. Mitchell did not do that.

Mr. Mitchell then writes, "Visual inspection of these graphical representations shows unequivocally that the left and right channels of Mr. Smith's recordings are different from each other, whereas the left and right channels of the CAE recording are identical." Of course CAE's left and right channels look identical, they are identical. If only one channel was recorded, the resultant waveforms have one channel's information pasted over to an additional channel. If only one channel was recorded, some of the information could be missing.

Without knowing the proprietary method used by Mr. Mitchell, this may help explain why his enhanced final product contains substantially more noise and less intelligible speech than Sound Testimony's® final product.

CAE's Q2—Taryn Christian and Lisa Kimmey telephone call—Comments

> Mr. Mitchell writes, "Mr. Smith was able to verify the two statements of denial by Mr. Christian on the Christian/Kimmey recording. The original recording of this conversation is of better quality then the 911 recording, and these statements can be heard on the original, without enhancement, by increasing the volume at the appropriate spot. The shortcomings of Mr. Smith's audio are less of a problem with better original audio and did not prevent him from verifying these statements. It is interesting to note that Mr. Smith did not include these two statements of denial on the CD of segments he made of the Christian/Kimmey recording."

The following are my observations on Mr. Mitchell's comments.

Mr. Mitchell's states that the "shortcomings of Mr. Smith's audio are less of a problem with better original audio and did not prevent him from verifying these statements." To imply that both statements were categorically verified is not true. While one of the statements was verified, the other was verified with qualification. CAE's transcript claimed that Taryn Christian stated, **"Do you think that I took Him? How do you think I feel? I'm not the one who did it."**

Only the second and third sentences in this three-sentence phrase could be verified. After enhancement and analysis of the audio file and reviewing the transcript that I prepared, it is now obvious that Mr. Christian did not say, **"Do you think that I took him?"** The corrected transcript reads, **"Do you think I feel good?**

This can be found on the Q2 - Pretext Call enhanced CD that I prepared at 11:28.5. I also have it accessible through the use of a CD track marker. Mr. Mitchell writes, "these statements can be heard on the original, without enhancement, by increasing the volume at the appropriate spot." In fact, they were heard accurately and in their entirety only after the Sound Testimony® enhancement.

While Mr. Mitchell writes that it is interesting to note that I did not include either of these statements on the Q2—Segments CD of the Christian/Kimmey recording, there was no need for their inclusion as they had already been examined at the request of the Department of the Prosecuting Attorney, County of Maui. The Q2—Segments CD of the Christian/Kimmey recording and its associated transcript, to which Mr. Mitchell is referring, were additional excerpts of the Christian/Kimmey conversation that were not highlighted or even mentioned in any CAE report.

When Mr. Mitchell claims that so much of the material was not verified in the Q2—Pretext Call because of the "shortcomings of Mr. Smith's audio", it should be noted that these same audio techniques did not prevent the final enhancement from revealing many corrections to the CAE transcript, including a correction to one of the two verified statements (one with qualification). These changes can be identified and clearly heard by anyone with reasonable hearing.

> Mr. Mitchell writes, "There is no doubt that the audio provided by Mr. Smith contains different information on the left and right channels. The fact that the channels are different makes it more difficult for the listener to hear and identify the content of the dialogue."

Again, this proves that both channels of information should have been recorded on their own separate tracks. Mr. Mitchell did not do that.

The waveforms described by Mr. Mitchell as "definitive and incontrovertible" are indeed evidence. They demonstrate that copying one track to an additional track creates two identical audio tracks that contain identical looking and sounding waveforms. While this is obvious, and only proves that CAE recorded one track of material when two tracks should have been recorded, it also helps to explain further why CAE's end product contains less intelligible speech.

Overall, the review of the material is an imaginative approach to attempt to explain why so many of CAE's transcript statements could not be confirmed even when listening to (and looking at) CAE-enhanced audio material.

I, David A. Smith, am a resident of Johnstown, County of Cambria, State of Pennsylvania, and do hereby certify, swear or affirm, and declare that I am competent to give the following declaration: I have prepared the preceding report and that the contents are true and correct to the best of my knowledge.

WITNESS my signature this __9__ day of __July__ (July, 2008).

_____
Signature of Declarant

State of __Pennsylvania__ )
County of __Cambria__ )

On __9 July__, 20__08__, __David Smith__ personally came before me and, being duly sworn, signed the above document in my presence.

_____
Signature of Notary Public

Notary Public, In and for the County of __Cambria__
State of __Pennsylvania__

My commission expires: _____

Notary Seal

```
COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
FRANCES M. SAUTER, NOTARY PUBLIC
RICHLAND TWP., CAMBRIA COUNTY
MY COMMISSION EXPIRES OCT. 14, 2009
```