DEPARTMENT OF THE PROSECUTING ATTORNEY 207

BENJAMIN M. ACOB  4471
Prosecuting Attorney
PETER A. HANANO  6839
First Deputy Prosecuting Attorney
RICHARD MINATOYA  5840
Deputy Prosecuting Attorney
County of Maui
Wailuku, Maui, Hawaii  96793
Tel. No. 243-7630
Fax. No. 270-7927

Attorneys for Respondents

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TARYN CHRISTIAN, ) | CIV. NO. 04-00743 DAE-LEK |
| ) | |
| Plaintiff, ) | RESPONDENTS' OBJECTION |
| ) | TO THE MAGISTRATE'S |
| vs. ) | FINDINGS AND |
| ) | RECOMMENDATION TO |
| CLAYTON FRANK, Director, ) | GRANT IN PART AND DENY |
| STATE OF HAWAI'I, DEPARTMENT ) | IN PART PETITION FOR |
| OF PUBLIC SAFETY, et al. ) | WRIT OF HABEAS CORPUS, |
| ) | FILED ON AUGUST 29, 2008; |
| Respondents. ) | CERTIFICATE OF SERVICE |
| ) | |

**RESPONDENTS' OBJECTION TO
THE MAGISTRATE'S FINDINGS AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART PETITION FOR WRIT OF
<u>HABEAS CORPUS, FILED ON AUGUST 29, 2008</u>**

COME NOW, CLAYTON A. FRANK, Director, Department of Public Safety, State of Hawaii, (hereinafter "Respondents"), by and through their attorney, PETER A. HANANO, First Deputy Prosecuting Attorney for the County of Maui, and pursuant to Local Rule 74.2 of the Local Rules of the United States District Court for the District of Hawai`i and the Findings and Recommendation to Grant in Part and Deny in Part Petition for Writ of Habeas Corpus, issued by the Honorable Leslie E. Kobayashi, dated August 29, 2008, hereby submits this Respondents' Objection to the Magistrate's Findings and Recommendation to Grant in Part and Deny in Part Petition for Writ of Habeas Corpus, Filed on August 29, 2008.

Respondents object to the Findings and Recommendation ("F&R") in their entirety as they relate to the following statements, "This Court therefore FINDS that the trial court's exclusion of the proposed testimony about the Burkhart confessions was contrary to clearly established federal law, as set forth in Chambers. The Court RECOMMENDS that the district judge GRANT the Petition with regard to Ground Two", (F&R, at 49).

I. **ARGUMENT**.

    A.    **THE MAGISTRATE ERRED WHEN IT CONCLUDED THAT THE HAWAII SUPREME COURT'S DECISION IN GROUND TWO WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW, AS SET FORTH IN CHAMBERS V. MISSISSIPPI.**

The Ninth Circuit Court of Appeals has held that, because of the 1996

2

AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue. Duhaime v. Ducharme, 200 F3d 597 (9th Cir. 2000). (Citation omitted). Rather, the writ will issue only when the state court decision is "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." Duhaime, citing 28 U.S.C. § 2254(d). In determining whether a state prisoner is entitled to federal habeas relief, the federal court must examine the last reasoned state judgment rejecting the federal claim. Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991).

It is now firmly established, however, that "a decision by a state court is 'contrary to' the clearly established law of the Supreme Court if it ' applies a rule that contradicts the governing law set forth in Supreme Court cases.' " Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) citing Price v. Vincent, 538 U.S. 634, 640 (2003). On the other hand, a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Williams v. Taylor, 529 U.S. 362, 406 (2000).

In this case, the Magistrate erred when it found that *"the trial court's exclusion of the proposed testimony about the Burkhart confessions was contrary to clearly established federal law, as set forth in Chambers.* This finding is contrary to

law and clearly erroneous for several reasons. First, the Magistrate failed closely examine the last reasoned state judgment (Hawaii Supreme Court) rejecting the federal claim (exclusion of Burkhart's confessions). Instead, the Magistrate apparently focused on the trial court's decision to exclude the confessions and even indicated that "the trial court did not cite <u>Chambers</u> or any other legal authority besides Hawaii Rule of Evidence 803(b)(4)." While Respondents fully recognize that the trial court's conduct in adjudicating a federal issue in question is relevant, the focus must be on the last reasoned state judgment rejecting the federal claim, which in this case is the Hawaii Supreme Court.

Second, the Magistrate failed to apply the rule in <u>Williams</u>, that a state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Indeed, there is no dispute that the Hawaii Supreme Court not only identified the correct legal rule in Chambers, but also applied that rule to the facts of Petitioner's case. Thus, the Magistrate's finding that the trial court's exclusion of the Burkhart confessions was *contrary to* federal law, is itself contrary to law.

Third and finally, the Magistrate's factual finding that "[t]here was testimony that Burkhart was somewhere else at the time of the incident" is clearly erroneous. (F&C, at 47). Although the Hawaii Supreme Court noted in its November

10, 1998 opinion, that "[t]he prosecution offered two witnesses who placed Burkhart at another location at the time of the stabbing", the prosecution did not present any testimony of a Burkhart alibi. Thus, there is a definite and firm conviction that a mistake has been committed with regard to this factual determination by the Magistrate.

To conclude, the Magistrate should have conducted a comprehensive analysis into whether or not the Hawaii Supreme Court's November 10, 1998 opinion involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States in Chambers. However, even under that applicable standard, it cannot be said that the Hawaii Supreme Court's adjudication of Petitioner's federal claim (exclusion of Burkhart confessions) was an objectively unreasonable application of Chambers. *See Argument section II.B. below.*

B. **THE HAWAII SUPREME COURT'S DECISION WAS NOT AN UNREASONABLE APPLICATION OF CHAMBERS V. MISSISSIPPI.**

The central issue here is whether the Hawaii Supreme Court's affirmance of the trial court's decision to exclude the Burkhart confessions resulted in a decision that involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, specifically, Chambers v. Mississippi, 410 U.S. 284 (1973). Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the

5

prisoner's case. Williams v. Taylor, at 365.

In Hawaii, the Hawaii Rules of Evidence (HRE) allows the admission of such statements under against-penal-interest under certain circumstances[1]. Before an exculpatory statement is admitted into evidence, the judge must make a preliminary finding that sufficient corroboratory evidence has been offered. State v. Bates, 771 P.2d 509, 513 (1989). (Citations omitted). Moreover, the commentary to HRE Rule 804(b)(3) points out that "[t]here is good reason" for the corroboration requirement - "a distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication either of the fact of the making of the confession or in its contents[.]" See also HRE Rule 102.[2]

Likewise, under the Federal Rules of Evidence (FRE), Rule 804(b)(3), the corroborating circumstances must do more than tend to indicate the trustworthiness of the statement; they must clearly indicate it. U.S. v. Satterfield, 572 F2d 687, 693 (9th

---

[1] HRE Rule 804(b)(3) which is identical to the Federal Rules of Evidence, Rule 804(b)(3), states in relevant part that, *"a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."*

[2] These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence *to the end that the truth may be ascertained and proceedings justly determined*.

Cir. 1978). In addition, the Ninth Circuit Court of Appeals noted that in Rule 804(b)(3) "Congress meant to preclude reception of exculpatory hearsay statements against penal interest unless accompanied by circumstances solidly indicating trustworthiness. This requirement goes beyond minimal corroboration." U.S. v. Hoyos, 573 F.2d 1111, 1115 (9th Cir. 1978)[3].

In Chambers v. Mississippi, Chambers was convicted in a Mississippi state court for the murder of a police officer. Prior to trial, another suspect, Gable McDonald, provided a sworn confession to Chambers' attorneys admitting that he shot the officer using his own .22-caliber revolver, which he had discarded shortly after the shooting; that he already told a friend of his that he did the shooting; that he was giving his statement voluntarily and that no one had compelled his confession. Id., at 287.

In his defense, Chambers attempted to prove that McDonald had admitted responsibility for the officer's murder on four separate occasions, once when he gave the sworn statement to Chambers' counsel and three other times prior to that occasion in private conversations with friends. Id., at 289. After the State failed to put McDonald on the stand, Chambers called McDonald, laid a predicate for the introduction of his

---

[3] See Lilly v. Virginia, 527 U.S. 116, 127 (1999) ( traditionally, exculpatory evidence in the form of statements against *penal* offered by a defendant who claims that the declarant committed, or was involved in, the offense were considered unreliable and inadmissible until well into the latter half of the 20th century).

sworn out-of-court confession, had it admitted into evidence, and read it to the jury. Id., at 291. The State was allowed to cross-examine McDonald and elicited testimony that he had repudiated his prior confession. Chambers was denied cross-examination and precluded from calling witnesses who would have testified that McDonald confessed to the shooting.

After recognizing the inherent distrust involving declarations against penal interest such as those at issue in Donnelly v. United States, 228 U.S. 243, 272-273 (1913), the Court found that "the hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." Id., at 300. In making this finding, the Court noted that "the availability of McDonald significantly distinguishes this case from the prior Mississippi precedent, Brown v. State,[55 So. 961 (1911)], *supra*, and from the Donnelly-type situation, since in both cases the declarant was unavailable at the time of trial.[4] In the end, the Court in Chambers held that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. Chambers, at 302-303.

---

[4] In Chambers, a Donnely type situation was posited by the State in a hypothetical. See Chambers, at FN21.

In this case, the Hawaii Supreme Court's affirmance of the trial court's exclusion of the Burkhart's confessions was not an unreasonable application of Chambers v. Mississippi for several reasons. First, Chambers is highly distinguishable from the instant case. There, each of McDonald's excluded confessions was corroborated by some other evidence in the case. For example, McDonald's confession that he shot the officer using his own nine-shot .22-caliber revolver, which he had discarded shortly after the shooting was corroborated by the following: Sam Hardin, lifelong friend of McDonald testified that he saw McDonald shoot the officer; one of the murdered officer's cousins testified that he saw McDonald immediately after the shooting with a pistol in his hand; a gun dealer testified that McDonald purchased a .22-caliber revolver about a year prior to the murder and a different style .22 three weeks after the officer's murder; the autopsy showed that the officer had been hit with four bullets from a .22-caliber revolver.

Further, McDonald's excluded confessions were corroborated by McDonald's sworn confession which was transcribed, signed, and witnessed. In that statement, McDonald confessed that he shot the officer using his own nine-shot .22-caliber revolver and discarded the gun shortly after the shooting.

By contrast, the excluded hearsay confessions in this case did not bear sufficient indicia of reliability. Indeed, all of the corroborating circumstances proffered

9

by trial counsel constituted mere argument, and were remote, speculative, and lacked connection with Cabaccang's murder. (See F&R, at 40). Moreover, there was no evidence that anyone observed Burkhart stab Cabaccang, or any evidence that anyone observed Burkhart at or near the crime scene on the night of the murder. Furthermore, Burkhart's alleged confessions were neither written nor recorded, which created a doubt as to whether they were even made. Finally, other than trial counsel's offer of proof that Pimentel would testify that Burkhart had a knife that could have been used in the murder, there was no corroboration or testimony that Burkhart specifically possessed the type of split-blade knife used in murder.

Second, unlike the availability of McDonald at trial, Burkhart was unavailable in Petitioner's trial. In Chambers, this fact apparently bolstered the reliability of McDonald's excluded confessions since the Court noted that "the availability of McDonald significantly distinguishes this case from the prior Mississippi precedent, Brown v. State, *supra*, and from the Donnelly-type situation, since in both cases the declarant was unavailable at the time of trial". Chambers, at 301. See also, U.S. v. Hoyos, 573 F.2d 1111, 1115 (9th Cir. 1978) (circuit court indicating that the availability of the declarant as a witness is a factor relevant to trustworthiness).

Third, the exclusion of Chambers' critical evidence of the confessions, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied

him a trial in accord with traditional and fundamental standards of due process. Here, Petitioner's right to confrontation was not violated since Burkhart did not testify.

Fourth, the Court severely limited its holding in <u>Chambers</u> as follows, "we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial". Indeed, on at least one occasion, the Court has previously characterized <u>Chambers</u> as "[a]n exercise in highly case-specific error correction. <u>Montana v. Egelhoff</u>, 519 U.S. 37, 53 (1996).

Finally, the Magistrate's reliance on <u>Chia v. Cambra</u>, 360 F.3d 1997 (9th Cir. 2004) in determining that Burkhart's confessions were wrongfully excluded is misplaced. First, <u>Chia</u> is distinguishable. In <u>Chia</u>, the witness's (Wang) statements were made in the immediate aftermath of the crime. The statements clearly inculpated Wang and exculpated Chia. One of the statements was made when Wang was being wheeled into surgery and knew he might not survive. Other statements were tape recorded. All four statements were consistent with one another, and were made to law enforcement officers. They were also all consistent with the independent observations of law enforcement officers. <u>Chia</u>, at 1006.

In this case, the Magistrate erred when it concluded that based upon the five-part balancing test, the trial court should have admitted the testimonies of Mullins and Auld. Under the first prong, the probative value of the Burkhart confessions was

11

significantly diminished where the prosecution had two witnesses who would have testified that Burkhart was somewhere else at the time of the murder. In addition, Petitioner's apparent change in defense strategy to self-defense and/or manslaughter diminished the probative value of the Burkhart's confessions.

Under the second prong, as indicating above, the reliability of the Burkhart confessions are highly suspect. Unlike the substantial amount of corroborative evidence cited in Chambers and Chia, all of the corroborating circumstances proffered by Petitioner's trial counsel constituted mere argument, were remote, speculative, and lacked connection with Cabaccang's murder. Indeed, other than Mullins' testimony at the August 18, evidentiary hearing, Petitioner did not provide additional corroborative evidence in support of his Chambers claim.

Under the third prong, the fact that Burkhart did not testify weighs heavily against Petitioner in this prong. Because Burkhart was not subject to cross-examination, the jury would not have been able to evaluate Burkhart's credibility as to whether or not he actually confessed to the murder, and whether or not he actually committed the murder. This is the Donnelly-type situation that was referred to in Chambers, which would obviously lead to confusion by the jury and possible reliance by the jury on unreliable hearsay evidence.

Under the fourth prong, the Burkhart confessions were the sole evidence

12

suggesting that Burkhart committed the murder. As indicated above, other than trial counsel's unsubstantiated argument, as well as the remote and speculative corroboration allegedly linking Burkhart to the murder, there was no evidence that Burkhart committed the crime. This was also confirmed by the subsequent DNA analysis conducted on the crime scene evidence which repeatedly ruled out Burkhart as a possible contributor to that evidence.

Under the fifth prong, as indicated above, the Burkhart confessions did not constitute a major part of the defense. As the Magistrate correctly indicated in the F&R, by the time of closing arguments, trial counsel apparently altered the defense strategy and presented a self-defense and extreme emotional disturbance as alternative arguments. Finally, as indicated in Chia, "we may not reverse a state court decision simply because it is inconsistent with a rule established by the Ninth Circui[t]." Id., at 1004. In other words, a finding in Petitioner's favor pursuant to the five-part balancing test, does not necessarily mean that Petitioner is entitled to habeas relief under 28 U.S.C. § 2254. Nevertheless, based upon the application of the Miller test to the facts of this case, Petitioner is not entitled to habeas relief.

C.   THE EXCLUSION OF MULLINS' AND AULD'S TESTIMONY DID NOT HAVE A SUBSTANTIAL AND INJURIOUS EFFECT OR INFLUENCE IN DETERMINING THE JURY'S VERDICT.

In 28 U.S.C. § 2254 proceedings a court must assess the prejudicial impact

of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 631 (1993), whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in Chapman v. California, 386 U.S. 18, 24 (1967). Because the Brecht standard should be applied to determine prejudice before Petitioner may obtain relief in this case, the question remains whether the exclusion of Mullins' and Auld's testimonies had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, at 631.

In this case, the exclusion of Mullins' and Auld's testimonies did not have a "substantial and injurious effect or influence in determining the jury's verdict. First, the only prejudice alleged by Petitioner (as cited by the Magistrate) that resulted from the exclusion of Burkhart's confessions was that Petitioner could not rebut the prosecution's evidence that Burkhart was somewhere else at the time of the stabbing. (See F&R, at 42). However, as discussed above, the prosecution never presented any alibi evidence that Burkhart was somewhere else at the time of the murder.

Second, both Mullins' and Auld's proffered testimony lacked sufficient indicia of trustworthiness as discussed above. There was no real corroboration that Burkhart committed the murder other than some remote and speculative evidence which lacked connection with Cabaccang's murder.

Third, Petitioner's shot-gun approach in closing argument diminished the value of Mullins' and Auld's testimony. In fact, in closing arguments, Petitioner altered the defense strategy and presented a self-defense and extreme emotional disturbance as alternative arguments.

Finally, as argued in the Respondents' Answer filed on September 30, 2005, the overwhelming physical, testimonial, and forensic evidence overwhelmingly implicated Petitioner in Cabaccang's murder. Moreover, as a result of the DNA analysis on the crime scene evidence which Petitioner requested, Burkhart's DNA was nowhere to be found. Accordingly, based upon all of the above considerations, the exclusion of Mullins' and Auld's testimonies did not have a "substantial and injurious effect or influence in determining the jury's verdict. Thus, Petitioner is not entitled to habeas relief[5].

## II.  **CONCLUSION**.

Based upon the foregoing, Respondents respectfully request that this Court vacate the Magistrate's findings and conclusions with respect to Ground Two, and deny the Petition in its entirety.

---

[5] The reasons cited in <u>Brecht</u> - finality of state convictions, concerns about comity and federalism, and a desire to accord trials proper respect, also apply here.

DATED: Wailuku, Hawaii, September 9, 2008

Respectfully submitted,

DEPARTMENT OF THE PROSECUTING ATTORNEY
BENJAMIN M. ACOB,
PROSECUTING ATTORNEY

By_____
PETER A. HANANO
First Deputy Prosecuting Attorney
County of Maui
Attorney for Respondents