Case 1:04-cv-00743-DAE-LEK    Document 149    Filed 09/09/2008    Page 1 of 14

KEITH SHIGETOMI, # 3380
Pacific Park Plaza, Suite 1440
711 Kapiolani Boulevard
Honolulu, Hawaii 96813
Telephone: 808-596-0880

MARK BARRETT, OK Bar # 557
P.O. Box 896
Norman, Oklahoma 73070
Telephone: 405-364-8367
Fax: 405-366-8329
Email: barrettlaw@sbcglobal.net

ATTORNEYS FOR PETITIONER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TARYN CHRISTIAN, | ) | CIV NO. 04-00743 DAE-LEK |
| | ) | |
| Petitioner, | ) | PETITIONER S OBJECTIONS |
| | ) | TO PORTIONS OF MAGISTRATE S |
| | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS; |
| | ) | CERTIFICATE OF SERVICE |
| vs. | ) | |
| | ) | |
| IWALANI WHITE, | ) | |
| Director, State of Hawaii | ) | |
| Department of Public Safety, | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER CHRISTIAN S OBJECTIONS TO PORTIONS
OF MAGISTRATE S FINDINGS AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART
PETITION FOR WRIT OF HABEAS CORPUS**

1

Petitioner Christian objects to portions of the magistrate's findings and recommendations, Document 146, filed on August 29, 2008.

**I. Ground One — Denial of Right to Testify**

**A. Objection to Finding of Fact That Petitioner's Request to Testify Related to Contents of a Purported Tape**

On page 32 of Magistrate Kobayashi's order she states: "Based on the record, this Court finds that Petitioner's request to reopen his case" to testify "was based on upon his desire to offer the 'purported perjury tape."

Christian objects to this finding because:

(1) The finding contradicts trial counsel's statement, made in connection with the motion for new trial, that if Petitioner had been allowed to testify, Petitioner would have given his version of events;

(2) Trial counsel's motion-for-new trial statement is corroborated in that Christian undoubtedly would not have been permitted to testify about the tape recording. Further, the occurrences before, during, and after trial indicate that Christian — though certainly not a lawyer — had enough familiarity with legal proceedings to know that his own statements about the contents of the tape would be inadmissible;

(3) The magistrate gave undue weight to what Christian did not say in

addition to mentioning that the tape was there.   The trial court, during the hearing on whether Christian was going to testify, instructed   Christian to say nothing more.

Although Christian did mention the tape after saying he wanted to testify, he never stated that the entirety of his testimony would involve the tape.  After the discussion regarding the tape concluded, the judge told Christian he would exclude him from the courtroom if there were  further outbursts.   March 10, 1997 transcript, p. 7, included in the record in Volume 4, Exhibit N to Response to Petition for Writ of Habeas Corpus.   Christian reasonably could have assumed at that point that he was prohibited from making any statements or further statements regarding what his proposed testimony would include.

## B.  Objection to Finding That Trial Court s Ruling Denying Christian Opportunity to Testify Was Not Contrary to Established Federal Law

The magistrate determined that denying Christian the opportunity to testify was not contrary to established federal law (page 36 of August 29, 2008 findings), but preceded the legal conclusion with the finding that Christian only wanted to testify about a tape recording.  See pages 32-36 of August 29, 2008 findings.

After analyzing **Rock v. Arkansas,** 483 U.S. 44 (1987), the magistrate determined that   [i]f Petitioner, during the conference in chambers before closing

argument, expressed a desire to testify about his version of events, this Court would likely find that any inconvenience to the trial court or prejudice to the prosecution from reopening the defense's case was minimal in comparison to Petitioner's interest in testifying." (page 34 of August 29, 2008 findings).

The magistrate correctly noted that Christian, in the conference, did not state explicitly that he wanted to testify about his version of events. However, as pointed out in Part A above, there are reasons to conclude that Christian in fact wanted to testify about what happened at the scene of the offense.

As the magistrate seemed to indicate, an accused should be permitted to testify about his version of events if the request is made prior to closing arguments. Otherwise, the rule restricting the right to testify would be arbitrary and contrary to the interests of justice. See **Rock**, 483 U.S. at 55-56.

Because Christian wanted to testify about more than a tape recording, because he wanted to explain what happened on the evening of the homicide, the trial court's ruling was contrary to established federal law as determined by the United States Supreme Court in **Rock,** and the magistrate should have found a violation of federal law that merited habeas corpus relief.

Moreover, an accused's right to testify should not be dependent on convincing a judge in advance that the contents of the testimony would be

4

meritorious. If there had been an attempt to introduce inadmissible evidence during Christian's testimony, the prosecution could have objected at that point. To eliminate an accused's testimony on supposition as to what the accused might say is contrary to the dictates of **Rock.**

**C. Objection to Recommendation That Petition Be Denied as to Ground One**

The magistrate recommended (page 38 of August 29, 2008 findings) that Christian's petition be denied as to Ground One. For the reasons stated in Parts A and B, Christian objects to this recommendation of the magistrate.

**II. Ground Three – Ineffective Assistance of Trial Counsel**

**A. Objection to Standard By Which Counsel's Performance Judged As to Forensic Testing Issues**

The magistrate judged trial counsel's actions by a standard which presumes counsel's actions are reasonable and in accord with sound trial strategy. **(**pages 50-51 of August 29, 2008 order) Although the magistrate correctly stated the law which applies in most contexts, different legal considerations exist when – as in the case of the failure to conduct forensic testing – counsel has failed to investigate.

The failure to conduct a reasonable investigation itself indicates ineffective

assistance. A sound trial strategy no longer can be presumed when counsel does not bother to collect the information which is important to a determination of a proper strategy. See **Wiggins v. Smith,** 539 U.S. 510 (2003); **Williams v. Taylor,** 529 U.S. 362 (2000).

**B. Objection to Finding That Trial Counsel Conducted Reasonable Investigation Into Christian-Kimmey Tape and Provided Professionally Competent Assistance**

The magistrate found that trial counsel conducted a reasonable investigation into the Christian-Kimmey recording and provided professionally competent assistance in regard to that recording. (page 54 of August 29, 2008 findings)

This finding was based, in part, on the fact that trial counsel was aware of one of the two denials on the tape and mentioned it to the jury.

The magistrate s reasoning is faulty because:

(1) The jury received contradictory information about the contents of the tape from the prosecutor and would have been more likely to consider the prosecutor s version the official version than that of the defense attorney. The prosecutor stated: Listen very carefully to that section and see if what, in fact, is on the tape is, I wasn t the one who started it and you know that for a fact. (Transcript of proceedings on morning of 3/10/07, p. 102, lines 5-7)

(2)   The jury   even if it did listen carefully as both prosecution and defense encouraged    still would not necessarily have heard the explicit denial. This is because, as the audio expert reported:  a juror listening to a copy of the tape recording at constant volume likely would not have heard the denials on the tape ...    Affidavit of John J. Mitchell, July, 2008,   Exhibit A of petitioner s affidavits and declarations presented  for August 18, 2008 evidentiary hearing. The fact that the denials can be heard by adjusting the volume now and then does not mean that a jury, even a carefully listening jury would have heard them.  The audio expert did not say the passages could be heard if the entire tape is played loudly or if the entire tape is played softly.   It is the adjustment of the volume at critical times that makes the difference.  Unless there was an audio expert on the jury, there is no reason to believe the jury made the proper adjustments.

(3) Audio experts for both the prosecution and defense now agree that there were two occasions on which Christian explicitly denied killing Cabaccang. However, under the circumstances, it is likely the jury heard neither.   To allow the jury to be, at best confused and at worst   adopting whatever the prosecution said, should be determined to be ineffective assistance when, as here, it is clear that an audio expert of any stripe would have found two occasions on which Christian denied killing Cabaccang.

**C. Objection to Finding That Denial of Ineffective Claim In Respect to Christian-Kimmey Tape Was Not Contrary to or Unreasonable Application of Federal Law**

It contravenes federal law to fail to seek out facts which could materially assist a client's defense. **Kimmelman v. Morrison,** 477 U.S. 365 (1986). See also **Williams v. Taylor,** 529 U.S. 362 (2000). In the present case, this investigatory failure was prejudicial in that seeking out the contents of the tape would have revealed Christian's statements that he did not kill Cabaccang. Thus, Christian objects to the finding (page 55 of August 29, 2008 findings) that the denial of the claim in regarding to the Christian-Kimmey tape was not contrary to or an unreasonable application of federal law.

**D. Objection to Recommendation That Ground Three Be Denied In Regard to Christian-Kimmey Tape**

For reasons stated in subparts A,B, and C of Part II to this document, Christian objects to the recommendation (page 55 of August 29, 2008 findings) that the district judge deny Ground Three in regard to the Christian-Kimmey tape.

**E. Objection to Finding Regarding 911 Tape**

An enhancement of the 911 tape would have been valuable to the jury, even if the jury heard a prosecution expert disagree with the defense expert about the

exact contents of the tape.

Presenting evidence that the other suspect s name was mentioned at the scene of the crime would have been helpful to Christian s defense even if some contravening evidence was presented for the other side.  Moreover, the evidence from defense expert is decidedly more compelling than that from the prosecution.  The prosecution expert first claimed, not that he found some different statement in the area where the Burkhart name appears, but that the whole area was unintelligible.  Then, upon further review, the prosecution expert decided he could hear many of the same words the defense expert heard, but not the crucial phrase  James Burkhart.   He determined that the first word could not be  James  because the first word contained two syllables.  Then, when he finally thought he heard a word at the beginning of the phrase, he believed it to be the one-syllable word  the.   Testimony of David Smith at evidentiary hearing, Declaration of David Smith for evidentiary hearing.

The enhancement, in addition to providing a basis for audio expert testimony at Christian s trial would have led to other testimony beneficial to his defense.  For example, witness Philip Schmidt, upon hearing the enhanced 911 tape, identified Vilmar Cabaccang as being the person  who can be heard on the tape saying that James Burkhart just walked off.   Affidavit of Philip Schmidt,

July 2008, Exhibit B to petitioner s evidence submitted for August 18, 2008 evidentiary hearing.

Because information regarding and deriving from the tape enhancement would have been valuable regardless of whether the prosecution could have obtained a contrary opinion, Christian objects to the finding (page 57 of August 29, 2008 order) that denial of the claim regarding the 911 tape was not contrary to or an unreasonable application of clearly established federal law.

Clearly established federal law, requires a reasonable investigation which was not made in regard to the contents of the 911 tape. See **Kimmelman v. Morrison,** 477 U.S. 365 (1986); **Williams v. Taylor,** 529 U.S. 362 (2000).

**F.  Objection to Recommendation Regarding 911 Tape**

For the reasons stated in the immediately preceding subpart (subpart G), Christian objects to the recommendation (page 57 of magistrate s August 29, 2008 findings) that the district judge deny Ground Three in regard to the 911 tape.

**G.  Objection to Finding and Recommendation Regarding Change in Defense Theory**

Even if counsel was handicapped by his inability to use some of the evidence  pointing toward James Burkhart, a claim that Christian was both (1) uninvolved in stabbing and (2) stabbing in self-defense was so incredible as to

have no chance of convincing a jury to decide in Christian s favor.  Consequently, counsel s performance was below what is required by **Strickland v. Washington,** 466 U.S. 668 (1984) and Christian objects to the finding and recommendation (pages 61-62 of August 29, 2008 findings) that Ground Three should be denied in regard to the change of defense theory.

**H.  Objection to Findings and Recommendations Regard Handwriting Identification Regarding Handwriting Identification and Stereo Equipment**

Although the handwriting and stereo equipment issues involve allegations that Christian was involved in a theft, that theft was also, according to the prosecution s theory, part of the motive for the homicide of Vilmar Cabaccang. The prosecution theorized that Christian was trying to steal from Cabaccang s car and that Christian stabbed Cabaccang to avoid being identified as a thief.

Thus although, as the magistrate, found, the handwriting and stereo equipment issues relate to theft, the theft issue is also integral to the homicide charge.   Trial counsel s failure to utilize available evidence discrediting the handwriting assertions and showing that Christian purchased all the stereo equipment in his possession was a failure which both (1) involved the homicide case as well as the theft case, and (2) fell below the standard mandated by **Strickland v. Washington,** 466 U.S. 668 (1984).

Christian therefore objects to findings that the handwriting and stereo issues relate only to the theft case and recommendations that the handwriting and stereo issues be dismissed.  See pages 66 and 67 of magistrate s August 29, 2008 findings.

**I.  Objection to Finding and Recommendation Regarding Failure to Offer Evidence Regarding Seidel-Burkhart Relationship**

In the Rule 40 Petition, the defense identified the witness who could testify about the Seidel-Burkhart relationship as James Shin.   Volume 7, pages 510-11 of Exhibit Z to Response to habeas petition.  This evidence was important in discrediting Seidel s assertion that Christian was the perpetrator. Accordingly, Christian objects to the finding and recommendation (page 72 of magistrate s August 29, 2008 findings) regarding failure to present evidence of the Seidel-Burkhart relationship.

**J.  Objection to Summary of Ground Three Conclusion**

For all the reasons set forth in subparts A-I above, Christian objects to the magistrate s finding and recommendation (page 72 of August 29, 2008 findings) that the Petition be denied as to Ground Three.

**III.  Ground Four   Actual Innocence**

Christian objects to the magistrate s actual innocence finding and

conclusion (page 80 of August 29, 2008 findings) because Philip Schmidt's declaration (Exhibit B of petitioner's affidavits and declarations for evidentiary hearing) revealed that he now believes that Burkhart, rather than Christian, was the person he saw at the crime scene. With evidence pointing toward another perpetrator coming from what apparently was the only independent eyewitness, it appears that no reasonable juror would have convicted. Thus, under the standards set forth in **Schlup v. Delo,** 513 U.S. 298 (1995), Christian has sustained his burden with regard to the actual innocence claim.

Dated: September 9, 2008.

                                                 Respectfully submitted,

                                                 /s/ Mark Barrett
                                                 MARK BARRETT