IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‛I

| | | |
|---|---|---|
| TARYN CHRISTIAN, | ) | CV. NO. 04-00743 DAE-LEK |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| IWALANI WHITE, Director, State | ) | |
| of Hawaii Department of Public | ) | |
| Safety, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

ORDER ADOPTING IN PART AND MODIFYING IN PART
THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO
GRANT IN PART AND DENY IN PART THE PETITION FOR WRIT OF
HABEAS CORPUS; AND ORDER DENYING RESPONDENT'S AND
PETITIONER'S OBJECTIONS TO PORTIONS OF MAGISTRATE
<u>JUDGE'S FINDINGS AND RECOMMENDATIONS</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing. After reviewing Respondent's and Petitioner's

Objections, and the supporting and opposing memoranda, the Court DENIES

Respondent's Objections (Doc. # 148) to the Magistrate Judge's Findings and

Recommendation to Grant in Part and Deny in Part Petition for Writ of Habeas

Corpus, filed on August 29, 2008 (hereinafter "F&R", Doc. # 146) and DENIES

Petitioner's Objection to Portions of Magistrate Judge's F&R. (Doc. # 149).

This Court previously ADOPTED the F&R with respect to allowing Petitioner to choose between dismissal of the entire petition or amending the petition to delete two unexhausted claims.  (Doc. # 151.)  Petitioner amended the petition by deleting the unexhausted claims.  (Doc. # 152.)  This Court now ADOPTS in PART and MODIFIES in PART the remainder of the F&R.  The F&R is modified only with respect to the basis for denying the portion of Ground Three that was based on  handwriting and stereo equipment claims.  This Court MODIFIES that portion as set forth below, which in general holds that the handwriting and stereo equipment claims were based upon both the theft conviction and the murder conviction.  As such, this Court has habeas jurisdiction to consider such claims.  Nevertheless, these claims fail because Petitioner has not met his burden of providing evidence that his counsel's assistance fell below the objective standard of reasonableness or that he suffered prejudice.

<u>BACKGROUND</u>

This Court repeats only the background facts necessary for a decision on the objections to the F&R in the discussion section below.  The facts set forth herein were those found by the Magistrate Judge after an evidentiary hearing.  Additional background facts are contained in the F&R.

In 1997, Petitioner was convicted of one count of murder in the first degree, one count of use of a deadly or dangerous weapon in the commission of the crime, and one count of theft in the third degree in connection with the stabbing death of Vilmar Cabaccang.  Petitioner was sentenced to concurrent sentences of life imprisonment with the possibility of parole, five years imprisonment, and one year imprisonment, respectively.

Petitioner filed an Amended Petition pursuant to 28 U.S.C. § 2254 on September 29, 2008.  The Amended Petition alleges, inter alia, the following grounds for habeas relief which are at issue in the objections filed: 1) deprivation of Petitioner's right to testify on his own behalf ("Ground One"); 2) improper exclusion of testimony by three witnesses that James Burkhart confessed to killing Cabaccang (the "Burkhart confessions") ("Ground Two"); 3) ineffective assistance of trial counsel based on various actions and omissions by counsel ("Ground Three"); and 4) actual innocence ("Ground Four").

Although the original petition was a mixed petition, the Magistrate Judge considered the arguments on the exhausted claims, assuming that Petitioner would file an Amended Petition.  The Magistrate Judge recommended that the Petition be granted with respect to Ground Two because the exclusion of the

3

Burkhart confessions was contrary to clearly established federal law. (Doc. # 146). The Magistrate Judge denied the Petition with respect to all other grounds.

Both parties filed objections on September 9, 2008. (Docs. #148, 149.) Petitioner filed a response to Respondent's objections on September 22, 2008. Petitioner filed an amended petition on September 29, 2008, deleting the unexhausted claims.

## STANDARD OF REVIEW

Any party may serve and file written objections to proposed findings and recommendations. See 28 U.S.C. § 636(b). Pursuant to Local Rule 74.2, when a party objects to a magistrate judge's dispositive order, findings, or recommendations, the district court must make a de novo determination. A de novo review means "the court must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered." U.S. Pac. Builders v. Mitsui Trust & Banking Co., 57 F. Supp. 2d 1018, 1024 (D. Haw. 1999) (citation omitted).

"The court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.' The court also may receive further evidence or recommit the matter to the magistrate with instructions."

McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc., 656 F.2d 1309, 1313

(9th Cir. 1981) (citation omitted); LR 74.2.

DISCUSSION

Because Petitioner filed an amended petition deleting the unexhausted

claims, this Court will now address the objections on the merits by both parties.

I.      Respondent's Objections

Petitioner sought to admit at trial the testimony of three persons,

William Auld, Patricia Mullins, and Robert Boisey Pimentel, who would state that

Burkhart confessed to killing Cabaccang.  Trial counsel made an offer of proof as

to testimony of William Auld and Patricia Mullins.  Auld shared a jail cell with

Burkhart in 1995 (the same year as the June 1995 murder of Cabaccang) and Auld

would testify that Burkhart admitted to stabbing Cabaccang.  Burkhart also told

Auld that he liked the feel of Cabaccang's blood running down his hands and arms.

Mullins was a friend of Burkhart's and she had known the victim

Cabaccang for a long time.  She would testify, inter alia, that she had a

conversation with Burkhart about two days after the murder, and he confessed to

her that he was the one who killed Cabaccang.  Burkhart told her that he would get

away with it because Cabaccang's girlfriend, Serena Seidel, would not identify him

as the killer.[1]  Subsequently, Mullins saw Burkhart and he told her "you better keep your mouth shut" and "you better not rat on me."

Trial counsel argued to the trial court that the following evidence constituted corroborating circumstances, indicating that the Burkhart confessions were reliable under Hawaii Rule of Evidence 804(b)(3):

-Tesha Santana, Cabaccang's neighbor, was a friend of Burkhart's and he was supposed to come to her house on the night in question, thus showing that he was expected to be in the neighborhood;

-Cabaccang's car was opened with his keys and Petitioner did not have access to the keys because he did not know either Cabaccang or his girlfriend, Serena Seidel;

-Robert Boisey Pimentel would testify that Burkhart had an unusual knife that matched descriptions of the knife used in the attack on Cabaccang;

-Judith Laury would testify that Seidel did not call for help, but repeatedly yelled Tesha, which trial counsel argued showed she wanted Burkhart's friend Tesha Santana there because Burkhart was at the scene;

---

[1] There was apparently evidence that Seidel had a relationship with Burkhart.

-Jennifer Santana would also testify that, within a couple of weeks after the stabbing, they received two calls warning Tesha to keep her mouth shut because Tesha had made comments suggesting that Burkhart was involved in the stabbing;

-Auld's and Mullins' statements corroborate each other.

The prosecutor argued that the defense had not established corroboration or the trustworthiness of the statements.  The prosecutor's arguments included: Burkhart had a motive to lie to try to impress Auld and Mullins; both Auld's and Mullins' credibility was questionable because both were incarcerated at one point in time; Seidel testified that she did not know Burkhart; and none of the witnesses picked Burkhart's picture out of the photographic line-ups.  Further, Burkhart gave a statement to a detective denying involvement in the stabbing.  The prosecutor also represented that Helen Beatty Auweloa could testify that Burkhart was someplace else on the night of the stabbing.  Finally, the prosecutor argued that the fact that Cabaccang's keys were at the scene did not prove anything and the defense's witness could not recall sufficient information about Burkhart's knife to identify it as the one at the scene.

In excluding the testimony of the various witnesses, the trial court found that the requirements for Hawaii Rule of Evidence 804(b)(3) were not met

because the trustworthiness of the statements was not clearly demonstrated.  The

Hawaii Supreme Court affirmed.  After holding an evidentiary hearing on the

instant Petition, the Magistrate Judge held that the Petition should be granted with

respect to Ground Two because the exclusion of the proposed testimony about the

Burkhart confessions was contrary to clearly established federal law.

Respondent objects to this finding.  Respondent first argues that the

Magistrate Judge erred because she focused on the trial court's decision to exclude

the confessions, but did not closely examine the Hawaii Supreme Court's

judgment, which was the last reasoned state judgment.  Respondent next argues

that the Magistrate Judge erred in finding that the Hawaii Supreme Court's

decision was contrary to clearly established federal law because the Hawaii

Supreme Court identified the correct legal rule set forth in Chambers v.

Mississippi, 410 U.S. 284 (1973) and applied the rule correctly.  Respondent

further avers that the exclusion of the Burkhart confessions did not have an

injurious effect or influence on the jury's verdict.  Finally, Respondent argues that

the Magistrate Judge erred in making a factual finding that there was testimony at

trial that Burkhart was somewhere else at the time of the incident.  Therefore,

Respondent asserts that the F&R to grant the petition on this ground should be

rejected and the petition should be denied.

A.    <u>Unreasonable Application Finding</u>

Respondent contends that the Magistrate Judge did not properly consider the Hawaii Supreme Court's affirmance of the trial court's exclusion of the Burkhart confessions.  Respondent does not further flesh out this particular argument.  It is clear to this Court that the Magistrate Judge did consider the Hawaii Supreme Court's decision.  Indeed, that decision is cited numerous times and referred to throughout the F&R.  (<u>See</u> F&R at 3-4, 41-42, 45.)  Nevertheless, as acknowledged by Respondent, the trial court's reasoning is relevant.  Accordingly, this objection does not provide a basis for finding in Respondent's favor.

Respondent avers that that the Hawaii Supreme Court's affirmance of the trial court's decision to exclude the Burkhart confessions was not an unreasonable application of the federal law established in <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973) because the Burkhart confessions were hearsay that did contain a sufficient indicia of reliability.  Instead, Respondent asserts that the corroborating circumstances presented by Petitioner's trial counsel constituted mere argument, were speculative and lacked connection with the murder, and therefore, it was appropriate to exclude the evidence.  In addition, Respondent avers, there was no evidence that Burkhart was observed at the crime scene, his

confessions were not written or recorded, there was no corroboration of Pimentel's potential testimony, Mullins' and Auld's testimony would have been diminished because the prosecution had two witnesses that could have testified that Burkhart was somewhere else, and Burkhart was unavailable and did not testify.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (internal quotation marks and citations omitted). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations [and the] rights to confront and cross-examine witnesses in one's own behalf have long been recognized as essential to due process." Chambers, 410 U.S. at 294.

However, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials[,]" including evidence that someone else committed the crime, as long as those rules serve a legitimate purpose or are not "disproportionate to the ends that they are asserted to promote[.]" Holmes, 547 U.S. at 324-25.

In <u>Chambers</u>, the state's evidentiary rules barred parties from impeaching their own witnesses, and did not include an exception to the hearsay rule for statements against penal interest.  The Supreme Court held that the defendant's due process rights were violated because these two evidentiary rules worked to bar the defendant from introducing evidence that another person, McDonald, had made self-incriminating statements to three other persons, and prevented the defendant from cross-examining McDonald.  <u>Chambers</u>, 410 U.S. at 302.

At issue here is the State court's application of Hawaii Rule of Evidence 804(b)(3), which provides that hearsay statements are inadmissible but that statements against interest are not excluded if the declarant is unavailable as a witness.  The rule defines a statement against interest as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.

Haw. R. Evid. 804(b)(3).  The rule further provides that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not

admissible unless corroborating circumstances clearly indicate the trustworthiness

of the statement." Id.

In excluding the testimony of the various witnesses to the Burkhart

confessions, the trial court found that the requirements for Hawaii Rule of

Evidence 804(b)(3) were not met because the trustworthiness of the statements was

not clearly demonstrated.  The trial court did not consider Chambers or whether the

exclusion of the testimony violated Petitioner's constitutional rights.  In affirming

the trial court's exclusion of the evidence, however, the Hawaii Supreme Court

considered Chambers.  See State v. Christian, 967 P.2d 239, 262 (Haw. 1998).  The

Hawaii Supreme Court found Chambers was distinguishable from the instant case

because "corroborating circumstances of the type noted by the Chambers court

[we]re not present in the instant case[,]" and the corroboration presented by

Petitioner was "too weak clearly to indicate the trustworthiness of Burkhart's

confessions to Auld and Mullins[.]" Id. at 262, 263.  Specifically, the Hawaii

Supreme Court noted that

> no eyewitness linked Burkhart to the stabbing of
> Cabaccang. On the contrary, the two individuals who had
> an opportunity to observe Cabaccang's assailant failed to
> identify Burkhart in a photo lineup, and instead, both

> identified Christian as the attacker.[2]  Moreover, the
> prosecution offered two witnesses who placed Burkhart
> at another location at the time of the stabbing.[3]  Second,
> neither of the two confessions allegedly made by
> Burkhart were sworn, as was McDonald's confession to
> Chambers's attorneys.  Finally, while there is evidence
> that Burkhart owned an unusual "butterfly" knife,
> Christian himself conceded that the split blade knife
> found at the crime scene was not a "butterfly" knife.

Id. at 262-63.  Therefore, the Hawaii Supreme Court found that

> [t]he only arguably corroborating evidence offered by
> Christian did not link Burkhart to the crime, but rather, in
> a rather tenuous manner, to the neighborhood in which
> the crime took place, by indicating that Burkhart had
> failed to appear at the nearby home of his friends, who
> had been expecting his visit that evening.

Id. at 263.

The Magistrate Judge noted the Hawaii Supreme Court's ruling, but

found that were significant similarities between the Chambers case and the instant

_____

[2] Since the Supreme Court's ruling, and as part of the evidentiary hearing in this case, one of these witnesses, Phillip Schmidt, has recanted his identification of Petitioner and has identified Burkhart as the person he saw leaving the crime scene.

[3] Although not admitted into evidence at the instant evidentiary hearing due to timeliness concerns, Petitioner presented a declaration by one of these witnesses, Helen Betbeatty-Auweloa, who recanted her previous statement regarding Burkhart being present in her home near the time of the murder, and now states that she cannot be certain that Burkhart was in her home because she was sleeping and he could have left.

case.  Specifically, as in <u>Chambers</u>, Burkhart made spontaneous confessions to at least three persons after the murder occurred, and urged one of them not to turn him in.[4]  In addition, the Magistrate Judge cited to <u>Chia v. Cambra</u>, 360 F.3d 997, 1004-05 (9th Cir. 2004), which in turn cited to a Supreme Court case for the proposition that "[s]elf-inculpatory statements have long been recognized as bearing strong indicia of reliability."  (citing <u>Williamson v. United States</u>, 512 U.S. 594, 599 (1994)).  Finally, the Magistrate Judge noted in a footnote that although the Burkhart confessions did not have all of the corroborating evidence that the McDonald confessions had, nothing in <u>Chambers</u> dictated that the same level of corroborating evidence is required.  (Doc. # 146 at 46 n.16.)  The Magistrate Judge found that "[t]he trial court appeared to weigh Petitioner's supporting evidence against the prosecution's evidence in determining whether there was corroboration for the confessions.  The trial court should have left that process for the jury and should only have made a basic determination whether there was sufficient corroboration to render the confessions admissible."  (<u>Id.</u> at 48-49.)  The Magistrate Judge therefore found that "the trial court's exclusion of the proposed

---

[4] One of these confessions was made to Patricia Mullins only two days after the murder.

14

testimony about the Burkhart confessions was contrary to clearly established

federal law, as set forth in Chambers."

This Court agrees with the Magistrate Judge and after a de novo

review independently finds that with respect to the ruling by the Hawaii Supreme

Court, it was an unreasonable application of <u>Chambers</u> because it did not consider

the strong indicia of reliability of self-inculpatory statements, it did not consider

the fact that Burkhart had confessed to at least three persons, each of which

provides corroboration for the other, and it did not recognize that the <u>Chambers</u>

case does not require the same level of corroboration that was present in <u>Chambers</u>

for all cases.  Moreover, some of the evidence cited by the Hawaii Supreme Court,

such as the failure of a connection between Burkhart and the crime scene, and the

identification of Petitioner at the crime scene, goes beyond whether the three

confessions have an indicia of reliability and crosses-over into the realm of the

weight of the evidence against Petitioner.

Accordingly, this Court finds that the exclusion of the Burkhart

confessions was contrary to clearly established federal law, as set forth in

<u>Chambers</u>.

B.   Injurious Effect and Evidence of Burkhart's Whereabouts

Respondent argues that Petitioner has not shown that the exclusion the Burkhart confessions had a substantial and injurious effect or influence in the jury's verdict.  Respondent also avers that the Magistrate Judge erred by finding that Petitioner was injured by the exclusion of the Burkhart confessions because he was unable to rebut the evidence presented by the prosecution that Burkhart was somewhere else at the time of the stabbing.  Respondent states this was an error because the prosecution never presented any evidence of Burkhart's whereabouts at the time of the murder.  Respondent argues that the exclusion of the Burkhart confessions did not have an injurious effect because they did not have an indicia of reliability, Petitioner presented alternate defenses at closing, which diminished the value of the confessions, and the other evidence overwhelmingly implicated Petitioner.

Habeas petitioners are not entitled to relief based on trial error unless the error "had substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).  This harmless error standard applies to "non-constitutional error in cases on direct review and to constitutional error in cases on collateral review."  Arnold v. Runnels, 421 F.3d 859, 867 (9th Cir. 2005).  "[E]rror is harmless if [the court] can say with fair

16

assurance that it did not have a substantial effect, injurious to the defendant, on the jury's decision-making process." Id.

Respondent argues that the only injury to Petitioner was an inability to allegedly rebut the prosecution's evidence of Burkhart's whereabouts, however, the prosecution never presented such evidence. This argument lacks merit. It is irrelevant whether or not the prosecution presented evidence because Petitioner's due process rights were violated because he was unable to present a theory of defense, not just because he could not rebut the prosecution's evidence regarding Burkhart.

Moreover, as set forth above, the Burkhart confessions had sufficient indicia of trustworthiness because they were self-inculpatory statements made to three separate people, all of which corroborate each other.

Respondent's argument that the presentation at closing of a self-defense theory and extreme emotional disturbance diminished the value of the Burkhart confessions is also an irrelevant consideration because those alternative defense theories likely would not have been presented had Petitioner been able to introduce into evidence the Burkhart confessions.

Finally, the allegedly overwhelming evidence implicating Petitioner is not relevant. As noted by the Ninth Circuit, the question "is not whether the

evidence was sufficient or whether the jury would have decided the same way even in the absence of the error.  The question is whether the error influenced the jury." Id. at 869.

This Court cannot say with fair assurance that the exclusions of the Burkhart confessions did not have a substantial effect on the jury's guilty verdict.

For these reasons, this Court DENIES Respondent's objections and ADOPTS the Magistrate Judge's F&R.  This Court GRANTS the Petition on Ground Two.  The Court ORDERS Respondent to release Petitioner within seven days after the judgment in the instant case is filed, subject to appropriate release conditions, unless the State elects to retry Petitioner; and ORDERS Respondent to report to this Court, within ten days after the judgment in the instant case is filed, whether Petitioner was released or will be retried.

II.   Petitioner's Objections

A.   Ground One, Denial of Right to Testify

After the presentation of evidence, but before closing arguments, Petitioner informed the trial court that he wanted to testify.  Petitioner had twice previously been informed about his right to testify in his own defense and he waived his right.  In a conference in chambers after his last minute request to testify, the trial judge asked Petitioner if there was anything he wanted to say and

Petitioner responded that there was "a tape of a witness that was in the presence of [Burkhart] and [Seidel] on more than one occasion and shows that [Seidel] committed perjury" when she testified for the prosecution.  The trial court asked Petitioner if he had anything else to say and he said that he did not.  A discussion ensued about reopening the case and discovery about the tape.  The trial court refused to allow the defense to reopen its case to allow Petitioner to testify.  In addition, Petitioner's counsel and the trial court cautioned Petitioner that "if he makes any further outbursts in front of the jury – first, not only is his counsel correct it only hurts his case.  Secondly, if he continues that, the Court will have no choice but to exclude him from the courtroom."

Petitioner later filed a motion for a new trial, arguing that the trial court should have allowed the defense to reopen its case to allow Petitioner to testify.  The trial court reaffirmed the denial of Petitioner's request to testify on the ground that Petitioner had previously declined to testify after the trial court's colloquy and Petitioner waited until just before closing arguments to try to change his mind.

Upon reviewing the trial court's decision, the Hawaii Supreme Court found that Petitioner had made a knowing and voluntary waiver of his right to testify, which was not being challenged.  The Hawaii Supreme Court determined

that "the trial court must pass on a defendant's attempted withdrawal of the prior waiver of his or her right to testify, tendered before the commencement of closing arguments, pursuant to the 'liberal approach,' whereas such an attempted withdrawal tendered thereafter is subject to the 'manifest injustice' standard." Christian, 967 P.2d at 257.  The stricter standard applies after the close of evidence because the "post-evidentiary phase of the trial, i.e., the parties' closing arguments . . . is, after all, . . . [the] point in the proceedings that the defendant has taken the 'decisive, irrevocable step' of placing his or her fate regarding the charged offenses in the jury's hands, based on the evidence presented." Id.

Applying the liberal approach to Petitioner's first request to withdraw his waiver of his right to testify, the Hawaii Supreme Court found that the trial court did not abuse its discretion in denying Petitioner's request because, after giving Petitioner a full opportunity to explain his reasons for withdrawing his waiver, Petitioner's "sole offer of proof in support and explanation of his newly expressed desire to testify was that 'there's a tape of a witness that was in the presence of Hina [Burkhart] and Serena [Seidel] on more than one occasion [that] shows that Serena's committed perjury in . . . court." Id. at 426 (brackets and ellipses in original).

With respect to the motion for new trial, the Hawaii Supreme Court found that it was the first time that the trial court was made aware that Petitioner wanted to testify to his version of events.  Id.  Applying the manifest injustice standard, the Hawaii Supreme Court found that the denial of the motion for a new trial was not an abuse of discretion because Petitioner had made a knowing and voluntary waiver of his right to testify, there was no substantive denial of due process, and Petitioner was given an opportunity to be heard.  Id. at 427.

In the F&R, the Magistrate Judge stated that

> [i]f Petitioner, during the conference in chambers before closing argument, expressed a desire to testify about his version of events, this Court would likely find that any inconvenience to the trial court or prejudice to the prosecution from reopening the defense's case was minimal in comparison to Petitioner's interest in testifying.  Petitioner, however, did not do so.  During the conference in chambers, when the trial court addressed Petitioner about his request to testify, Petitioner responded only that there was a tape of a witness who could establish that Seidel perjured herself at trial.  Trial counsel addressed the issue of the tape and then the trial court asked Petitioner if there was anything else.  Petitioner said that there was not.  During the conference in chambers, Petitioner never said that he wanted to testify about his version of the events at issue.  While this may have been his subjective intent, the trial court did not consider it because Petitioner did not express this intent.  Based on the record, this Court finds that Petitioner's request to reopen his case to testify was based upon his desire to offer the purported perjury tape.

21

(F&R at 34-35.)

Petitioner objects to the Magistrate Judge's finding that his request to reopen his case to testify was based upon his desire to offer the purported perjury tape.  Petitioner claims that the finding contradicts trial counsel's statement made in connection with the motion for new trial.  In addition, Petitioner claims that he knew he would not have been allowed to testify about the tape recording and therefore, his request could only have been a request to present his version of the facts.  Finally, Petitioner asserts that the Magistrate Jude gave undue weight to what Petitioner did not say in the chamber's conference.  In sum, Petitioner argues that he wanted to testify about his own version of events, that the trial judge should have known that that was his desire, and therefore, the trial court's decision to not reopen the case was contrary to clearly established federal law.

Petitioner's arguments fail.  First, Petitioner fails to cite to anything in the record to support his objections.  Second, the Magistrate Judge's finding with respect to what Petitioner made known to the trial judge during the chambers' conference was correct.  Petitioner has pointed to no evidence establishing that he informed the trial judge during that conference that he intended to testify to his version of the events, or that he wanted to testify to anything other than the existence of the tape recording.  Indeed, Petitioner concedes that he did not

22

explicitly state that he wanted to testify about his version of events.  (Pet.'s obj. at 4.)  Instead, it is clear that the trial judge gave Petitioner two opportunities to say anything he wanted to say, and Petitioner only raised the issue of the tape recording, which is also the finding made by the Hawaii Supreme Court.  Third, that Petitioner's counsel made a new argument at the time of the motion for new trial and stated that Petitioner wanted to testify to his version of events, does not change the fact that such desire was not made known to the trial judge during the chambers' conference.  Moreover, Petitioner does not challenge the standard of manifest injustice, which is applied on the motion for new trial.

Accordingly, Petitioner's objections to the F&R as to Ground One are DENIED and this Court ADOPTS the F&R.

B.    Ground Three, Ineffective Assistance of Counsel

1.    Forensic Evidence

Petitioner argues that with respect to his trial counsel's failure to conduct forensic testing of the physical evidence, the Magistrate Judge should have considered it as a failure to investigate, which does not deserve a presumption of effectiveness, rather than applying the standard of presumption of sound trial strategy.

23

This argument fails because, as the Magistrate Judge found, "even assuming, arguendo, that trial counsel's failure to conduct forensic testing fell below the objective standard of reasonableness, Petitioner's ineffective assistance of counsel claim would still fail because he cannot establish prejudice."  (F&R at 58); see also Strickland v. Washington, 466 U.S. 668, 687 (1984) (to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his defense was so prejudiced by his counsel's errors that there is a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings would have been different); see also Hensley v. Christ, 67 F.3d 181, 184-85 (9th Cir. 1995) (a petitioner must show that "the deficient performance prejudiced the defense and made the trial results unreliable").

Petitioner does not contest this finding that he cannot establish prejudice because none of the physical evidence tested contained DNA from Burkhart.  Accordingly, this Court DENIES this objection to the F&R.

2.      Christian-Kimmey Tape

At trial, the prosecution characterized the tape recording of a conversation between Petitioner and Lisa Kimmey (the "Christian-Kimmey tape") as representing a confession by Petitioner because on the tape Lisa says, "Taryn, I'm not going to tell them you killed that guy.  Okay.  Okay."  Lisa says, "Every

24

time I see a car that says 'In loving memory of Vilmar,' I want to puke.  Petitioner

says, "Do you think I feel good?  How do you think I feel?  You're not the one

who did it."

Petitioner, however, presented evidence at the instant evidentiary

hearing that if the volume of the recording is increased at two points in the

recording, the jury could have heard Petitioner say "I'm not the one who did it" and

that he also said "I wasn't the one who stabbed him."  Petitioner next argues that

the Magistrate Judge's finding that that his trial counsel acted reasonably with

respect to the investigation into the Christian-Kimmey Tape and provided

competent assistance is faulty because the jury was not made aware that they

needed to adjust the volume of the recording up and down to hear Petitioner's

denials of killing Cabaccang.  Therefore, Petitioner asserts, that merely being

informed to listen carefully was insufficient because there is no way of knowing

that the jury made the correct volume adjustments when listening to the tape.

Petitioner's arguments are meritless.  As noted by the Magistrate

Judge, and uncontested by Petitioner,

> [t]rial counsel was aware of Petitioner's statement "I
> wasn't the one who stabbed him, and I know that for a
> fact."  Counsel read the statement to the jury from the
> transcript of the recording during closing argument and
> played that portion of the tape for them.  [Answer, Exh. T

> (Trans. 3/10/97) at 54-55.] Counsel even warned them that the statement was "a little hard to pick up." [Id. at 54.] He also told the jurors that there would be headphones in the jury room that they could "try to hear better." [Id. at 55.] Thus, trial counsel knew about one of the denials on the tape and knew that it was difficult to hear the statement. Counsel pointed these facts out to the jury in closing argument.

(F &R at 54.)

Accordingly, trial counsel certainly conducted a reasonable investigation into the contents of the tape recording, because he realized that at least one denial was on the tape. Further, counsel acted competently because he informed the jury of the denial, and warned them that it was difficult to hear. Finally, because the jury was made aware of the denial and informed that it was difficult to hear, Petitioner cannot show that he was prejudiced by a failure to explicitly tell the jury to turn the volume up a two specific points in the recording. Accordingly, this Court DENIES this objection to the F&R.

3.    911 Tape

Petitioner contends that his trial counsel was ineffective for failing to obtain and present an enhanced copy of the 911 tape of the call made by Robert Perry, Jr. from the crime scene. At the instant evidentiary hearing, Petitioner presented an audio engineer, John Mitchell, who testified that an unidentified male

said "James Burkhardt [sic] just walked off" on the 911 recording.  Mitchell

testified that "James Burkhart" can be heard without enhancing the tape, although

the statement is at a very low level, and a person may need to listen to that portion

a number of times in order to hear it.

Respondent also presented an audio engineer, David Smith, who

stated that he could not verify Mitchell's opinion that an unidentified male said

"James Burkhardt just walked off".  In Smith's opinion, the statement is

unintelligible.  Further, the first word could not be the name 'James,' because it

consists of two syllables.

The Magistrate Judge found that because reasonable audio experts

could differ about whether the name 'James Burkhart' can be heard on the Perry

911 tape and because Mitchell testified that the name can be heard without

enhancing the tape, trial counsel's decision not to retain an audio expert to enhance

the Perry 911 tape was within "the wide range of professionally competent

assistance."  See Strickland, 466 U.S. at 690.

Petitioner contends that this finding was in error because the jury

should have been made aware of the audio engineers' opinions and made their own

determination as to which opinion was more compelling.  This argument misses the

point because the first analysis under an ineffective assistance of counsel claim is

27

whether it was with the range of competent assistance not to order an enhanced version of the tape.  This Court agrees with the Magistrate Judge and independently finds that it was not below an objective standard of reasonableness not to do so because Mitchell testified that enhancement was unnecessary, and Smith testified that the statement was unintelligible.

Accordingly, this Court DENIES this objection to the F&R.

4.    Change in Defense Theory

Petitioner asserts that presenting alternate theories of defense at closing that Petitioner did not commit the crime, but that if he did, it was in self-defense, had no chance of convincing a jury to find in Petitioner's favor, and thus fell below the Strickland standard.

The Magistrate Judge found the decision was within "the wide range of professionally competent assistance" because the trial court excluded the witnesses who would have testified that Burkhart confessed to killing Cabaccang, and therefore, the main theory of defense was not very strong.

This Court also finds on a de novo review that a change of the theory of defense did not fall below an objective standard of reasonableness.  As the main theory of defense that Burkhart committed the killing was not supported by strong evidence, it was within the wide range of competence and trial strategy to argue

that in the event the jury believed the prosecution, it should consider that the

stabbing was in self-defense.  Accordingly, this Court DENIES this objection to

the F&R.

5.    Handwriting Identification and Stereo Equipment

Petitioner alleges that his trial counsel was ineffective for failing to

discredit a lay witness's identification of his handwriting by showing that a

handwriting expert hired by the prosecution had been unable to identify the writing

in question as Petitioner's handwriting.  Petitioner also asserts that his counsel was

ineffective for failing to introduce available evidence that Petitioner had purchased

the stereo equipment in his possession, and it was not stolen.

The Magistrate Judge noted that Petitioner did not elaborate on these

arguments in any of the briefing on the instant motion.  The Magistrate Judge

found that these two claims pertained to Petitioner's conviction of attempted theft

in the third degree.  The Magistrate Judge therefore, found that this Court did not

have habeas jurisdiction over such claims because Plaintiff has served his sentence

for the theft by the time he filed the Petition.

Petitioner objects to this finding and asserts that these issues relate to

the alleged motive for the homicide because the prosecution had claimed that

Petitioner was attempting to steal stereo equipment from the victim's car and killed the victim to avoid being identified as the thief.

Although it is true that this evidence relates in part to the murder conviction, Petitioner's arguments fail because Petitioner has failed to point this Court to any evidence in the record to establish that Respondent had a handwriting expert or that Petitioner had receipts for his stereo equipment. Accordingly, there is nothing upon which this Court could base a finding that counsel's assistance fell below the objective standard of reasonableness. Moreover, Petitioner has made nothing more than a conclusory statement that such failure prejudiced his defense. Therefore, this objection to the F&R is DENIED.

6.   Evidence of Seidel-Burkhart Relationship

Petitioner contends that his trial counsel was ineffective because he failed to present evidence that Seidel and Burkhart knew each other, which could have discredited Seidel's assertion that Petitioner was the perpetrator.

The Magistrate Judge found that Petitioner presented only unsubstantiated argument and did not identify the witness who could testify to the Seidel-Burkhart relationship.

In his objections, Petitioner asserts that he identified James Shin in his Rule 40 Petition in State court as the witness who could testify about the

relationship.  However, merely identifying this witness to this Court does not provide this Court with evidence that Petitioner's trial counsel was made aware of this witness and the relationship, and yet failed to investigate further.  Therefore, this Court cannot evaluate whether trial counsel's failure to investigate this witness was constitutionally deficient.

For these reasons, Petitioner's objections to the recommendation that Ground Three be denied are DENIED.  This Court, therefore, ADOPTS the F&R with respect to Ground Three and MODIFIES it in PART only to the extent that the handwriting and stereo equipment claims were based upon both the theft conviction and the murder conviction.  As such, this Court has habeas jurisdiction to consider such claims.  Nevertheless, these claims fail because Petitioner has not met his burden of providing evidence that his counsel's assistance fell below the objective standard of reasonableness or that he suffered prejudice.

C.     Ground Four, Actual Innocence

Petitioner asserts that he sustained his burden under an actual innocence claim because Schmidt has now changed his testimony to state that he believes Burkhart, rather than Petitioner, was the man that he saw leave the crime scene.

31

A habeas petitioner can establish an actual innocence argument if "new facts raised sufficient doubt about his guilt to justify the conclusion that his [sentence] would be a miscarriage of justice unless his conviction was the product of a fair trial." Schlup v. Delo, 513 U.S. 298, 316 (1995). The court must conclude that in light of the new evidence, no reasonable juror would have convicted Petitioner. Id. Where the court conducts an evidentiary hearing on the new evidence the court should consider "how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." Id. at 332.

The Magistrate Judge found that

> Schmidt admits that his recollection of the events was clearer at the time of the incident and at the time of Petitioner's 1997 trial than it is today. Further, Schmidt testified at the evidentiary hearing that, when he saw Petitioner's picture in the photographic line-up during the police investigation, he experienced a frightened feeling. See also Answer, Exh. L (Trans. 3/3/97 AM) at 42-43 ("The third one I came across, it frightened me. The hair on the back of my neck stood up . . . ."). It seems unlikely to the Court that Petitioner's picture would have caused such a feeling if Schmidt only saw him in passing at a restaurant. [Id. at 44 (Schmidt testified at trial "I don't have any idea why I would have reacted that way to someone just because I'd seen them at work.").] Schmidt also testified that at least six months had passed between the last time he saw Petitioner at the restaurant and the police photographic line-up. [Id. at 44-45.] In addition,

> although Schmidt explains the reason for his allegedly
> erroneous identification of Petitioner, Schmidt offers no
> explanation why he was unable to identify Burkhart at
> the time of the incident and trial.  Thus, this Court finds
> Schmidt's trial testimony to be more reliable than his
> testimony in connection with the evidentiary hearing.

(F&R at 78.)  Petitioner does not explain why this finding is inaccurate.  This

Court agrees with the Magistrate Judge that Schmidt's trial testimony is more

reliable than his new testimony for the reasons set forth above.  With that in mind,

Petitioner has not raised sufficient doubt about his guilt based upon Schmidt's

change in testimony.

Therefore, this objection is DENIED and this Court ADOPTS the

F&R.

## CONCLUSION

The Court DENIES Respondent's Objections (Doc. # 148) to the

Magistrate Judge's Findings and Recommendation to Grant in Part and Deny in

Part Petition for Writ of Habeas Corpus, filed on August 29, 2008 ("F&R", Doc. #

146) and DENIES Petitioner's Objection to Portions of Magistrate Judge's F&R.

(Doc. # 149).

This Court previously ADOPTED the F&R with respect to allowing

Petitioner to choose between dismissal of the entire petition or amending the

petition to delete two unexhausted claims.  (Doc. # 151.)  Petitioner amended the petition.  This Court now ADOPTS in PART the remainder of the F&R and MODIFIES it in PART.  The F&R is modified only with respect to the basis for denying the portion of Ground Three that was based on  handwriting and stereo equipment claims.  This Court MODIFIES that portion to hold that the handwriting and stereo equipment claims were based upon both the theft conviction and the murder conviction.  As such, this Court has habeas jurisdiction to consider such claims.  Nevertheless, these claims fail because Petitioner has not met his burden of providing evidence that his counsel's assistance fell below the objective standard of reasonableness or that he suffered prejudice.

This Court therefore, DENIES the Petition with respect to Grounds One, Three, Four, Five, Six, Seven, and Nine.  This Court GRANTS the Petition on Ground Two.  This Court ORDERS Respondent to release Petitioner within seven days after the judgment in the instant case is filed, subject to appropriate release conditions, unless the State elects to retry Petitioner; and ORDERS Respondent to report to this Court, within ten days after the judgment in the instant case is filed, whether Petitioner was released or will be retried.  Clerk to enter judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 30, 2008.

_David Alan Ezra_
United States District Judge

Taryn Christian vs. Clayton Frank, et al., Civil No. 04-00743 DAE-LEK; ORDER ADOPTING IN PART AND MODIFYING IN PART THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART THE PETITION FOR WRIT OF HABEAS CORPUS; AND ORDER DENYING RESPONDENT'S AND PETITIONER'S OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS