UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TARYN CHRISTIAN, | § § § | |
| Petitioner, | § § | No. 04-CV-743 |
| vs. | § § § | |
| CLAYTON FRANK, | § § § | |
| Respondent. | § § | |

ORDER GRANTING IN PART (1) MOTION TO COMPEL COMPLIANCE
WITH THE COURT'S ORDERS AND FOR SANCTIONS;
(2) SUPPLEMENTAL MOTION TO COMPEL COMPLIANCE WITH THE
COURT'S ORDERS AND FOR SANCTIONS

Before the Court are a Motion to Compel Compliance with the Court's Orders for Sanctions and a Supplemental Motion to Compel Compliance with the Court's Orders and for Sanctions filed by Petitioner Taryn Christian ("Petitioner" or "Christian") on February 20, 2015, and March 3, 2015, respectively (Dkts. ## 364, 367). The Court heard oral argument on the motions at the evidentiary hearing on Petitioner's Motion to Reopen Habeas Corpus Proceedings Pursuant to Federal Rule of Civil Procedure 60(b) Motion/Independent Action Due to Newly Discovered Evidence of Fraud on the Court beginning on March 16, 2015 (Dkt. # 267). At the hearing, Gary Modafferi, Esq., represented Petitioner; Moana Lutey and Richard Rost, Esqs., represented

Respondent.  After reviewing Petitioner's motions, the Court **GRANTS IN PART** Petitioner's Motion to Compel Compliance and **GRANTS IN PART** Petitioner's Supplemental Motion to Compel Compliance.

BACKGROUND

I.  Procedural History

Petitioner is a Hawaii state prisoner serving a life sentence with a forty-year minimum period of incarceration for murder in the second degree.  (Dkt. # 267 at 3.)  On December 22, 2004, Petitioner filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 1997 conviction and sentence ("Prior Petition").  (Dkt. # 1.)  On September 30, 2008, this Court issued an order granting the Prior Petition as to one ground and denying it as to all other grounds.  (Dkt. # 153.)  The Court ordered that Petitioner be released within seven days of the entry of judgment unless the State elected to retry Petitioner.  Both Petitioner and Respondent filed notices of appeal.  (Dkts. ## 157, 165.)

On February 19, 2010, the Ninth Circuit reversed, finding that the Hawaii Supreme Court did not unreasonably apply Chambers v. Mississippi, 410 U.S 284 (1973), by affirming the exclusion of testimony about James Burkhart's ("Burkhart") confessions at Christian's trial.  Christian v. Frank, 595 F.3d 1076 (9th Cir. 2010).  That court did not order remand and declined to issue a certificate of appealability.  Christian v. Frank, 365 F. App'x 877 (9th Cir. 2010).  On March

11, 2010, Petitioner filed a petition for panel rehearing and a petition for rehearing en banc. The Ninth Circuit denied both petitions on May 19, 2010 (Dkt. # 221), issuing its Mandate on May 27, 2010 (Dkt. # 222). Petitioner filed a petition for writ of certiorari with the Supreme Court on August 17, 2010, which that Court denied on November 1, 2010. Christian v. Frank, 131 S. Ct. 511 (2010).

On April 17, 2013, filed a Motion to Reopen Habeas Corpus Proceedings Pursuant to Federal Rule of Civil Procedure 60(b) Motion/ Independent Action Due to Newly Discovered Evidence of Fraud on the Court (Dkt. # 267). In his Motion, Petitioner claims that evidence has come to light that Respondents perpetrated a fraud on the court that corrupted the integrity of Petitioner's original habeas corpus proceeding. (Id. at 11.) Because the record before the Court was insufficient to establish the precise value of the evidence allegedly withheld, the Court held an evidentiary hearing on July 16, 2014. (Dkt. # 348.) Because the Court was unable to hear all of the relevant evidence and the Petitioner had obtained counsel only shortly before the hearing, the hearing was continued until March 16, 2015. (Dkt. # 362.)

A. Prior Motions to Compel

On April 17, 2013 and May 1, 2013, respectively, Petitioner filed an Emergency Motion to Compel Production of Brady Materials and a Supplemental Emergency Motion to Compel the Production of Specific Brady Material and for

3

Leave to Conduct Discovery. (Dkts. ## 269, 275.) On January 31, 2014, this Court granted the motions in part, requiring Respondent to turn over all Brady material, including, but not limited to:

(1) Phillip Schmidt's ("Schmidt") identification of Burkhart from a photographic lineup on July 17, 1995 with Detective Kaya;

(2) Annie Leong's ("Leong") identification of Burkhart from one of two colored photographs within days of the murder with Detectives Funes and Kaya, Lieutenant Ribao, and others;

(3) Fingerprint evidence recovered from Vilmar Cabaccang's ("Cabaccang") driver's door;

(4) Evidence of the bag containing the ice pick, box of condoms, and pager/phone found at the scene;

(5) Evidence implicating Christian Dias's ("Dias") presence with Burkhart at the scene;

(6) Additional witnesses to Burkhart's confession and his implication of Serena Seidel ("Seidel") as an accessory;

(7) Seidel's shorts that were used as a trial exhibit;

(8) FBI enhancement of the 911 recording;

(9) Forensic test reports of Burkhart's DNA and fingerprints recovered at the scene;

4

(10) Complete chain or custody/property reports for all evidence introduced as trial exhibits;

(11) All prepared inventory lists made by the Maui Prosecutor's Office and the Maui Police Department's ("MPD") evidence concerning the exhibits; and

(12) All materials, evidence, notes, interview memoranda, latent prints, audio and visual recordings, and any other communications in possession of the MPD, Honolulu Police Department ("HPD"), Office of the Federal Prosecutor ("OFP"), and FBI related to the MPD's investigation of Burkhart in connection with the murder of Cabaccang, including evidence related to MPD Detective Timothy Gapero's ("Gapero") 1996 statements that police had evidence they had arrested the wrong person for Cabaccang's murder. (Dkt. # 294 at 17–18.)

In a subsequent order requiring production of listed materials 1–9 by June 6, 2014, the Court ordered that if Respondent was unable to produce any piece of listed Brady material, it was to provide a detailed statement of the chain of custody of that piece of evidence and why production would not be possible. (Dkt. # 385 at 3.) Respondent responded on June 6, 2014, producing evidence in response to items 3 and 5–7 and statements regarding non-production of items 1–2, 4, and 8–9. (Dkt. # 326.)

B.  Instant Motions

On February 20, 2015, Petitioner filed the instant Motion to Compel Compliance with the Court's Orders and for Sanctions (Dkt. # 364), in which Petitioner contends that the State is still in possession of the following Brady material:

(1) 1995 arrest photographs of Burkhart, Dias, and Christian;

(2) Original investigation reports, recordings, police notes, and transcripts, including:

   i) A legible and complete transcript of 911 Police Radio Dispatch Log dated 7/4/1995;

   ii) Copies of all original MPD investigation reports into Cabaccang's death and unauthorized entry into his vehicle between 7/14/1995 and 8/18/1995;

   iii) Reports regarding the county worker, Eugene Librando, searching a drain near the crime scene for the murder weapon on the morning of 7/14/1995;

   iv) Photographs of all crime scene evidence recovered on 7/14/1995;

   v) Photographs of Seidel taken on 7/14/1995 at the scene and at the police station;

   vi) Description of suspect provided by Schmidt on morning of 7/14/1995 to Detective Kaya;

6

vii) Audio and visual recordings conducted with Leong on 7/14/1995 regarding description of the suspect entering Gas Express;

viii) All reports, audio and video recordings of interviews conducted with Seidel including interview conducted by Detective Gapero in January 1997; and

ix) All audio and video recordings of interviews conducted with Dias;

3) Copy of Gas Express surveillance video 'Tape 11' and chain of custody dated 7/14/1995;

4) Photographs of Cabaccang's vehicle (including driver's door) taken on the morning of 7/14/1995;

5) Examination report of Cabaccang's vehicle by a Kihei locksmith;

6) All Crime Stopper recordings, reports, and follow-up investigations conducted, including the photographs of Burkhart offered by a caller on 7/17/1995;

7) All reports, audio video recordings of interviews/interrogations conducted with Burkhart and Detective Funes;

8) Audio recordings of witnesses interviewed, including Schmidt, Leong, Tesha Santana, Jennifer Santana, Shaun SantanaRobert Perry Sr., Rob Perry Jr., Jean Perry, Steven Warnock, Cynthia Warnock, Bruce Metz, Heather Romero, Macadangdang brothers (3), Cabaccang's family members, Gabriel Harvey,

Michael Pysk, Keleen Norton, Erica de la Cruz, Cassie Leong, Leiola Viola and her brother, Rudy Cabanting, Ben Cabatu, Shaun Dutro, and Lisa Kimmey;

9) Reports for all photographic line-ups displayed and separate photographic line-ups created;

10) Report of photo line-up presented to Schmidt on 7/17/1995 by Detective Kaya;

11) Reports of photo line-ups presented to Seidel prior to 8/21/1995;

12) Report of 4x6 colored photographs presented to Leong prior to 8/21/1995;

13) Report of 4x6 colored photographs presented to Letha Alexander prior to 8/21/1995;

14) Report of persons contacting police regarding Burkhart bragging to murder while incarcerated at MCCC around February 1996;

15) Forensic comparison test results of blood typing and DNA conducted by HPD and FBI;

16) Property/chain of custody reports for all evidence documented in case, including evidence introduced at trial;

17) All internal court and prosecutor's inventory reports for trial evidence in Second Circuit Court between 2/22/1997 and 10/30/2007; and

18) Identity of court clerk related to trial exhibit index card, dated 7/16/2006.

(Dkt. # 364 at 7–9.)

Separately, Petitioner also requests that the Court order the MPD, HPD, OFP, and FBI to search for and produce all materials, evidence, notes, interview memoranda, latent prints, audio and video recordings, and any other communications in their possession related to the MPD's investigation of Burkhart in connection with the murder of Cabaccang, including evidence related to MPD Detective Gapero's 1996 statements that police had evidence they arrested the wrong person for the murder of Cabaccang, as previously directed in this Court's January 31, 2014 order. (Dkt. # 367 at 1–2.) Petitioner contends that an order made directly to these agencies is necessary as there is no evidence that Respondent has made requests of said agencies. (Id.)

The Respondent filed no response.

## DISCUSSION

I. Requests to Compel

Because the following items relate to Petitioner's fraud on the court claim, the Court **GRANTS** Petitioner's requests as to the following: (1) 1995 arrest photographs of Burkhart, Dias, and Christian; (2) Original investigation reports, recordings, police notes, and transcripts of (a) all original MPD investigation reports into Cabaccang's death, (b) Description of suspect provided by Schmidt on morning of 7/14/1995 to Detective Kaya, (c) Audio and visual recordings conducted with Leong on 7/14/1995 regarding the description of the suspect

9

entering Gas Express, (d) All reports, audio and video recordings of interviews conducted with Seidel including the interview conducted by Detective Gapero in January 1997; (3) Copy of Gas Express surveillance video 'Tape 11' and chain of custody dated 7/14/1995; (4) All Crime Stopper recordings, reports, and follow-up investigations conducted, including the photographs of Burkhart offered by caller on 7/17/1995; (5) All reports, audio video recordings of interviews/interrogations conducted with Burkhart and Detective Funes; (6) Audio recordings of witnesses interviewed, including Schmdit, Leong, Tesha Santana, Jennifer Santana, Shaun Santana, Robert Perry Sr., Rob Perry Jr., Jean Perry, Steven Warnock, Cynthia Warnock, Bruce Metz, Heather Romero, Macadangdang brothers (3), Cabaccang's family members, Gabriel Harvey, Michael Pysk, Keleen Norton, Erica de la Cruz, Cassie Leong, Leiola Viola and her brother, Rudy Cabanting, Ben Cabatu, Shaun Dutro, and Lisa Kimmey; (7) Reports for all photographic line-ups displayed and separate photographic line-ups created; (8) Reports of photo line-ups presented to Seidel prior to 8/21/1995; (9) Report of the photo line-up presented to Schmidt on 7/17/1995 by Detective Kaya; (10) Report of 4x6 colored photographs presented to Leong prior to 8/21/1995; (11) Report of 4x6 colored photographs presented to Letha Alexander prior to 8/21/1995; (12) All internal court and prosecutor's inventory reports for trial evidence in the Second Circuit Court between 2/22/1997

and 10/30/2007; and (13) Identity of court clerk related to trial exhibit index card, dated 7/16/2006.

Additionally, because Respondent has not produced the following materials that were identified in the January 31, 2014 order, the Court **GRANTS** Petitioner's requests as to (1) property/chain of custody reports for all evidence documented in case, including evidence introduced at trial; and (2) all materials, evidence, notes, interview memoranda, latent prints, audio and video recordings, and any other communications in possession of the MPD, HPD, OFP, and FBI related to the MPD's investigation of Burkhart in connection with the murder of Cabaccang, including evidence related to MPD Detective Gapero's 1996 statements to that police had evidence they had arrested the wrong person for the murder of Cabaccang. The Court hereby **ORDERS** the MPD, HPD, OFP, and FBI to search for and produce said items.

However, the Court **DENIES** Petitioner's requests for the following production, as they were not part of Petitioner's 2013 motions to compel and the Court is unable to determine any relevancy of the materials to Petitioner's fraud on the court[1] claim: (1) Original investigation reports, recordings, police notes, and transcripts of (a) A legible and complete transcript of 911 Police Radio Dispatch Log dated 7/4/1995, (b) Copies of all original MPD investigation reports into

---

[1] This evidence may have been relevant to Petitioner's habeas petition, but such an inquiry is broader than that currently before the Court.

unauthorized entry into Cabaccang's vehicle between 7/14/1995 and 8/18/1995,

(c) Reports regarding the county worker, Eugene Librando, searching a drain near the crime scene for the murder weapon on the morning of 7/14/1995,

(d) Photographs of all crime scene evidence recovered on 7/14/1995,

(e) Photographs of Seidel taken on 7/14/1995 at the scene and at the police station,

(f) All audio and video recordings of interviews conducted with Dias;

(2) Photographs of Cabaccang's vehicle (including driver's door) taken on the morning of 7/14/1995; (3) Examination report of Cabaccang's vehicle by the Kihei locksmith; (4) Report of persons contacting police regarding Burkhart bragging about the murder while incarcerated at MCCC around February 1996; and (5) Forensic comparison test results of blood typing and DNA conducted by HPD and FBI.

The Court **ORDERS** that Respondent produce all items listed above no later than **April 3, 2015**. If Respondent cannot turn over any piece of listed material, the Court **ORDERS** Respondent to provide a detailed statement of the chain of custody of that piece of evidence and why it cannot now be produced.

II.     Requests for Sanctions

Finally, the Court **DENIES** Petitioner's request for sanctions. Petitioner contends that sanctions are appropriate under Federal Rule of Civil Procedure 37(b)(2)(A)(i) for failure to comply with a court order providing

discovery, and specifically asks the Court to direct that the matters embraced in the order be taken as established for purposes of the action. (Dkt. # 364 at 2.)

Although district courts have broad discretion to impose sanctions under Rule 37(b), typically a finding of bad faith or willful misconduct is necessary for severe remedies. Fair Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002) (noting that Rule 37 sanctions are only appropriate in extreme circumstances where the violation is due to willfulness, bad faith, or fault of the party).

To date, there are two previously issued production orders to which Respondent has not provided specific responses: (1) the property/chain of custody reports for all evidence documented in the case, including evidence introduced at trial; and (2) the order for the MPD, HPD, OFP, and FBI to search for and produce materials, evidence, notes, interview memoranda, latent prints, audio and video recordings, and any other communications in their possession related to the MPD's investigation of Burkhart in connection with the murder of Cabaccang. Respondent has previously produced the chain of custody reports for the disputed evidence, including the Seidel shorts, the screwdriver, and the blood swabs. (Dkt. # 349, Exs. 27–30, 36–37.) Respondent's failure to disclose the additional property/chain of custody reports does not appear to be in bad faith. Similarly, much of this information in the MPD, HPD, OFP, and FBI order was already

13

supplied by Respondent in the June 6, 2006 Brady disclosure. Respondent's failure to respond specifically to this item does not appear to be in bad faith.

Accordingly, sanctions are not appropriate in this matter at this time and the Court therefore **DENIES** Petitioner's request for sanctions.

CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Petitioner's Motion to Compel Compliance with the Court's Orders for Sanctions and Supplemental Motion to Compel Compliance with the Court's Orders and for Sanctions (Dkts. ## 364, 367). Accordingly, the Court **ORDERS** that the Respondent produce the aforementioned items no later than **April 3, 2015**.

Additionally, the Court **ORDERS** the Clerk of the Court to send notice to the MPD, HPD, OFP, and FBI to search for and produce no later than **April 3, 2015** all materials, evidence, notes, interview memoranda, latent prints, audio and video recordings, and any other communications in their possession related to the MPD's investigation of Burkhart in connection with the murder of Cabaccang, including evidence related to MPD Detective Gapero's 1996 statements that police had evidence they had arrested the wrong person for the murder of Cabaccang.

**IT IS SO ORDERED.**

**DATED**: Honolulu, Hawaii, March 24, 2015.



David Alan Ezra
Senior United States Distict Judge