IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| TARYN CHRISTIAN,<br><br>Petitioner,<br><br>vs.<br><br>TOMMY JOHNSON, Director, State of Hawai‘i Department of Corrections and Rehabilitation,<br><br>Respondent. | Civil No. 04-00743 MWJS-RT<br><br>ORDER DENYING PETITIONER'S MOTIONS FOR RELIEF FROM JUDGMENT, SUPPLEMENTAL RELIEF FROM JUDGMENT, AND EMERGENCY MOTION FOR DISCLOSURE OF SPECIFIC *BRADY* MATERIAL AND FOR THE APPOINTMENT OF A SPECIAL MASTER TO OVERSEE AND MANAGE THE DISCOVERY PROCESS |

### INTRODUCTION

Over twenty years ago, Petitioner Taryn Christian filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking to collaterally attack his state court conviction for murder.  This court found merit in one of Christian's contentions and granted his petition, but the Ninth Circuit reversed and denied him relief.  Christian responded with a motion under Rule 60 of the Federal Rules of Civil Procedure, in which he sought to reopen the § 2254 proceedings on the theory that the government had secured the rulings against him through fraud on the courts.  In December 2015, after extensive proceedings—which included an evidentiary hearing spanning three days—this court issued a 52-page written decision denying Christian's Rule 60 motion to reopen.  Dkt. No. 406.  That decision has long since become final.

Now, nearly ten years after the 2015 decision denying his previous Rule 60 motion, Christian has filed a series of new motions in which he argues that the has uncovered additional evidence of fraud on the courts. He essentially asks this court to reconsider its 2015 decision, or at least to reach a different conclusion from what it previously had. Dkt. Nos. 481, 482. He also requests an order compelling the disclosure of *Brady* material and the appointment of a special master. Dkt. No. 484. Because none of these motions has merit, each is DENIED.

## BACKGROUND

The lengthy procedural history of this case has been described in several earlier court orders, *see, e.g.*, Dkt. Nos. 153, 255, 406, 465, 495, and only a summary is necessary here.

1. These proceedings arise out of Christian's alleged participation in the July 14, 1995, murder of Vilmar Cabaccang on Maui. That day, Cabaccang and his girlfriend, Serena Seidel, discovered that someone was sitting inside Cabaccang's vehicle. They began to chase the intruder and ultimately caught up with him. But the intruder had a knife. After a struggle, the intruder stabbed Cabaccang, dropped the knife, and fled the scene. A neighbor, Phillip Schmidt, heard the noise from the struggle, rushed to the scene, and called 911. It was too late; Cabaccang eventually died from the knife wounds. *See* Dkt. No. 406, at PageID.7990-91 (providing a more detailed recounting of these facts).

The Maui Police Department initially investigated James Burkhart and Christian Dias as potential suspects in Cabaccang's murder, but petitioner Christian was ultimately prosecuted for the crime. *See id.* The prosecution relied on five major categories of evidence against Christian: (1) a statement from Christian's ex-girlfriend that he had confessed to her; (2) a recording of a call between Christian and that ex-girlfriend, which the prosecution argued contained a confession; (3) Christian's baseball cap found at the scene of the crime; (4) discarded gloves matching the type that Christian's employer had in its kitchen; (4) the fact that Christian had previously stolen car radios from parked cars and had identified Cabaccang's car as a target in a notebook; and (5) photo identifications from Seidel and Schmidt identifying Christian in a photo lineup. *See id.*

During his state court jury trial, Christian sought to cast Burkhart as the true murderer. Although Burkhart exercised his Fifth Amendment right not to testify, Christian requested permission to call three lay witnesses who, according to his offer of proof, would have testified that Burkhart had confessed to the crime. *See* Dkt. No. 153, at PageID.2705. The prosecutor opposed the request on the ground that Christian had not offered sufficient corroboration or otherwise established the trustworthiness of Burkhart's alleged out-of-court statements. *See id.* at PageID.2707. In advancing this argument, the prosecutor emphasized that "Mr. Burkhart's picture appeared in photo arrays that were displayed to several witnesses, and no one picked out Mr. Burkhart.

3

That's a significant fact." Dkt. No. 406, at PageID.8005.  The prosecutor also represented that an alibi witness could testify that Burkhart was someplace else on the night of the stabbing.  Dkt. No. 146, at PageID.2483.  The trial court accepted the prosecutor's argument and denied Christian's request, *see* Dkt. No. 153, at PageID.2707-08, and the jury found Christian guilty of, among other things, second-degree murder.

Following the verdict, Christian sought a new trial.  The state trial court denied the motion, as did the Hawaiʻi Supreme Court.  *State v. Christian*, 88 Haw. 407, 967 P.2d 239 (1998).  While recognizing that *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038 (1973), protects criminal defendants' right to present evidence of an alleged alternative perpetrator's confession in certain circumstances, the Hawaiʻi Supreme Court concluded those circumstances were absent in Christian's case.  *Christian*, 88 Haw. at 428-31, 967 P.2d at 260-63.  Most significantly, the state's high court found that Christian's proposed evidence was far less reliable than the confession evidence at issue in *Chambers*.  *Id.* at 430-31, 967 P.2d at 262-63.

2.  In 2004, Christian petitioned this court for a writ of habeas corpus under 28 U.S.C. § 2254.  Dkt. No. 1.  He argued that his conviction should be vacated because the Hawaiʻi Supreme Court had unreasonably applied *Chambers*.  He added other arguments in his petition for a writ, including that his trial and appellate counsel were constitutionally ineffective.  He also sought to press claims that had been procedurally

4

defaulted (for failure to initially raise them in state court), on the theory that his procedural default should be excused because he was actually innocent.

The court held an evidentiary hearing to consider Christian's petition, at which Christian was represented by counsel. Among the items of evidence Christian offered was new testimony from Schmidt—one of the two individuals who identified Christian in a photo lineup at trial—who now testified that it was Burkhart, rather than Christian, that he saw walking away from the murder scene. *See* Dkt. No. 146, at PageID.2519-20. Respondent argued, among other things, that Schmidt's recantation was not credible.

Following the evidentiary hearing, by order dated September 30, 2008, the court granted Christian's petition on the *Chambers* grounds. *See* Dkt. No. 153. But the court rejected the other grounds, including Christian's assertion that he was actually innocent. *Id*. In concluding that Christian had not demonstrated his actual innocence, the court agreed with Respondent that Schmidt's recantation was not persuasive. Among the reasons for this finding was the fact that "Schmidt admit[ted] that his recollection of the events was clearer at the time of the incident and at the time of Petitioner's 1997 trial than it is today." *Id.* at PageID.2732. Moreover, although Schmidt speculated that he might have erroneously recognized Christian in the photographic line-up because Christian "worked at a restaurant near a golf course that Schmidt frequented," Dkt. No. 146, at PageID.2519, Schmidt nonetheless "offer[ed] no explanation why he was unable to identify Burkhart at the time of the incident and

trial," Dkt. No. 153, at PageID.2733. The court therefore found "Schmidt's trial

testimony to be more reliable than his testimony in connection with the evidentiary

hearing." *Id.*

Turning to the question of relief, the court ordered the Respondent—which at

that time was the Director of the State of Hawaiʻi Department of Public Safety, and

which is now the Director of the State of Hawaiʻi Department of Corrections and

Rehabilitation—to release Christian from state custody "within seven days after the

judgment in the instant case is filed, subject to appropriate release conditions, unless the

State elects to retry [him]," and further ordered Respondent to report to the court,

"within ten days after the judgment in the instant case is filed, whether [Christian] was

released or will be retried." *Id.* at PageID.2734.

Respondent instead appealed, and in a pair of opinions, the Ninth Circuit

reversed this court's partial grant of the petition, *Christian v. Frank*, 595 F.3d 1076 (9th

Cir. 2010), and denied Christian's petition for a certificate of appealability on the

grounds this court had rejected, *Christian v. Frank*, 365 F. App'x 877 (9th Cir. 2010). In

reversing the partial grant of the petition, the Ninth Circuit explained that "[t]here are

such significant factual differences between the case before us and *Chambers* that the

Hawaii Supreme Court's decision to distinguish the two cases was not unreasonable."

*Christian*, 595 F.3d at 1084. The Ninth Circuit offered three reasons for that conclusion.

6

First, the Ninth Circuit pointed out that the Hawaiʻi Supreme Court had "detailed several ways in which the excluded testimony at issue in this case was materially less trustworthy than the excluded testimony in *Chambers*." *Id.* This was not an unreasonable way to distinguish Christian's case, the Ninth Circuit wrote, because "it was the 'trustworthiness' of the evidence at issue in *Chambers* that compelled its admissibility." *Id.* at 1085 (quoting *Chambers*, 410 U.S. at 302, 93 S. Ct. at 1049).

Second, the Ninth Circuit noted that "*Chambers* can be further distinguished" in that the alleged alternative perpetrator was available to testify in *Chambers*, which "greatly enhanced the reliability of the extrajudicial statements in that case." *Id.* By contrast, Christian's proposed alternative perpetrator "exercised his Fifth Amendment right not to testify and was declared to be unavailable." *Id.*

Third and finally, the Ninth Circuit distinguished *Chambers* on the ground that, "in Christian's case, there is doubt not only about the truthfulness of the alleged confessions, but also about whether those confessions were ever made in the first place, in light of the unreliability of the witnesses and the unrecorded form of the confessions." *Id.* In sharp contrast, the confession at issue in *Chambers* had been "transcribed, signed and witnessed" by the defendant's attorneys. *Id.* at 1082.

For these reasons, the Ninth Circuit held that the "Hawaii court's decision to exclude such materially less reliable evidence did not amount to an unreasonable application of clearly established federal law." *Id.* at 1086. The Ninth Circuit later

denied Christian's petitions for panel rehearing and rehearing en banc, Dkt. No. 221,

and the Supreme Court denied his petition for a writ of certiorari, *Christian v. Frank*, 562

U.S. 1007; 131 S. Ct. 511 (2010).

3.  In 2013, Christian filed a motion in this court under Rule 60(d)(3) of the

Federal Rules of Civil Procedure.  Dkt. No. 267.[1]  He alleged newly discovered evidence

of fraud on the Hawai'i state courts, this court, and the Ninth Circuit.  *Id.*  Christian

asserted that Respondent purposefully withheld the following exculpatory evidence

during the earlier proceedings on his § 2254 petition:

> (1) corroborating eye-witness identifications of Burkhart by Schmidt and Annie
> Leong . . . , and evidence that Respondent elicited false testimony from Leong; (2)
> Gas Express surveillance video of Burkhart which refutes any claim of his alibi;
> (3) evidence that Burkhart's alibi was false; (4) crime scene evidence including
> latent prints recovered on the driver's door of the victim's car; (5) exonerating
> evidence in the form of a 911 recording; (6) evidence that [Christian] did not
> make a confession; (7) additional witnesses to Burkhart's confession; (8) physical
> evidence of Seidel's shorts and blood swabs of blood taken from the crime scene;
> and (9) impeachment evidence from the 911 tape.

Dkt. No. 406, at PageID.8001 (citing Dkt. No. 267).  In connection with the first of these

items, Christian argued that Respondent had committed fraud on the courts by

"with[o]ld[ing] evidence that Schmidt . . . had originally identified the assailant as

Burkhart" from this court and the Ninth Circuit.  *Id.* at PageID.8002-03.  In support of

this argument, Respondent presented a new statement from Schmidt to the effect that

---

[1]      The fraud-on-the-court provision, which was once found in Rule 60(b), was
moved to Rule 60(d)(3) as part of stylistic amendments to the Federal Rules of Civil
Procedure made in 2007.  *See* Dkt. No. 406, at PageID.7997 n.2.

he had indeed identified Burkhart in a first photographic lineup prior to Christian's

trial.  *Id.* at PageID.8003.  Christian contended that the withholding of Schmidt's initial

identification of Burkhart—as well as the other evidence summarized above—

prevented the Ninth Circuit from concluding that his case was sufficiently similar to

that of *Chambers* to entitle him to relief.  *Id.* at PageID.8001-02.

Although Christian would have needed the Ninth Circuit's authorization to file a

second or successive petition under 28 U.S.C. § 2254 petition, this court concluded that

Christian was instead seeking to reopen the proceedings on his first § 2254 petition.

Dkt. No. 286.[2]  And given that Rule 60 "provides no time limit on courts' power to set

aside judgments based on a finding of fraud on the court," *United States v. Stonehill*, 660

F.3d 415, 443 (9th Cir. 2011), the court held that Christian's Rule 60(d)(3) motion was not

untimely.  Dkt. No. 286, at PageID.4847.

The court therefore turned to the merits of Christian's Rule 60 motion.  As an

initial matter, the court granted in part Christian's motion to compel discovery and

granted Christian's request for an evidentiary hearing.  Dkt. No. 294.  The court later

imposed a deadline for the respondent to produce evidence and ordered the respondent

---

[2]     Christian had filed an earlier, similar Rule 60(d)(3) motion in 2011.  Dkt. No. 229.
At that time, this court construed the motion as a second or successive petition for writ
of habeas corpus, which Christian could not file without authorization from the Ninth
Circuit.  Dkt. No. 229, 255.  Although the Ninth Circuit accepted that treatment of the
motion and denied the application, Dkt. No. 260, this court revisited its earlier analysis
when Christian refiled his Rule 60(d)(3) motion in 2013.

to "provide a detailed statement of the chain of custody" of any piece of evidence the respondent could not now produce, and to explain the reasons "why it cannot now be produced." Dkt. No. 318, at PageID.5285.

The court then held an evidentiary hearing which began on July 16, 2014, and continued on March 16 and 17, 2015. Dkt. Nos. 348, 376, 377; *see also* Dkt. No. 406, at PageID.7994-95 (describing procedural history). After the hearing, the parties filed post-hearing briefs. Dkt. Nos. 390, 391, 395.

On December 28, 2015, in a 52-page written opinion, the court denied Christian's Rule 60 motion to reopen his habeas proceedings. Dkt. No. 406. The court found that Christian had not met his burden of establishing fraud on the court by clear and convincing evidence. *See id.* Among other things, the court explained at length why it did not find Christian's evidence concerning Schmidt to be persuasive. For one thing, the court noted that when Schmidt testified in the 2008 proceedings on Christian's § 2254 petition, Schmidt never clearly said that "he initially identified Burkhart in 1995 in the first photo lineup." *Id.* at PageID.8008. To the contrary, "Schmidt's testimony at the habeas hearing indicates that he could not say for sure that it was Burkhart he saw the night of the murder." *Id.* Moreover, the court found that although Respondent "did not inform the habeas court or the Ninth Circuit that Schmidt previously identified Burkhart in the first photo lineup," Christian had not "produced clear and convincing evidence that Respondent's <u>counsel</u>, at any stage of the proceedings, ever had

10

knowledge of Schmidt's initial identification of Burkhart." *Id.* at PageID.8009 (emphasis in original). The court concluded that "[w]ithout such evidence, Petitioner cannot meet his burden of demonstrating fraud on the habeas court." *Id.* Finally, the court found that Respondent's "contention that Schmidt identified only Petitioner, and not Burkhart, in a photo lineup is consistent throughout the history of this case," and that "there does not appear to be any perjury or nondisclosure to the habeas court regarding Respondent['s] consistent position that Schmidt did not identify Burkhart in a photo lineup." *Id.*

4. Following that decision, Christian filed multiple motions for reconsideration, which were all denied. *See, e.g.*, Dkt. Nos. 410, 420, 425.[3]

In response to the first of these motions for reconsideration, the court rejected Christian's factual assertion that one of the deputy prosecuting attorneys had admitted, in his testimony at the 2015 evidentiary hearing, that that he was "aware, prior to the

_____

[3]     Christian later filed a Rule 60 motion contending that his conviction was unsound in light of the Supreme Court's then-recent decision in *McCoy v. Louisiana*, 584 U.S. 414; 138 S. Ct. 1500 (2018), in which the Supreme Court held that criminal defendants have the right to insist that their trial counsel refrain from admitting their factual guilt at trial. Dkt. No. 453. The court concluded that, in making this new argument, Christian was not seeking to reopen the proceedings on his past § 2254 petition, but instead was raising a new argument against the validity of his conviction. The court therefore treated his motion as a second or successive § 2254 petition requiring the Ninth Circuit's authorization. Dkt. No. 465. On appeal, the Ninth Circuit affirmed that conclusion, and denied Christian's application for permission to file a second or successive § 2254 petition. *Christian v. Thomas*, 982 F.3d 1215, 1226 (9th Cir. 2020).

habeas proceedings in 2008, of Schmidt's initial identification [of Burkhart] in the first photo lineup."  Dkt. No. 410, at PageID.8111.

In response to the second of the motions, the court rejected Christian's argument that an FBI report of a January 29, 2009, debriefing of Burkhart was materially favorable to him.  Given that the report did not indicate that Burkhart made any statements, the court concluded that Christian offered no more than "bare speculation as to what might have been discussed" in that meeting.  Dkt. No. 420, at PageID.8538.

In response to the third of the motions, the court rejected Christian's attempt to offer "newly discovered evidence of his actual innocence," because much of the evidence had in fact already been considered and rejected, and because in any event, Christian had not demonstrated how any such new evidence "would demonstrate fraud on the habeas court," which was the only issue presented in the Rule 60 proceedings.  Dkt. No. 425, at PageID.8583.

5.  On April 14, 2025—nearly a decade after the court denied his Rule 60 motion to reopen his § 2254 proceedings—Christian filed the motions that are currently before the court.  Dkt. Nos. 481, 482, 484.  He asserts, among other things, that he has new evidence of an "unprecedented and fraudulent scheme by Maui Corporation Counsel, Maui Prosecutors and a Deputy Attorney General to solicit the Attorney General's appointment of conflicted county attorneys as 'special deputy attorneys general' to prosecute petitioner's Rule 60 motion."  Dkt. No. 481, at PageID.15202 (cleaned up).  He

12

seeks relief from this court's earlier denial of his Rule 60 motion to reopen, the

disclosure of *Brady* material, and the appointment of a special master to oversee and

manage the discovery process.  Dkt. Nos. 481, 482, 484.[4]

The court called for a response from Respondent, Dkt. No. 499, at PageID.15981,

and Respondent filed a timely opposition to Christian's motions on June 9, 2025.  Dkt.

No. 504.  Christian's deadline to file a reply brief was, at his requests, extended to July

23, 2025, then to August 22, 2025, and then to September 19, 2025.  Dkt. Nos. 506, 508,

510.  On September 18, 2025, Christian filed two separate reply briefs.  Dkt. Nos. 511,

513.

On October 7, 2025, Christian filed a motion to request an urgent/expedited

hearing by video conference, in which he rehashed and attempted to expand upon

arguments he had previously made.  Dkt. No. 517.  Respondent opposed the motion,

Dkt. No. 518, and the court denied it, reminding the parties that briefing was complete;

---

[4]    Christian also filed (i) a motion for the withdrawal of the counsel who had
previously represented him, Dkt. No. 485, which was granted on May 16, 2025, Dkt. No.
498; and (ii) a motion for the appointment of a "special counsel" to represent the
respondent, Dkt. No. 483, which was denied on May 19, 2025, Dkt. No. 499.

In addition, Christian filed a motion to disqualify the Honorable David Alan
Ezra, United States District Judge, who had been handling the proceedings in this case
since Christian filed his § 2254 petition in 2004.  Dkt. No. 486.  The undersigned district
judge denied that motion on May 14, 2025.  Dkt. No. 495.  Thereafter, Judge Ezra—who
continues to be a member of the District of Hawai'i but serves by designation in the
Western District of Texas—requested that the matter be reassigned.  The case was
thereafter reassigned to the undersigned.  Dkt. No. 496.

that no further briefing would be permitted without leave of court; and that the court

would either resolve Christian's fully briefed motions on the written submissions or

else inform counsel in due course if a hearing was warranted.  Dkt. No. 519.

Having carefully reviewed the record and the extensive written submissions the

parties have filed—including, in Christian's case, three separate memoranda in support

of his motion and two separate reply briefs, one of which the court allowed him to file

in excess of page limit requirements—the court opts to resolve the motions without a

hearing, as authorized by Local Rule 7.1(c) and (d).

## DISCUSSION

### A.     Law of the Case

To the extent Christian relies on evidence and argument the court already

considered in its December 28, 2015, order, the principle of law of the case precludes

him from relitigating those matters now.  As the Supreme Court has explained, "[a]n

actual decision of any question settles the law in respect thereto for future action in the

case." *Mut. Life Ins. Co. of New York v. Hill*, 193 U.S. 551, 554; 24 S. Ct. 538, 539 (1904); *see

also Yujin Robot Co., Ltd. v. Synet Elecs. Inc.*, Case No. CV 14-06237, 2019 WL 4492949, at

*2 (C.D. Cal. July 29, 2019).  That principle has significant purchase here, because

extensive portions of Christian's memoranda merely reassert factual and legal

arguments that were rejected by this court's 2015 order.  Three examples will help to

illustrate the point.

14

First, throughout his submissions, Christian repeatedly asserts that Respondent took "inconsistent positions" about whether Schmidt had initially identified Burkhart in a photographic lineup.  Dkt. No. 481, at PageID.15220.  The record does not support his assertion, but in any event, the court already rejected it in 2015.  *See* Dkt. No. 406, at PageID.8009 (finding that Respondent's "contention that Schmidt identified only Petitioner, and not Burkhart, in a photo lineup is consistent throughout the history of this case").  As such, the law of the case principle precludes Christian from relitigating that issue.

Second, Christian presents evidence of an excerpt from a 911 call.  Dkt. No. 482, at PageID.15711-12.  The call is partly inaudible in its original form.  But at the 2015 proceedings on Christian's Rule 60 motion, the parties presented conflicting expert opinion on whether it was possible to enhance the recording and discern the meaning of utterances captured in the background of the call.  Dkt. No. 406, at PageID.8023-4.  Christian presented the interpretation of his expert, John Mitchell, who opined that an enhanced version of the call—if listened to multiple times—reflected a statement that Burkhart and Dias were present at the scene of Cabaccang's murder.  *Id*. at PageID.8026.  Respondent disputed that information.  What is significant, for present purposes, is that this court considered all of this evidence in 2015 and concluded that Christian's evidence did not support a finding of fraud on the courts.  *Id*. at PageID.8023-26.  Under the law of the case principle, Christian may not relitigate that issue now.

15

Third, Christian now argues that his due process rights were violated because the previously assigned district judge, Judge Ezra, was "acting in bad faith or intentionally failed to follow the law" in rejecting Christian's arguments in 2015. Dkt. No. 481, at PageID.15232. This argument finds no support in the record, but it is also not based on any new evidence. And, in fact, Judge Ezra rejected the argument nearly a decade ago. *See* Dkt. No. 420, at PageID.8534-8539 (denying Christian's second motion for reconsideration). Here again, the law of the case principle bars Christian's argument.

Although other examples could be fleshed out, it suffices to say that the law of case principle precludes Christian from relitigating arguments this court has already rejected based on evidence this court has already considered.

To be sure, Christian's submissions are not limited to a mere rehash of previously resolved matters. They also point to two new items of evidence in support of his contention that the court should effectively revisit the result of the December 28, 2015, order. And the law of the case principle "does not apply if the decision was made on the evidence and the evidence on the second hearing is different." *In re Campbell*, 35 F. Supp. 100, 101 (S.D. Cal. 1940); *see also id.* (explaining that "the prior decision is the law of the case only in so far as the facts are the same"). The court therefore turns next to a consideration of whether the new items of evidence Christian offers support reconsideration of the court's earlier decision denying his claims of fraud on the court.

16

In considering whether Christian's new evidence is sufficient to warrant

reconsideration, the court applies the same legal standards settled in the court's

December 28, 2015, order.  As the court there explained, fraud on the court "embraces

only that species of fraud which does or attempts to, defile the court itself, or is a fraud

perpetrated by officers of the court so that the judicial machinery cannot perform in the

usual manner its impartial task of adjudging cases that are presented for adjudication."

Dkt. 406, at PageID.7998 (cleaned up).  "Non-disclosure, or perjury by a party or

witness, does not, by itself, amount to fraud on the court."  *Id.* at PageID.7999 (cleaned

up).  The question is "not whether fraudulent conduct prejudiced the opposing party,

but whether it harmed the integrity of the judicial process."  *Id.* at PageID.7998 (cleaned

up).  To make this showing, a party must present evidence of "an unconscionable plan

or scheme which is designed to improperly influence the court in its decision."  *Id.* at

PageID.7999 (cleaned up).  And that showing must be made by clear and convincing

evidence.  *Id.* at PageID.8000.

**B.     Fraud-on-the-Court Arguments Founded on Allegedly New Evidence**

    **1.     The Alleged Appointment Conspiracy**

In his memorandum filed in support of his lead motion, Christian presses several

arguments in support of his request for Rule 60 relief.  Dkt. No. 481.  But the only

argument founded upon new information is his contention that he has recently

uncovered an allegedly "unprecedented and fraudulent scheme by Maui Corporation

17

Counsel, Maui Prosecutors and a Deputy Attorney General to solicit the Attorney

General's appointment of conflicted county attorneys as 'Special Deputy Attorneys

General' to prosecute petitioner's Rule 60 motion." *Id.* at PageID.15224 (cleaned up).

Christian's argument centers around his contention that the "sole objective" of the Maui

Corporation Counsel "was to defend official misconduct by the County's employees,"

and that they therefore "were not disinterested prosecutors by any measure." *Id.* at

PageID.15228.

     This argument lacks merit.  As an initial matter, it overlooks the fact that Maui

Corporation Counsel were not here acting as prosecutors at all.  Christian's criminal

case ended when the Hawaiʻi Supreme Court affirmed his conviction on direct appeal.

His subsequent § 2254 proceeding in this court, as well as his Rule 60 efforts to reopen

that § 2254 proceeding, are all civil rather than criminal matters.  *See Mayle v. Felix*, 545

U.S. 644, 655 n.4; 125 S.Ct. 2562, 2569 n.4 (2005) (explaining that "[h]abeas corpus

proceedings are characterized as civil in nature").  When Maui Corporation Counsel

were specially appointed to assist the Attorney General with the Rule 60 proceedings,

therefore, they were acting as civil lawyers representing the Attorney General in a civil

matter.

     More fundamentally, the record in this case does not reveal any wrongdoing in

the appointment of counsel to assist with this civil matter.  The Attorney General

initially appointed deputy prosecuting attorneys from Maui to assist in responding to

18

Christian's § 2254 petition; Christian has not shown that there was anything

inappropriate about the Attorney General drawing on the familiarity of these deputy

prosecuting attorneys with the evidence and procedural history of the case.  And as

Respondent explains, it is true that the Attorney General did not reappoint those

deputy prosecuting attorneys to assist with Christian's Rule 60 motion, but that was

only because Christian contended that those deputy prosecuting attorneys had

participated in a fraud on the court during the earlier § 2254 proceedings.  Christian's

assertions of fraud—which this court ultimately rejected—had the effect of making

those deputy prosecuting attorneys possible witnesses in the Rule 60 proceedings.  *See*

Dkt. No. 504, at PageID.16019 (explaining that "the substitution of counsel only

occurred because Petitioner made false and scurrilous allegations against Mr. Hanano

and Mr. Minatoya").  Christian has identified no persuasive reason why it was

improper for the Attorney General to appoint Corporation Counsel from Maui—

attorneys familiar with Maui state proceedings but unaffected by Christian's assertions

of fraud—to assist with the Rule 60 proceedings under those circumstances.

## 2.    The Dias Declaration

In his supplemental motion in further support of his request for Rule 60 relief,

Dkt. No. 482, Christian once again raises several arguments that this court has already

rejected.  But here again, Christian makes one argument based on new information.

The new evidence is a typed declaration from Christian Dias—the individual who,

19

together with Burkhart, had been initially considered a suspect in Cabaccang's

murder—which is dated February 2025.  Dkt. No. 481-19, at PageID.15602 (Appendix G-

2).[5]  The declaration reads:

> I, Christian Dias, do solemnly declare:
>
> 1.      I am a resident of Maui, Hawaii.
>
> 2.      Sometime in early 2008, while I was incarcerated at the Maui
> Community Correctional Center, I was interviewed by a detective from
> the Maui Police Department;
>
> 3.      That the detective related to me that James Hina Burkhart had been
> arrested on a gun charge and had dropped my name to police as the
> person responsible in the 1995 murder of Vilmar Cabaccang;
>
> 4.      That I was not aware at that time of the whereabouts of James
> Burkhart or any information of his arrest;
>
> I, HEREBY DECLARE UNDER THE PENALTY OF LAW THAT THE
> FOREGOING IS TRUE AND CORRECT.

*Id.*  The document bears, under the typed name "Christian B. Dias," what appears to be

Dias's signed initials ("CBD"), and indicates that it was "[w]itnessed [b]y" a licensed

private investigator.  *Id.*

    To understand the nature of Christian's argument about this document, some

background into James Hina Burkhart is necessary.  As explained above, Burkhart was

the alleged alternative perpetrator whom Christian sought to inculpate at his 1997 state

---

[5]      Dias's declaration is attached as an appendix to Christian's initial motion, Dkt.
No. 481, but the arguments concerning this declaration appear principally in Christian's
supplemental motion, Dkt. No. 482.

court trial.  After this court granted Christian's § 2254 petition in September 2008—but before the Ninth Circuit reversed in 2010—two deputy prosecuting attorneys from Maui traveled to Honolulu to interview Burkhart.  They were the same two deputy prosecuting attorneys, moreover, who were appointed to represent Respondent in the 2008 habeas proceedings in this court.

According to the FBI's report, the interview, which took place on January 29, 2009, was designed to "assist Maui County prosecutors with the homicide investigation of VILMAR CABACCANG."  Dkt. No. 482, at PageID.15715.  Burkhart is designated in the report as being an FBI "Confidential Human Source (CHS)."  The FBI's report further noted that the "interview was documented by the Maui Department of Prosecuting Attorney and will not be documented in the above files."  *Id.*  It does not appear that the Maui Department of the Prosecuting Attorney disclosed any report of their own, however.

The FBI's report is not new evidence.  It was produced to Christian's counsel during the 2015 proceedings because of this court's discovery orders.  *See* Dkt. No. 420, at PageID.8536-37.  Nor is it a new fact that Respondent has not produced any other information concerning that interview.  To the contrary, Christian argued in 2015 that Respondent was withholding *Brady* evidence surrounding Burkhart's interview.  This court rejected that argument, concluding that Christian offered only "bare speculation

as to what might have been discussed when the Maui County Prosecuting Attorneys

questioned Burkhart on January 29, 2009." *Id.* at PageID.8538.

Christian's new motions repeat arguments he made previously about Burkhart,

and those arguments are foreclosed by the law of the case principle. But he also makes

one new argument based on Dias's recent declaration. His contention appears to be

that Dias's recent declaration supports the conclusion that Burkhart *did* say something

of significance during his January 29, 2009, interview. As Christian puts it, in light of

the new Dias declaration, "[i]t is now known" that the deputy prosecuting attorney

who handled the 2008 habeas proceedings "violated his Brady obligations" and "was

actively concealing Burkhart's multiple statements to law enforcement that inculpated

Chris Dias as the person responsible for Cabaccang's murder." Dkt. No. 482, at

PageID.15716. He repeats this argument in the third of his pending motions, in which

he seeks an order compelling the disclosure of *Brady* material and the appointment of a

special master. *See* Dkt. No. 484, at PageID.15790 (asserting that "[n]ew evidence

reveals that state (and federal) prosecutors engaged in *secret* discussions and obtained

information from Burkhart about Cabaccang's murder that implicated Dias whom

police considered a suspect with Burkhart in Cabaccang's murder" (emphasis in

original)).

This new argument is not persuasive. In 2015, this court found that Christian

offered only "bare speculation as to what might have been discussed when the Maui

22

County Prosecuting Attorneys questioned Burkhart on January 29, 2009." Dkt. No. 420,

at PageID.8538. The new Dias declaration does not warrant a departure from that prior

finding. That is so for at least two reasons. First, Christian offers no evidence that the

deputy prosecuting attorneys who handled the 2008 habeas proceedings had any

knowledge of the alleged interaction between Dias and an unnamed detective. Second,

Dias reports that he met with a detective in early 2008. The FBI report, by contrast,

concerns a meeting in January 2009. It follows that, even if the unnamed detective truly

had obtained a statement from Burkhart inculpating Dias, that statement did not come

from the 2009 meeting at which the deputy prosecuting attorneys were present. The

Dias declaration does not lend support to Christian's theory of fraud upon the courts.

### 3.    The Totality of the Evidence

For the foregoing reasons, the court concludes that neither of Christian's new

pieces of evidence—nor his arguments founded upon that new evidence—is persuasive.

Although the court does not definitively conclude that it must also weigh the value of

these new pieces of evidence in the context of—and as added to—all of the other

evidence Christian had previously offered, it has, out of an abundance of caution, also

taken that step. Although Christian's prior evidence was not sufficient to meet his

burden of establishing fraud on the courts by clear and convincing evidence, the court

has carefully considered whether the addition of his new evidence might take him over

the top. And it concludes that it does not.

Accordingly, Christian's new Rule 60 motions (Dkt. Nos. 481 and 482) are

DENIED.  His motion for an order compelling the production of *Brady* material and

appointing a special master (Dkt. No. 484) is likewise DENIED.

### C.    Actual Innocence

There is one final matter to address.  Throughout his several memoranda,

Christian makes the argument that he is actually innocent and that he has made a

sufficient showing to satisfy the requirements of *Schlup v. Delo*, 513 U.S. 298; 115 S.Ct

851 (1995).  *See, e.g.*, Dkt. No. 482, at PageID.15702-03.  He notes that "a habeas

petitioner who demonstrates his actual innocence creates 'a gateway' for the federal

courts to consider the merits of otherwise procedurally barred claims."  Dkt. No. 482, at

PageID.15702 (quoting *Schlup*, 513 U.S. at 316-17; 115 S.Ct. at 861).  These arguments

appear designed to support a contention that Christian should be allowed to file a

successive § 2254 petition—rather than being constrained to arguing that there was

fraud upon the courts in his first § 2254 proceedings, which is all the court has

considered to this point.

Christian's arguments concerning actual innocence focus heavily on the Dias

declaration, and it appears that he seeks an opportunity to press a new *Brady* argument

in what would likely qualify as a successive § 2254 petition.  At first blush, the Dias

declaration does not appear to offer strong support to his argument of actual innocence.

For one thing, recall that Christian's *Chambers* argument—the one argument on which

24

this court granted his § 2254 petition before relief was reversed by the Ninth Circuit—

was founded on his argument that Burkhart had supposedly confessed to multiple

individuals that Burkhart himself had committed the murder of Cabaccang.  To the

extent Christian now hypothesizes a statement from Burkhart that the murderer was

actually Dias, any such statement would be in tension with the Burkhart-specific

*Chambers* argument that Christian has pressed to this point.  For another, to the extent

that Christian now contends that two individuals could have been *jointly* responsible

for Cabaccang's murder—despite the evidence indicating that a single person struggled

with and stabbed Cabaccang—Christian has not yet offered any compelling explanation

why Dias's culpability would be any less consistent with Christian's culpability than

with Burkhart's.

With different or additional evidence, Christian might be able to answer these

questions or to present a newfound actual innocence argument.  But any such evidence

or argument is not properly addressed to this court.  That is because, "before a federal

district court may entertain a second or successive petition, the appropriate circuit must

issue an order authorizing the district court to consider the petition."  *Gage v. Chappell*,

793 F.3d 1159, 1164 (9th Cir. 2015) (citing 28 U.S.C. § 2244(b)(3)).  Accordingly, if

Christian believes he can now make a stronger showing of actual innocence than he did

in 2008—when, during his first § 2254 proceedings, this court rejected his actual

innocence claim—he must direct that argument to the Ninth Circuit.

In considering any such application, the Ninth Circuit will ask whether Christian has satisfied two requirements found in 28 U.S.C. § 2244(b)(2)(B): first, he must show that the factual predicate for his claim could not have been "discovered previously through the exercise of due diligence"; and second, he must show that the facts underlying his claim "would be sufficient to establish that, but for constitutional error, no reasonable factfinder would have found" Christian guilty. *Id.* at 1166 (citing 28 U.S.C. § 2244(b)(2)(B)).

Although other procedural bars (e.g., the obligation to exhaust claims in state court) might be excused through *Schlup* and the "gateway" it allows for petitioners who make a showing of actual innocence, Christian is also advised that the Ninth Circuit has held that "*Schlup* does not abrogate § 2244(b)(2)(B)." *Id.* at 1169. That is to say, even if Christian can make a sufficient showing that he is actually innocent, he will still need to persuade the Ninth Circuit that he has satisfied § 2244(b)(2)(B)'s two requirements.

## CONCLUSION

Christian's pending motions (Dkt. Nos. 481, 482, and 484) are DENIED.

//

//

//

//

//

IT IS SO ORDERED.

DATED:  October 17, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 04-00743 MWJS-RT, *Taryn Christian v. Tommy Johnson*; ORDER DENYING
PETITIONER'S MOTIONS FOR RELIEF FROM JUDGMENT, SUPPLEMENTAL
RELIEF FROM JUDGMENT, AND EMERGENCY MOTION FOR DISCLOSURE OF
SPECIFIC *BRADY* MATERIAL AND FOR THE APPOINTMENT OF A SPECIAL
MASTER TO OVERSEE AND MANAGE THE DISCOVERY PROCESS